ROB BONTA, State Bar No. 202668
Attorney General of California
NORMAN D. MORRISON, State Bar No. 212090
Supervising Deputy Attorney General
 2550 Mariposa Mall, Room 5090
 Fresno, CA  93721-2271
 Telephone: (559) 705-2304
 Fax: (559) 445-5106
 E-mail: Norman.Morrison@doj.ca.gov
*Attorneys for Defendants Neil Compston,
John Silveira and Edward Sinclair*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CIVIL DIVISION

| | |
|---|---|
| **FREDDIE QUAIR,**<br><br>Plaintiff,<br><br>v.<br><br>**COUNTY OF KINGS; TAYLOR LOPES; NEIL COMPSTON; JOHN SILVERIA; EDWARD SINCLAIR; and DOES 1 THROUGH 10, inclusive,**<br><br>Defendants. | 1:20-CV-01793-KJM-SKO<br><br>**Defendants Motion in Limine to Exclude and Prevent Testimony By Witnesses Who Invoked the Fifth Amendment Privilege During Discovery.**<br><br>**[STATE MIL NO. 1]**<br><br>Trial Date:   November 10, 2025<br>Action Filed: December 21, 2020 |

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD HEREIN:

PLEASE TAKE NOTICE THAT Defendants NEIL COMPSTON, JOHN SILVEIRA and EDWARD SINCLAIR (Defendants) hereby move the Court for an order in limine precluding Plaintiff, and other witnesses, from testifying about any topic on which they previously has refused to testify by invoking his 5th Amendment rights during his deposition and in responses to written discovery, and to exclude Plaintiff's experts from expressing opinions incorporating Plaintiff's previously undisclosed information. Fed. R. Evid. 403. Defendants additionally move this Court to allow Defendants to raise and invoke an adverse inference relating to the invocation

1

of the Fifth Amendment privilege at trial in this case.

This motion is based upon this notice of motion, the attached memorandum of points and authorities, the attached declaration of Supervising Deputy Attorney General Norman D. Morrison IV, all pleadings and records on file in this action, and on such further authority, evidence, or argument as may be presented at or before the time of any hearing on this motion.

**Statement of Compliance:**

This Motion is made in response to this Court's July 24, 2025, ruling (ECF 83), as well as the discussions on the record about the issue during the final pretrial conference held in this matter.

Dated: August 7, 2025                                           Respectfully submitted,

                                                                ROB BONTA
                                                                Attorney General of California

                                                                */S/ NORMAN D. MORRISON*

                                                                NORMAN D. MORRISON
                                                                Supervising Deputy Attorney General
                                                                *Attorneys for Defendants Neil Compston,
                                                                John Silveira and Edward Sinclair (BI)*

FR2021301267
95639754.docx

2

Defendants Motion in Limine to Exclude and Prevent Testimony By Witnesses Who Invoked
the Fifth Amendment Privilege During Discovery [STATE MIL #1] (1:20-CV-01793-KJM-SKO)

**INTRODUCTION**

This lawsuit arises out of a shooting that occurred during the early morning hours on June 18, 2019, on a road next to State Route 43 near Hanford, California. Prior to this incident, Plaintiff Fredie Quair, Jr. had been under surveillance for multiple months as part of a joint Federal, State and local task force known as "Operation Red Reaper" that was investigating the Nuestra Familia criminal organization and the Norteño street gangs in the Kings and Tulare County region. As one of the targets of Operation Red Reaper, Plaintiff was the subject of a combination of video, audio, and electronic surveillance over a period of months performed by the Defendants. This included wiretaps of phone numbers used by Plaintiff and his criminal associates, including Jose Quintero. The months long surveillance captured evidence of Plaintiff engaging in the trafficking of illegal firearms with other criminals, the sales of narcotics, and the discussion of various criminal activities relating to the Norteño's and Nuestra Familia. (Declaration of Supervising Deputy Attorney General Norman D. Morrison IV (Decl. Morrison) ¶ 2.)

During the early morning hours of June 18, 2019, Plaintiff and two accomplices, Jose Quintero and David Hernandez, engaged in an armed home invasion robbery of a residence located in Corcoran, California. (Decl. Morrison, ¶ 3.) During the home invasion robbery, Plaintiff's accomplice, David Hernandez, was shot in the stomach. (*Id.*) Plaintiff fled the scene on foot, and Hernandez was transported to the hospital by Quintero; the firearm used during the armed home invasion robbery was also in the vehicle used by Quintero. (*Id.*)

Plaintiff fled the scene on foot after the shooting, and eventually borrowed a cellular phone from a third-party to call Quintero. (Decl. Morrison, ¶ 4.) During this phone call, which was monitored by the Defendants as part of the court authorized wiretap, they heard Plaintiff and Quintero discussing the armed home invasion robbery, the shooting, the firearm used during the armed home invasion robbery, and Plaintiff's instructions to Quintero to come pick him up from the side of the highway. (*Id.*) Plaintiff gave Quintero specific information about his address. (*Id.*)

Based upon the phone call, and their knowledge of the armed home invasion robbery that Plaintiff had just committed, and due to the existence of an arrest warrant issued for the Plaintiff

1

Defendants Motion in Limine to Exclude and Prevent Testimony By Witnesses Who Invoked the Fifth Amendment Privilege During Discovery [STATE MIL #1] (1:20-CV-01793-KJM-SKO)

by a court, the Defendants began surveillance of the Plaintiff using other vehicles as well as a plane. (Decl. Morrison, ¶ 5.) Plaintiff was subsequently stopped by law enforcement officers in a field alongside the highway. (*Id*.) In light of the facts known to them, including Plaintiff's involvement in an armed home invasion robbery where someone had just been shot, as well as Plaintiff's prior history involving firearms, the Defendants performed a "felony traffic stop." (*Id*.)

After Plaintiff and his accomplice stopped their vehicle, they refused to follow instructions and directions made by Kings County Sheriff's Sergeant Taylor Lopes. Instead, Plaintiff flung open the front passenger side door of his vehicle and immediately assumed an isosceles shooting stance, holding both hands together and extended in front of him consistent with someone holding and intending to use a handgun, pointing towards the Defendants. Plaintiff then suddenly moved his hands upward in a motion consistent with experiencing the physical recoil of a firearm being shot. Knowing Plaintiff had a history of being armed with illegal firearms, having just been involved in an armed home invasion robbery where another individual was shot, seeing Plaintiff assume what was recognized as a shooting stance and displaying a physical reaction consistent with firing a handgun while simultaneously hearing gunfire, Defendants reasonably and logically believed the Plaintiff was shooting at them and discharged their firearms at the Plaintiff and the vehicle he had just exited in self-defense. After being shot, Plaintiff continued to resist arrest by refusing to comply with orders, before he was ultimately taken into custody and treated by emergency medical personnel.

During discovery in this case, Plaintiff refused to provide responses to numerous questions relating to his actions preceding the traffic stop, including his involvement in the armed home invasion robbery, his involvement with criminal street gangs, his possession of firearms prior to the incident, and other matters that relate to the basis for the Defendants' actions during the felony stop. (Decl. Morrison, ¶ 6.) Plaintiff instead invoked his Fifth Amendment rights, and refused to provide any information. (*Id*.) During deposition, Plaintiff advised he would not answer any questions relating to events that happened before the shooting itself, and that he would be invoking his Fifth Amendment right against self incrimination. (Decl. Morrison, ¶ 8.) Plaintiff subsequently invoked his Fifth Amendment rights and refused to testify as to numerous

2

Defendants Motion in Limine to Exclude and Prevent Testimony By Witnesses Who Invoked
the Fifth Amendment Privilege During Discovery [STATE MIL #1] (1:20-CV-01793-KJM-SKO)

1  questions. (*Id.*)

2  Following the close of discovery, and after the deadline for motions, Plaintiff entered into a plea agreement with the District Attorney's Office, wherein he plead out to numerous different charges, including weapons violations, assault with a deadly weapon (Penal Code § 245(b)) arising out of the armed home invasion robbery, and other charges.

At no point in time, including after Plaintiff plead out to the multiple felonies in Kings County Superior Court, has Plaintiff indicated whether he would continue to stand by his prior invocation of his Fifth Amendment rights and refusal to testify at trial in this case, nor has he offered to provide further deposition testimony regarding these issues. Defendants have prepared for trial based upon Plaintiff's prior invocation of his Fifth Amendment privilege and refusal for trial. However, in at least one recent case involving a similar factual scenario where a plaintiff had invoked his Fifth Amendment rights and refused to testify, on the eve of trial Plaintiff's counsel of record notified the defendants that the plaintiff in that case intended to testify at trial regarding the matters he had previously invoked and refused to testify on. (*See Edgar Solis v. County of Riverside et al.*, U.S. Dist. Court Central Dist. of California, NO. 5:23-cv-00515).

Defendants accordingly request this Court grant their motion in limine barring Plaintiff from testifying as to matters he had previously refused to testify and provide discovery responses to, and to allow the trier of fact to draw an adverse inference from Plaintiff's refusal to testify.

## ARGUMENT

### I. THE COURT HAS THE POWER TO GRANT THIS MOTION IN LIMINE BASED UPON ITS INHERENT POWER TO MANAGE THECOURSE OF TRIALS

A motion in limine is "a procedural mechanism to limit in advance testimony or evidence in a particular area." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009). Motions in limine are recognized as a proper pretrial request, both in practice and by case law. *See, Ohler v. United States,* 529 U.S. 753, 758 (2000), *United States v. Cook,* 608 F.2d 1175, 1186 (9th Cir. 1979). Authority for these motions is also derived from the Court's inherent power to manage the course of trials. *Luce v. United States,* 469 U.S. 38, 41, n.4 (1984). Pursuant to the arguments set forth below, Defendants request that this Court grant their motion and exclude the evidence at issue.

3

II. **TESTIMONY AT TRIAL ABOUT TOPICS WHICH PLAINTIFF REFUSED TO ANSWER DURING HIS DEPOSITION AND/OR IN HIS RESPONSES TO DISCOVERY BY INVOKING THE FIFTH AMENDMENT SHOULD BE EXCLUDED AS UNDULY PREJUDICIAL TO DEFENDANTS, AND DEFENDANTS SHOULD BE ALLOWED TO REQUEST AN ADVERSE INFERENCE AT TRIAL.**

During his deposition, Plaintiff advised he would refuse to answer any questions relating to anything that occurred prior to the shooting itself, and intended to invoke his Fifth Amendment rights. (Decl. Morrison, ¶ 8.) Plaintiff subsequently refused to answer questions relating to his involvement with criminal street gangs, including the Norteño's; although admitting to having a nickname he used he refused to identify it; questions relating to his possession and use of a firearm before the incident; questions relating to his involvement in the armed home invasion robbery that immediately preceded this incident; his interaction with others involved in the armed home invasion robbery; his direction and mode of travel immediately preceding the incident; his discussions with Jose Quinterio (the other occupant of the vehicle at the time of the incident); whose cell phone he used prior to the incident; the identity of the voices on the phone call he had with Jose Quintero prior to the incident discussing the armed home invasion robbery and instructing Quintero to pick him up; whether he was under the influence of drugs or alcohol prior to the incident; whether he had previously engaged in the illegal sales of firearms; and what he had done with a handgun he was in the possession of prior to this incident and who he believed was in possession of it. (Decl. Morrison, ¶ 9.)

These questions are all directly relevant to the issues here. Defendants were well aware of multiple aspects of Plaintiff's background as a result of the lengthy, in-depth surveillance performed on the Plaintiff. (Decl. Morrison, ¶ 2.) Prior to the incident, the Defendants were aware of Plaintiff's membership and involvement in a criminal street gang, in fact, Plaintiff's membership and affiliation with the Norteño's and Nuestra Familia were the very basis and reason for his being placed under surveillance as a part of Operation Red Reaper, and part of the basis for the wiretaps authorized by the Superiore Court as a part of Operation Red Reaper. (Decl. Morrison, ¶ 2.) Defendants were also aware of Plaintiff's history involving firearms, including his prior arrests and convictions for unlawfully possessing loaded handguns, his illegal trafficking in

4

Defendants Motion in Limine to Exclude and Prevent Testimony By Witnesses Who Invoked the Fifth Amendment Privilege During Discovery [STATE MIL #1] (1:20-CV-01793-KJM-SKO)

firearms (including stolen firearms), as well as his involvement in numerous other criminal activities associated with violence. (Decl. Morrison, ¶ 15.)

Defendants were also aware that Plaintiff had been involved in an armed home invasion robbery immediately before the incident forming the basis of this lawsuit; in fact, *Defendants were actively monitoring and listening to Plaintiff discuss his involvement in this violent crime.* (Decl. Morrison, ¶ 16.) Thus, they were not only aware of the fact that Plaintiff had been armed with a firearm during the commission of the armed home invasion robbery where someone was shot, but also they listened in real time as Plaintiff discussed his involvement in this activity, discussed the firearm that had been used in the crime and the condition of his accomplice who had been shot, as well as other factors. (Decl. Morrison, ¶ 17.) They additionally listened in real time as Plaintiff instructed his second accomplice, Jose Quintero, to come pick him up, which vehicle to use to get him, and where he was located. (Decl. Morrison, ¶ 18.)

Following the incident, Jose Quintero was interviewed and provided a statement regarding his discussions with Plaintiff preceding the shooting forming the basis of Plaintiff's complaint, as well as the fact that the Plaintiff had been in possession of a handgun prior to the armed home invasion robbery, a handgun that was subsequently recovered pursuant to a search warrant. Quintero also provided information about the conversations and other events preceding the incident that Plaintiff invoked his Fifth Amendment rights to. (Decl. Morrison, ¶ 19.)

Plaintiff similarly refused to provide written discovery responses regarding his actions leading up to the incident. (Decl. Morrison, ¶¶ 6-7.)

**A.    Civil Litigants Are Entitled to Invoke their Fifth Amendment Rights and Refuse to Provide Testimony or Discovery Responses, as Plaintiff and Others Allied with Plaintiff Did Here, But They Are Not Allowed to Use the Fifth Amendment as a Sword and a Shield.**

It is constitutionally permissible for a party, such as Plaintiff here, to have to choose between testifying in a civil matter and asserting their Fifth Amendment privilege. *ESG Capital Partners LP v. Stratos*, 22 F.Supp.3d 1042, 1045 (C.D. Cal. 2014). Accordingly, a party to a civil lawsuit is free to invoke the Fifth Amendment in civil cases and refuse to testify. *Southern Union Co. v. Southwest Gas Corp.*, 180 F.Supp.2d 1021, 1053 (D. Ariz. 2002). However, parties are not

5

Defendants Motion in Limine to Exclude and Prevent Testimony By Witnesses Who Invoked the Fifth Amendment Privilege During Discovery [STATE MIL #1] (1:20-CV-01793-KJM-SKO)

1  allowed to utilize the Fifth Amendment as both a sword and a shield in that litigation by refusing

2  to testify during discovery, and then attempting to provide testimony or responses at the trial.

3  Further, when a party does invoke their Fifth Amendment right and refuses to answer questions

4  then it is recognized as being permissible for the trier of fact to draw adverse inferences from the

5  invocation of the Fifth Amendment in a civil lawsuit. *Baxter v. Palmigiano*, 25 U.S. 308, 318

6  (1976); *S.E.C. v. Jasper*, 678 F.3d 1116, 1125 (9th Cir. 2012); *Doe ex rel. Rudy-Glanzer v.*

7  *Glanzer*, 232 F.3d 1258, 1264 (9th Cir. 2000); *S.E.C. v. Colello*, 139 F.3d 674-677-678 (9th Cir.

8  1998); *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 326 (9th Cir. 1995).

9        The Ninth Circuit has established that trial courts generally will not, and should not,

10  permit a party to invoke the privilege against self-incrimination with respect to deposition

11  questions and then later testify about the same subject matter at trial. *Nationwide Life Insurance*

12  *Co. v. Richards*, 541 F.3d 903, 910; *also see FTC v. Sharp*, 782 F.Supp. 1445, 1452 (D. Nev.

13  1991). As the Ninth Circuit explained in *Richards*, "[t]he Federal Rules of Civil Procedure

14  contemplate…full and equal discovery…so as to prevent surprise, prejudice and perjury during

15  trial…" *Nationwide*, *supra*, 541 F.3d at 903. As the *Richards* Court explained:

16  > [B]ecause the privilege may be initially invoked and later waived at a time when an adverse party can no longer secure the benefits of discovery, the potential for exploitation is apparent." *SEC v. Graystone Nash, Inc.,* 25 F.3d 187, 190 (3d Cir.1994). The rights of the other litigant must be taken into consideration "when one party invokes the Fifth Amendment during discovery, but on the eve of trial changes his mind and decides to waive the privilege. At that stage, the adverse party—having conducted discovery and prepared the case without the benefit of knowing the content of the privileged matter—would be placed at a disadvantage." *Id.* at 191; *see also Gutierrez–Rodriguez v. Cartagena,* 882 F.2d 553, 577 (1st Cir.1989) ("A defendant may not use the fifth amendment to shield herself from the opposition's inquiries during discovery only to impale her accusers with surprise testimony at trial."). "The opportunity to combat the newly available testimony might no longer exist, a new investigation could be required, and orderly trial preparation could be disrupted."

23  *Richards*, *supra*, 541 F.3d at 903.

24      **B.**    **Plaintiff Should be Prohibited from Using the 5th Amendment as a Sword and a Shield in his Civil Case**

26        The 9th Circuit considered the issue of discovery sanctions related to a litigant's

27  invocation of the Fifth Amendment privilege against self-incrimination in a civil proceeding. In

28  *Lyons v. Johnson*, 415 F.2d 540 (1969), ("*Lyons*") the 9th Circuit Court upheld the district court's

6

Defendants Motion in Limine to Exclude and Prevent Testimony By Witnesses Who Invoked
the Fifth Amendment Privilege During Discovery [STATE MIL #1] (1:20-CV-01793-KJM-SKO)

dismissal of multiple lawsuits filed by the same plaintiff who invoked the Fifth Amendment privilege to avoid responding to defendant's discovery. Plaintiff continued to refuse to participate in the discovery process despite the district court's admonition during a hearing on the issue advising plaintiff that "if she wanted to use the shield of self-incrimination against any interrogation whatsoever regarding her claims, she would have to forego the right to prosecute the actions . . . ." *Id*. at 541. The 9th Circuit explained its ruling thusly:

> The naked question therefore simply was whether a plaintiff can refuse to submit to any discovery whatsoever upon his lawsuit, by asserting a Fifth Amendment privilege against any interrogation of him, and then demand that he nevertheless be permitted to continue with the legal pursuit of his claim, no matter what prejudice or possible unequal protection there might be involved to the defendant from such a court acquiescence.
>
> Her obtaining of this shield, however, could not provide a sword to her for achieving assertion of her claims against the defendants without having to conform to the processes necessary to orderly and equal forensic functioning. Clearly, the process of discovery has become increasingly recognized as one of the primary and essential elements in making federal court business flow and in contributing to the accomplishing of trial justice or settlement termination of litigation. The scales of justice would hardly remain equal in these respects, if a party can assert a claim against another and then be able to block all discovery attempts against him by asserting a Fifth Amendment privilege to any interrogation whatsoever upon his claim. If any prejudice is to come from such a situation, it must, as a matter of basic fairness in the purposes and concepts on which the right of litigation rests, be to the party asserting the claim and not to the one who has been subjected to its assertion. It is the former who has made the election to create an imbalance in the pans of the scales."

*Id*. at 541-42.

Similarly, in *U.S. v. $133,420 in U.S. Currency*, 672 F.3d 629, 640-640 (9th Cir. 2012), the Ninth Circuit explained that "[w]e have long held that a district court may strike the testimony of a witness in a criminal proceeding to avoid a witness's improper use of the Fifth Amendment privilege against self-incrimination as a sword as well as a shield." The Ninth Circuit continued by explaining the purpose of such a rule was to "protect the integrity and truth-seeking function of the judicial system from the distortions that could occur if a witness could testify and then use the Fifth Amendment privilege to prevent any adversarial testing of the truth of that testimony", and noting that when a witness refuses to answer questions going to the heart of the testimony on a central issue, the truth-seeking function of the court is impaired. *Id.* The Ninth Circuit further explained that this principle applied to both criminal <u>and</u> civil cases, specifically noting that five other circuits had reached a similar conclusion. *Id.*

7

Defendants Motion in Limine to Exclude and Prevent Testimony By Witnesses Who Invoked the Fifth Amendment Privilege During Discovery [STATE MIL #1] (1:20-CV-01793-KJM-SKO)

District Courts in California have reached the same conclusions. In *Plymale v. Dyer*, 837 F. Supp. 2d 1077 (E.D. Cal. 2011) the Court also considered the use of the 5th Amendment by a Plaintiff in a civil case in which Defendants contended that Plaintiff, Officer Plymale's invocation of the Fifth Amendment privilege precludes him to introduce "evidence of pretext or racial animus" on the part of Defendants. The *Plymale* Court held:

> While be true that an individual should suffer no penalty for the assertion of a constitutional right, neither should third parties sued by that individual who have no apparent interest in the criminal prosecution, be placed at a disadvantage thereby." *Jones v. B. C. Christopher & Co.*, 466 F. Supp. 213, 227 (D. Kan. 1979). Thus, "a civil plaintiff has no absolute right to both his silence and his lawsuit." *Wehling v. Columbia Broadcasting System*, 608 F.2d 1084, 1088 (5th Cir. 1979)(*Lyons,* citation omitted)

A California Central District Court case in *Global Dev. & Envtl. Res., Inc. v. Panella,* No. SACV-0700179-JVS(MLGx), 2008 U.S. Dist. LEXIS 126326, 2008 WL 11343388 (C.D. Cal. April 14, 2008) held:

> Where a party asserts a Fifth Amendment Privilege to all discovery, the Court is within its discretion to bar the party from offering any evidence. *Lyons v. Johnson*, 415 F.2d 540, 542 (9th Cir. 1969); *United States v. Sixty Thousand Dollars in Unites States Currency*, 763 F. Supp. 909, 914 (E.D. Mich. 1991); *In re Equity Land Title Agency, Inc*. 326 B.R. 427, 433 (Bankr. S.D. Ohio 2005). But that is not the case here, and the First Capital Parties do not seek that remedy."
>
> The Court now outlines the proper scope of exclusion. First, the testimony of Pritchard and Cimino on the subjects on which they refused to be interrogated is excluded. A limitation based on the precise questions they refused to answer simply invites an attempt to side step the doors they closed with the assertion of privilege. The First Capital Parties were denied evidence in response to their questions and to evidence which they might have elicited had doors not been barred. *Lyons v. Johnson*, 415 F.2d 540, 542 (9th Cir. 1969) ("She of course had the right to make that choice [to assert the privilege], but she must now accept the fact that the doors of the law are closed to any attempts by her to reassert her alleged claims"). Second, the Global Resources Parties may not offer other forms of evidence on the subjects on which Pritchard and Cimino refused to testify. Depositions are a key part of the discovery process. Without depositions, particularly from the key witnesses, an opponent does not have a fair opportunity to evaluate or rebut evidence in other forms bearing on the foreclosed subjects. This is simply a more limited application of the cases which bar all evidence where there has been a total refusal. Where the refusal has been more limited, so should the scope of exclusion. *Traficant v. Commissioner of Internal Revenue*, 884 F.2d 258, 265 (6th Cir. 1989) ("when the issue is whether a court may impose broad limits on the admissibility of evidence, the cases permit only limits directly related to the scope of the asserted privilege")."
>
> 2008 U.S. Dist. LEXIS 126326, 2008 WL 11343388.

Other circuits have followed a similar rationale to reach the same conclusion that a Plaintiff cannot use the Fifth Amendment during discovery as a shield to prevent a Defendant

8

Defendants Motion in Limine to Exclude and Prevent Testimony By Witnesses Who Invoked the Fifth Amendment Privilege During Discovery [STATE MIL #1] (1:20-CV-01793-KJM-SKO)

from gathering evidence to support its defenses and then waive the Fifth Amendment to use their previously shielded testimony as a sword in trial. *Gutierrez-Rodriguez v. Cartagena*, 882 F.2d 553, 576-578 (1st Cir. 1989), is on point. In *Gutierrez-Rodriguez*, the Court explained:

> Soto appeared at his August 24, 1987 deposition without counsel and refused to answer any questions concerning the shooting incident. Plaintiff filed a motion in limine on October 15, 1987 to prohibit Soto from testifying at trial if he was going to assert the Fifth amendment during discovery. Plaintiff's motion was granted on January 12, 1988. On January 25, 1988, Soto filed a motion for reconsideration of that order. On February 25, 1988, the court heard arguments on Soto's motion and denied it. Four days later, the trial began.
>
> In his motion for reconsideration of the order granting plaintiff's motion in limine, and on appeal, Soto takes the position that he should not have to choose between asserting his Fifth amendment privilege during discovery and testifying at trial.
>
> Plaintiff contends, and the district court apparently agreed, that it would be an abuse of the Fifth amendment to allow Soto to claim the privilege against self-incrimination during discovery and concurrently subject plaintiff to the possibility that at the eleventh hour he might waive the privilege and testify at trial. This, plaintiff asserts, would unduly hamper his preparation for trial.
>
> Trial courts have broad discretion in fashioning remedies during discovery. *See National Hockey League v. Metropolitan Hockey Club*, 427 U.S. 639, 643, 49 L. Ed. 2d 747, 96 S. Ct. 2778 (1976). Discovery sanctions are appropriate "not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." Id. The viewpoint of National Hockey League was echoed in the advisory committee note to the 1983 amendment of Fed.R.Civ.P. 26: "Rule 26(g) is designed to curb discovery abuse by explicitly encouraging the imposition of sanctions." Courts have not been afraid to bar a party from testifying where doing so was necessary to prevent the "thwarting [of] the purposes and policies of the discovery rules." *Meyer v. Second Judicial Dist. Court, etc.*, 95 Nev. 176, 591 P.2d 259 (1979); *see Lyons v. Johnson*, 415 F.2d 540, 541-42 (9th Cir. 1969), cert. denied, 397 U.S. 1027, 90 S. Ct. 1273, 25 L. Ed. 2d 538 (1970).
>
> The district court's decision to bar Soto from testifying at trial due to his previous refusal to testify during discovery is supported by ample precedent.
>
> The Federal Rules contemplate that there be "full and equal mutual discovery in advance of trial" so as to prevent surprise, prejudice and perjury. "It is an effective means of detecting and exposing false, fraudulent, and sham claims and defenses." 4 Moore, Federal Practice para. 26.02[2] at 1034-35. The court would not tolerate nor indulge a practice whereby a defendant by asserting the privilege against self-incrimination during pre-trial examination and then voluntarily waiving the privilege at the main trial surprised or prejudiced the opposing party.
>
> *Duffy v. Currier*, 291 F. Supp. 810, 815 (D.Minn. 1968); accord *Rubenstein v. Kleven*, 150 F. Supp. 47, 48 (D.Mass. 1957), aff'd on other grounds, 261 F.2d 921 (1st Cir. 1958) (defendant's claim of privilege during deposition precluded his testimony as to certain evidence at trial); *Costanza v. Costanza*, 66 N.J. 63, 328 A.2d 230, 232 (1974); *see also Bramble v. Kleindienst*, 357 F. Supp. 1028, 1035 (D.Colo. 1973) (applying same sanction to a plaintiff), aff'd, 498 F.2d 968 (10th Cir. 1974), cert. denied, 419 U.S. 1069, 42 L. Ed. 2d 665, 95 S. Ct. 656 (1974); 8 C. Wright & A. Miller, Federal Practice and Procedure §

9

Defendants Motion in Limine to Exclude and Prevent Testimony By Witnesses Who Invoked the Fifth Amendment Privilege During Discovery [STATE MIL #1] (1:20-CV-01793-KJM-SKO)

2018, at 149 (1970) ("If a party is free to shield himself with the privilege during discovery, while having the full benefit of his testimony at trial, the whole process of discovery could be seriously hampered."). We find these cases persuasive.

The Supreme Court's reasoning in an analogous situation supports the constitutionality of the holdings cited above. In *Williams v. Florida*, 399 U.S. 78, 80, 26 L. Ed. 2d 446, 90 S. Ct. 1893 (1970), the Court upheld a Florida notice-of-alibi rule requiring that a criminal defendant "submit to a limited form of pretrial discovery by the State whenever he intends to rely at trial on the defense of alibi." The Court stated: "The adversary system of trial is hardly an end in itself; it is not yet a poker game in which players enjoy an absolute right always to conceal their cards until played. We find ample room in that system, at least as far as "due process" is concerned, for the instant Florida rule, which is designed to enhance the search for truth in the criminal trial by ensuring both the defendant and the State ample opportunity to investigate certain facts crucial to the determination of guilt or innocence. *Id*. at 82 (footnote omitted). The Court did not find that the Florida rule violated defendant's fifth amendment privilege."

We find the principles enunciated by the *Williams* Court instructive in the case at bar. Soto made his decision not to give deposition testimony on August 24, 1987 and held that position throughout the next six months prior to trial. The district court's decision to bar Soto's testimony did not burden his due process rights, it merely forced him to abide by his decision and protected plaintiff from any unfair surprise at trial. A defendant may not use the Fifth amendment to shield herself from the opposition's inquiries during discovery only to impale her accusers with surprise testimony at trial. *See Bramble v. Kleindienst*, 357 F. Supp. at 1035-36 (citing *Lyons v. Johnson*, 415 F.2d at 541-42).

882 F.2d 553, 576-577; 1989 U.S. App. LEXIS 12119 at pgs.74-75.

**C.    The Trier of Fact Is Entitled to Draw an Adverse Inference from Plaintiff's Refusal to Testify and Provide Discovery Pursuant to the Fifth Amendment.**

It is well established that while a party to a civil lawsuit is entitled to assert their Fifth Amendment rights and refuse to testify, such a decision has adverse ramifications. As the Ninth Circuit has held, "[p]arties are free to invoke the Fifth Amendment in civil cases, but the court is equally free to draw adverse inferences from their failure of proof." *S.E.C. v.* Colello, 139 F.3d at 677; *also see Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1264 (9th Cir. 2000) ["While a defendant in a criminal case may constitutionally assert [his] Fifth Amendment rights with no adverse consequence, a trier of fact in a civil case may draw an adverse inference from invocation of the Fifth Amendment."]; *United States v. Solano–Godines,* 120 F.3d 957, 962 (9th Cir.1997) ["In civil proceedings ... the Fifth Amendment does not forbid fact finders from drawing adverse inferences against a party who refuses to testify."].

Similarly, in *Baxter v. Palmigiano*, 425 U.S. 308 (1976), the Supreme Court held that the drawing of an adverse inference from a plaintiff's silence and refusal to testify in prior

10

administrative proceedings was proper when incriminating evidence had also been presented. The *Baxter* As the *Baxter* Court explained, while mere silence in and of itself was insufficient to support an adverse decision, "such silence in connection with other evince against the [party] could support that result [the adverse inference]." *S.E.C. v. Graystone Nash, Inc.*, 25 F.3d 187, 190 (3d Cir. 1994). The Ninth Circuit has similarly recognized that an adverse inference can be drawn when there is independent evidence regarding the allegation. *Glanzer*, *supra*, 232 F.3d at 1264.

    The evidence at issue relates to the basis for the underlying investigation and surveillance of Plaintiff as a part of Operation Red Reaper; his direct participation in an armed home invasion robbery which resulted in multiple shots being fired and an individual being shot in the abdomen; Plaintiff's possession of a firearm before and during this armed home invasion robbery, as well as Plaintiff's discussion relating to the armed home invasion robbery and the location of the firearm and other evidence; Plaintiff's discussions with Quintero regarding picking him up immediately before the incident forming the basis of this lawsuit, among other issues. All of these issues are directly relevant to the current case, as well as the Defendants' defense, under well-established Fourth Amendment use of force authorities as the Defendants were actually aware of these facts, and Plaintiff's involvement in them, *before* the incident and acted accordingly.

    The relevance of the evidence relating to the events preceding the actual shooting on June 18, 2019, is further demonstrated by virtue of the fact that the Defendants were not only well aware of Plaintiff's involvement in the armed home invasion robbery and shooting, but that they relied upon their knowledge of Plaintiff's involvement in this shooting and the fact a firearm had been discharged and someone had been shot as part of their basis for conducting a felony stop. They were also attempting to take Plaintiff into custody *for his involvement in the armed home invasion robbery and shooting* that he refused to testify about.

    Defendants will introduce independent evidence regarding these facts at trial. Such evidence will consist not only of their own testimony regarding the surveillance of the Plaintiff, but will also consist of statements made by Plaintiff's accomplices, testimony and investigatory reports prepared by law enforcement agencies, the results of search warrants performed following

11

the home invasion robbery and shooting, and other evidence. Additionally, such evidence will consist of Plaintiff's own guilty plea to the armed home invasion robbery, as well as the records of the Kings County Superior Court.

Accordingly, Defendants request that the Court grant their request to allow the jury to draw an adverse inference from Plaintiff's refusal to testify.

### D. The Court Should Additionally Exclude Testimony From Witnesses Who Refused to Testify and Invoked Their Fifth Amendment Rights.

Defendants additionally request that the Court enter similar orders prohibiting other witnesses affiliated with the Plaintiff from testifying at trial regarding matters in which they asserted their Fifth Amendment rights and refused to testify at deposition. This includes David Hernandez, Plaintiff's accomplice during the armed home invasion robbery who was shot in the abdomen during the commission of the crime. During his deposition, Hernandez also refused to testify as to any questions, and instead invoked his Fifth Amendment rights as to all questions – despite the fact Hernandez had already been convicted and sentenced to prison for the underlying crimes.

## CONCLUSION

Defendants accordingly request that this Court grant this motion in limine barring Plaintiff from testifying as to any matters upon which he previously refused to testify and provide discovery responses based upon the Fifth Amendment. Defendants further request that this Court grant their request to allow the jury to draw an adverse inference from Plaintiff's refusal to testify.

Dated: August 7, 2025

Respectfully submitted,

ROB BONTA
Attorney General of California

*/S/ NORMAN D. MORRISON*

NORMAN D. MORRISON
Supervising Deputy Attorney General
*Attorneys for Defendants Neil Compston, John Silveira and Edward Sinclair (BI)*

12

Defendants Motion in Limine to Exclude and Prevent Testimony By Witnesses Who Invoked the Fifth Amendment Privilege During Discovery [STATE MIL #1] (1:20-CV-01793-KJM-SKO)

# CERTIFICATE OF SERVICE

Case Name:  **Quair v. County of Kings, et al.**      No.   **1:20-CV-01793-KJM-SKO**

I hereby certify that on August 7, 2025, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

- **Defendants Motion in Limine to Exclude and Prevent Testimony By Witnesses Who Invoked the Fifth Amendment Privilege During Discovery.**

- **Declaration of Supervising Deputy Attorney General Norman D. Morrison IV In Support of Defendants Motion in Limine to Exclude and Prevent Testimony By Witnesses Who Invoked the Fifth Amendment Privilege During Discovery.**

   **[STATE MIL NO. 1]**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on August 7, 2025, at San Francisco, California.

| G. Guardado | /s/ G. Guardado |
|---|---|
| Declarant | Signature |

FR2021301267