1  ROB BONTA, State Bar No. 202668
   Attorney General of California
2  NORMAN D. MORRISON, State Bar No. 212090
   Supervising Deputy Attorney General
3   2550 Mariposa Mall, Room 5090
    Fresno, CA 93721-2271
4   Telephone: (559) 705-2304
    Fax: (559) 445-5106
5   E-mail: Norman.Morrison@doj.ca.gov
   *Attorneys for Defendants Neil Compston,*
6  *John Silveira and Edward Sinclair*

7                    IN THE UNITED STATES DISTRICT COURT

8                   FOR THE EASTERN DISTRICT OF CALIFORNIA

9                               CIVIL DIVISION

10

11 | FREDDIE QUAIR,                          | Case No. 1:20-CV-01793-KJM-SKO
12 |                           Plaintiff,    |
   |                                         | **DEFENDANTS' REPLY TO PLAINTIFF'S**
13 |        v.                               | **OPPOSITION TO MOTION IN LIMINE**
   |                                         | **TO EXCLUDE AND PREVENT**
14 |                                         | **TESTIMONY BY WITNESSES WHO**
   | COUNTY OF KINGS; TAYLOR LOPES;          | **INVOKED THE FIFTH AMENDMENT**
15 | NEIL COMPSTON; JOHN SILVERIA;           | **PRIVILEGE DURING DISCOVERY**
   | EDWARD SINCLAIR; and DOES 1             |
16 | THROUGH 10, inclusive,                  | [STATE MIL NO. 1]
17 |                           Defendants.   | Trial Date:    November 10, 2025
   |                                         | Action Filed:  December 21, 2020

Plaintiff's Opposition to Defendants's Motion in Limine No. 1 (Pl. Oppo.) is primarily premised upon two arguments. First, Plaintiffs argue that the Defendants are limited to the information known to them at the time of the shooting incident, and they cannot testify regarding information obtained after the incident, and therefore any events that occurred prior to the shooting are not relevant and should be excluded. Plaintiff alternatively argues that the evidence should be excluded on policy grounds, including that it constitutes prior act/character evidence, and is unduly prejudicial.

As explained below, not only do Plaintiff's arguments lack merit, but they are contradicted by established law, the existing testimony and evidence in this case, and the facts of this case. Accordingly, this Court should disregard Plaintiff's arguments and grant Defendant's motion barring Plaintiff from attempting to testify or provide explanation regarding any facts, events, or matters upon which he previously invoked his Fifth Amendment right and refused to testify, and the Court should further grant Defendants' request for the use of an adverse inference at trial.

I. **DEFENDANTS WERE WELL AWARE OF PLAINTIFF'S INVOLVEMENT IN THE UNDERLYING HOME INVASION ROBBERY AND SHOOTING <u>PRIOR</u> TO THIS INCIDENT, AND THEY WERE ALSO AWARE OF PLAINTIFF'S CRIMINAL HISTORY, INCLUDING HIS POSSESSION, TRANSPORT AND SALES OF FIREARMS AND OTHER ACTIONS.**

In his Opposition, Plaintiff argues this Court should deny Defendants' motion on the grounds that in cases involving claims of excessive force under the Fourth Amendment, the issue is whether the Defendants' actions in shooting the Plaintiff were "objectively reasonable in light of the facts and circumstances surrounding them" after Plaintiff fled subsequent to his involvement in an armed home invasion robbery where someone was shot and required hospitalization, Plaintiff refused to follow the instructions of law enforcement during a felony traffic stop, and Plaintiff assumed an isosceles shooting stance aiming towards the officers and then bucking his hands to simulate firing a firearm during the felony traffic stop. *Pl. Oppo.* at 4:6-8 (citing *Graham v. Connor*, 490 U.S. 386, 397 (1989)).

Plaintiff then argues that "facts of which the officers were unaware are irrelevant to the reasonableness analysis…and may not be considered." *Pl. Oppo.* at 4:10-12 (citing *Tabares v.*

1

Defendants Reply to Plaintiff's Opposition to Motion in Limine to Exclude and Prevent Testimony By Witnesses Who Invoked the Fifth Amendment Privilege During Discovery [STATE MIL #1] (1:20-CV-01793-KJM-SKO)

*City of Huntington Beach*, 988 F.3d 1119, 1123, n. 4 (9th Cir. 2021); *Glenn v. Washington County*, 673 F.3d 864, 873, n.8 (9th Cir. 2011). As a result, Plaintiff contends that "Defendants' [sic] should not be permitted to introduce evidence beyond what they knew at the time of the shooting regarding Plaintiff's alleged gang affiliation, criminal conduct the night before the incident, or details of an alleged armed robbery." *Pl. Oppo.* at 4:17-20.  Plaintiff's Opposition curiously, and inexplicably, appears to ignore the facts of this case that he himself has obtained through discovery, his plea agreements in the various criminal cases against him, <u>and</u> the allegations he himself has plead in this case.

    This is not the stereotypical excessive force case brought against law enforcement officers following a shooting or other use of force, where the law enforcement officers involved had little to no knowledge of the offender, the offender's criminal history or acts preceding the incident involved, and other facts involving the offender. Unlike those situations, where an offender and law enforcement officers are brought together for the first time at the time of the use of force incident, here the Plaintiff had been the subject of extensive, months-long court-approved and ordered surveillance by the Defendants, which included wiretaps of the phones used by the Plaintiff and his accomplices and others involved, visual surveillance of the Plaintiff, and electronic surveillance of the Plaintiff and others involved. In addition to the surveillance activities, the Defendants were involved in various enforcement actions taken against others arising from Plaintiff's criminal activities – *including his illegal possession and trafficking in firearms*.

    The Defendants were accordingly well aware, and had personal knowledge, of the Plaintiff's criminal background, gang membership and involvement, his possession of firearms and narcotics, and his trafficking in firearms over the weeks and months preceding the incident as a result of their surveillance activities. They were aware of the armed home invasion robbery *prior* to the underlying incident. They were also well aware of Plaintiff's involvement in the armed home invasion robbery, as they were monitoring Plaintiff's communications with Quintero, one of the accomplices in the armed home invasion robbery, immediately after the incident when Plaintiff fled on foot and was requesting Quintero come and pick him up. In fact,

2

Defendants Reply to Plaintiff's Opposition to Motion in Limine to Exclude and Prevent Testimony By Witnesses
Who Invoked the Fifth Amendment Privilege During Discovery [STATE MIL #1] (1:20-CV-01793-KJM-SKO)

these conversations, which were monitored by the Defendants themselves, were what ultimately resulted in the felony traffic stop and Plaintiff's decision to engage in his actions. The evidence in this case establishes that the Defendants had personal knowledge of the issues prior to the occurrence of the incident on June 18, 2019. As Sergeant Lopes specifically states in his declaration filed in support of his motion for summary judgment:

> 3. In early 2017, the Task Force and I began participating in "Operation Red Reaper", a multi-agency investigation of the Nuestra Familia criminal prison gang and the Norteño criminal street gang. Local, state and federal law enforcement agencies were involved in the investigation. These agencies included the Kings County Major Crimes Task Force, as well as the State of California Department of Justice, Federal Bureau of Investigation, California Department of Corrections and Rehabilitation, Tulare County Sheriff's Office, and the Visalia Police Department.
>
> 4. The Nuestra Familia operates out of the California prison system and uses Norteño gang members as "street soldiers" to make money. They are involved in homicides, extortion, drug sales, firearms sales, etc. The Task Force had learned that a high ranking Nuestra Familia member had reorganized Norteño gang members in Kings County by assigning them certain areas of the county. The Norteño leaders of these areas were to make money for the Nuestra Familia by committing robberies and home invasions.
>
> 5. In March of 2019, Operation Red Reaper began electronic surveillance wherein gang members' cell phones, social media and computers were tapped and monitored by law enforcement officers assigned to the Major Crimes Task Force. Surveillance of the phones and Facebook accounts were live, i.e., if there was any activity on either, the communication would immediately go to investigators in the "wire room." I was privy to the surveillance of communications between gang members including, live phone conversations, audio recordings of conversations, video recordings, and Facebook postings among other sources.
>
> 6. As of June 18, 2019, I was aware of a felony "Ramey Warrant" for Plaintiff Fredie Quair's ("Plaintiff') arrest. The warrant included charges of possession of a controlled substance for sale; transpo1iation of a controlled substance for sale; smuggling drugs into a jail facility; possession of a loaded firearm by a gang member; and participation in a criminal street gang.
>
> 7. During the course of the investigation, Plaintiff was identified as a Norteño gang member who deals drugs in Kings County for the benefit of fellow gang members and the Nuestra Familia. I personally heard numerous cell phone communications intercepted from a wire tap on Plaintiff's phone. The communications included conversations about the sales of drugs, paying "taxes" to the Nuestra Familia, smuggling drugs into the California prison system for the Nuestra Familia, selling guns to fellow gang members, and attending gang meetings.

///

3

Defendants Reply to Plaintiff's Opposition to Motion in Limine to Exclude and Prevent Testimony By Witnesses Who Invoked the Fifth Amendment Privilege During Discovery [STATE MIL #1] (1:20-CV-01793-KJM-SKO)

8. Plaintiff was heard on multiple occasions conspiring with Jose Quintero to purchase cocaine and then sell it for a profit. Some of these transactions were observed by undercover surveillance agents who then seized the drugs. Plaintiff was also involved in a conspiracy to possess and sell a firearm to an individual.

9. Though not an exhaustive list, I was aware of the following communications between Plaintiff and other gang members: (1) On April 14, 2019, officers intercepted communications between Quair and Michael Gonzalez, a Nuestra Familia gang member, wherein they conspired to smuggle two ounces of cocaine into Salinas State Prison; (2) On April 17, 2019, Plaintiff and Jesse Juarez, another Nuestra Familia gang member discussed Plaintiff collecting "tax" money that was owed from Quair selling drugs; (3) A short time later, officers saw Plaintiff meeting with Juarez at a gas station; (4) On the same day, Plaintiff communicated with Selena Hamilton wherein Hamilton solicited a gram of cocaine from Plaintiff; (5) On April 26, 2019, officers intercepted communications between Plaintiff and Richard Rangel. The Plaintiff and Rangel discussed purchasing four grams of cocaine for $200.00, and officers later observed a hand to hand buy between the two of them; (6) On the same day, Plaintiff agreed to sell Juarez a quarter ounce of marijuana; (7) On April 29, 2019, Plaintiff and Quintero discussed a purchase of cocaine, and how they could make a profit reselling it; (8) Immediately following these communications, Plaintiff communicated with Jonathan Garcia about placing another order for cocaine; (9) On May 17, 2019, Plaintiff and Erick Sanchez communicated about Sanchez buying a gun from Quair. Later communications were intercepted wherein Quintero agreed to pick up Quair and drive him to the gun deal. Officers observed as Plaintiff and Sanchez appeared to conduct a transaction for the gun. The car Sanchez was riding in was subsequently stopped and a 9mm Highpoint handgun and 9mm Glock handgun were located in the car. I also saw a Facebook posting that depicted Plaintiff standing next to a bed with an unidentified woman and holding a Glock handgun with an extended magazine.

10. On June 18, 2019, I started my day at approximately 1:00 a.m., to prepare for a briefing for the Operation Red Reaper "takedowns" wherein multiple arrest and search warrants were to be served on Norteño and Nuestra Familia gang members. In addition to the Task Force, there were agencies from throughout California participating, and FBI tactical teams from other states. More than 300 law enforcement officers from these agencies convened at 4:00 a.m., for a briefing on the operation. The felony warrant for Plaintiff described above was one of the warrants that was to be served.

11. At approximately 4:30 a.m., I received information from the Hanford Police Department that they were investigating the shooting of a subject by the name of David Hernandez. I was familiar with Hernandez and knew he was a N01teno gang member.

12. Shortly thereafter, I received a call from the Corcoran Police Department and was told that a home invasion robbery had just taken place in the City of Corcoran. I was informed that two Hispanic males entered into the victim's bedroom window and attempted to rob the victim. The suspects had guns and at least one round was fired. There was blood at the scene but none of the victims had been shot. I was told they believed one of the suspects was shot which was confirmed when Hernandez showed up at the hospital.

///

13. At approximately the same time, I learned from law enforcement officers monitoring cell phone wiretaps in the "wire room" that Plaintiff and Quintero had been involved in the Corcoran home invasion. I was told by the wire room that Plaintiff and Quintero were talking about Hernandez being shot and dropped off at the hospital by Quintero. Further, Plaintiff and Quintero had become separated in the aftermath of the home invasion and Quintero drove away while Plaintiff fled on foot. Quintero also told Plaintiff he switched cars in Hanford because the one they were using had blood in it. Plaintiff told Quintero he would be walking north on Highway 4 3 from Corcoran towards Hanford, and to pick him up.

(September 18, 2022, Declaration of Taylor Lopes, ¶¶ 3- 13, Filed September 9, 2022, ECF 36-2.)

Similarly, during their depositions taken in connection with this case the Defendants testified as to their personal knowledge of Plaintiff's prior activities, gang membership, activities on behalf of the gang, involvement in the underlying armed home invasion where David Hernandez was shot, and other activities.

Accordingly, this is not the situation contemplated or prohibited by the *Graham* or *Glenn* Courts, where the concern surrounded officers testifying as to *after-acquired* information. Here, the Defendants will testify as to information known to them.

This fact is significant as Defendants anticipate that at trial, Plaintiff will attempt to testify regarding his involvement in these prior incidents and actions, and will attempt to minimize or explain away his actions and involvement. As a result, Defendants attempted to conduct discovery into these incidents and Plaintiff's involvement in them. Plaintiff, however, chose to refuse to testify or provide any information regarding them by invoking his Fifth Amendment right and refusing to testify. Plaintiff should be held to his tactical decisions, and should not be allowed the opportunity to provide new testimony or evidence at trial that he had previously refused to provide.

II. **PLAINTIFF'S PRIOR ACTIONS ARE NOT SUBJECT TO EXCLUSION UNDER FEDERAL RULES OF EVIDENCE RULE 403**

In his Opposition, Plaintiff additionally contends that the evidence relating to his gang membership and criminal activity "beyond that what was known to the officers" would be prejudicial is therefore subject to exclusion under Federal Rules of Evidence Rule 403. Once

5

again, Plaintiff's arguments lack merit.

      A. <u>The Evidence Relating To Plaintiff's Prior Criminal Activities Is Admissible As Impeachment Evidence.</u>

Plaintiff's contentions that evidence of his prior criminal activities is subject to exclusion, and therefore the Court should deny Defendants' motion, completely ignores the admissibility of evidence of Plaintiff's prior convictions for purposes of impeachment under Federal Rules of Evidence Rule 609. Pursuant to Rule 609(a)(1), a party is allowed to attack a witness's character for truthfulness by introducing evidence of a criminal conviction for a crime that was punishable by death <u>or</u> by imprisonment for more than one year. In such a situation the evidence must be admitted, subject to Rule 403, in a civil case where the witness is not a defendant.

In the Ninth Circuit, any felony, whether or not it involves moral turpitude, may be used to impeach at trial. *U.S. v. White*, 463 F.2d 18, 20 (9th Cir. 1972); *Burg v. United States*, 406 F.2d 235, 235-236 (9th Cir. 1969). In *Green v. Bock Laundry Machine Company*, 490 U.S. 504 (1989), the United States Supreme Court held that Rule 609(a)(1) "…requires a judge to permit impeachment of a civil witness with evidence of prior felony convictions regardless of ensuant unfair prejudicated to the witness or the party offering the testimony." *Green*, 490 U.S. at 527. This rule regarding admissibility includes not only convictions, but also pleas of guilty and nolo contendere. *Brewer v. City of Napa*, 210 F.3d 1093, 1095-1096 (9th Cir. 2000). In cases brought under 42 U.S.C. § 1983, such as the instant one, federal courts have held that a plaintiff's prior convictions are relevant for impeachment, there is less danger of unfair prejudice, and no "nexus [is required] between the criminal charges, convictions, or misconduct and the issues pending in the case." *Knight through Kerr v. Miami-Dade County*, 856 F.3d 795, 816-817 (11th Cir. 2017).

      B. <u>The Evidence Is Relevant In the Facts and Circumstances of This Case, and Is Not Unduly Prejudicial</u>

Plaintiff's intentional membership in, and activities on behalf of, the Norteño's and Nuestra Familia are an integral, and inextricable, part of this case. As Plaintiff has no choice but to acknowledge, he was one of the specifically identified targets of the multi-month surveillance into the Nuestra Familia and Norteño's operations in the Central Valley region of Hanford.

6

Defendants Reply to Plaintiff's Opposition to Motion in Limine to Exclude and Prevent Testimony By Witnesses Who Invoked the Fifth Amendment Privilege During Discovery [STATE MIL #1] (1:20-CV-01793-KJM-SKO)

Plaintiff had been identified as a gang member, acting on behalf of the gang, months prior to the incident, and his involvement in the gang and actions on its behalf were what laid the foundation to the surveillance actions that ultimately led to the incident on June 18, 2019. Each of the Defendants was well aware not only of Plaintiff's involvement in, and actions on behalf of, the Norteño's, but during the incident itself Plaintiff made statements recognized by the Defendants as used by gang members, including the term "One Life, One Loc."

In his Opposition, Plaintiff relies on authorities that provide that a Plaintiff's criminal history that is *not known* to the officers *at the time of the incident* was inadmissible at trial. *Pl. Oppo.*, 5:19-6:5. In fact, Plaintiff's own arguments – and the authorities he relies upon – support the admissibility of the evidence of these prior incidents.

First, as previously discussed, Plaintiff's prior criminal activities, actions, gang involvement, and other information (including that relating to the armed home invasion robbery for which he was being stopped and arrested during the incident) was known to the Defendants prior to the incident due to their detailed, lengthy, ongoing electronic and visual surveillance of the Plaintiff which included wiretaps on his phones as well as others (including Quintero). Accordingly, the evidence and information at issue is hardly "unknown" to the Defendants, as is the situation in cases where such evidence is excluded.

Further, in *Tucker v. County of Riverside*, No. EDCV 16-2275 JGB, 2018 WL 6074550 (C.D. Cal. October 4, 2018), a case relied upon and cited by Plaintiff in his Opposition, the Court discussed that "evidence corroborating one version of events [is] relevant where an officer's perception of a threat is in dispute" as it was relevant in corroborating the officer's accounts of the incident. *Id.* at *3 (citing *Boyd v. City and County of San Francisco*, 576 F.3d 938, 944 (9th Cir. 2009). Accordingly, evidence of prior behavior and acts is admissible for purposes "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Tucker*, 2018 WL 6074550 at *2. The *Tucker* Court additionally discussed other situations where prior bad acts evidence is admissible (even when not known to the officers at the time of the incident), such as to demonstrate an immediate motive to flee police. Here, such evidence is admissible as evidence of the Plaintiff's intent, plan, or motive at the time of the

7

Defendants Reply to Plaintiff's Opposition to Motion in Limine to Exclude and Prevent Testimony By Witnesses Who Invoked the Fifth Amendment Privilege During Discovery [STATE MIL #1] (1:20-CV-01793-KJM-SKO)

incident, amongst other reasons.

Further, Plaintiff's prior actions, and his gang involvement, are fundamental and inextricably intertwined with the facts of this case. It is impossible for the Defendants to testify as to the basis of their knowledge of the Plaintiff's involvement in the prior armed home invasion robbery and shooting of his accomplice (to which Plaintiff subsequently plead guilty), their knowledge of his location at the time of the incident, and the reasons why he was being surveilled and arrested without testifying as to Plaintiff's gang membership, criminal acts, and prior activities. Moreover, any such omission would create more questions and confusion amongst the jury than it would prevent.

### C. The Evidence Will Not Confuse The Issues or Waste Time

Plaintiff's next argument is that admission of this evidence allegedly poses a substantial risk of leading to the litigation of collateral issues, and thereby creating side issues which might distract the jury from the main issue. *Pl. Oppo.*, 6:7-9. Accordingly, Plaintiff argues:

> …the jury's focus must remain on the officer's actions during the encounter at issue. Allowing evidence about whether Plaintiff committed an armed robbery or had gang ties would confuse the jury into focusing on Plaintiff's conduct on the night before, instead of the central question – whether the officers' use of force was reasonable given what they knew."

Once again, Plaintiff's arguments lack merit and completely ignores the clear and basic facts of this case. Defendants' motion in limine is not focused on evidence of unrelated events which may have occurred weeks, or even months, before the incident and which were not known to them at the time of the incident. Defendants are not seeking to introduce evidence relating to some wholly unrelated event or incident. Nor is it a situation where Defendants are seeking to introduce evidence that they did not have knowledge of at the time of the incident forming the basis of Plaintiff's claims.

The felony stop which gave rise to this incident followed Plaintiff's involvement in the armed home invasion robbery where an individual was shot and injured during the commission of the violent felony. <u>This information was not only known to the Defendants before the incident, but was one of the reasons behind the felony stop and attempt to arrest the Plaintiff on June 18,</u>

8

2019. Stated succinctly, the felony stop arose directly out of the armed home invasion robbery, and the armed home invasion robbery and shooting was one of the reasons why the Defendants stopped Plaintiff on June 18, 2019. It is impossible to segregate or ignore this fact. Had Plaintiff not been involved in the armed home invasion robbery, fled, and then contacted his accomplice to pick him up from where he had fled to, then the entire incident would not have occurred.

Further, Plaintiff's involvement in the armed home invasion robbery was actually known to the Defendants, as was the fact that a person had been shot during the commission of the felony, as they listened to Plaintiff discussing the crime with his accomplice during the phone call that morning. This information and knowledge of Plaintiff's involvement, as well as their knowledge of Plaintiff's involvement in other criminal activities (including the trafficking of firearms) and his gang involvement, played a factor in their decision to take him into custody, the methods and tactics used, as well as their concerns for their own safety and the safety of others.

Thus, this evidence relates directly to the Defendants' actions during the incident and why it occurred – the very issues Plaintiff stresses are what the jury should be focused on.

### III. THIS COURT SHOULD GRANT DEFENDANTS' MOTION TO PREVENT PLAINTIFF FROM SEEKING TO PROVIDE TESTIMONY AT TRIAL REGARDING MATTERS TO WHICH HE PREVIOUSLY REFUSED TO TESTIFY.

As discussed in Defendants' motion, the Ninth Circuit has established that trial courts should not permit a party to invoke their Fifth Amendment right and refuse to testify at discovery, only to then testify regarding the same matters at trial. *Nationwide Life Insurance Co. v. Richards*, 541 F.3d 903, 910; *also see FTC v. Sharp*, 782 F.Supp. 1445, 1452 (D. Nev. 1991). As another circuit has explained, "a defendant may not use the fifth amendment to shield herself from the opposition's inquiries during discovery only to impale her accusers with surprise testimony at trial." *Gutierrez–Rodriguez v. Cartagena,* 882 F.2d 553, 577 (1st Cir.1989). Nearly 60 years ago, the Ninth Circuit recognized that while a party had the right to assert their Fifth Amendment right and refuse to testify in discovery, at trial that party "must now accept the fact that the doors of the law are closed to any attempts" to testify regarding the matters upon which privilege was asserted. *Lyons v. Johnson*, 415 F.2d 540, 542 (9th Cir. 1969).

Here, Defendants ask that the Court grant their motion, hold Plaintiff to this same standard

9

and prevent him from attempting to testify at trial regarding matters upon which he previously refused to testify at deposition and/or provide written discovery responses to. Such a ruling is in accord with the principles and standards established and recognized in the Ninth Circuit, and additionally serves to protect Defendants' rights to a fair trial. *U.S. v. $133,420 in U.S. Currency*, 672 F.3d 629, 640-640 (9th Cir. 2012); *Nationwide*, 541 F.3d at 910; *SEC v. Graystone Nash, Inc.*, 25 F.3d 187, 190 (3d Cir.1994). Further, the Court should permit Defendants to request the jury draw an adverse inference from Plaintiff's invocation of his Fifth Amendment right and refusal to testify. *Baxter v. Palmigiano*, 25 U.S. 308, 318 (1976); *S.E.C. v. Jasper*, 678 F.3d 1116, 1125 (9th Cir. 2012); *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1264 (9th Cir. 2000); *S.E.C. v. Colello*, 139 F.3d 674-677-678 (9th Cir. 1998); *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 326 (9th Cir. 1995). While the Plaintiff was free to invoke his Fifth Amendment rights and refuse to testify, the Ninth Circuit has recognized and held that in such an event "the court is equally free to draw adverse inferences from their failure of proof." *S.E.C. v.* Colello, 139 F.3d at 677. Thus, where there is evidence against a party that would support the adverse inference and that party has chosen to invoke their Fifth Amendment rights and refuse to testify, an adverse inference is correctly and appropriately drawn against that party and can be utilized by the finder of fact. *S.E.C. v. Graystone Nash, Inc.*, 25 F.3d 187, 190 (3d Cir. 1994); Glanzer, 232 F.3d at 1264.

Accordingly, Defendants respectfully request that this Court grant their Motion in Limine in its entirety.

Dated:  August 27, 2025                                      Respectfully submitted,

ROB BONTA
Attorney General of California

NORMAN D. MORRISON
Supervising Deputy Attorney General
*Attorneys for Defendants Neil Compston, John Silveira and Edward Sinclair*

FR2021301267/95652845.docx

10

Defendants Reply to Plaintiff's Opposition to Motion in Limine to Exclude and Prevent Testimony By Witnesses Who Invoked the Fifth Amendment Privilege During Discovery [STATE MIL #1] (1:20-CV-01793-KJM-SKO)

# CERTIFICATE OF SERVICE

Case Name:   **Quair v. County of Kings, et al.**   No.   **1:20-CV-01793-KJM-SKO**

I hereby certify that on August 27, 2025, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO MOTION IN LIMINE TO EXCLUDE AND PREVENT TESTIMONY BY WITNESSES WHO INVOKED THE FIFTH AMENDMENT PRIVILEGED DURING DISCOVERY [STATE MIL NO. 1]**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on August 27, 2025, at Fresno, California.

|  C. Vue | /s/ C. Vue |
| :---: | :---: |
| Declarant | Signature |

FR2021301267
95652846.docx