UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Fredie Quair,<br><br>         Plaintiff,<br><br>    v.<br><br>County of Kings, et al.,<br><br>         Defendants. | No. 1:20-cv-01793-KJM-SKO<br><br>ORDER |

Defendants Neil Compston, John Silveira and Edward Sinclair (State defendants) move *in limine* to exclude Quair and any other witness from testifying at trial about any topic for which they had asserted their Fifth Amendment privilege against self-incrimination during discovery. State defendants also move to allow their arguing to the jury adverse inferences based upon these same invocations. For the reasons that follow, the court **grants** in part **and denies** in part State defendants' motion.

I.   BACKGROUND

Quair alleges State defendants, along with County of Kings Sheriff's Deputy Taylor Lopes, used excessive force in violation of his Fourth Amendment rights when they shot him repeatedly in the course of an arrest in 2019. *See* Compl. ¶¶ 29–40, ECF No. 1. Quair also alleges the County of Kings ("the County") violated his constitutional rights under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), for failing to

1

1   properly train its police officers on the use of lethal force and for having an unofficial policy of
2   sanctioning police shootings.  *See id.* ¶¶ 48–68.  In the months leading up to the shooting
3   underlying Quair's claims, State defendants were investigating Quair as part of a state and local
4   law enforcement task force project known as "Operation Red Reaper"; they focused on Quair for
5   his alleged drug dealing, illegal arms trafficking, and being a member of an illegal street gang.
6   *See* Order (June 5, 2025) at 7–8, ECF No. 66.[1]  Only hours before the shooting during his arrest,
7   Quair was implicated in a home invasion during which his alleged accomplice David Hernandez
8   was shot.  *See id.* at 8–9.  Quair later was charged in connection with the home invasion, and
9   State defendants assert Quair eventually reached a plea agreement in Kings County Superior
10  Court and pled guilty to multiple felonies based on his participation in the home invasion.  *See*
11  Morrison Decl. ¶ 14, ECF No. 84-1.  In June 2025, the court denied defendants' motion for
12  summary judgment on Quair's excessive force claim and on his *Monell* claims.  *See* Order (June
13  5, 2025).  The court held the pretrial conference on July 7, 2025, *see* ECF No. 72, and the court
14  set the trial date for November 10, 2025, *see* Min. Order (July 10, 2025), ECF No. 73.

15          In the parties' joint pretrial statement, State defendants requested they be allowed to file a
16  motion *in limine* well in advance of trial on the issue of whether Quair could testify at trial on
17  issues for which he had previously asserted his Fifth Amendment privilege against self-
18  incrimination.  *See* Joint Status Rep. at 1–3, ECF No. 70.  In its final pretrial order, the court
19  granted State defendants' request and ordered briefing on the matter.  *See* Order (July 24, 2025) at
20  5, ECF No. 83.  State defendants have filed their motion, including the additional request that the
21  court allow them to raise and invoke—presumably in closing argument to the jury—adverse
22  inferences based upon Quair's invocation of the privilege against self-incrimination during
23  discovery.  *See* Mot., ECF No. 84.  In support of their motion, State defendants have attached a
24  declaration from their counsel, Edward Morrison, who has attached a verified copy of Quair's
25  responses to requests for admission propounded by defendants Lopes and the County, Quair's
26  responses to requests for admission propounded by defendants Neil Compston as well as portions

---

[1] All page citations are to the top right by the CM/ECF system.
.

of Quair's deposition transcript. *See* Morrison Decl. ¶¶ 7, 10, Exs. A–C. Morrison also represents that David Hernandez refused to answer any questions in his deposition, asserting instead his privilege against self-incrimination. *See id.* ¶ 20. Both Quair and Hernandez are identified as possible witnesses in the Final Pretrial Order. *See* Order (July 24, 2025) at 11–12.

In his opposition, Quair's attorney represents Quair does not plan to testify regarding any matter for which he previously invoked his privilege against self-incrimination. *See generally* Opp'n, ECF No. 86. Quair does oppose granting State defendants the ability to argue to the jury that adverse inferences can be drawn from his invocations, for a variety of reasons, including that any such inferences would be based on irrelevant and unduly prejudicial facts. *Id.* The matter is now fully briefed. *See* Mot.; Opp'n; Reply, ECF No. 87. The court has determined no oral argument is necessary to resolve the motion, and so submits it. *See* E.D. Cal. L.R. 230(g).

## II.     LEGAL STANDARD

Quair has the fundamental privilege not to "be compelled in any criminal case to be a witness against himself. . . ." U.S. Const. amend. V. The privilege extends to any proceeding. *See Kastigar v. United States*, 406 U.S. 441, 444 (1972). In a civil case like this one, the Fifth Amendment privilege extends only to "those circumstances in which the person invoking the privilege reasonably believes that his disclosures could be used in a criminal prosecution, or could lead to other evidence that could be used in that manner." *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1263 (9th Cir. 2000). The privilege is properly invoked on a question-by-question basis and the assertion thus "attaches only to the question being asked and the information sought by that particular question." *Id.* at 1265 (citing *United States v. Rendahl*, 746 F.2d 553, 555 (9th Cir. 1984)).

The Federal Rules of Civil Procedure "contemplate . . . full and equal discovery . . . so as to prevent surprise, prejudice and perjury during trial." *Nationwide Life Ins. Co. v. Richards*, 541 F.3d 903, 910 (9th Cir. 2008) (quoting *FTC v. Sharp*, 782 F. Supp. 1445, 1452 (D. Nev. 1991)). "[B]ecause the privilege may be initially invoked and later waived at a time when an adverse party can no longer secure the benefits of discovery, the potential for exploitation is apparent." *Id.* (quoting *SEC v. Graystone Nash, Inc.*, 25 F.3d 187, 190 (3d Cir. 1994)). Due to this potential

3

1  for exploitation, "trial courts generally will not permit a party to invoke the privilege against self-
2  incrimination with respect to deposition questions and then later testify about the same subject
3  matter at trial." *Id.* (citing *FTC*, 782 F. Supp. at 1452).

4        Allowing State defendants to argue an adverse inference to a jury based upon Quair's
5  invocation of his Fifth Amendment privilege against self-incrimination is another way a court can
6  assure that Quair's "assertion of his constitutional right [does] not obliterate [State defendants']
7  right to a fair proceeding." *Doe ex rel. Rudy-Glanzer*, 232 F.3d at 1264. "[N]not allowing the
8  negative inference to be drawn 'poses substantial problems for an adverse party who is deprived
9  of a source of information that might conceivably be determinative in a search for the truth." *Id.*
10 (quoting *Serafino v. Hasbro, Inc.*, 82 F.3d 515, 518 (1st Cir. 1996)).  Nevertheless, State
11 defendants must meet several requirements before being allowed to argue an adverse inference
12 "[b]ecause the privilege [against self-incrimination] is constitutionally based . . . ." *Id.* (quoting
13 *Graystone Nash, Inc.,* 25 F.3d at 192).  State defendants must be able to show independent
14 evidence exists of "the fact being questioned." *Id.* (citing *LaSalle Bank Lake View v. Seguban*, 54
15 F.3d 387, 391 (7th Cir. 1995)).  If such independent evidence exists, the court must then balance
16 the need to protect Quair's constitutional privilege with the need to prevent "unfair and
17 unnecessary prejudice" to State defendants based upon Quair's invocation of that privilege. *Id.* at
18 1265 (quoting *Graystone Nash, Inc.*, 25 F.3d at 192).  A court will not allow the jury to draw an
19 adverse inference based upon a plaintiff's invocation of his privilege against self-incrimination
20 under the Fifth Amendment unless "there is a substantial need for the information and there is not
21 another less burdensome way of obtaining that information." *Id.* (citing *Serafino*, 82 F.3d at 518–
22 19).

### III.    ANALYSIS

#### A.    Testimony

As to the first issue, whether or not Quair may testify regarding issues on which he previously invoked his privilege against self-incrimination, the parties are mostly in agreement. As Quair states in his opposition, he "does not intend to testify at trial [regarding any of the matters in which he had invoked his Fifth Amendment privilege during discovery], and his

4

attorneys do not intend to ask questions on those topics" so as to open the door to cross-examination probing them.  Opp'n at 3.  The court observes that if Quair, contrary to his counsel's representation, were to testify on such matters after Quair had effectively denied State defendants relevant discovery owing to their invocation of their Fifth Amendment privilege against self-incrimination, State defendants would be prejudiced.  *See Nationwide Life Ins. Co.*, 541 F. 3d at 910.  To clarify the ground rules for trial, while crediting Quair's position at this point, the court grants State defendants' motion in limine to the extent they seek to bar Quair from testifying at trial on matters regarding which he invoked his Fifth Amendment privilege against self-incrimination during discovery.  The court does not address the potential for any other witness's testimony to raise the same issues, given that Quair does not have standing to represent any other witness.  The court will address the issue with respect to other witnesses if and when it arises during trial.

### B.     Adverse Inferences

Regarding the second issue, which goes beyond the scope of the early motion in limine the court allowed, the court declines at this point to grant State defendants the right to argue particular adverse inferences based on Quair's invocation of his privilege against self-incrimination.  State defendants have provided more than forty pages of discovery material showing Quair invoked his privilege against self-incrimination in response to questions on various topics.  *See* Morrison Decl. at 8–53.  But State defendants have not asked to argue an adverse inference to the jury based on specific invocations by Quair of the privilege.  As noted above, courts evaluate the privilege against self-incrimination on a question-by-question basis—both when they allow a party to invoke the privilege and when they allow an opposing party to argue an adverse inference to a jury against the party who invoked the privilege.  In *Doe ex rel. Rudy-Glanzer v. Glanzer*, for example, the party seeking to argue an adverse inference to a factfinder requested four specific adverse inferences based on a witness's invocation of the privilege against self-incrimination in response to one question during a deposition.  232 F.3d at 1265.  The court disallowed the party's raising the inferences before the factfinder because the inferences were not tethered "to the question being asked and the information sought by that

5

particular question." *Id.* Here, State defendants refer to Quair's prior convictions, his possible intent to flee from the police, and his prior bad acts as their reasons for requesting the ability to argue an adverse inference to the jury. *See* Reply at 6–9. But they have not linked their requests to specific adverse inferences they would say can be drawn based upon a particular question Quair was asked during discovery and in response to which Quair invoked the Fifth Amendment privilege. On this record, it is not possible for the court to determine whether any of the inferences sought by State defendants could be fairly argued to the jury.

State defendants also have not overcome other hurdles to the court's deciding this aspect of their motion in their favor. The first is relevance. *See Doe ex. rel. Rudy-Glanzer* 232 F.3d at 1266 ("Like all evidence presented to the jury, the inquiry for the admissibility of the negative inference . . . begins with the relevance threshold."). With respect to many of Quair's invocations of the Fifth Amendment, it is not clear they are in response to questions seeking information relevant to the litigation of his claims at trial. For example, some of his invocations pertain to Quair's nicknames and whether or not he was under the influence of drugs on the day of the alleged incident. *See, e.g.,* Morrison Decl. at 8, 49. Generally, State defendants have not at this stage made a persuasive argument regarding the relevancy of the information they could have obtained without Quair's invocations. At least some of the adverse inferences State defendants would like to argue to the jury relate to Quair's involvement in the home invasion; but any such inferences would only be relevant if tied to the question whether it was reasonable for defendants to believe Quair was dangerous based only on the information they had at the time of the alleged incident, which did not include information on who shot Hernandez, for instance.. *See* Opp'n at 4–5. Additionally, State defendants may have more straightforward and potentially less problematic means at their disposal to show Quair was a participant in the home invasion. *See Doe ex rel. Rudy-Glanzer*, 232 F.3d at 1264 (court will not draw adverse inference based upon plaintiff's invocation of his privilege against self-incrimination under the Fifth Amendment unless "there is a substantial need for the information and there is not another less burdensome way of obtaining that information."). For example, State defendants may well be able to obtain direct testimony from the officers on the scene at the time of the shooting prior to Quair's arrest

about what they knew before they stopped Quair and fired any shots. *See* Order (June 5, 2025) at 6–7. Generally, the court will address objections based on relevance and prejudice grounds during trial.

Finally, State defendants have not provided independent factual support sufficient for the court to grant their request. *See Doe ex rel. Rudy-Glanzer*, 232 F.3d at 1264 (party must have independent evidence of "the fact being questioned" before they can obtain an adverse inference). State defendants claim the court should grant the motion because they will "introduce independent evidence regarding [the home invasion] at trial." Mot. at 13. But that argument invites the court to speculate, and commit error. The court declines the invitation, and instead will be prepared to monitor defendants' efforts during trial to create a record to support the drawing of negative inferences, and rule on objections as they are made.

## IV.    CONCLUSION

For the reasons stated above, the court **grants** in part and **denies** in part State defendants' motion. The court precludes Quair from testifying about any topic for which he invoked his Fifth Amendment privilege against self-incrimination during discovery. The court denies State defendants' request to argue to the jury adverse inferences based on Quair's invocation of his Fifth Amendment privilege against self-incrimination, without prejudice.

This order resolves ECF No. 84.

IT IS SO ORDERED.

DATED: September 11, 2025.

SENIOR UNITED STATES DISTRICT JUDGE