ROB BONTA, State Bar No. 202668
Attorney General of California
NORMAN D. MORRISON, State Bar No. 212090
Supervising Deputy Attorney General
 2550 Mariposa Mall, Room 5090
 Fresno, CA 93721-2271
 Telephone: (559) 705-2304
 Fax: (559) 445-5106
 E-mail: Norman.Morrison@doj.ca.gov
*Attorneys for Defendants Neil Compston,
John Silveira and Edward Sinclair*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CIVIL DIVISION

| | |
|---|---|
| **FREDDIE QUAIR,**<br><br>             Plaintiff,<br><br>     v.<br><br>**COUNTY OF KINGS; TAYLOR LOPES; NEIL COMPSTON; JOHN SILVERIA; EDWARD SINCLAIR; and DOES 1 THROUGH 10, inclusive,**<br><br>             Defendants. | Case No.: 1:20-CV-01793-KJM-SKO<br><br>**DEFENDANTS' EX PARTE APPLICATION FOR CONTINUANCE OF TRIAL DUE TO PARTY AND WITNESS UNAVAILABILITY AND ISSUES RELATING TO THE SHUTDOWN OF THE FEDERAL GOVERNMENT**<br><br>Trial Date:    November 10, 2025<br>Action Filed: December 21, 2020 |

# TABLE OF CONTENTS

**Page**

Introduction ........................................................................................................................... 2

Argument ............................................................................................................................. 4

    I.    There is Good Cause To Continue The Trial Date .................................................. 4

        A.    Governing legal standard for motions to continue trial. ............................ 4

        B.    The State Defendants will be greatly prejudiced if the trial is not continued. ..................................................................................................... 5

        C.    The *Flynt* Factors Support a Continuance of the Trial Date In This Situation. .................................................................................................... 8

        D.    Any prejudice to the nonmoving parties will be minor ............................ 11

        E.    Granting the Continuance Would Allow the Parties Time to Explore The Possibility of Settlement As Plaintiff Recently Provided Settlement Demands to the Defendants. .................................................. 12

Conclusion ......................................................................................................................... 13

i

Defendants' Ex Parte Application for Continuance of Trial Date Due to Unavailability of
Party and Issues Relating to the Current Federal Government Shutdown (1:20-CV-01793-KJM-SKO)

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Campbell Indus. v. M/V Gemini*
 619 F.2d 24 (9th Cir. 1980) ............................................................................................. 5, 11

*Galdamez v. Potter*
 415 F.3d 1015 (9th Cir. 2005) ................................................................................................ 5

*Johnson v. Mammoth Recreations, Inc.*
 975 F.2d 604 (9th Cir. 1992) .................................................................................................. 4

*Rios-Berrios v. I.N.S.*
 776 F.2d 859 (9th Cir. 1985) .................................................................................................. 9

*Ronduen v. GEO Group, Inc.*
 No. EDCV 23-0481 JGB, 2024 WL 4800670 (C.D. Cal. 2024) .................................. 4, 5, 11

*United States v. 2.61 Acres of Land*
 791 F.2d 666 (9th Cir. 1985) ............................................................................................. 6, 9

*United States v. First Nat. Bank of Circle*
 652 F.2d 882 (9th Cir. 1981) .................................................................................................. 5

*United States v. Flynt*
 756 F.2d 1352 (9th Cir. 1985) ..................................................................................... 8, 9, 11

*United States v. Mejia*
 69 F.3d 309 (9th Cir. 1995) .............................................................................................. 6, 10

*United States v. Pope*
 841 F.2d 954 (9th Cir. 1988) .................................................................................................. 6

**STATUTES**

Federal Antideficiency Act ........................................................................................................ 4, 7

ii

Defendants' Ex Parte Application for Continuance of Trial Date Due to Unavailability of
Party and Issues Relating to the Current Federal Government Shutdown (1:20-CV-01793-KJM-SKO)

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD HEREIN:

PLEASE TAKE NOTICE THAT Defendants NEIL COMPSTON, JOHN SILVEIRA and EDWARD SINCLAIR (Defendants) hereby move the Court for an ex parte order continuing the current trial date due to the recently discovered unavailability of one of the parties, as well as the uncertainties regarding scheduling and trial availability due to the current federal government shutdown.

This motion is based upon this notice of motion, the attached memorandum of points and authorities, the attached declaration of Supervising Deputy Attorney General Norman D. Morrison IV, all pleadings and records on file in this action, and on such further authority, evidence, or argument as may be presented at or before the time of any hearing on this motion.

Dated: October 17, 2025

Respectfully submitted,

ROB BONTA
Attorney General of California

NORMAN D. MORRISON
Supervising Deputy Attorney General
*Attorneys for Defendants Neil Compston, John Silveira and Edward Sinclair*

FR2021301267

1

Defendants' Ex Parte Application for Continuance of Trial Date Due to Unavailability of Party and Issues Relating to the Current Federal Government Shutdown (1:20-CV-01793-KJM-SKO)

## INTRODUCTION

This lawsuit arises out of a shooting that occurred during the early morning hours on June 18, 2019, on a road next to State Route 43 near Hanford, California. Prior to this incident, Plaintiff Freddie Quair, Jr. had been under surveillance for multiple months as part of a joint Federal, State and local task force known as "Operation Red Reaper" that was investigating the Nuestra Familia criminal organization and the Norteño street gangs in the Kings and Tulare County region. As one of the targets of Operation Red Reaper, Plaintiff was the subject of a combination of video, audio, and electronic surveillance over a period of months performed by the Defendants. This included wiretaps of phone numbers used by Plaintiff and his criminal associates, including Jose Quintero. The months-long surveillance captured evidence of Plaintiff engaging in the trafficking of illegal firearms with other criminals, the sales of narcotics, and the discussion of various criminal activities relating to the Norteños and Nuestra Familia. (Declaration of Supervising Deputy Attorney General Norman D. Morrison IV (Decl. Morrison) ¶ 2.)

During the early morning hours of June 18, 2019, Plaintiff and two accomplices, Jose Quintero and David Hernandez, engaged in an armed home invasion robbery of a residence located in Corcoran, California. During the home invasion robbery, Plaintiff's accomplice, David Hernandez, was shot in the stomach. Plaintiff fled the scene on foot, and Hernandez was transported to the hospital by Quintero; the firearm used during the armed home invasion robbery was also in the vehicle used by Quintero.

Plaintiff fled the scene on foot after the shooting, and eventually borrowed a cellular phone from a third-party to call Quintero. During this phone call, which was monitored by the Defendants as part of the court authorized wiretap, Defendants heard Plaintiff and Quintero discussing the armed home invasion robbery, the shooting, the firearm used during the armed home invasion robbery, and Plaintiff's instructions to Quintero to come pick him up from the side of the highway. Plaintiff gave Quintero specific information about his location.

Based upon the phone call, and their knowledge of the armed home invasion robbery that Plaintiff had just committed, and due to the existence of an arrest warrant issued for the Plaintiff

2

by a court, the Defendants began surveillance of the Plaintiff using other vehicles as well as a plane. Plaintiff was subsequently stopped by law enforcement officers in a field alongside the highway. In light of the facts known to them, including Plaintiff's involvement in an armed home invasion robbery where someone had just been shot, as well as Plaintiff's prior history involving firearms, the Defendants performed a "felony traffic stop."

After Plaintiff and his accomplice stopped their vehicle, they refused to follow instructions and directions made by Kings County Sheriff's Sergeant Taylor Lopes. Instead, Plaintiff flung open the front passenger side door of his vehicle and immediately assumed an isosceles shooting stance, holding both hands together and extended in front of him consistent with someone holding and intending to use a handgun, pointing towards the Defendants. Plaintiff then suddenly moved his hands upward in a motion consistent with experiencing the physical recoil of a firearm being shot. Knowing Plaintiff had a history of being armed with illegal firearms, having just been involved in an armed home invasion robbery where another individual was shot, seeing Plaintiff assume what was recognized as a shooting stance and displaying a physical reaction consistent with firing a handgun while simultaneously hearing gunfire, Defendants reasonably and logically believed the Plaintiff was shooting at them and discharged their firearms at the Plaintiff and the vehicle he had just exited in self-defense. After being shot, Plaintiff continued to resist arrest by refusing to comply with orders, before he was ultimately taken into custody and treated by emergency medical personnel.

Since the Defendants' Motion for Summary Judgment was filed, each of the State Defendants has retired, one eyewitness to the incident has moved out of the State of California, and another participant in the underlying events (as well as a party to the armed home invasion robbery preceding the incident) has been incarcerated. (Decl. Morrison, ¶ 3.) Defendants' Counsel was recently advised that the dates of the pre-paid, out-of-country travel plans for Defendant John Silveira were inaccurate, that Silveira will actually be out of the country during nearly the entirety of the currently-scheduled trial, rather than returning at the beginning of trial, and that the changes to Silveira's travel and his resulting unavailability for trial had not been known to him until recently. (Decl. Morrison, ¶ 6.)

Additionally, Defendants' counsel requests a continuance due to the uncertainties created by the current Federal Government shutdown, and the Federal Court's prior announcement that it would only have funds to operate normally through October 17, 2025, and following that date would be required to operate pursuant to the Federal Antideficiency Act. As a result of the shutdown of the Federal Government, it is uncertain whether trial will proceed as previously scheduled, whether funds will be available to pay jurors for their service, and whether the Court's will be able to proceed as currently scheduled.

Plaintiff, as well as his accomplice and participant in the underlying events, are both incarcerated, and as a result the California Department of Corrections and Rehabilitation will need to make arrangements for the transportation, housing, and security of the Plaintiff and his accomplice. These arrangements will need to be coordinated with the County of Sacramento, who will have custody of the Defendants during this time period and be responsible for transportation of the inmates.

The State Defendants accordingly proceed with this ex parte motion to request the Court to continue the existing trial date for the reasons identified herein. As discussed, the failure to continue the trial date will result in serious and unavoidable prejudice to the Defendants; conversely, continuing the trial date will result in little, if any, prejudice to the Plaintiff and will ensure all parties' right to trial.

## ARGUMENT

I.  **THERE IS GOOD CAUSE TO CONTINUE THE TRIAL DATE**

   A.  **Governing legal standard for motions to continue trial.**

The district court has inherent authority to manage its docket and control trial and scheduling proceedings so that each litigant receives a fair trial. "The pretrial schedule may be modified 'if it cannot reasonably be met despite the diligence of the party seeking the extension." *Ronduen v. GEO Group, Inc.*, No. EDCV 23-0481 JGB, 2024 WL 4800670, *1 (C.D. Cal. 2024), quoting *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002) and *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). Trial courts "should" allow pre-

4

1  trial order amendments when no "substantial injury" will befall the opposing party, refusing to
2  change the pre-trial order "might result in injustice to the movant" and inconvenience to the trial
3  court would be "slight." *Campbell Indus. v. M/V Gemini*, 619 F.2d 24, 27-28 (9th Cir. 1980).
4       A trial continuance is properly granted where the applicant acts in good faith, with due
5  diligence, and where it clearly appears that a party would be prejudiced in its right to a fair trial if
6  forced to proceed without being able to fairly present its case. For example, in *Ronduen v. GEO*
7  *Group, Inc.*, the District Court applied the following four factors enumerated by the Ninth Circuit
8  in *United States v. First Nat. Bank of Circle*, 652 F.2d 882, 887 (9th Cir. 1981) for evaluating
9  motions to modify scheduling orders: (1) the degree of prejudice to the moving party from a
10 failure to modify; (2) the degree of prejudice to the nonmoving party from a modification; (3) the
11 impact of a modification at that stage of the litigation on the orderly and efficient conduct of the
12 case; and (4) the degree of willfulness, bad faith or inexcusable neglect on the part of the moving
13 party. *Ronduen* at *1. The Court in *Galdamez v. Potter*, 415 F.3d 1015, 1020 (9th Cir. 2005)
14 used a slightly different four-factor test for revising a scheduling order: "(1) the degree of
15 prejudice or surprise to the defendants if the order is modified; (2) the ability of the defendants to
16 cure the prejudice; (3) any impact of modification on the orderly and efficient conduct of the trial;
17 and (4) any willfulness or bad faith by the party seeking modification. *Id*.
18      Under either test, the evidence supports modifying the current deadlines to set a new trial
19 date in light of the current situation presented here.
20     **B.**    **The State Defendants will be greatly prejudiced if the trial is not continued.**
21
22      Special Agent (Retired) Silveira is not only a witness in this case, but he is also a party.
23 Plaintiff seeks punitive damages against him, and alleges that Silveira used excessive and lethal
24 force against him without justification. Therefore, it is critically important that Agent Silveira be
25 present every day and show the jury he is interested and involved in the proceedings. Having
26 Agent Silveira appear by video, for instance, will not dispel the prejudice all the State Defendants
27 will suffer if trial is not rescheduled. For the jury to only see Agent Silveira by video is far
28 different from seeing him in person. Again, Plaintiff seeks to recover punitive damages against

5

Silveira for his actions in connection with this case. He must be accorded the same opportunity as the other defendants to personally attend the trial and participate in all its phases, including explaining his actions, the facts and knowledge he had at the time of the incident, his observations of the actions of the Plaintiff, his observations and conclusions regarding the actions of the other officers involved in this incident. His presence is critical, as the jury will be silently watching and evaluating each defendant every second of every day of the proceedings, and his testimony as a named Defendant is integral to this case.

In *United States v. Mejia*, 69 F.3d 309, 315 (9th Cir. 1995), the Ninth Circuit found that a continuance should have been granted in order to permit a witness to testify live at trial, as such testimony would indisputably have served a useful purpose. As the Court explained, "[t]here can be not doubt that seeing a witness testify live assists the finder of fact in evaluating the witness's credibility." The *Mejia* Court continued by explaining that:

> [O]nly the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said. Live testimony enables the finder of fact to see the witness's physical reactions to questions, to assess the witness's demeanor, and to hear the tone of the witness's voice – matters that cannot be gleaned from a written transcript.

*Id.* at 315.

The Ninth Circuit has similarly held that a continuance should be granted where the denial of such a continuance would prevent a defendant from introducing testimony that could have helped him. *Mejia*, 69 F.3d at 317; *United States v. 2.61 Acres of Land*, 791 F.2d 666, 671 (9th Cir. 1985); *United States v. Pope*, 841 F.2d 954, 958 (9th Cir. 1988). Here, in the absence of a continuance, Defendant Silveira will not be able to introduce testimony regarding the underlying events, his actions and the actions of the other individuals present at the scene, his perception and recollection of the events, his recollection and perception of the Plaintiff's actions and statements, as well as the actions he (and the other participants) took in response to Plaintiff's actions.

This is not a situation where Silveira was aware that he would be gone during trial and is only raising it at the last moment. Silveira previously advised that he believed he would be returning from his out-of-country travel on November 11, 2025, which would have allowed him to participate in all but the very first day of trial. Prior to the Court's July order, no specific trial

6

Defendants' Ex Parte Application for Continuance of Trial Date Due to Unavailability of Party and Issues Relating to the Current Federal Government Shutdown (1:20-CV-01793-KJM-SKO)

dates had been offered or identified, only periods of the unavailability of various counsel due to trials and other travel and potentials dates for trial. The Court subsequently selected and set a trial date on its own. Although this trial date conflicted with part of Silveira's travel, Silveira advised he would be returning late on November 11 or 12, 2025, which would have allowed him to attend nearly the entire trial in person. However, Silveira recently advised his counsel that he was recently advised his out-of-country travel was actually through November 18, 2025, and that the dates had been changed without his prior knowledge, and therefore he would not be able to return and participate in this case until potentially the last day of trial. Silveira's travel had been arranged and paid prior to the Court's order setting a trial date in this case.

The trial should be continued for other reasons as well. Among these is the existence of the current "shutdown" of the Federal Government which has shown no signs of resolving, and instead appears the various branches of the government are becoming more entrenched in their positions which suggest the shutdown will not be resolved anytime soon. The Office of the Federal Courts has previously advised that the Federal Courts anticipates it will only have funds to conduct normal operations through Friday, October 17, 2025. After that date, the Courts will have to operate pursuant to the Antideficiency Act. Defendants are aware that the Federal Courts have already expressed that the courts may not be able to pay jurors their daily fees should the shutdown proceed beyond October 17, 2025, and the courts may not be able to conduct normal operations and only perform necessary duties with reduced staffing. It is anticipated that any inability, whether real or perceived, to be able to pay jurors their required stipend amounts will result in jurors claiming financial hardship, which would serve to potentially deny the Defendants the ability to select a jury pool of their choice.

Additionally, Defendants have learned that one of the neutral eyewitnesses to this incident is no longer a resident of the State of California, and Defendants are attempting to ascertain whether this eyewitness would be willing to return to California to testify, or whether he would be able to testify remotely. These discussions are adversely impacted and affected by the lack of certainty regarding the operations of the Federal Courts due to the shutdown of the Federal Government, as any travel or remote appearance arrangements would need to be arranged

7

Defendants' Ex Parte Application for Continuance of Trial Date Due to Unavailability of
Party and Issues Relating to the Current Federal Government Shutdown (1:20-CV-01793-KJM-SKO)

imminently in order to accommodate the current trial date, despite the lack of certainty.

Another factor justifying a continuance of the trial date is the fact that all of the parties will have to make extensive arrangements for housing and temporary accommodations for a period of at least two weeks as this case had originally been assigned for trial in the Fresno Division, where the Defendants (and their counsel) all reside and worked, which is also the location of the incident. Because this case is no longer being tried in the Fresno Division, this will require multiple hotel rooms to be retained for a duration of several weeks. Again, due to the lack of certainty caused by the shutdown of the Federal Government, in the event the trial is not able to occur due to the shutdown, the parties will have incurred significant immediate and unavoidable costs relating to these expenses that is otherwise avoidable by continuing the case to a later date. The Parties will incur significant additional costs associated with having to arrange for the travel, housing, and availability of multiple expert witnesses in this case.

Similarly, this is a case where at least two different individuals who are currently incarcerated in the custody of the California Department of Corrections and Rehabilitation will need to be transported from their prison facilities near Fresno to Sacramento, transferred into the custody of the Sacramento County Sheriff's Department, with the accompanying arrangements for transport, transfer, housing, security and personnel. This will require both the California Department of Corrections and the County of Sacramento to engage in specific scheduling arrangements now, including coordinating staffing, security, and appropriate housing and security for each of these individuals as well as transportation to the Sacramento District Court, despite the fact that it is unclear whether the trial will be able to proceed due to the current shutdown of the Federal Government which shows no signs of abating.

Each of these issues is mitigated, and avoided, by a continuance of the trial date in this case. There have been no prior trial dates scheduled in this case, and there have been no prior requests for continuances by any of the parties in this case.

    **C.**    **The *Flynt* Factors Support a Continuance of the Trial Date In This Situation.**

While the decision to grant a deny a continuance lies within the district court's discretion,

8

Defendants' Ex Parte Application for Continuance of Trial Date Due to Unavailability of
Party and Issues Relating to the Current Federal Government Shutdown (1:20-CV-01793-KJM-SKO)

that discretion is not without its limits. *Rios-Berrios v. I.N.S.*, 776 F.2d 859, 862-863 (9th Cir. 1985). The Ninth Circuit has identified four factors that should be considered in determining whether a request for a continuance should be granted: (1) the moving party's diligence in attempting to prepare his case for the originally-scheduled trial date; (2) the likelihood that the grant of a continuance would resolve the problem which led to the need for a continuance; (3) the inconvenience a continuance would cause to the court and the opposing party; and (4) the extent to which the moving might suffer harm or prejudice as a result of the denial of the request for a continuance. *United States v. 2.61 Acres of Land*, 791 F.2d at 671 (citing *United States v. Flynt*, 756 F.2d 1352, 1358 (9th Cir. 1985)). Each of these facts weigh in favor of granting the continuance here.

First, prior to the Court's July 10, 2025, Order (ECF 73), setting a trial date on the Court's own motion, there was no trial date scheduled in this case. The Court had previously vacated all dates, including the previously set trial date, and indicated that a future status conference would be scheduled to discuss any remaining scheduling issues. (ECF 54.) This occurred after the close of the dispositive and other deadlines set by the Court. Following the issuance of the Court's order on the Defendants' motions for summary judgment on June 5, 2025 (ECF 66), the Defendants analyzed the Court's ruling and began preparing for trial. Due to the period of time intervening between the filing of the summary judgment motions and the ruling, each of the State Defendants had retired from governmental service, witnesses had moved, and there had been other intervening events. Accordingly, the first of the *Flynt* factors weighs in favor of a continuance.

The second *Flynt* factor similarly weighs in favor of a continuance. Granting the continuance would allow Defendant Silveira to be present and offer live testimony, and allow his testimony, demeanor, actions, and responses to be viewed and evaluated in live time by the jury in this case. Similarly, granting the continuance would allow the Silveira to testify as to his actions, his understanding and knowledge of the facts and Plaintiff at the time of the incident, what he observed and did at the time of the incident, and explain his actions and the bases for his actions. Plaintiff may argue that Silveira's testimony is available by his deposition, taken more

9

Defendants' Ex Parte Application for Continuance of Trial Date Due to Unavailability of Party and Issues Relating to the Current Federal Government Shutdown (1:20-CV-01793-KJM-SKO)

than four years ago. However, any such argument is intentionally misleading. First, Plaintiff did not ask Silveira many relevant questions, and avoided entire areas of inquiry relating to the event and Silveira's actions. These key categories that will be inquired into at trial. Moreover, Silveira was not asked to describe in detail what knowledge of the Plaintiff and other relevant facts he had at the time of the incident – information that is critical and key to a use of force incident.

Additionally, in the absence of a continuance, Defendant Silveira will be unable to assist in the presentation of his defense. He will not be able to meet with his counsel regarding testimony and evidence presented, and he will not be able to assist his counsel with developing trial related strategies and responses to testimony and evidence presented by Plaintiff. Mr. Silveira would also be unable to review and respond to exhibits, engage in any physical re-enactments or demonstrations that may be requested of him, or to otherwise engage in the full range of activities and responses expected of a participant in trial. (Decl. Morrison, ¶ 18.) A continuance would prevent such irreparable and significant prejudice to Mr. Silveira and his rights.

Defendants similarly anticipate that Plaintiff will argue that Silveira could testify via Zoom. This argument ignores the realities of extreme long-distance communications, and presupposes that Silveira (or this Court) will have access to the resources and capabilities necessary to permit such testimony, especially should the shutdown of the Federal Government continue which would potentially result in the cutback of staff and other personnel necessary to accommodate remote testimony. Finally, "Zoom" testimony fails to address, much less mitigate, the factors identified and discussed by the *Mejia* Court and other courts, which have recognized the importance of live, in person testimony of key witnesses and parties to allow the trier of fact to perform its duties and functions by evaluating the elements and nuances of the testimony that are not captured or displayed by other means, such as Zoom and other remote video testimony. (Decl. Morrison, ¶ 18.)

The third element to be considered relates to the inconvenience that would be incurred by the Court and any opposing parties. Here, any inconvenience to the Court would be relatively minor, and would involve the case being reassigned to another judge for purposes of trial at a

10

later date. As discussed in more detail *ante*, there is no real prejudice to the Plaintiff, as he is currently incarcerated in the custody of the California Department of Corrections and Rehabilitation following his entry of a guilty plea to various felony charges, including those arising from the armed home invasion that preceded this incident, and Plaintiff is not eligible for parole until 2032. There is no realistic risk of loss of evidence or witnesses associated with a relatively brief continuance. Accordingly, the third element also tips in favor of a continuance.

Finally, the fourth element to be considered under *Flynt* is the extent to which the moving might suffer harm or prejudice as a result of the denial of the request for a continuance. As previously noted, the failure to grant a continuance would create significant, irremediable and avoidable harm and prejudice to Silveira <u>and the other Defendants</u>, as Silveira would not be available to provide testimony, facts, evidence, and explanation at trial. Additionally, there is a significant risk of harm associated with the proceeding in the absence of a named Defendant due to juror bias or conclusions regarding Silveira's absence.

### D. Any prejudice to the nonmoving parties will be minor.

There will be no "surprise" to any of the other parties if the trial date is continued to a later date. The State's counsel promptly notified all other parties after being advised by his client of the client's unavailability, and this notice was made approximately a month before the trial date that had been set in July 2025, approximately 3 months ago. While changing the trial date and Pretrial Conference may cause inconvenience to the Court and the nonmoving parties, inconvenience is not the same thing as prejudice. Trial courts "should" allow pre-trial scheduling order amendments when no "substantial injury" will befall the opposing party, but refusing to change the order "might result in injustice to the movant" and inconvenience to the trial court would be "slight." *Ronduen*, at *2, citing *Campbell Indus. v. M/V Gemini*, 619 F.2d 24, 27-28 (9th Cir. 1980).

Defendants County of Kings and Kings County Sheriff's Department Sergeant Taylor Lopes have agreed to the continuance, and agree that a continuance will not adversely affect them. (Decl. Morrison, ¶ 7.) Plaintiff has advised that he intends to oppose this motion, and believes that Silveira should simply catch an earlier flight back from another country. (Decl.

11

Defendants' Ex Parte Application for Continuance of Trial Date Due to Unavailability of Party and Issues Relating to the Current Federal Government Shutdown (1:20-CV-01793-KJM-SKO)

Morrison, ¶ 8.)

No inconvenience in continuing the trial date will result to the Plaintiff. Plaintiff is currently incarcerated in the custody of the California Department of Corrections and Rehabilitation, following his entry of a plea of guilty to various felony charges, including charges of attempted murder relating to the underlying armed home invasion that preceded this incident. Plaintiff was admitted to the custody of the CDCR on January 19, 2023, and his earliest parole eligibility date is currently April 2032, however the State understands this date may be extended due to Plaintiff's plea to additional recent felony convictions for assault with a deadly weapon while incarcerated. (Decl. Morrison, ¶ 9.) Continuing the trial date will not have any effect on Plaintiff's incarceration or other rights nor would it have any effect on the damages he claims in this lawsuit.

Similarly, Plaintiff's accomplice in the armed home invasion robbery and the underlying incident, Jose Quintero, is also incarcerated in the custody of the Department of Corrections and is not scheduled to be eligible for release on parole until June 2027, at the earliest.

### E. Granting the Continuance Would Allow the Parties Time to Explore The Possibility of Settlement As Plaintiff Recently Provided Settlement Demands to the Defendants.

Finally, granting a continuance in this case would additionally give the parties time to explore and consider the possibility of settlement, and engage in settlement discussions in this case. On October 15, 2025, Plaintiff sent a settlement demand to the State Defendants. (Decl. Morrison, ¶ 10.) Significantly, this is the first settlement demand made by Plaintiff the State Defendants are aware of in this case. In order for the State Defendants to consider, evaluate, and respond to this demand – and engage in any form of meaningful settlement discussions – a number of preliminary steps must be completed, and the settlement demand and accompanying analysis and recommendations must be reviewed and evaluated by various State officials. (Decl. Morrison, ¶ 11.) There is insufficient time to complete these steps, and engage in any form of meaningful settlement discussions, prior to the currently-set November 10, 2025, trial date. (Decl. Morrison, ¶ 12.)

The State Defendants have also been advised that a separate settlement demand was also recently made to the County of Kings and Sergeant Lopes. (Decl. Morrison, ¶ 13.) It is expected that a continuance would be needed for similar reasons to allow the County Defendants to review and evaluate the settlement demand, meet with their clients (including the County of Kings Board of Supervisors) in order to discuss the settlement demand and obtain any settlement authority, and then engage in settlement discussion through mediation or some other process – especially as any discussions with the Board of Supervisors must take place pursuant to the specific advance notice and hearing requirements imposed by California law.

Accordingly, granting a continuance would additionally allow the Parties to evaluate whether settlement is a possibility in light of the Plaintiff's recent demands, and proceed with such discussions. These reasons similarly weigh in favor of a continuance, and would have the very real possibility of eliminating any potential inconvenience to the Court associated with this case as a successful settlement would eliminate the need for a trial altogether.

**CONCLUSION**

Defendants accordingly request that this Court grant this ex parte motion, and schedule a trial date for sometime in early to mid-2026, at which point in time the shutdown of the Federal Government will have resolved and all parties will be available, and the other issues identified herein will accordingly be resolved or avoided. In light of Plaintiff's recent settlement demands tendered to all of the Defendants in this case, the Defendants suggest that the Court schedule a further status conference for approximately 60-90 days from this date, and/or issue an order directing the parties to engage in a mandatory settlement conference or mediation in this case.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

13

Defendants' Ex Parte Application for Continuance of Trial Date Due to Unavailability of Party and Issues Relating to the Current Federal Government Shutdown (1:20-CV-01793-KJM-SKO)

1 | Dated: October 17, 2025

Respectfully submitted,

Rob Bonta
Attorney General of California

*[signature]*

Norman D. Morrison
Supervising Deputy Attorney General
*Attorneys for Defendants Neil Compston,
John Silveira and Edward Sinclair*

14