1  FRROB BONTA, State Bar No. 202668
   Attorney General of California
2  Supervising Deputy Attorney General
   NORMAN D. MORRISON, State Bar No. 212090
3  Supervising Deputy Attorney General
     2550 Mariposa Mall, Room 5090
4    Fresno, CA  93721-2271
     Telephone:  (559) 705-2304
5    Fax:  (559) 445-5106
     E-mail:  Norman.Morrison@doj.ca.gov
6  *Attorneys for Defendants Neil Compston, John
   Silveira and Edward Sinclair*

7

8                 IN THE UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10                          CIVIL DIVISION

11

12
   **FREDDIE QUAIR,**                      1:20-CV-01793-KJM-SKO
13
                              Plaintiff,   **DEFENDANTS' JOINT PROPOSED**
14                                         **JURY INSTRUCTIONS**
          v.
15                                         Trial Date:      November 10, 2025
                                           Action Filed:   December 21, 2020
16 **COUNTY OF KINGS; TAYLOR LOPES;**
   **NEIL COMPSTON; JOHN SILVERIA;**
17 **EDWARD SINCLAIR; and DOES 1**
   **THROUGH 10, inclusive,**
18
                              Defendants.
19

20         Pursuant to the Court's Final Pre-Trial Order dated July 24, 2025, [ECF No.85] the

21 Court's Standing Civil Trial Order, Eastern District Local Rule 163, and Fed. R. Civ. P. 51,

22 Defendants Neil Compston, John Silveira and Edward Sinclair (the State Defendants) and

23 Defendants Taylor Lopes and the County of Kings  respectfully submit and request that the Court

24 give to the jury the accompanying instructions for trial, in addition to those jury instructions

25 normally given by the Court and specifically identified in the Court's standing orders.

26 Notwithstanding the above, Defendants reserve the right to withdraw any of the instructions, to

27 amend or to supplement any of the instructions, and to request any additional instructions during

28 and after the trial and before the instructions are given by the Court.

The following Ninth Circuit Model Civil Jury Instructions, Judicial Council of California Civil Jury Instructions, including proposed modifications as applicable, special jury instruction regarding qualified immunity, are numbered as follows.

On Friday, October 24, 2025, counsel for Plaintiffs and the Defendants met and conferred regarding proposed jury instructions, but were unable to resolve all of their disagreements regarding proposed jury instructions. The Defendants accordingly now submit their joint requested and proposed jury instructions.

Dated:  October 27, 2025                    Respectfully submitted,

                                            ROB BONTA
                                            Attorney General of California


                                            NORMAN D. MORRISON
                                            Supervising Deputy Attorney General
                                            *Attorneys for Defendants Neil Compston,*
                                            *John Silveira and Edward Sinclair*

2

**Burden of Proof—Preponderance of the Evidence**

When a party has the burden of proving any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

1

2

**Evidence for Limited Purpose**

3

4

Some evidence may be admitted only for a limited purpose.

5

6

When I instruct you that an item of evidence has been admitted only for a limited purpose, you

7

must consider it only for that limited purpose and not for any other purpose.

8

9

[The testimony you have just heard may be considered only for the limited purpose of [*describe*

10

*purpose*] and not for any other purpose.]

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2

**Ruling on Objections**

3
4

There are rules of evidence that control what can be received into evidence. When a lawyer asks a

5

question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not

6

permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the

7

question may be answered, or the exhibit received. If I sustain the objection, the question cannot

8

be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question,

9

you must ignore the question and must not guess what the answer might have been.

10
11

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore

12

that evidence. That means when you are deciding the case, you must not consider the stricken

13

evidence for any purpose.

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**No Transcript Available to Jury**

I urge you to pay close attention to the trial testimony as it is given. During deliberations you will not have a transcript of the trial testimony.

6

**Taking Notes**

If you wish, you may take notes to help you remember the evidence. If you do take notes, please keep them to yourself until you go to the jury room to decide the case. Do not let notetaking distract you. When you leave, your notes should be left in the courtroom or an envelope in the jury room. No one will read your notes.

Whether or not you take notes, you should rely on your own memory of the evidence. Notes are only to assist your memory. You should not be overly influenced by your notes or those of other jurors.

7

**Questions to Witnesses by Jurors During Trial**

*Option 1*

Only the lawyers and I are allowed to ask questions of witnesses. A juror is not permitted to ask questions of witnesses. *[Specific reasons for not allowing jurors to ask questions may be explained.*] If, however, you are unable to hear a witness or a lawyer, please raise your hand and I will correct the situation.

*Option 2*

When attorneys have finished their examination of a witness, you may ask questions of the witness. Please write your question on a piece of paper and hand it to the Courtroom Deputy. If the rules of evidence do not permit a particular question, I will advise you. After your questions, if any, the attorneys may ask additional questions.

**Cautionary Instructions**

<u>At the End of Each Day of the Case:</u>

As I indicated before this trial started, you as jurors will decide this case based solely on the evidence presented in this courtroom. This means that, after you leave here for the night, you must not conduct any independent research about this case, the matters in the case, the legal issues in the case, or the individuals or other entities involved in the case. This is important for the same reasons that jurors have long been instructed to limit their exposure to traditional forms of media information such as television and newspapers. You also must not communicate with anyone, in any way, about this case. And you must ignore any information about the case that you might see while browsing the internet or your social media feeds.

<u>At the Beginning of Each Day of the Case:</u>

As I reminded you yesterday and continue to emphasize to you today, it is important that you decide this case based solely on the evidence and the law presented here. So you must not learn any additional information about the case from sources outside the courtroom. To ensure fairness to all parties in this trial, I will now ask each of you whether you have learned about or shared any information about this case outside of this courtroom, even if it was accidental.

[ALTERNATIVE 1 (in open court): if you think that you might have done so, please let me know now by raising your hand. [Wait for a show of hands]. I see no raised hands; however, if you would prefer to talk to the court privately in response to this question, please notify a member of the court's staff at the next break. Thank you for your careful adherence to my instructions.]

[ALTERNATIVE 2 (during voir dire with each juror, individually): Have you learned about or

1
2
shared any information about this case outside of this courtroom? . . . Thank you for your careful
adherence to my instructions.]
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Defendants' Joint Proposed Jury Instructions (1:20-CV-01793-KJM-SKO)

1

2

**Stipulated Testimony**

3

4

The parties have agreed what [*witness*]'s testimony would be if called as a witness. You should

5

consider that testimony in the same way as if it had been given here in court.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2

**Deposition in Lieu of Live Testimony**

3
4
5
6
7

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded. When a person is unavailable to testify at trial, the deposition of that person may be used at the trial.

8
9
10
11

The deposition of Gabriel Andrada was taken on May 16, 2022. Insofar as possible, you should consider deposition testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.

12
13
14

Do not place any significance on the behavior or tone of voice of any person reading the questions or answers.

15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Transcript of Recording in English**

You have heard or watched a recording that has been received in evidence. Please listen to it very carefully. Each of you was given a transcript of the recording to help you identify speakers and as a guide to help you listen to the recording. However, bear in mind that the recording is the evidence, not the transcript. If you heard something different from what appeared in the transcript, what you heard is controlling.

Now that the recording has been played, the transcript will be taken from you.

**Impeachment Evidence—Witness**

The evidence that a witness has been convicted of a crime or lied under oath on a prior occasion may be considered, along with all other evidence, in deciding whether or not to believe the witness and how much weight to give to the testimony of the witness and for no other purpose.

**Use of Interrogatories**

Evidence was presented to you in the form of answers of one of the parties to written interrogatories submitted by the other side. These answers were given in writing and under oath before the trial in response to questions that were submitted under established court procedures. You should consider the answers, insofar as possible, in the same way as if they were made from the witness stand.

1

2

**Use of Requests for Admission**

3

4

Evidence was presented to you in the form of admissions to the truth of certain facts. These

5

admissions were given in writing before the trial, in response to requests that were submitted

6

under established court procedures. You must treat these facts as having been proved.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendants' Joint Proposed Jury Instructions (1:20-CV-01793-KJM-SKO)

1

**Expert Opinion - Rothschiller**

2

3

You have heard testimony from Curtis Rothschiller who testified to opinions and the reasons for

4

his opinions. This opinion testimony is allowed, because of the education or experience of this

5

witness.

6

7

Such opinion testimony should be judged like any other testimony. You may accept it or reject it

8

and give it as much weight as you think it deserves, considering the witness's education and

9

experience, the reasons given for the opinion, and all the other evidence in the case.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendants' Joint Proposed Jury Instructions (1:20-CV-01793-KJM-SKO)

**Expert Opinion - Fonzi**

You have heard testimony from Robert Fonzi who testified to opinions and the reasons for his opinions. This opinion testimony is allowed, because of the education or experience of this witness.

Such opinion testimony should be judged like any other testimony. You may accept it or reject it and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

18

**Expert Opinion - Chapman**

You have heard testimony from Clarence Chapman who testified to opinions and the reasons for his opinions. This opinion testimony is allowed, because of the education or experience of this witness.

Such opinion testimony should be judged like any other testimony. You may accept it or reject it and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

19

**Charts and Summaries Not Received in Evidence**

Certain charts and summaries not admitted into evidence have been shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. Charts and summaries are only as good as the underlying evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

**Charts and Summaries Received in Evidence**

Certain charts and summaries have been admitted into evidence to illustrate information brought out in the trial. Charts and summaries are only as good as the testimony or other admitted evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

**Evidence in Electronic Format**

Those exhibits received in evidence that are capable of being displayed electronically will be provided to you in that form, and you will be able to view them in the jury room. A computer, projector, printer, and accessory equipment will be available to you in the jury room.

A court technician will show you how to operate the computer and other equipment; how to locate and view the exhibits on the computer; and how to print the exhibits. You will also be provided with a paper list of all exhibits received in evidence. You may request a paper copy of any exhibit received in evidence by sending a note through the clerk.) If you need additional equipment or supplies or if you have questions about how to operate the computer or other equipment, you may send a note to the clerk, signed by your foreperson or by one or more members of the jury. Do not refer to or discuss any exhibit you were attempting to view.

If a technical problem or question requires hands-on maintenance or instruction, a court technician may enter the jury room with the clerk present for the sole purpose of assuring that the only matter that is discussed is the technical problem. When the court technician or any nonjuror is in the jury room, the jury shall not deliberate. No juror may say anything to the court technician or any nonjuror other than to describe the technical problem or to seek information about operation of the equipment. Do not discuss any exhibit or any aspect of the case.

The sole purpose of providing the computer in the jury room is to enable jurors to view the exhibits received in evidence in this case. You may not use the computer for any other purpose. At my direction, technicians have taken steps to ensure that the computer does not permit access to the Internet or to any "outside" website, database, directory, game, or other material. Do not attempt to alter the computer to obtain access to such materials. If you discover that the computer provides or allows access to such materials, you must inform the court immediately and refrain

22

1
2

from viewing such materials. Do not remove the computer or any electronic data disk from the

jury room, and do not copy any such data.

3

4

**Comment**

5

6

This instruction is premised on the assumption that either the court has ordered these procedures, or the parties have agreed to the availability of electronic display devices in the jury room and to the procedures set forth in the instruction. If the parties' agreement is in the form of a written stipulation, the stipulation should be subject to approval by the judge and entered as an order. The following are possible provisions in such a stipulation:

7

8

9

10

    1.   The parties agree to an allocation of the costs of providing the necessary equipment, including the computer, hard drive, projector, cable, printer, monitor and other accessories.

11

12

    2.   The parties jointly arrange to load images of the admitted exhibits onto a hard drive in "PDF" format. (This format is meant to assure maximum security.) They will ensure that the hard drive contains only such items and nothing else.

13

14

15

16

    3.   The parties jointly compile a document entitled "Admitted Exhibit List" that consists of all trial exhibits actually received into evidence, listed in numerical order and containing the date (where available) and a brief description of the exhibit. The Admitted Exhibit List should be text searchable. (In complicated or document-laden cases, it would be advisable for the parties to prepare a second exhibit list that would contain the same information, except that the exhibits would be listed in chronological order. That second list would be made available to the jury in "hard copy," not electronic form.)

17

18

    4.   Before the jury retires to deliberate, the parties will review the notebook computer, the exhibit list interface and the images of the exhibits, to ensure their accuracy. Unless a party objects before the jury retires to deliberate, that party waives all objections to the materials and equipment submitted to the jury.

19

20

    5.   The parties will maintain at the courthouse a backup notebook computer and a backup hard drive with images and data identical to what was loaded onto the hard drive sent into the jury room.

21

22

23

24

25

26

27

28

If the jury encounters a technical problem after it has begun to deliberate, the jury should communicate that issue in writing to the court. The technician may require and receive information from one or more jurors about the difficulty the jury is encountering. In many instances, the court technician will need to re-enter the jury room to address the problem. It is conceivable that the technician will be exposed to evidence that the jury was attempting to view or at least to the exhibit number(s) of such evidence. If the jurors themselves developed charts, summaries, vote tallies or other indicia of their deliberations, or if they wrote summaries of their findings thus far, the technician might be exposed to that information. (E.g., such matters could have been placed on a blackboard or in summaries strewn about the jury table.) The Committee suggests that in the event a nonjuror might be required to enter the jury room to deal with a technical problem, the judge should *sua sponte* raise these and related issues with counsel before authorizing such entry. Among the factors that the judge and counsel should discuss are the following:

(a) Can the technical problem be addressed without entry into the room; e.g., by removing the equipment for examination outside the presence of jurors?

(b) Can the technical problem be addressed without any information from the jury other than an innocuous statement to the effect that (for example) "the printer isn't working"?

(c) Can the risk of even inadvertent disclosure of the jury's deliberations be eliminated by instructing the jury to cover any charts and to remove or conceal any papers, etc.?

(d) Should the technician, bailiff or clerk be sworn in, with an oath that requires him or her not to disclose whatever he or she sees or hears in the jury room, except for the nature of the technical problem and whether the problem has been fixed?

Whether or not these or other appropriate precautions to minimize or eliminate the risk of disclosure are taken, the judge may consider giving the jury this instruction:

You have informed me that there is a technical problem that has interfered with your ability to review evidence electronically. I will send a technician into the jury room to deal with the problem while you are out of the deliberation room on a break. Please do not allow any materials reflecting any aspect of your deliberations to be visible during the technician's presence.

**Readback or Playback**

**Comment**

If during jury deliberations a request is made by the jury or by one or more jurors for a readback of a portion or all of a witness's testimony, and the court in exercising its discretion determines after consultation with the lawyers that a readback should be allowed, the Committee recommends the following admonition be given in open court with both sides present:

Because a request has been made for a readback or playback of the testimony of [*witness's name*] it is being provided to you, but you are cautioned that all readbacks and playbacks run the risk of distorting the trial because of overemphasis of one portion of the testimony. [Therefore, you will be required to hear all the witness's testimony on direct and cross-examination, to avoid the risk that you might miss a portion bearing on your judgment of what testimony to accept as credible.] Because of the length of the testimony of this witness, excerpts will be read or played. The readback or playback could contain errors. The readback or playback cannot reflect matters of demeanor, tone of voice, and other aspects of the live testimony. Your recollection and understanding of the testimony controls. Finally, in your exercise of judgment, the testimony read or played cannot be considered in isolation but must be considered in the context of all the evidence presented.

Although a court has broad discretion to read back excerpts or the entire testimony of a witness when requested by a deliberating jury, precautionary steps should be taken. Absent the parties' stipulation to a different procedure, the jury should be required to hear the readback in open court, with counsel for both sides present, and after giving the admonition set out above

**Return of Verdict**

A verdict form has been prepared for you. [*Explain verdict form as needed.*] After you have reached unanimous agreement on a verdict, your [presiding juror] [foreperson] should complete the verdict form according to your deliberations, sign and date it, and advise the clerk that you are ready to return to the courtroom.

26

**Additional Instructions of Law**

At this point I will give you an additional instruction. By giving an additional instruction at this time, I do not mean to emphasize this instruction over any other instruction.

You are not to attach undue importance to the fact that this instruction was read separately to you. You must consider this instruction together with all of the other instructions that were given to you.

You will now retire to the jury room and continue your deliberations.

27

**Deadlocked Jury**

Members of the jury, you have advised that you have been unable to agree upon a verdict in this case. I have decided to suggest a few thoughts to you.

As jurors, you have a duty to discuss the case with one another and to deliberate in an effort to reach a unanimous verdict if each of you can do so without violating your individual judgment and conscience. Each of you must decide the case for yourself, but only after you consider the evidence impartially with the other jurors. During your deliberations, you should not be unwilling to reexamine your own views and change your opinion if you become persuaded that it is wrong. However, you should not change an honest belief as to the weight or effect of the evidence solely because of the opinions of the other jurors or for the mere purpose of returning a verdict.

All of you are equally honest and conscientious jurors who have heard the same evidence. All of you share an equal desire to arrive at a verdict. Each of you should ask yourself whether you should question the correctness of your present position.

I remind you that in your deliberations you are to consider the instructions I have given you as a whole. You should not single out any part of any instruction, including this one, and ignore others. They are all equally important.

You may now return to the jury room and continue your deliberations.

Defendants' Joint Proposed Jury Instructions (1:20-CV-01793-KJM-SKO)

**Continuing Deliberations After Juror is Discharged**

[One] [Some] of your fellow jurors [has] [have] been excused from service and will not participate further in your deliberations. You should not speculate about the reason the [juror is] [jurors are] no longer present.

You should continue your deliberations with the remaining jurors. Do not consider the opinions of the excused [juror] [jurors] as you continue deliberating. All the previous instructions given to you still apply, including the requirement that all the remaining jurors unanimously agree on a verdict.

1
2

**Post-Discharge Instruction**

3
4
5
6
7

Now that the case has been concluded, some of you may have questions about the confidentiality of the proceedings. Now that the case is over, you are free to discuss it with any person you choose. By the same token, however, I would advise you that you are under no obligation whatsoever to discuss this case with any person.

8
9
10
11

If you do decide to discuss the case with anyone, I would suggest you treat it with a degree of solemnity in that whatever you do decide to say, you would be willing to say in the presence of the other jurors or under oath here in open court in the presence of all the parties.

12
13
14
15

Finally, always bear in mind that if you do decide to discuss this case, the other jurors fully and freely stated their opinions with the understanding they were being expressed in confidence. Please respect the privacy of the views of the other jurors.

16
17
18

Finally, if you would prefer not to discuss the case with anyone, but are feeling undue pressure to do so, please feel free to contact the courtroom deputy, who will notify me, and I will assist.

19
20
21
22
23
24
25
26
27
28

Defendants' Joint Proposed Jury Instructions (1:20-CV-01793-KJM-SKO)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Section 1983 Claim—Introductory Instruction**

Plaintiff Fredie Quair, Jr. brings a claim under the federal statute, 42 U.S.C. § 1983, which

provides that any person or persons who, under color of state law, deprives another of any rights,

privileges, or immunities secured by the Constitution or laws of the United States shall be liable

to the injured party.


Source: MCJI § 9.1

31

1

2

**Section 1983 Claim Against Defendant Neil Compston in Individual Capacity—Elements**

3

**and Burden of Proof**

4

In order to prevail on his § 1983 claim against Neil Compston, Plaintiff must prove each of the

5

following elements by a preponderance of the evidence:

6

      1. That Neil Compston acted under color of state law; and,

7

      2. The acts of Neil Compston deprived Plaintiff of his particular rights under the United

8

      States Constitution as explained in later instructions.

9

10

A person acts "under color of state law" when the person acts or purports to act in the

11

performance of official duties under any state, county, or municipal law, ordinance or regulation.

12

13

The parties have stipulated that Defendants acted under color of state law.

14

15

If you find that Plaintiff has proved each of these elements, and if you find that the Plaintiff has

16

proved all the elements that they are required to prove under subsequent instructions regarding

17

the Fourth Amendment, your verdict should be for the Plaintiff.

18

19

If, on the other hand, you find that the Plaintiff has failed to prove any one or more of these

20

elements, your verdict should be for Neil Compston.

21

22

Comment:  In a multi-plaintiff or multi-defendant case, the trial judge should consider naming
each individual specifically in lieu of using the generic term "officers" or "defendants." In

23

*Chinaryan*, the Ninth Circuit explained that the jury instructions were "confusing" where the
instructions stated that "to establish an unreasonable seizure in this case, the plaintiffs must prove

24

by a preponderance of the evidence that the officers"—plural—"used excessive force."
*Chinaryan v. City of Los Angeles*, 113 F.4th 888, 905 (9th Cir. 2024) (emphasis in original). The

25

"officers" jury instruction language was confusing because it "required the jury to evaluate the
excessiveness of the force used by the officers collectively rather than consider whether any

26

single officer used excessive force." *Id.* In light of *Chinaryan*, the trial judge may consider using
a special verdict to identify the specific findings as to each plaintiff and defendant.

27

28

Source:  MCJI § 9.3

**Section 1983 Claim Against Defendant John Silveira in Individual Capacity—Elements and Burden of Proof**

In order to prevail on his § 1983 claim against John Silveira, Plaintiff must prove each of the following elements by a preponderance of the evidence:

> 1. That John Silveira acted under color of state law; and,
>
> 2. The acts of John Silveira deprived Plaintiff of his particular rights under the United States Constitution as explained in later instructions.

A person acts "under color of state law" when the person acts or purports to act in the performance of official duties under any state, county, or municipal law, ordinance or regulation.

The parties have stipulated that Defendants acted under color of state law.

If you find that Plaintiff has proved each of these elements, and if you find that the Plaintiff has proved all the elements that they are required to prove under subsequent instructions regarding the Fourth Amendment, your verdict should be for the Plaintiff.

If, on the other hand, you find that the Plaintiff has failed to prove any one or more of these elements, your verdict should be for John Silveira.

Comment:  In a multi-plaintiff or multi-defendant case, the trial judge should consider naming each individual specifically in lieu of using the generic term "officers" or "defendants." In *Chinaryan*, the Ninth Circuit explained that the jury instructions were "confusing" where the instructions stated that "to establish an unreasonable seizure in this case, the plaintiffs must prove by a preponderance of the evidence that the office*rs*"—plural—"used excessive force." *Chinaryan v. City of Los Angeles*, 113 F.4th 888, 905 (9th Cir. 2024) (emphasis in original). The "office*rs*"jury instruction language was confusing because it "required the jury to evaluate the excessiveness of the force used by the officers collectively rather than consider whether any single officer used excessive force." *Id.* In light of *Chinaryan*, the trial judge may consider using a special verdict to identify the specific findings as to each plaintiff and defendant.

Source:  MCJI § 9.3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Section 1983 Claim Against Defendant Edward Sinclair in Individual Capacity—Elements and Burden of Proof**

In order to prevail on his § 1983 claim against Edward Sinclair, Plaintiff must prove each of the following elements by a preponderance of the evidence:

  1. That Edward Sinclair acted under color of state law; and,

  2. The acts of Edward Sinclair deprived Plaintiff of his particular rights under the United States Constitution as explained in later instructions.

A person acts "under color of state law" when the person acts or purports to act in the performance of official duties under any state, county, or municipal law, ordinance or regulation.

The parties have stipulated that Defendants acted under color of state law.

If you find that Plaintiff has proved each of these elements, and if you find that the Plaintiff has proved all the elements that they are required to prove under subsequent instructions regarding the Fourth Amendment, your verdict should be for the Plaintiff.

If, on the other hand, you find that the Plaintiff has failed to prove any one or more of these elements, your verdict should be for Edward Sinclair.

Comment:  In a multi-plaintiff or multi-defendant case, the trial judge should consider naming each individual specifically in lieu of using the generic term "officers" or "defendants." In *Chinaryan*, the Ninth Circuit explained that the jury instructions were "confusing" where the instructions stated that "to establish an unreasonable seizure in this case, the plaintiffs must prove by a preponderance of the evidence that the officers"—plural—"used excessive force." *Chinaryan v. City of Los Angeles*, 113 F.4th 888, 905 (9th Cir. 2024) (emphasis in original). The "officers" jury instruction language was confusing because it "required the jury to evaluate the excessiveness of the force used by the officers collectively rather than consider whether any single officer used excessive force." *Id.* In light of *Chinaryan*, the trial judge may consider using a special verdict to identify the specific findings as to each plaintiff and defendant.

Source:  MCJI § 9.3

34

**Section 1983 Claim Against Defendant Taylor Lopes in Individual Capacity—Elements and Burden of Proof**

In order to prevail on his § 1983 claim against Taylor Lopes, Plaintiff must prove each of the following elements by a preponderance of the evidence:

      1. That Taylor Lopes acted under color of state law; and,

      2. The acts of Taylor Lopes deprived Plaintiff of his particular rights under the United States Constitution as explained in later instructions.

A person acts "under color of state law" when the person acts or purports to act in the performance of official duties under any state, county, or municipal law, ordinance or regulation.

The parties have stipulated that Defendants acted under color of state law.

If you find that Plaintiff has proved each of these elements, and if you find that the Plaintiff has proved all the elements that they are required to prove under subsequent instructions regarding the Fourth Amendment, your verdict should be for the Plaintiff.

If, on the other hand, you find that the Plaintiff has failed to prove any one or more of these elements, your verdict should be for Taylor Lopes.

Comment:  In a multi-plaintiff or multi-defendant case, the trial judge should consider naming each individual specifically in lieu of using the generic term "officers" or "defendants." In *Chinaryan*, the Ninth Circuit explained that the jury instructions were "confusing" where the instructions stated that "to establish an unreasonable seizure in this case, the plaintiffs must prove by a preponderance of the evidence that the officers"—plural—"used excessive force." *Chinaryan v. City of Los Angeles*, 113 F.4th 888, 905 (9th Cir. 2024) (emphasis in original). The "officers"jury instruction language was confusing because it "required the jury to evaluate the excessiveness of the force used by the officers collectively rather than consider whether any single officer used excessive force." *Id.* In light of *Chinaryan*, the trial judge may consider using a special verdict to identify the specific findings as to each plaintiff and defendant.

Source:  MCJI § 9.3

**Particular Rights—Fourth Amendment—Unreasonable Seizure of Person—Generally  - Compston**

As previously explained, Plaintiff has the burden of proving that the act of Neil Compston deprived Plaintiff of particular rights under the United States Constitution.  In this case, Plaintiff alleges Neil Compston deprived him of his rights under the Fourth Amendment to the Constitution when Plaintiff was shot during the felony stop on June 18, 2019.

Under the Fourth Amendment, a person has the right to be free from an unreasonable seizure of his person. In order to prove Neil Compston deprived Plaintiff. of this Fourth Amendment right, Plaintiffs must prove the following additional elements by a preponderance of the evidence:

1. Neil Compston seized Plaintiff's person;

2. In seizing Plaintiff's person, Neil Compston acted intentionally; and

3. The seizure was unreasonable.

A defendant "seizes" a person when he restrains the person's liberty through coercion, physical force or a show of authority. A person's liberty is restrained when, under all of the circumstances, a reasonable person would not have felt free to ignore the presence of law enforcement officers and to go about his business.

*There is no dispute that shooting Plaintiff was a seizure of his person.*

A person acts "intentionally" when the person acts with a conscious objective to engage in particular conduct. Therefore, Plaintiff must prove that Neil Compston intended to shoot Plaintiff. It is not enough to prove Neil Compston negligently or accidentally engaged in that action.  But while Plaintiff must prove that Neil Compston intended to act, Plaintiff need not prove that Neil Compston intended to violate Plaintiff's Fourth Amendment rights.

<u>Comment</u>:  In a multi-plaintiff or multi-defendant case, the trial judge should consider naming

36

each individual specifically in lieu of using the generic term "officers" or "defendants." In *Chinaryan*, the Ninth Circuit explained that the jury instructions were "confusing" where the instructions stated that "to establish an unreasonable seizure in this case, the plaintiffs must prove by a preponderance of the evidence that the officers"—plural—"used excessive force." *Chinaryan v. City of Los Angeles*, 113 F.4th 888, 905 (9th Cir. 2024) (emphasis in original). The "officers" jury instruction language was confusing because it "required the jury to evaluate the excessiveness of the force used by the officers collectively rather than consider whether any single officer used excessive force." *Id.* In light of *Chinaryan*, the trial judge may consider using a special verdict to identify the specific findings as to each plaintiff and defendant.

37

**Particular Rights—Fourth Amendment—Unreasonable Seizure of Person—Generally  - Silveira**

As previously explained, Plaintiff has the burden of proving that the act of John Silveira deprived Plaintiff of particular rights under the United States Constitution.  In this case, Plaintiff alleges John Silveira deprived him of his rights under the Fourth Amendment to the Constitution when Plaintiff was shot during the felony stop on June 18, 2019.

Under the Fourth Amendment, a person has the right to be free from an unreasonable seizure of his person. In order to prove John Silveira deprived Plaintiff. of this Fourth Amendment right, Plaintiffs must prove the following additional elements by a preponderance of the evidence:

1. John Silveira seized Plaintiff's person;

2. In seizing Plaintiff's person, John Silveira acted intentionally; and

3. The seizure was unreasonable.

A defendant "seizes" a person when he restrains the person's liberty through coercion, physical force or a show of authority. A person's liberty is restrained when, under all of the circumstances, a reasonable person would not have felt free to ignore the presence of law enforcement officers and to go about his business.

*There is no dispute that shooting Plaintiff was a seizure of his person.*

A person acts "intentionally" when the person acts with a conscious objective to engage in particular conduct. Therefore, Plaintiff must prove that John Silveira intended to shoot Plaintiff. It is not enough to prove John Silveira negligently or accidentally engaged in that action.  But while Plaintiff must prove that John Silveira intended to act, Plaintiff need not prove that John Silveira intended to violate Plaintiff's Fourth Amendment rights.

<u>Comment</u>:  In a multi-plaintiff or multi-defendant case, the trial judge should consider naming

38

each individual specifically in lieu of using the generic term "officers" or "defendants." In *Chinaryan*, the Ninth Circuit explained that the jury instructions were "confusing" where the instructions stated that "to establish an unreasonable seizure in this case, the plaintiffs must prove by a preponderance of the evidence that the officers"—plural—"used excessive force." *Chinaryan v. City of Los Angeles*, 113 F.4th 888, 905 (9th Cir. 2024) (emphasis in original). The "officers" jury instruction language was confusing because it "required the jury to evaluate the excessiveness of the force used by the officers collectively rather than consider whether any single officer used excessive force." *Id.* In light of *Chinaryan*, the trial judge may consider using a special verdict to identify the specific findings as to each plaintiff and defendant.

**Particular Rights—Fourth Amendment—Unreasonable Seizure of Person—Generally - Sinclair**

As previously explained, Plaintiff has the burden of proving that the act of Edward Sinclair deprived Plaintiff of particular rights under the United States Constitution. In this case, Plaintiff alleges Edward Sinclair deprived him of his rights under the Fourth Amendment to the Constitution when Plaintiff was shot during the felony stop on June 18, 2019.

Under the Fourth Amendment, a person has the right to be free from an unreasonable seizure of his person. In order to prove Edward Sinclair deprived Plaintiff. of this Fourth Amendment right, Plaintiffs must prove the following additional elements by a preponderance of the evidence:

1. Edward Sinclair seized Plaintiff's person;

2. In seizing Plaintiff's person, Edward Sinclair acted intentionally; and

3. The seizure was unreasonable.

A defendant "seizes" a person when he restrains the person's liberty through coercion, physical force or a show of authority. A person's liberty is restrained when, under all of the circumstances, a reasonable person would not have felt free to ignore the presence of law enforcement officers and to go about his business.

*There is no dispute that shooting Plaintiff was a seizure of his person.*

A person acts "intentionally" when the person acts with a conscious objective to engage in particular conduct. Therefore, Plaintiff must prove that Edward Sinclair intended to shoot Plaintiff. It is not enough to prove Edward Sinclair negligently or accidentally engaged in that action. But while Plaintiff must prove that Edward Sinclair intended to act, Plaintiff need not prove that Edward Sinclair intended to violate Plaintiff's Fourth Amendment rights.

<u>Comment</u>: In a multi-plaintiff or multi-defendant case, the trial judge should consider naming

40

1    each individual specifically in lieu of using the generic term "officers" or "defendants." In
2    *Chinaryan*, the Ninth Circuit explained that the jury instructions were "confusing" where the
     instructions stated that "to establish an unreasonable seizure in this case, the plaintiffs must prove
     by a preponderance of the evidence that the officer*s*"—plural—"used excessive force."
3    *Chinaryan v. City of Los Angeles*, 113 F.4th 888, 905 (9th Cir. 2024) (emphasis in original). The
     "officer*s*"jury instruction language was confusing because it "required the jury to evaluate the
4    excessiveness of the force used by the officers collectively rather than consider whether any
     single officer used excessive force." *Id.* In light of *Chinaryan*, the trial judge may consider using
5    a special verdict to identify the specific findings as to each plaintiff and defendant.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Particular Rights—Fourth Amendment—Unreasonable Seizure of Person—Generally  - Lopes**

As previously explained, Plaintiff has the burden of proving that the act of Taylor Lopes deprived Plaintiff of particular rights under the United States Constitution.  In this case, Plaintiff alleges Taylor Lopes deprived him of his rights under the Fourth Amendment to the Constitution when Plaintiff was shot during the felony stop on June 18, 2019.

Under the Fourth Amendment, a person has the right to be free from an unreasonable seizure of his person. In order to prove Taylor Lopes deprived Plaintiff. of this Fourth Amendment right, Plaintiffs must prove the following additional elements by a preponderance of the evidence:

1. Taylor Lopes seized Plaintiff's person;

2. In seizing Plaintiff's person, Taylor Lopes acted intentionally; and

3. The seizure was unreasonable.

A defendant "seizes" a person when he restrains the person's liberty through coercion, physical force or a show of authority. A person's liberty is restrained when, under all of the circumstances, a reasonable person would not have felt free to ignore the presence of law enforcement officers and to go about his business.

*There is no dispute that shooting Plaintiff was a seizure of his person.*

A person acts "intentionally" when the person acts with a conscious objective to engage in particular conduct. Therefore, Plaintiff must prove that Taylor Lopes intended to shoot Plaintiff. It is not enough to prove Taylor Lopes negligently or accidentally engaged in that action.  But while Plaintiff must prove that Taylor Lopes intended to act, Plaintiff need not prove that Taylor Lopes intended to violate Plaintiff's Fourth Amendment rights.

<u>Comment</u>:  In a multi-plaintiff or multi-defendant case, the trial judge should consider naming

42

1  each individual specifically in lieu of using the generic term "officers" or "defendants." In
2  *Chinaryan*, the Ninth Circuit explained that the jury instructions were "confusing" where the
   instructions stated that "to establish an unreasonable seizure in this case, the plaintiffs must prove
   by a preponderance of the evidence that the officer*s*"—plural—"used excessive force."
3  *Chinaryan v. City of Los Angeles*, 113 F.4th 888, 905 (9th Cir. 2024) (emphasis in original). The
4  "officer*s*"jury instruction language was confusing because it "required the jury to evaluate the
   excessiveness of the force used by the officers collectively rather than consider whether any
5  single officer used excessive force." *Id.* In light of *Chinaryan*, the trial judge may consider using
   a special verdict to identify the specific findings as to each plaintiff and defendant.

6

7

8

9  Source:  MCJI § 9.20

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendants' Joint Proposed Jury Instructions (1:20-CV-01793-KJM-SKO)

**Particular Rights—Fourth Amendment—Unreasonable Seizure of Person—Excessive Force - Compston**

In general, a seizure of a person is unreasonable under the Fourth Amendment if a police officer uses excessive force in making a lawful arrest, defending himself or others, and/or in attempting to stop a fleeing or escaping suspect. Therefore, in order to prove an unreasonable seizure in this case, Plaintiff must prove by a preponderance of the evidence that Neil Compston used excessive force when Neil Compston fired on Plaintiff during the felony traffic stop on June 18, 2019.

Under the Fourth Amendment, a police officer may use only such force as is "objectively reasonable" under all of the circumstances. You must judge the reasonableness of a particular use of force from the perspective of a reasonable officer on the scene and not with the 20/20 vision of hindsight. Although the facts known to the officer are relevant to your inquiry, an officer's subjective intent or motive is not relevant to your inquiry.

In determining whether Neil Compston used excessive or *unreasonable* force in this case, consider all of the circumstances known to Neil Compston on the scene, including:

(1) The nature of the crime or other circumstances known to Neil Compston at the time force was applied;

(2) Whether Plaintiff posed an immediate threat to the safety of Neil Compston, or to others, at the time of the use of deadly force;

(3) Whether Plaintiff was actively resisting arrest or attempting to evade arrest by flight;

(4) The amount of time Neil Compston had to determine the type and amount of force that reasonably appeared necessary, and any changing circumstances during that period;

(5) The relationship between the need for the use of force and the amount of force used;

(6) The extent of the plaintiff's injury;

(7) Any effort made by the officers to temper or to limit the amount of force;

(8) the severity of the security problem at issue;

44

(9) availability of alternative methods [to take the plaintiff into custody] [to subdue the plaintiff;]]

(10) the number of lives at risk (motorists, pedestrians, police officers) and the parties 'relative culpability; *i.e.*, which party created the dangerous situation, and which party is more innocent;

(11) whether it was practical for the officers to give warning of the imminent use of force, and whether such warning was given;

(14) whether a reasonable officer would have or should have accurately perceived a mistaken fact; and

(15) whether there was probable cause for a reasonable officer to believe that the suspect had committed a crime involving the infliction or threatened infliction of serious physical harm.


"Probable cause" exists when, under all of the circumstances known to the officer at the time, an objectively reasonable police officer would conclude there is a fair probability that the plaintiff has committed or was committing a crime.


Source: MCJI 9.25


<u>Comment</u>:  In a multi-plaintiff or multi-defendant case, the trial judge should consider naming each individual specifically in lieu of using the generic term "officers" or "defendants." In *Chinaryan*, the Ninth Circuit explained that the jury instructions were "confusing" where the instructions stated that "to establish an unreasonable seizure in this case, the plaintiffs must prove by a preponderance of the evidence that the officers—plural—"used excessive force." *Chinaryan v. City of Los Angeles*, 113 F.4th 888, 905 (9th Cir. 2024) (emphasis in original). The "officers"jury instruction language was confusing because it "required the jury to evaluate the excessiveness of the force used by the officers collectively rather than consider whether any single officer used excessive force." *Id.* In light of *Chinaryan*, the trial judge may consider using a special verdict to identify the specific findings as to each plaintiff and defendant.

**Particular Rights—Fourth Amendment—Unreasonable Seizure of Person—Excessive Force  - Silveira**

In general, a seizure of a person is unreasonable under the Fourth Amendment if a police officer uses excessive force in making a lawful arrest, defending himself or others, and/or in attempting to stop a fleeing or escaping suspect.  Therefore, in order to prove an unreasonable seizure in this case, Plaintiff must prove by a preponderance of the evidence that John Silveira used excessive force when John Silveira fired on Plaintiff during the felony traffic stop on June 18, 2019.

Under the Fourth Amendment, a police officer may use only such force as is "objectively reasonable" under all of the circumstances. You must judge the reasonableness of a particular use of force from the perspective of a reasonable officer on the scene and not with the 20/20 vision of hindsight. Although the facts known to the officer are relevant to your inquiry, an officer's subjective intent or motive is not relevant to your inquiry.

In determining whether John Silveira used excessive or *unreasonable* force in this case, consider all of the circumstances known to John Silveira on the scene, including:

(1) The nature of the crime or other circumstances known to John Silveira at the time force was applied;

(2) Whether Plaintiff posed an immediate threat to the safety of John Silveira, or to others, at the time of the use of deadly force;

(3) Whether Plaintiff was actively resisting arrest or attempting to evade arrest by flight;

(4) The amount of time John Silveira had to determine the type and amount of force that reasonably appeared necessary, and any changing circumstances during that period;

(5) The relationship between the need for the use of force and the amount of force used;

(6) The extent of the plaintiff's injury;

(7) Any effort made by the officers to temper or to limit the amount of force;

(8) the severity of the security problem at issue;

46

(9) availability of alternative methods [to take the plaintiff into custody] [to subdue the plaintiff;]]

(10) the number of lives at risk (motorists, pedestrians, police officers) and the parties 'relative culpability; *i.e.*, which party created the dangerous situation, and which party is more innocent;

(11) whether it was practical for the officers to give warning of the imminent use of force, and whether such warning was given;

(14) whether a reasonable officer would have or should have accurately perceived a mistaken fact; and

(15) whether there was probable cause for a reasonable officer to believe that the suspect had committed  a crime involving the infliction or threatened infliction of serious physical harm.

"Probable cause" exists when, under all of the circumstances known to the officer at the time, an objectively reasonable police officer would conclude there is a fair probability that the plaintiff has committed or was committing a crime.

Source: MCJI 9.25

Comment:  In a multi-plaintiff or multi-defendant case, the trial judge should consider naming each individual specifically in lieu of using the generic term "officers" or "defendants." In *Chinaryan*, the Ninth Circuit explained that the jury instructions were "confusing" where the instructions stated that "to establish an unreasonable seizure in this case, the plaintiffs must prove by a preponderance of the evidence that the officers—plural—"used excessive force." *Chinaryan v. City of Los Angeles*, 113 F.4th 888, 905 (9th Cir. 2024) (emphasis in original). The "officers"jury instruction language was confusing because it "required the jury to evaluate the excessiveness of the force used by the officers collectively rather than consider whether any single officer used excessive force." *Id.* In light of *Chinaryan*, the trial judge may consider using a special verdict to identify the specific findings as to each plaintiff and defendant.

**Particular Rights—Fourth Amendment—Unreasonable Seizure of Person—Excessive Force - Sinclair**

In general, a seizure of a person is unreasonable under the Fourth Amendment if a police officer uses excessive force in making a lawful arrest, defending himself or others, and/or in attempting to stop a fleeing or escaping suspect. Therefore, in order to prove an unreasonable seizure in this case, Plaintiff must prove by a preponderance of the evidence that Edward Sinclair used excessive force when Edward Sinclair fired on Plaintiff during the felony traffic stop on June 18, 2019.

Under the Fourth Amendment, a police officer may use only such force as is "objectively reasonable" under all of the circumstances. You must judge the reasonableness of a particular use of force from the perspective of a reasonable officer on the scene and not with the 20/20 vision of hindsight. Although the facts known to the officer are relevant to your inquiry, an officer's subjective intent or motive is not relevant to your inquiry.

In determining whether Edward Sinclair used excessive or *unreasonable* force in this case, consider all of the circumstances known to Edward Sinclair on the scene, including:

(1) The nature of the crime or other circumstances known to Edward Sinclair at the time force was applied;

(2) Whether Plaintiff posed an immediate threat to the safety of Edward Sinclair, or to others, at the time of the use of deadly force;

(3) Whether Plaintiff was actively resisting arrest or attempting to evade arrest by flight;

(4) The amount of time Edward Sinclair had to determine the type and amount of force that reasonably appeared necessary, and any changing circumstances during that period;

(5) The relationship between the need for the use of force and the amount of force used;

(6) The extent of the plaintiff's injury;

(7) Any effort made by the officers to temper or to limit the amount of force;

(8) the severity of the security problem at issue;

(9) availability of alternative methods [to take the plaintiff into custody] [to subdue the plaintiff;]]

(10) the number of lives at risk (motorists, pedestrians, police officers) and the parties 'relative culpability; *i.e.*, which party created the dangerous situation, and which party is more innocent;

(11) whether it was practical for the officers to give warning of the imminent use of force, and whether such warning was given;

(14) whether a reasonable officer would have or should have accurately perceived a mistaken fact; and

(15) whether there was probable cause for a reasonable officer to believe that the suspect had committed  a crime involving the infliction or threatened infliction of serious physical harm.

"Probable cause" exists when, under all of the circumstances known to the officer at the time, an objectively reasonable police officer would conclude there is a fair probability that the plaintiff has committed or was committing a crime.

Source: MCJI 9.25

Comment:  In a multi-plaintiff or multi-defendant case, the trial judge should consider naming each individual specifically in lieu of using the generic term "officers" or "defendants." In *Chinaryan*, the Ninth Circuit explained that the jury instructions were "confusing" where the instructions stated that "to establish an unreasonable seizure in this case, the plaintiffs must prove by a preponderance of the evidence that the officers—plural—"used excessive force." *Chinaryan v. City of Los Angeles*, 113 F.4th 888, 905 (9th Cir. 2024) (emphasis in original). The "officers"jury instruction language was confusing because it "required the jury to evaluate the excessiveness of the force used by the officers collectively rather than consider whether any single officer used excessive force." *Id.* In light of *Chinaryan*, the trial judge may consider using a special verdict to identify the specific findings as to each plaintiff and defendant.

1

2

3

**Particular Rights—Fourth Amendment—Unreasonable Seizure of Person—Excessive Force  - Lopes**

4

In general, a seizure of a person is unreasonable under the Fourth Amendment if a police officer

5

uses excessive force in making a lawful arrest, defending himself or others, and/or in attempting

6

to stop a fleeing or escaping suspect.  Therefore, in order to prove an unreasonable seizure in this

7

case, Plaintiff must prove by a preponderance of the evidence that Taylor Lopes used excessive

8

force when Taylor Lopes fired on Plaintiff during the felony traffic stop on June 18, 2019.

9

10

Under the Fourth Amendment, a police officer may use only such force as is "objectively

11

reasonable" under all of the circumstances. You must judge the reasonableness of a particular use

12

of force from the perspective of a reasonable officer on the scene and not with the 20/20 vision of

13

hindsight. Although the facts known to the officer are relevant to your inquiry, an officer's

14

subjective intent or motive is not relevant to your inquiry.

15

16

In determining whether Taylor Lopes used excessive or *unreasonable* force in this case, consider

17

all of the circumstances known to Taylor Lopes on the scene, including:

18

(1) The nature of the crime or other circumstances known to Taylor Lopes at the time force was

19

applied;

20

(2) Whether Plaintiff posed an immediate threat to the safety of Taylor Lopes, or to others, at the

21

time of the use of deadly force;

22

(3) Whether Plaintiff was actively resisting arrest or attempting to evade arrest by flight;

23

(4) The amount of time Taylor Lopes had to determine the type and amount of force that

24

reasonably appeared necessary, and any changing circumstances during that period;

25

(5) The relationship between the need for the use of force and the amount of force used;

26

(6) The extent of the plaintiff's injury;

27

(7) Any effort made by the officers to temper or to limit the amount of force;

28

(8) the severity of the security problem at issue;

(9) availability of alternative methods [to take the plaintiff into custody] [to subdue the plaintiff;]]

(10) the number of lives at risk (motorists, pedestrians, police officers) and the parties 'relative culpability; *i.e.*, which party created the dangerous situation, and which party is more innocent;

(11) whether it was practical for the officers to give warning of the imminent use of force, and whether such warning was given;

(14) whether a reasonable officer would have or should have accurately perceived a mistaken fact; and

(15) whether there was probable cause for a reasonable officer to believe that the suspect had committed  a crime involving the infliction or threatened infliction of serious physical harm.

"Probable cause" exists when, under all of the circumstances known to the officer at the time, an objectively reasonable police officer would conclude there is a fair probability that the plaintiff has committed or was committing a crime.

<u>Comment</u>:  In a multi-plaintiff or multi-defendant case, the trial judge should consider naming each individual specifically in lieu of using the generic term "officers" or "defendants." In *Chinaryan*, the Ninth Circuit explained that the jury instructions were "confusing" where the instructions stated that "to establish an unreasonable seizure in this case, the plaintiffs must prove by a preponderance of the evidence that the officer**s**"—plural—"used excessive force." *Chinaryan v. City of Los Angeles*, 113 F.4th 888, 905 (9th Cir. 2024) (emphasis in original). The "officer**s**"jury instruction language was confusing because it "required the jury to evaluate the excessiveness of the force used by the officers collectively rather than consider whether any single officer used excessive force." *Id.* In light of *Chinaryan*, the trial judge may consider using a special verdict to identify the specific findings as to each plaintiff and defendant.

Source: MCJI 9.25

**Officer's Subjective Motives or Intent Irrelevant - Excessive Force – Compston**

In the course of this trial, you may have heard testimony or evidence relating to alleged improper motivations or intentions of the individual Defendants. You are not to consider such evidence in determining whether the use of force was reasonable.

In a § 1983 action for excessive force, you are not to consider subjective motives or intents that Neil Compston allegedly had in determining whether Neil Compston used excessive force against Plaintiff on June 18, 2019.

The pertinent question in excessive force cases is whether the use of force was objectively reasonable in light of the facts and circumstances confronting Neil Compston without regard to his underlying intent or motivation.

An officer's evil or bad intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional.

Comment:  In a multi-plaintiff or multi-defendant case, the trial judge should consider naming each individual specifically in lieu of using the generic term "officers" or "defendants." In *Chinaryan*, the Ninth Circuit explained that the jury instructions were "confusing" where the instructions stated that "to establish an unreasonable seizure in this case, the plaintiffs must prove by a preponderance of the evidence that the officers"—plural—"used excessive force." *Chinaryan v. City of Los Angeles*, 113 F.4th 888, 905 (9th Cir. 2024) (emphasis in original). The "officers"jury instruction language was confusing because it "required the jury to evaluate the excessiveness of the force used by the officers collectively rather than consider whether any single officer used excessive force." *Id.* In light of *Chinaryan*, the trial judge may consider using a special verdict to identify the specific findings as to each plaintiff and defendant.

Source:  *Graham v. Connor*, 490 U.S. 386, 388 (1989); *Scott v. United States*, 436 U.S. 128, 138; *Baker v. County of San Diego*, No. 09-CV-1194-BEN, 2012 WL 1903899, at *2 (S.D. Cal. May 24, 2012)

**Officer's Subjective Motives or Intent Irrelevant - Excessive Force – Silveira**

In the course of this trial, you may have heard testimony or evidence relating to alleged improper motivations or intentions of the individual Defendants. You are not to consider such evidence in determining whether the use of force was reasonable.

In a § 1983 action for excessive force, you are not to consider subjective motives or intents that John Silveira allegedly had in determining whether John Silveira used excessive force against Plaintiff on June 18, 2019.

The pertinent question in excessive force cases is whether the use of force was objectively reasonable in light of the facts and circumstances confronting John Silveira without regard to his underlying intent or motivation.

An officer's evil or bad intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional.

Comment:  In a multi-plaintiff or multi-defendant case, the trial judge should consider naming each individual specifically in lieu of using the generic term "officers" or "defendants." In *Chinaryan*, the Ninth Circuit explained that the jury instructions were "confusing" where the instructions stated that "to establish an unreasonable seizure in this case, the plaintiffs must prove by a preponderance of the evidence that the officers"—plural—"used excessive force." *Chinaryan v. City of Los Angeles*, 113 F.4th 888, 905 (9th Cir. 2024) (emphasis in original). The "officers"jury instruction language was confusing because it "required the jury to evaluate the excessiveness of the force used by the officers collectively rather than consider whether any single officer used excessive force." *Id.* In light of *Chinaryan*, the trial judge may consider using a special verdict to identify the specific findings as to each plaintiff and defendant.

Source:  *Graham v. Connor*, 490 U.S. 386, 388 (1989); *Scott v. United States*, 436 U.S. 128, 138; *Baker v. County of San Diego*, No. 09-CV-1194-BEN, 2012 WL 1903899, at *2 (S.D. Cal. May 24, 2012)

**Officer's Subjective Motives or Intent Irrelevant - Excessive Force – Sinclair**

In the course of this trial, you may have heard testimony or evidence relating to alleged improper motivations or intentions of the individual Defendants. You are not to consider such evidence in determining whether the use of force was reasonable.

In a § 1983 action for excessive force, you are not to consider subjective motives or intents that Edward Sinclair allegedly had in determining whether Edward Sinclair used excessive force against Plaintiff on June 18, 2019.

The pertinent question in excessive force cases is whether the use of force was objectively reasonable in light of the facts and circumstances confronting Edward Sinclair without regard to his underlying intent or motivation.

An officer's evil or bad intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional.

Comment:  In a multi-plaintiff or multi-defendant case, the trial judge should consider naming each individual specifically in lieu of using the generic term "officers" or "defendants." In *Chinaryan*, the Ninth Circuit explained that the jury instructions were "confusing" where the instructions stated that "to establish an unreasonable seizure in this case, the plaintiffs must prove by a preponderance of the evidence that the officers"—plural—"used excessive force." *Chinaryan v. City of Los Angeles*, 113 F.4th 888, 905 (9th Cir. 2024) (emphasis in original). The "officers"jury instruction language was confusing because it "required the jury to evaluate the excessiveness of the force used by the officers collectively rather than consider whether any single officer used excessive force." *Id.* In light of *Chinaryan*, the trial judge may consider using a special verdict to identify the specific findings as to each plaintiff and defendant.

Source:  *Graham v. Connor*, 490 U.S. 386, 388 (1989); *Scott v. United States*, 436 U.S. 128, 138; *Baker v. County of San Diego*, No. 09-CV-1194-BEN, 2012 WL 1903899, at *2 (S.D. Cal. May 24, 2012)

**Officer's Subjective Motives or Intent Irrelevant - Excessive Force – Lopes**

In the course of this trial, you may have heard testimony or evidence relating to alleged improper motivations or intentions of the individual Defendants. You are not to consider such evidence in determining whether the use of force was reasonable.

In a § 1983 action for excessive force, you are not to consider subjective motives or intents that Taylor Lopes allegedly had in determining whether Taylor Lopes used excessive force against Plaintiff on June 18, 2019.

The pertinent question in excessive force cases is whether the use of force was objectively reasonable in light of the facts and circumstances confronting Taylor Lopes without regard to his underlying intent or motivation.

An officer's evil or bad intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional.

Comment:  In a multi-plaintiff or multi-defendant case, the trial judge should consider naming each individual specifically in lieu of using the generic term "officers" or "defendants." In *Chinaryan*, the Ninth Circuit explained that the jury instructions were "confusing" where the instructions stated that "to establish an unreasonable seizure in this case, the plaintiffs must prove by a preponderance of the evidence that the officers"—plural—"used excessive force." *Chinaryan v. City of Los Angeles*, 113 F.4th 888, 905 (9th Cir. 2024) (emphasis in original). The "officers"jury instruction language was confusing because it "required the jury to evaluate the excessiveness of the force used by the officers collectively rather than consider whether any single officer used excessive force." *Id.* In light of *Chinaryan*, the trial judge may consider using a special verdict to identify the specific findings as to each plaintiff and defendant.

Source:  *Graham v. Connor*, 490 U.S. 386, 388 (1989); *Scott v. United States*, 436 U.S. 128, 138; *Baker v. County of San Diego*, No. 09-CV-1194-BEN, 2012 WL 1903899, at *2 (S.D. Cal. May 24, 2012)

**Officer's Alleged Negligence or Negligent Tactics Irrelevant - Excessive Force - Compston**

In the course of this trial, you may have heard testimony or evidence that one or more of the Defendants was negligent in the events preceding the shooting, including that one or more of the Defendants utilized negligent tactics, failed to follow proper protocols prior to the incident, or should have taken another course of action. You are not to consider such evidence in determining whether the use of force was reasonable.

An officer's negligent conduct in the events preceding the use of force, as well as the use of force itself, does not constitute a violation of the Plaintiff's Fourth Amendment rights to be free from excessive force. In determining whether the use of force exercised by Neil Compston was reasonable under the Fourth Amendment, your focus is to be on the moment that Neil Compston exercised the use of force and not on the events leading up to that point.

Even where a law enforcement officer allegedly creates a dangerous situation by his negligent actions, that law enforcement officer is still legally entitled to use force, including lethal force, to defend himself and others and the use of force is not considered unreasonable due to the officer's alleged negligence.

Even where an officer's allegedly negligent actions in the events preceding the use of force are alleged to have provoked a violent reaction by the Plaintiff which led to the use of force, the officer's allegedly negligent acts cannot transform an otherwise reasonable use of force into a violation of the Fourth Amendment.

Comment:  In a multi-plaintiff or multi-defendant case, the trial judge should consider naming each individual specifically in lieu of using the generic term "officers" or "defendants." In *Chinaryan*, the Ninth Circuit explained that the jury instructions were "confusing" where the instructions stated that "to establish an unreasonable seizure in this case, the plaintiffs must prove by a preponderance of the evidence that the officer*s*"—plural—"used excessive force." *Chinaryan v. City of Los Angeles*, 113 F.4th 888, 905 (9th Cir. 2024) (emphasis in original). The "officer*s*"jury instruction language was confusing because it "required the jury to evaluate the

1    excessiveness of the force used by the officers collectively rather than consider whether any
single officer used excessive force." *Id.* In light of *Chinaryan*, the trial judge may consider using
2    a special verdict to identify the specific findings as to each plaintiff and defendant.

3    Source:  *Biscotti v. Yuba City*, 636 F. App'x 419, 421–22 (9th Cir. 2016); *Daniels v. Williams*,
474 U.S. 327 (1986); *Billington v. Smith*, 292 F.3d 1177, 1190 (9th Cir, 2002)(abrogated on other
4    grounds by *County of Los Angeles v. Mendez*, 581 U.S. 420 (2017)); *Brower v. County of lnyo*,
489 U.S. 593, 596-97 (1989);  *Espinosa v. City and County of San Francisco,* 598 F.3d 528, 549,
5    n. 16 (9th Cir. 2010)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendants' Joint Proposed Jury Instructions (1:20-CV-01793-KJM-SKO)

**Officer's Alleged Negligence or Negligent Tactics Irrelevant - Excessive Force - Silveira**

In the course of this trial, you may have heard testimony or evidence that one or more of the Defendants was negligent in the events preceding the shooting, including that one or more of the Defendants utilized negligent tactics, failed to follow proper protocols prior to the incident, or should have taken another course of action. You are not to consider such evidence in determining whether the use of force was reasonable.

An officer's negligent conduct in the events preceding the use of force, as well as the use of force itself, does not constitute a violation of the Plaintiff's Fourth Amendment rights to be free from excessive force. In determining whether the use of force exercised by John Silveira was reasonable under the Fourth Amendment, your focus is to be on the moment that John Silveira exercised the use of force and not on the events leading up to that point.

Even where a law enforcement officer allegedly creates a dangerous situation by his negligent actions, that law enforcement officer is still legally entitled to use force, including lethal force, to defend himself and others and the use of force is not considered unreasonable due to the officer's alleged negligence.

Even where an officer's allegedly negligent actions in the events preceding the use of force are alleged to have provoked a violent reaction by the Plaintiff which led to the use of force, the officer's allegedly negligent acts cannot transform an otherwise reasonable use of force into a violation of the Fourth Amendment.

Comment:  In a multi-plaintiff or multi-defendant case, the trial judge should consider naming each individual specifically in lieu of using the generic term "officers" or "defendants." In *Chinaryan*, the Ninth Circuit explained that the jury instructions were "confusing" where the instructions stated that "to establish an unreasonable seizure in this case, the plaintiffs must prove by a preponderance of the evidence that the officers"—plural—"used excessive force." *Chinaryan v. City of Los Angeles*, 113 F.4th 888, 905 (9th Cir. 2024) (emphasis in original). The "officers" jury instruction language was confusing because it "required the jury to evaluate the

1    excessiveness of the force used by the officers collectively rather than consider whether any
     single officer used excessive force." *Id.* In light of *Chinaryan*, the trial judge may consider using
2    a special verdict to identify the specific findings as to each plaintiff and defendant.

3    Source: *Biscotti v. Yuba City*, 636 F. App'x 419, 421–22 (9th Cir. 2016); *Daniels v. Williams*,
     474 U.S. 327 (1986); *Billington v. Smith*, 292 F.3d 1177, 1190 (9th Cir, 2002)(abrogated on other
4    grounds by *County of Los Angeles v. Mendez*, 581 U.S. 420 (2017)); *Brower v. County of lnyo*,
     489 U.S. 593, 596-97 (1989);  *Espinosa v. City and County of San Francisco,* 598 F.3d 528, 549,
5    n. 16 (9th Cir. 2010)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendants' Joint Proposed Jury Instructions (1:20-CV-01793-KJM-SKO)

**Officer's Alleged Negligence or Negligent Tactics Irrelevant - Excessive Force - Sinclair**

In the course of this trial, you may have heard testimony or evidence that one or more of the Defendants was negligent in the events preceding the shooting, including that one or more of the Defendants utilized negligent tactics, failed to follow proper protocols prior to the incident, or should have taken another course of action. You are not to consider such evidence in determining whether the use of force was reasonable.

An officer's negligent conduct in the events preceding the use of force, as well as the use of force itself, does not constitute a violation of the Plaintiff's Fourth Amendment rights to be free from excessive force. In determining whether the use of force exercised by Edward Sinclair was reasonable under the Fourth Amendment, your focus is to be on the moment that Edward Sinclair exercised the use of force and not on the events leading up to that point.

Even where a law enforcement officer allegedly creates a dangerous situation by his negligent actions, that law enforcement officer is still legally entitled to use force, including lethal force, to defend himself and others and the use of force is not considered unreasonable due to the officer's alleged negligence.

Even where an officer's allegedly negligent actions in the events preceding the use of force are alleged to have provoked a violent reaction by the Plaintiff which led to the use of force, the officer's allegedly negligent acts cannot transform an otherwise reasonable use of force into a violation of the Fourth Amendment.

Comment:  In a multi-plaintiff or multi-defendant case, the trial judge should consider naming each individual specifically in lieu of using the generic term "officers" or "defendants." In *Chinaryan*, the Ninth Circuit explained that the jury instructions were "confusing" where the instructions stated that "to establish an unreasonable seizure in this case, the plaintiffs must prove by a preponderance of the evidence that the officer**s**"—plural—"used excessive force." *Chinaryan v. City of Los Angeles*, 113 F.4th 888, 905 (9th Cir. 2024) (emphasis in original). The "officer**s**"jury instruction language was confusing because it "required the jury to evaluate the

1    excessiveness of the force used by the officers collectively rather than consider whether any
single officer used excessive force." *Id.* In light of *Chinaryan*, the trial judge may consider using
2    a special verdict to identify the specific findings as to each plaintiff and defendant.

3    Source:  *Biscotti v. Yuba City*, 636 F. App'x 419, 421–22 (9th Cir. 2016); *Daniels v. Williams*,
474 U.S. 327 (1986); *Billington v. Smith*, 292 F.3d 1177, 1190 (9th Cir, 2002)(abrogated on other
4    grounds by *County of Los Angeles v. Mendez*, 581 U.S. 420 (2017)); *Brower v. County of lnyo*,
489 U.S. 593, 596-97 (1989);  *Espinosa v. City and County of San Francisco,* 598 F.3d 528, 549,
5    n. 16 (9th Cir. 2010)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Officer's Alleged Negligence or Negligent Tactics Irrelevant - Excessive Force - Lopes**

In the course of this trial, you may have heard testimony or evidence that one or more of the Defendants was negligent in the events preceding the shooting, including that one or more of the Defendants utilized negligent tactics, failed to follow proper protocols prior to the incident, or should have taken another course of action. You are not to consider such evidence in determining whether the use of force was reasonable.

An officer's negligent conduct in the events preceding the use of force, as well as the use of force itself, does not constitute a violation of the Plaintiff's Fourth Amendment rights to be free from excessive force. In determining whether the use of force exercised by Taylor Lopes was reasonable under the Fourth Amendment, your focus is to be on the moment that Taylor Lopes exercised the use of force and not on the events leading up to that point.

Even where a law enforcement officer allegedly creates a dangerous situation by his negligent actions, that law enforcement officer is still legally entitled to use force, including lethal force, to defend himself and others and the use of force is not considered unreasonable due to the officer's alleged negligence.

Even where an officer's allegedly negligent actions in the events preceding the use of force are alleged to have provoked a violent reaction by the Plaintiff which led to the use of force, the officer's allegedly negligent acts cannot transform an otherwise reasonable use of force into a violation of the Fourth Amendment.

Comment:  In a multi-plaintiff or multi-defendant case, the trial judge should consider naming each individual specifically in lieu of using the generic term "officers" or "defendants." In *Chinaryan*, the Ninth Circuit explained that the jury instructions were "confusing" where the instructions stated that "to establish an unreasonable seizure in this case, the plaintiffs must prove by a preponderance of the evidence that the officer<u>s</u>"—plural—"used excessive force." *Chinaryan v. City of Los Angeles*, 113 F.4th 888, 905 (9th Cir. 2024) (emphasis in original). The "officer<u>s</u>"jury instruction language was confusing because it "required the jury to evaluate the

1   excessiveness of the force used by the officers collectively rather than consider whether any
    single officer used excessive force." *Id.* In light of *Chinaryan*, the trial judge may consider using

2   a special verdict to identify the specific findings as to each plaintiff and defendant.

3   Source: *Biscotti v. Yuba City*, 636 F. App'x 419, 421–22 (9th Cir. 2016); *Daniels v. Williams*,
    474 U.S. 327 (1986); *Billington v. Smith*, 292 F.3d 1177, 1190 (9th Cir, 2002)(abrogated on other

4   grounds by *County of Los Angeles v. Mendez*, 581 U.S. 420 (2017)); *Brower v. County of lnyo*,
    489 U.S. 593, 596-97 (1989); *Espinosa v. City and County of San Francisco,* 598 F.3d 528, 549,

5   n. 16 (9th Cir. 2010)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendants' Joint Proposed Jury Instructions (1:20-CV-01793-KJM-SKO)

1
2
3
4

**Causation – Section 1983 - Compston**

In a § 1983 action, Plaintiffs must also demonstrate that Neil Compston's acts that deprived

Plaintiff of his rights were the actionable cause of the claimed injuries to Plaintiff.

5
6
7
8
9
10

<u>Comment</u>:  In a multi-plaintiff or multi-defendant case, the trial judge should consider naming each individual specifically in lieu of using the generic term "officers" or "defendants." In *Chinaryan*, the Ninth Circuit explained that the jury instructions were "confusing" where the instructions stated that "to establish an unreasonable seizure in this case, the plaintiffs must prove by a preponderance of the evidence that the officer**s**"—plural—"used excessive force." *Chinaryan v. City of Los Angeles*, 113 F.4th 888, 905 (9th Cir. 2024) (emphasis in original). The "officer**s**"jury instruction language was confusing because it "required the jury to evaluate the excessiveness of the force used by the officers collectively rather than consider whether any single officer used excessive force." *Id.* In light of *Chinaryan*, the trial judge may consider using a special verdict to identify the specific findings as to each plaintiff and defendant.

11
12

Source:  MCJI § 9.2

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Causation – Section 1983 - Silveira**

In a § 1983 action, Plaintiffs must also demonstrate that John Silveira's acts that deprived

Plaintiff of his rights were the actionable cause of the claimed injuries to Plaintiff.

Comment:  In a multi-plaintiff or multi-defendant case, the trial judge should consider naming each individual specifically in lieu of using the generic term "officers" or "defendants." In *Chinaryan*, the Ninth Circuit explained that the jury instructions were "confusing" where the instructions stated that "to establish an unreasonable seizure in this case, the plaintiffs must prove by a preponderance of the evidence that the officer**s**"—plural—"used excessive force." *Chinaryan v. City of Los Angeles*, 113 F.4th 888, 905 (9th Cir. 2024) (emphasis in original). The "officer**s**"jury instruction language was confusing because it "required the jury to evaluate the excessiveness of the force used by the officers collectively rather than consider whether any single officer used excessive force." *Id.* In light of *Chinaryan*, the trial judge may consider using a special verdict to identify the specific findings as to each plaintiff and defendant.

Source:  MCJI § 9.2

**Causation – Section 1983 - Sinclair**

In a § 1983 action, Plaintiffs must also demonstrate that Edward Sinclair's acts that deprived

Plaintiff of his rights were the actionable cause of the claimed injuries to Plaintiff.

<u>Comment</u>:  In a multi-plaintiff or multi-defendant case, the trial judge should consider naming each individual specifically in lieu of using the generic term "officers" or "defendants." In *Chinaryan*, the Ninth Circuit explained that the jury instructions were "confusing" where the instructions stated that "to establish an unreasonable seizure in this case, the plaintiffs must prove by a preponderance of the evidence that the officer**s**"—plural—"used excessive force." *Chinaryan v. City of Los Angeles*, 113 F.4th 888, 905 (9th Cir. 2024) (emphasis in original). The "officer**s**"jury instruction language was confusing because it "required the jury to evaluate the excessiveness of the force used by the officers collectively rather than consider whether any single officer used excessive force." *Id.* In light of *Chinaryan*, the trial judge may consider using a special verdict to identify the specific findings as to each plaintiff and defendant.

Source:  MCJI § 9.2

**Causation – Section 1983 - Lopes**

In a § 1983 action, Plaintiffs must also demonstrate that Taylor Lopes' acts that deprived Plaintiff of his rights were the actionable cause of the claimed injuries to Plaintiff.

Comment:  In a multi-plaintiff or multi-defendant case, the trial judge should consider naming each individual specifically in lieu of using the generic term "officers" or "defendants." In *Chinaryan*, the Ninth Circuit explained that the jury instructions were "confusing" where the instructions stated that "to establish an unreasonable seizure in this case, the plaintiffs must prove by a preponderance of the evidence that the officer**s**"—plural—"used excessive force." *Chinaryan v. City of Los Angeles*, 113 F.4th 888, 905 (9th Cir. 2024) (emphasis in original). The "officer**s**"jury instruction language was confusing because it "required the jury to evaluate the excessiveness of the force used by the officers collectively rather than consider whether any single officer used excessive force." *Id.* In light of *Chinaryan*, the trial judge may consider using a special verdict to identify the specific findings as to each plaintiff and defendant.

Source:  MCJI § 9.2

**Damages—Proof**

It is the duty of the Court to instruct you about the measure of damages. By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.

If you find for the plaintiff [on the plaintiff's [*specify type of claim*] claim], you must determine the plaintiff's damages. The plaintiff has the burden of proving damages by a preponderance of the evidence. Damages means the amount of money that will reasonably and fairly compensate the plaintiff for any injury you find was caused by the defendant. You should consider the following:

 [*Insert types of damages. See Instruction 5.2 (Measures of Types of Damages)*]

It is for you to determine what damages, if any, have been proved.

Your award must be based upon evidence and not upon speculation, guesswork or conjecture.

Source:  MCJI § 5.1

**Measures of Types of Damages**

In determining the measure of damages, you should consider:

[The nature and extent of the injuries;]

[The [disability] [disfigurement] [loss of enjoyment of life] experienced [and that with reasonable probability will be experienced in the future];]

[The [mental,] [physical,] [emotional] pain and suffering experienced [and that with reasonable probability will be experienced in the future];]

[The reasonable value of necessary medical care, treatment, and services received to the present time;]

[The reasonable value of necessary medical care, treatment, and services that with reasonable probability will be required in the future;]

[The reasonable value of [wages] [earnings] [earning capacity] [salaries] [employment] [business opportunities] [employment opportunities] lost up to the present time;]

[The reasonable value of [wages] [earnings] [earning capacity] [salaries] [employment] [business opportunities] [employment opportunities] that with reasonable probability will be lost in the future;]

[The reasonable value of necessary [household help] [services other than medical] [and] [expenses] required up to the present time;]

[The reasonable value of necessary [household help] [services other than medical] [and] [expenses] that with reasonable probability will be required in the future;]

[The reasonable value of necessary repairs to any property that was damaged;]

[The difference between the fair market value of any damaged property immediately before the occurrence and its fair market value immediately thereafter;] [and]

[The reasonable value of necessary repairs to any property that was damaged plus the difference between the fair market value of the property immediately before the occurrence and its fair market value after it is repaired.]

[The lesser of the following:

1    the reasonable cost of necessary repairs to any property that was damaged plus the difference between the fair market value of the property immediately before the occurrence and its fair market value after it is repaired; or

2    the difference between the fair market value of the property immediately before the occurrence and the fair market value of the unrepaired property immediately after the occurrence.]

69

1         [Such sum as will reasonably compensate for any loss of use of any damaged property
2    during the time reasonably required for its [repair] [replacement].]

3

4    Source:  MCJI § 5.2.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendants' Joint Proposed Jury Instructions (1:20-CV-01793-KJM-SKO)

**Mitigation of Damages**

Plaintiff had a duty to use reasonable efforts to mitigate his damages. To mitigate means to avoid or reduce damages.

Defendants have the burden of proving by a preponderance of the evidence:

      1. That Plaintiff failed to use reasonable efforts to mitigate damages; and

      2. The amount by which damages would have been mitigated.

Source:  MCJI § 5.3.

**Damages Arising in the Future—Discount to Present Cash Value**

 [Any award for future economic damages must be for the present cash value of those damages.]

[Noneconomic damages [such as [pain and suffering] [disability] [disfigurement] [and] [*specify other noneconomic damages*]] are not reduced to present cash value.]

Present cash value means the sum of money needed now, which, when invested at a reasonable rate of return, will pay future damages at the times and in the amounts that you find the damages [will be incurred] [or] [would have been received].

The rate of return to be applied in determining present cash value should be the interest that can reasonably be expected from safe investments that can be made by a person of ordinary prudence, who has ordinary financial experience and skill.  [You should also consider decreases in the value of money that may be caused by future inflation.]

Source:  MCJI § 5.4

**Punitive Damages**

If you find for Plaintiff, you may, but are not required to, award punitive damages. The purposes of punitive damages are to punish a defendant and to deter similar acts in the future. Punitive damages may not be awarded to compensate a plaintiff.

The Plaintiff has the burden of proving by a preponderance of the evidence on his Section 1983 claim against Defendants that punitive damages should be awarded and, if so, the amount of any such damages.

You may award punitive damages only if you find that Defendants' conduct that harmed Plaintiff was malicious, oppressive or in reckless disregard of Plaintiff's rights.

Conduct is malicious if it is accompanied by ill will, or spite, or if it is for the purpose of injuring the plaintiff. Conduct is in reckless disregard of the plaintiff's rights if, under the circumstances, it reflects complete indifference to the plaintiff's safety or rights, or if the defendant acts in the face of a perceived risk that its actions will violate the plaintiff's rights under federal law. An act or omission is oppressive if the defendant injures or damages or otherwise violates the rights of the plaintiff with unnecessary harshness or severity, such as by misusing or abusing authority or power or by taking advantage of some weakness or disability or misfortune of the plaintiff.

If you find that punitive damages are appropriate, you must use reason in setting the amount. Punitive damages, if any, should be in an amount sufficient to fulfill their purposes but should not reflect bias, prejudice or sympathy toward any party. In considering the amount of any punitive damages, consider the degree of reprehensibility of the Defendants' conduct.

In addition, you may consider the relationship of any award of punitive damages to any actual harm inflicted on the plaintiff.

[Punitive damages may not be awarded against [*specify defendant*.] [You may impose punitive damages against one or more of the defendants and not others and may award different amounts against different defendants.] [Punitive damages may be awarded even if you award

73

plaintiff only nominal, and not compensatory, damages.]

Source:  MCJI § 5.5

**9.5 Section 1983 Claim Against Local Governing Body Defendants**

**Based on Unlawful Official Policy, Practice, or Custom**

**—Elements and Burden of Proof**

In order to prevail on the plaintiff's § 1983 claim against defendant County of Kings alleging liability based on an official policy, practice, or custom, the plaintiff must prove each of the following elements by a preponderance of the evidence:

1.      Defendant Taylor Lopes acted under color of state law;

2.      the act[s] of Defendant Taylor Lopes deprived the plaintiff of particular rights under the United States Constitution as explained in later instructions;

3.      Defendant Taylor Lopes acted pursuant to an expressly adopted official policy or a widespread or longstanding practice or custom of the defendant County of Kings; and

4.      the defendant County of Kings' official policy or widespread or longstanding practice or custom caused the deprivation of the plaintiff's rights by the defendant Taylor Lopes; that is, the County of Kings' official policy or widespread or longstanding practice or custom is so closely related to the deprivation of the plaintiff's rights as to be the moving force that caused the ultimate injury.

A person acts "under color of state law" when the person acts or purports to act in the performance of official duties under any state, county, or municipal law, ordinance or regulation. The parties have stipulated Defendant Taylor Lopes acted under color of state law.

"Official policy" means a formal policy, such as a rule or regulation adopted by the

defendant County of Kings, resulting from a deliberate choice to follow a course of action made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.

"Practice or custom" means any longstanding, widespread, or well-settled practice or custom that constitutes a standard operating procedure of the defendant County of Kings. A practice or custom can be established by repeated constitutional violations that were not properly investigated and for which the violators was not disciplined, reprimanded or punished.

If you find that the plaintiff has proved each of these elements, and if you find that the plaintiff has proved all the elements the plaintiff is required to prove under Instruction[s] [*specify the instruction[s] that deal with the particular right[s]*], your verdict should be for the plaintiff. If, on the other hand, you find that the plaintiff has failed to prove any one or more of these elements, your verdict should be for the defendant.

**9.8 Section 1983 Claim Against Local Governing Body Defendants Based on a Policy That Fails to Prevent Violations of Law or a Policy of Failure to Train—Elements and Burden of Proof**

In order to prevail on plaintiff Fredie Quair's § 1983 claim against defendant County of Kings alleging liability based on a policy of a failure to train its police officers, plaintiff Fredie Quair must prove each of the following elements by a preponderance of the evidence:

First, the acts of Defendant Taylor Lopes deprived plaintiff Fredie Quair of his particular rights under the United States Constitution as explained in later instructions;

Second, Defendant Taylor Lopes acted under color of state law;

Third, the training policies of the defendant County of Kings were not adequate to train its police officers to handle the usual and recurring situations with which they must deal;

Fourth, the defendant County of Kings was deliberately indifferent to the known or obvious consequences of its failure to train its police officers adequately; and

Fifth, the failure of the defendant County of Kings to provide adequate training caused the deprivation of plaintiff Fredie Quair's rights by Defendant Taylor Lopes; that is, defendant County of Kings' failure to train played a substantial part in bringing about or actually causing the injury or damage to plaintiff Fredie Quair.

A person acts "under color of state law" when the person acts or purports to act in the performance of official duties under any state, county, or municipal law, ordinance or regulation. The parties have stipulated that Defendant Taylor Lopes acted under color of state law.

A policy is a deliberate choice to follow a course of action made from among various

77

alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.  A policy of inaction or omission may be based on a failure to implement procedural safeguards to prevent constitutional violations.  To establish that there is a policy based on a failure to preserve constitutional rights, plaintiff Fredie Quair must show, in addition to a constitutional violation, that this policy amounts to deliberate indifference to plaintiff Fredie Quair's constitutional rights, and that the policy caused the violation, in the sense that the municipality could have prevented the violation with an appropriate policy.

"Deliberate indifference" is the conscious choice to disregard a known or obvious consequences of one's acts or omissions.  Plaintiff Fredie Quair may prove deliberate indifference in this case by showing that the facts available to defendant County of Kings put it on actual or constructive notice that its failure to train adequately was substantially certain to result in the violation of the constitutional rights of persons such as plaintiff Fredie Quair due to Defendant Taylor Lopes' conduct.

If you find that plaintiff Fredie Quair has proved each of these elements, and if you find that plaintiff Fredie Quair has proved all the elements plaintiff Fredie Quair is required to prove under Instruction[s] [*specify the instruction[s] that deal with the particular right[s]*], your verdict should be for plaintiff Fredie Quair.  If, on the other hand, plaintiff Fredie Quair has failed to prove any one or more of these elements, your verdict should be for defendant Fredie Quair.

FR2021301267

Defendants' Joint Proposed Jury Instructions (1:20-CV-01793-KJM-SKO)

# CERTIFICATE OF SERVICE

Case Name:   **Quair v. County of Kings, et al.**        No.    **1:20-CV-01793-KJM-SKO**

I hereby certify that on <u>October 27, 2025</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

- **DEFENDANTS' JOINT PROPOSED JURY INSTRUCTIONS**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>October 27, 2025</u>, at San Francisco, California.


|  |  |
|---|---|
| G. Guardado | */s/ G. Guardado* |
| Declarant | Signature |

FR2021301267
44847894