1  ROB BONTA, State Bar No. 202668
   Attorney General of California
2  NORMAN D. MORRISON, State Bar No. 212090
   Supervising Deputy Attorney General
3    2550 Mariposa Mall, Room 5090
     Fresno, CA 93721-2271
4    Telephone: (559) 705-2304
     Fax: (559) 445-5106
5    E-mail: Norman.Morrison@doj.ca.gov
   *Attorneys for Defendants Neil Compston, John*
6  *Silveira and Edward Sinclair*

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10                            CIVIL DIVISION

11

12  **FREDDIE QUAIR,**                    Case No. 1:20-CV-01793-KJM-SKO

13                       Plaintiff,       **DEFENDANT NEIL COMPSTON, JOHN
                                          SILVEIRA, AND EDWARD SINCLAR'S**
14       v.                               **TRIAL BRIEF**

15                                        Trial Date:    November 10, 2025
    **COUNTY OF KINGS; TAYLOR LOPES;**    Action Filed:  December 21, 2020
16  **NEIL COMPSTON; JOHN SILVERIA;**
    **EDWARD SINCLAIR; and DOES 1**
17  **THROUGH 10, inclusive,**

18                       Defendants.

19

20       Defendants NEIL COMPSTON, JOHN SILVEIRA and EDWARD SINCLAIR (State

21  Defendants) hereby submit the following trial brief:

22  **I.    SHORT STATEMENT OF FACTS**

23       Plaintiff, Freddie Quair, Jr., alleges a single cause of action for excessive force in

24  violation of the Fourth Amendment against three Special Agents from the California Department

25  of Justice, Neil Compston, John Silveira, and Edward Sinclair, and a co-Defendant employed by

26  the County of Kings Sheriff's Department, arising out of an officer involved shooting that

27  occurred during the early morning hours of June 18, 2019, in Kings County, California during a

28

                                          1

felony traffic stop initiated by Kings County Sheriff's Sergeant Taylor Lopes. Plaintiff also alleges two *Monell*-based claims against the County of Kings relating to the County's training of its deputies and its policies and procedures. The State Defendants are not a party to these claims. There are no California state law claims alleged in the Complaint, and Plaintiff did not file a Government Claim with the State of California.

On June 18, 2019, Plaintiff had been one of the subjects of a lengthy multi-agency investigation into the operations of the Norteño criminal street gang and the Nuestra Familia prison gang in the Central Valley region called Operation Red Reaper. This investigation included members of the California Department of Justice, the Federal Bureau of Investigation, the Kings County Sheriff's Department, local police departments, and other agencies and focused on illegal activities that included the sale and transportation of narcotics and illegal weapons. During the investigation Plaintiff was observed, through visual and electronic surveillance trafficking illegal firearms and engaging in the sale and distribution of narcotics. An arrest warrant was prepared, and issued, by the Kings County Superior Court for Plaintiff on various felony charges, including the sale of narcotics and firearms, and the plan was for simultaneous arrests and searches to be performed throughout the region during the early morning hours on June 18, 2019, for Plaintiff and numerous others who were the focus of Operation Red Reaper.

During the early morning hours of June 18, 2019, Plaintiff and two of his accomplices engaged in an armed home invasion robbery in Corcoran, California, where they targeted a 14-year old boy and his family. Plaintiff was armed with a firearm during the home invasion robbery, and during the process of committing this violent felony, multiple shots were fired and Plaintiff's accomplice was shot required emergency surgery and hospitalization. Plaintiff fled the scene of the felony, and shortly thereafter was picked up by Jose Quintero, after calling Quintero and discussing the robbery and shooting. Agents monitored this telephone call.

The Defendants were notified of Plaintiff's involvement in the home invasion robbery and his location, and Defendants immediately began traveling from various locations towards where Plaintiff had instructed Quintero to pick him up. Plaintiff was seen by one of the Defendants on

the side of the road, and Plaintiff then got into a vehicle driven by Quintero. The Defendants then decided to perform a felony stop on Plaintiff and take him into custody. The felony stop was made by Kings County Sheriff's Sergeant Taylor Lopes, driving a marked patrol vehicle.

Plaintiff refused to follow Lopes' instructions during the traffic stop. Instead, Plaintiff suddenly and aggressively exited the vehicle, and then immediately took up what the Defendants recognized as an isosceles shooting stance, used by individuals for the purpose of firing a handgun. Plaintiff extended his arms and hands a part of the isosceles shooting stance, aiming towards several of the Defendants, before suddenly jerking his hands upwards to simulate the recoil associated with firing a handgun. Fearing for their lives and the lives of their fellow officers, and believing that Plaintiff was armed with a firearm and was now firing at them, the Defendants fired multiple rounds at Plaintiff in self-defense.

Plaintiff was eventually taken into custody after continuing to resist. Plaintiff plead guilty to various felony charges, including attempted homicide in connection with the armed home invasion robbery, as well as for various other felonies, and was sentenced to a prison.

## II.    ADDITIONAL STIPULATIONS NOT IN THE PRETRIAL ORDER

State Defendants are not aware of any additional admissions or stipulations other than those set forth in the Pretrial Order, ECF No. 141, or the Amended Pretrial Order, ECF No. 279.

## III.    ADDITIONAL ADMISSIONS NOT IN THE PRETRIAL ORDER

State Defendants are unaware of any additional admissions not set forth in the pretrial order.

## IV.    LEGAL ISSUES

### A.  Phasing of Trial

As discussed in more detail in the State Defendants' various motions in limine, including Motion in Limine No. 16, the State Defendants request that the Court bifurcate, or potentially trifurcate, this trial to protect the State Defendants' rights, avoid jury confusion and misapplication of law and facts, avoid undue prejudice, and avoid undue delay and use of Court resources. There is only one common claim against all of the individual Defendants – Plaintiff's

Fourth Amendment Excessive force claim. Plaintiff's other claims are *Monell*-based claims against the County of Kings. (ECF 1). These claims are not alleged against the State Defendants.

The State Defendants therefore request that this Court bifurcate the trial into at least two phases. The first phase of the trial would include only the Fourth Amendment excessive force claims against the individual Defendants, and the issues and evidence relating to the *Monell* claims would not be addressed or decided during that phase. Instead, the jury would focus only on the claims common to all of the individual Defendants, and issue findings accordingly.

Bifurcating the trial would accordingly serve an important judicial purpose of streamlining the proceedings, as well as protecting the State Defendants' rights against undue prejudice and jury confusion regarding the *Monell* claims. All parties would only need to present evidence and testimony in the first phase regarding the use of force claims, thereby significantly reducing the number of witnesses, exhibits, testimony, and evidence needed to be presented at that stage. Bifurcation would also protect the State Defendants' rights against undue prejudice and juror confusion relating to any alleged prior actions of Sergeant Lopes', as well as evidence relating to prior settlements that the County of Kings may have had with third parties, as well evidence and testimony relating to the County of Kings' training of its employees, the County's policies and procedures, and its customs and practices, all of which may be wrongfully attributed to the State Defendants if the trial is not bifurcated.

The State Defendants would also request that the Court consider potentially trifurcating the case as to the limited issue of punitive damages.

B.  Issues Relating to Use of Force

The inquiry into the reasonableness of use of force by law enforcement officers requires analyzing the totality of the circumstances known to the officers, and there is "no easy-to-apply legal test or on/off switch in this context." *Barnes v. Felix*, 605 U.S. 73, 80 (2025). Deciding whether a use of force was objectively reasonable demands "careful attention to the facts and circumstances relating to the incident, as then known to the officer." *Id.*

///

      i.   <u>Courts Have Identified Factors to Be Utilized in the Analysis of a Fourth Amendment Excessive Force Claim.</u>

A claim for excessive force under 42 U.S.C. § 1983 is analyzed under the Fourth Amendment's objective reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989); *Curnow v. Ridgecrest Police*, 952 F.2d 321, 325 (9th Cir. 1991) (excessive force claims analyzed under the Fourth Amendment and its "reasonableness" standard). In analyzing the government's interests in a use of force case, the courts are required to consider a number of different factors, including: (1) the severity of the crime, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect actively resisted arrest or attempted to evade arrest by flight, and any other exigent circumstances. *Estate of Diaz v. City of Anaheim*, 840 F.3d 592, 605 (9th Cir. 2016); *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011). The "stopped person's conduct is always relevant because it indicates the nature and level of threat he poses, either to the officer or to others." *Barnes*, 605 U.S. at 80.

The most important factor in the reasonableness analysis is the threat to the safety of the officers or others that is posed by the plaintiff at the time of the incident. *Smith v. City of Hemet*, 394 F.3d 689, 702 (9th Cir. 2005); *Vos v. City of Newport Beach*, 892 F.3d 1024, 1032 (9th Cir. 2018). The reasonableness of an officer's use of force is to be judged from the perspective of a reasonable officer on the scene, rather than with 20/20 hindsight vision, and the ultimate question is whether the officers' actions were "objectively reasonable" in light of the facts and circumstances confronting them. *Graham*, 490 U.S. at 396-97; *Wilkinson v. Torres*, 610 F.3d 546, 551 (9th Cir. 2010) (explaining the "critical inquiry is what the [defendant officer] perceived.")

The penultimate question is whether the force used was reasonable in light of all the relevant circumstances. *Smith*, 394 F.3d at 704. The events leading up to the use of force are encompassed in the facts and circumstances used for the reasonableness analysis. *Hung Lam v. City of San Jose*, 869 F.3d 1077, 1087 (9th Cir. 2017). Where a suspect is armed, or reasonably suspected of being armed, a furtive movement, harrowing gesture or serious verbal threat can create an immediate threat supporting the use of deadly force. *George v. Morris*, 736 F.3d 829, 838 (9th Cir. 2013). The severity of the crime at issue is also to be considered in the analysis.

5

*Graham*, 490 U.S. at 396. Officers are not required to use the least intrusive degree of force available. *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994). Nor are officers required to delay firing until after a suspect has actually turned his weapon on them or fired at them. *George*, 736 F.3d at 838; *Banks v. Mortimer*, No. 18-CV-07391-HSG, 2022 WL 3216401, at *19 (N.D. Cal. Aug. 9, 2022); *Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 821 (11th Cir. 2010); *Elliott v. Leavitt*, 99 F.3d 640, 644 (4th Cir. 1996).

      ii.    <u>The Factors Used in Evaluating a Use of Force Support a Finding Defendants'</u> <u>Actions Were Reasonable and Did Not Constitute Excessive Force.</u>

Federal Courts have repeatedly emphasized the most important factor in determining whether an officer's use of force is reasonable is "whether the suspect posed an immediate threat to the safety of the officers or others." *S.B. v. County of San Diego*, 864 F.3d 1010, 1013 (9th Cir. 2017); *Orn v. City of Tacoma*, 949 F.3d 1167 (9th Cir. 2020).

A second factor to be considered under *Graham* is the importance of the government's interest at stake. Courts have recognized the government has a legitimate interest in apprehending criminal suspects, which is even stronger when the crime at issue is a felony. *United States v. Hensley*, 469 U.S. 221, 229 (1985); *Michoff v. El Dorado County*, No. 2:17-cv-02584-MCE-CKD P, 2022 WL 484831, at *7 (E.D. Cal. February 16, 2022).

A third factor is whether the suspect was actively resisting arrest or attempting to evade arrest by flight. *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011); *Deorle v. Rutherford*, 272 F.3d 1271, 1279-1281 (9th Cir. 2001). The crux of this factor is compliance with the law enforcement officer's requests, or the refusal to comply. *Mattos*, 661 F.3d at 450.

A court is also required to consider the "relative culpability" of the parties, i.e., which party created the dangerous situation and which party is more innocent, and that consideration used in the reasonableness of force analysis. *Espinosa*, 598 F.3d at 537(citing *Scott*, 550 U.S. at 384).

Finally, courts may also consider the availability of alternative methods of capturing or subduing a suspect. *Davis v. City of Las Vegas*, 478 F.3d 1048, 1054 (9th Cir. 2007). Plaintiff will

1    be required to establish that there were alternative methods that could, and should, have been used

2    in lieu of deadly force at the time of the incident.

3

4        iii.    <u>The Use of Force Analysis is Based Upon the Perspective of a Reasonable Officer
              At the Scene at the Time of the Incident, and is Not Judged Based Upon Facts Not
              Known at the Time and Which Could Not Have Reasonably Have Been Known or
              Anticipated.</u>

5

6        For claims of excessive force under the Fourth Amendment, the reasonableness of a

7    particular use of force is judged "from the perspective of a reasonable officer on the scene, rather

8    than with the 20/20 vision of hindsight." *Jones v. City of North Las Vegas*, 150 F.4th 1030, 1038

9    (9th Cir. 2025); *Johnson v. Myers*, 129 F.4th 1189, 1193-1194 (9th Cir. 2025); *Graham*, 490 U.S.

10   at 396. As the Supreme Court has recognized, ""The 'reasonableness' of a particular use of force

11   must be judged from the perspective of a reasonable officer on the scene, rather than with the

12   20/20 vision of hindsight." *Kisela v. Hughes*, 584 U.S. 100, 103 (2018). An "officer's use of force

13   cannot be deemed excessive based on facts that he reasonably would not have known or

14   anticipated." *Lowry v. City of San Diego*, 858 F.3d 1248, 1257 (9th Cir. 2017).

15       The opinions expressed by Plaintiff's use of force expert, Curtis Rothschiller, are nearly

16   entirely founded upon information discovered by the Defendants only *after* the incident.

17   Rothschiller concludes that the Defendants' actions constituted excessive force because it was

18   determined *after the shooting* Plaintiff was unarmed. Such opinions and conclusions are improper

19   and facially constitute conclusions based upon hindsight-based information, and therefore are

20   directly barred from being considered as part of the use of force analysis.

21       The Ninth Circuit has also recognized that a violation of the Constitution will not be found

22   where an officer has a reasonable, but mistaken, belief regarding the facts of the underlying

23   situation. "Officers can have reasonable, but mistaken, beliefs as to the facts establishing the

24   existence of an immediate threat, and in those situations courts will not hold that they have

25   violated the Constitution." *Estate of Strickland v. Nevada County*, 69 F.4th 614, 621 (9th Cir.

26   2023) (quotation marks and citations omitted) (holding that officers' perception that a plastic,

27   airsoft replica gun was a real firearm was not unreasonable). "When an officer's use of force is

28

based on a mistake of fact, we ask whether a reasonable officer would have or *should* have

accurately perceived that fact." *Napouk v. Las Vegas Metropolitan Police Department*, 123 F.4th

905, 915-916 (9th Cir. 2024). "Whether the mistake was an *honest* one is not the concern, only

whether it was a *reasonable* one." *Id.* at 916 (quoting *S.R. Nehad v. Browder*, 929 F.3d 1125,

1133 (9th Cir. 2019) (alteration marks and quotation marks omitted).) This would include the

Defendants' belief that the Plaintiff was armed, based upon their knowledge of his involvement in

the armed home invasion robbery where another individual was shot, his fleeing the scene of the

armed home invasion robbery, and his actions in taking a position known to the Defendants as

being a shooting stance while pretending he had a firearm and was firing it at the Defendants.

          iv.    <u>The Court Is to Consider the Totality of the Circumstances Known to The Officer at the Time Force Is Used</u>.

      In *Barnes*, the Supreme Court explained that the officer's decision to use force is analyzed

under a "totality of the circumstances" inquiry that is not limited to the specific moment the force

is used, and there is no time limit to the inquiry. *Barnes*, 605 U.S. at 80. As the Supreme Court

explained, "the situation at the precise time of the shooting will often be what matters most; it is,

after all, the officer's choice in that moment that is under review. But earlier facts and

circumstances may bear on how a reasonable officer would have understood and responded to

later ones." *Id.* The Supreme Court explained that:

> Prior events may show, for example, why a reasonable officer would have
> perceived otherwise ambiguous conduct of a suspect as threatening. Or instead
> they may show why such an officer would have perceived the same conduct as
> innocuous. The history of the interaction, as well as other past circumstances
> known to the officer, thus may inform the reasonableness of the use of force.

*Barnes*, 605 U.S. at 80-81.

      The *Barnes* Court proceeded to specifically discuss its decision in *Plumhoff v. Rickard*,

572 U.S. 765 (2014), where the decedent was shot and killed at the conclusion of a lengthy, high-

speed car chase. *Barnes*, 605 U.S. at 81; *Plumhoff*, 572 U.S. at 768. The *Plumhoff* Court rejected

plaintiff's argument that the use of force had occurred after the chase was "already over" and was

therefore unreasonable. *Id.* Instead, the analysis was required to consider everything that

happened during the incident relating to the officer's decision to use force, as well as decedent's attempt to again "take flight." *Barnes*, 605 U.S. at 81; *Plumhoff*, 572 U.S. at 776. The court found given all of the decedent'`s actions leading up to the moment force was used and his attempts to escape, "a reasonable officer would have concluded that the driver was intent on resuming his getaway and, if allowed to do so, would again pose a deadly threat for others." *Barnes*, 605 U.S. at 81; *Plumhoff*, 572 U.S. at 777. Accordingly, the Supreme Court held that "the shooting was justified 'at the moment' it occurred partly because of what had transpired in the preceding period. *Barnes*, 605 U.S. at 81; *Plumhoff*, 572 U.S. at 777.

For purposes of determining whether the Defendants' use of force was reasonable, the analysis is not limited to a narrow window of time. Instead, the court – and jury – are required to consider the totality of the circumstances supporting the Defendants' actions. This includes their knowledge regarding (1) the Plaintiff's criminal history and actions (including those involving the trafficking and possession of firearms); (2) Plaintiff's involvement in the armed home invasion robbery immediately before this incident; (3) shots were fired, and Plaintiff's accomplice was wounded by a bullet; (4) Plaintiff fled the scene and instructed Quintero to pick him up; (5) Quintero was also involved in the armed home invasion robbery; (6) the actions of Plaintiff and Quintero pulling into the dirt field were inconsistent with a driver's normal reaction to stopping for law enforcement; (7) Plaintiff's refusal to comply with the instructions and orders he was given during the felony stop; (8) Plaintiff aggressively exiting vehicle and taking up what the officers recognized to be an isosceles shooting stance used for the firing of a handgun; (9) Plaintiff positioning his body pointing towards the law enforcement officers, consistent with intending to fire a handgun; (10) Plaintiff intentionally taking actions simulating the possession and use of a handgun; and (11) Plaintiff engaging in physical actions simulating the recoil associated with firing a handgun, among other facts. <u>All</u> of these are factors that under *Barnes* must be considered.

/ / /

/ / /

v.    <u>Defendants' Motives and Intent Are Irrelevant to the Fourth Amendment Analysis</u>.

"The pertinent question in excessive force cases is whether the use of force was objectively reasonable in light of the facts and circumstances confronting [the officers], without regard to their underlying intent or motivation." *Perez v. City of Fresno*, 591 F.Supp.3d 725, 749 (E.D. Cal. 2022)(quoting *Graham*, 490 U.S. at 397)(internal quotation omitted).

In *Graham*, the Supreme Court specifically held that the analysis is an objective one and performed without any consideration of the officer's good or bad motivations. "An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." *Graham*, 490 U.S. at 397; *Scott v. United States*, 436 U.S. 128, 138. Further, because "[t]he Fourth Amendment inquiry is one of "objective reasonableness" under the circumstances, [] subjective concepts like "malice" and "sadism" have no proper place in that inquiry." *Graham*, 490 U.S. at 399.

C.    <u>Admissibility of Evidence of Alleged Negligent Tactics and Provocation</u>

The State Defendants anticipate that Plaintiff will seek to argue that the actions of the State Defendants prior to the incident allegedly contributed to, caused, or were a substantial factor in the eventual officer involved shooting on June 18, 2019. Specifically, Defendants anticipate that Plaintiff will argue that the State Defendants were negligent and reckless in pre-incident tactics and planning.

Any such arguments and evidence are wholly improper, inapplicable, and inadmissible in this action against the State Defendants. Plaintiff here does not allege any state law claims, including claims for negligence or negligent tactics, against the State Defendants. Unlike California negligence law, the Fourth Amendment "totality of circumstances" analysis focuses on whether the *force* used was reasonable. *Biscotti v. Yuba City*, 636 F. App'x 419, 421–22 (9th Cir. 2016). Conduct that amounts to nothing more than negligence does not constitute a Fourth Amendment violation. *Daniels v. Williams*, 474 U.S. 327 (1986); *Billington v. Smith*, 292 F.3d 1177, 1190 (9th Cir, 2002), abrogated on other grounds by *County of Los Angeles v. Mendez*, 581

10

U.S. 420 (2017); *Brower v. County of lnyo*, 489 U.S. 593, 596-97 (1989).

The analysis required under the Fourth Amendment for use of force "tends to focus more narrowly on the moment when deadly force is used," whereas state law-based claims are much broader and consider "the totality of the circumstances surrounding any use of deadly force." *Monzon v. City of Murrieta*, No. 217CV01371RGKSKX, 2019 WL 1061686, at *9, (C.D. Cal., Jan. 9, 2019), aff'd (9th Cir. 2020) 966 F.3d 946, and aff'd (9th Cir. 2020) 978 F.3d 1150. In *Barnes*, the Supreme Court recognized this doctrine, and stated that the "totality of the circumstances" ruling announced by the Court did not apply, or extend, to the question of whether or how an officer's own alleged "creation of a dangerous situation" factors into the reasonableness analysis. *Barnes*, 605 U.S. at 83-84.

Even when an officer creates a dangerous situation through his own negligence, the officer is still legally entitled to use force, including deadly force, to defend himself. As the Ninth Circuit explained in *Espinosa v. City and County of San Francisco,* 598 F.3d 528, 549, n. 16 (9th Cir. 2010), "…the fact that an officer negligently gets himself into a dangerous situation will not make it unreasonable for him to use force to defend himself…An officer may fail to exercise "reasonable care" as a matter of tort law yet still be a constitutionally "reasonable" officer." The *Espinosa* Court continued by stating "even if an officer negligently provokes a violent response, that negligent act will not transform an otherwise reasonable subsequent use of force into a Fourth Amendment violation." *Id.*

Accordingly, the actions of the State Defendants, and the other officers, leading up to the incident are irrelevant to the determination of Plaintiff's Fourth Amendment excessive force claims. This includes any evidence relating to tactical decisions relating to where and when to perform the traffic stop, "blowing" their cover during the surveillance and alerting Plaintiff to their presence, any alleged failure to utilize S.W.A.T. or K9 officers during the traffic stop, or their actions during the felony stop prior to the time that shots were fired.

Similarly, any arguments or implication that the State Defendants' actions (or any other Defendants) "provoked" Plaintiff's reaction and actions during the traffic stop are improper and

impermissible, are the exact type of issues the Supreme Court unequivocally rejected in *County of Los Angeles v. Mendez*, 581 U.S. 420, 426-427 (2017). Pursuant to *Mendez*, any alleged improper actions by the officers prior to the use of force forming the basis of the excessive force claim (here, the officer involved shooting on June 18, 2019) cannot support or bootstrap a subsequent Fourth Amendment excessive force claim.

D.   Admissibility of Evidence of Prior Use of Force Incidents

The State Defendants are aware that Plaintiff intends to attempt to introduce evidence relating to prior, unrelated use of force incidents involving Sergeant Lopes. Such evidence is not only improper under the Federal Rules of Evidence as well as irrelevant to the claims against the State Defendants, but is consistently recognized as improper and presumptively inadmissible in excessive force cases involving law enforcement officers.

Character evidence is generally not admissible when offered "to prove that on a particular occasion the person acted in accordance with the character or trait." *United States v. Gyamfi*, 805 F.3d 668, 674-675 (6th Cir. 2015); *United States v. Wright*, 363 F.3d 237, 246-247 (3rd Cir. 2004); *United States v. Lynch*, 437 F.3d 902, 913 (9th Cir. 2006). Character evidence, or evidence of prior wrongful acts, may not be admitted merely to show a defendant's propensity to commit the act in question, which is exactly what Plaintiffs seek to do. *Berkovich v. Hicks*, 922 F.2d 1018, 1022 (2nd Cir. 1991).

In a civil rights case, an "officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force…" *Baker v. County of San Diego*, No. 09-CV-1194-BEN, 2012 WL 1903899, at *2 (S.D. Cal. May 24, 2012); *Graham v. Connor*, 490 U.S. 386, 397 (1989). In *Todd v. Baker*, No. CV 10-127-M-DWM, 2012 WL 1999629, at *8 (D. Mt. June 4, 2012), the court excluded evidence of complaints regarding police officers' alleged prior bad acts and complaints against them. The *Todd* plaintiffs alleged "other incidents of allegations of excessive use of force[ ] and failure to report use of force accurately have at least a 'tendency' to establish the individual officers' motive, intent, [and] absence of mistake or accident." *Id.* The *Todd* court rejected this argument, holding "…the question for the jury is whether the use of force

12

1    was reasonable in this particular instance, 'without regard to [the officers'] underlying intent or

2    motivation.' …The jury must only decide whether the officers' judgment was reasonable…." *Id.*;

3    *Leibel v. City of Buckeye*, 556 F.Supp.3d 1042, 1071 (D. Arizona 2021).

4        In *United States v. Charley*, 1 F.4th 637 (9th Cir. 2021), the Ninth Circuit held evidence of

5    a defendant's prior acts to be inadmissible. The Court explained that "an intent to assault is not

6    transferrable across dissimilar and unique sets of circumstances." *Charley*, 1 F.4th at 648; *also*

7    *see United States v. Bettencourt,* 614 F.2d 214, 217 (9th Cir. 1980) ("A showing of intent to

8    assault on an earlier occasion proves little, if anything, about an intent to assault at some later

9    time."). In *Baker*, the court held evidence of alleged prior bad acts by the defendant peace officers

10   was inadmissible as it amounted "to [e]vidence of a crime, wrong, or other act [that the Plaintiff is

11   trying to use] to prove [the deputies'] character in order to show that on [this] particular occasion

12   [they] acted in accordance with the character." *Baker*, 2012 WL 1903899, at *2. As the *Baker*

13   Court further held:

14       Evidence of the deputies' motive, however, is irrelevant as to whether the
         deputies' actions were objectively reasonable for purposes of the § 1983 excessive
15       force claim. Therefore, because evidence of these "bad acts" cannot be introduced
         to prove an element of the charged offense, they may not be admitted under Rule
16       404(b)(2).

17       *Baker,* 2012 WL 1903899, at *2.

18       Because evidence of a defendant's character and prior acts can be highly prejudicial, it

19   should be excluded where its probative value is substantially outweighed by its potential for

20   unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue

21   delay. As one court recognized in a civil rights use of force case, "[t]he introduction of several

22   old, unrelated misconduct complaints against a single officer risked creating a sideshow and

23   sending the trial off track." *Duran v. Town of Cicero, Ill.*, 653 F.3d 632, 645 (7th Cir. 2011).

24       In *Duran v. City of Maywood*, 221 F.3d 1127, 1132-1133 (9th Cir. 2000), the Ninth

25   Circuit affirmed a district court's decision to exclude evidence relating to a different shooting

26   involving one of the defendant that had occurred several days before. The trial court concluded

27   that the "marginally probative value" of the evidence of the defendant's prior actions was: (1)

28                                        13

1    substantially outweighed by the danger of unfair prejudice, and (2) in order to admit the evidence

2    of the prior acts the court would have had to have a "full blown trial" regarding the earlier

3    incident, which would lead to the danger of confusion of the issues, misleading the jury, undue

4    delay, and a waste of time. *Id.*

5          Additionally, the cases identified by Plaintiff do not share any similarities with the facts of

6    the instant case. For instance, in *Berbereia v. County of Kings*, No. 1:16-cv-00363-LJO-SKO

7    (E.D. Cal.), one of the cases identified by the Plaintiff, Sergeant Lopes and other law enforcement

8    officers were responding to a 9-1-1 call that there was a trespasser on a landowners property who

9    appeared to be intoxicated, who had two rifles in his vehicle, and who had already brandished a

10   rifle at the landowners employees; when other officers responded, they observed the decedent

11   reach for an object before a rifle scope was seen. (*Berbereia*, ECF 26-1 at 1:6-17.) Due to the

12   decedent's actions, S.W.A.T. resources were activated and neighbors were evacuated from nearby

13   homes due to the risk of injury. *Id.* The decedent subsequently turned and pointed one of his rifles

14   towards the deputies, who fired at the decedent. *Id.*

15         In a second case that Plaintiff seeks to introduce, Sergeant Lopes was not named as a party

16   to the lawsuit, he was not identified in the complaint, and the motions for summary judgment

17   filed in the case do not reflect that Sergeant Lopes had any involvement in the law enforcement

18   response, much less the use of lethal force. *Estate of Crawley et al. v. County of Kings*, 1:13-cv-

19   02042-LJO-SAB (E.D. Cal.)(ECF 1, 69, 73). Instead, the pleadings in that case reflect the shots

20   were fired by an entirely different individual, Deputy Barsteceanu. (*Id.* at ECF 69-1:12-17).

21         E.   Admissibility of Rothschiller's Opinions Regarding State Defendants

22         A court should exclude expert testimony when the witness is not qualified to provide an

23   opinion regarding the subject at issue. *Bogosian v. Mercedes-Benz of North America, Inc.*, 104

24   F.3d 472, 476-477 (1st Cir. 1997) (proffered expert found to lack the requisite education and

25   training to provide an opinion related to the subject matter). The Ninth Circuit recently explained

26   that it is the obligation and responsibility of a district court to perform a gatekeeping role "to

27   ensure that the [proffered] testimony is both relevant and reliable." *Engilis v. Monsanto*

28                                          14

*Company*, 151 F.4th 1040, 1047 (9th Cir. 2025). A district court discharges its "gatekeeping role" by ensuring that the proposed expert's testimony is not only relevant, but also reliable. *Id.*

An expert may not base his or her opinion on speculation or conjecture. *Hathaway v. Bazany*, 507 F.3d 312, 317-319 (5th Cir. 2007) (proposed expert's testimony was speculative and unreliable under *Daubert* and thus, it was properly excluded); "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry and reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Engilis*, *supra* at 1047. The District Court's gatekeeping role, and the reliability test used therein, applies to all expert testimony (not just scientific testimony) as well as the expert's reasoning process. *General Electric v. Joiner*, 522 U.S. 136, 142 (1997); *Kumho Tire Co. v. Carmichael*, 526 U.S. 17, 141 (1999).

The proponent of expert testimony must demonstrate that the required admissibility standards are satisfied, and the expert's opinion must reflect a reliable application of the principles and methods to the facts of the case. *Engilis*, *supra* at 1049.

The *Engilis* Court additionally directed that "challenges to an expert's opinion go to the weight of the evidence only if a court first finds it more likely than not that an expert has a sufficient basis to support an opinion." *Engilis*, *supra* at 1049. Accordingly, the *Engilis* Court explained that "[j]udicial gatekeeping is essential to ensure that an expert's conclusions do not go beyond what the expert's basis and methodology may reliably support." *Id.* There is no presumption in favor of the admissibility of expert opinion, and the proponent of expert testimony must always establish the admissibility criteria of Rule 702 by a preponderance of the evidence. *Id.* The *Engilis* Court further cautioned that a "district court cannot abdicate its role as gatekeeper, nor delegate[e] that role to the jury." *Id.* at 1050 (internal quotation omitted)(quoting *Hardeman v. Monsanto Company*, 997 F.3d 941, 960, n. 11 (9th Cir. 2021).

Plaintiff's use of force expert repeatedly makes ultimately conclusions of law and fact. He repeatedly opines, and testifies, that the Defendants' actions in this instance constitute impermissible excessive force, violate policies and procedures, violate State law, and that the

Defendants were not entitled to use force. Such opinions and testimony by an expert are facially improper. "…[E]xpert testimony consisting of legal conclusions is generally inappropriate." *CFM Commc'ns, LLC v. Mitts Telecasting Co*., 424 F. Supp. 2d 1229, 1233 (E.D. Cal. 2005). Experts similarly cannot testify to legal conclusions that are intertwined with the ultimate issue. See *Nationwide Transp. Fin. v. Cass Info. Sys*., 523 F.3d 1051, 1058 (9th Cir. 2008).

"An expert witness therefore cannot offer testimony as to the reasonableness of an officer's actions and whether his use of force was appropriate under the facts of the case." *Sanchez v. Jiles*, No. 10-CV-9384, 2012 WL 13005996, at *31 (C.D. Cal. June 14, 2012) (citing *Tubar v. Clift*, No. 05-CV-1154, 2009 WL 1325952, *3 (W.D. Wash. May 12, 2009) (holding that a police practices expert was precluded from offering an opinion as to whether an officer had "probable cause" to believe he was in imminent danger, whether he acted "unconstitutionally," and whether his use of force was objectively unreasonable, as these were conclusions concerning ultimate issues of law)); see also *Shirar v. Guerrero*, No. 1-CV-3906, 2017 WL 6001270, at *5 (C.D. Cal. Aug. 2, 2017) (" Police practices experts may only testify as to whether an action conformed with a reasonable standard of practice, not whether the particular officer's action was reasonable under the specific circumstances he faced.") Similarly, an expert's "opinion as to what 'current law' 'mandates' or whether defendants were 'legally' 'justified' in using the force applied against [the plaintiff] usurps the jury's role." *Taylor v. Lemus*, No. CV 11-9614 FMO (SSx), 2015 WL 12698306, at *6 (C.D. Cal. June 17, 2015) (citing *Sloman v. Tadlock*, 21 F.3d 1462, 1468 (9th Cir. 1994)).

In law enforcement use of force cases, the courts additionally bar experts from employing judicially defined or legally specialized terms in expressing their opinions relating to the issue of excessive force. This includes prohibitions on the use of such phrases that defendants "acted unconstitutionally or used excessive force" (*Rascon v. Brookins*, No. CV-14-00749-PHX-JJT, 2018 WL 739696, at *4(D. Ariz. Feb. 7, 2018)); terms such as "grossly unlawful, unnecessary, and excessive violence" (*Monroe v. Griffin*, No. 14-CV-00795-WHO, 2015 WL 5258115, at *6–7 (N.D. Cal. Sept. 9, 2015)); offering opinions that the "use of force was excessive or unreasonable

under the circumstances" (*Valtierra*, 99 F. Supp. 3d at 1198). Experts have also been barred from offering legal conclusions couched in the guise of law enforcement "training". *Molina v. City of Visalia*, No. 1:13-cv-01991-DAD-SAB, 2016 WL 8730723, at *6, n.1 (E.D. Cal. Sep. 16, 2016) (where plaintiff's police practices expert was precluded from testifying that the use of lethal force was unlawful under the circumstances, as taught by P.O.S.T.).

      F.   <u>Rothschiller Lacks Foundation and Facts For His Opinions Regarding Defendants</u>.

      Rothschiller's deposition testimony reveals that he lacks any foundation or basis for his opinions regarding the alleged violation of policies and procedures by the State Defendants. An expert's opinion is properly excluded where it is not sufficiently founded on facts. *Guidroz-Brault v. Missouri Pacific R. Co.*, 254 F.3d 825, 830-831 (9th Cir. 2001). Similarly, Fed. R. Evid. 703 provides that an expert "may base an opinion on facts or data in the case *that the expert has been made aware of or personally observed*." Federal Rules of Evidence 702 require expert testimony to be "based on sufficient facts or data." The key inquiry regarding an expert's opinion is whether the expert had sufficient factual knowledge to reach the conclusion and opinion proffered. *Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1025-1026 (9th Cir. 2024). A district court is required to "determine whether an expert had sufficient factual grounds on which to draw conclusions." *Id. (*quoting *Damon v. Sun Co., Inc.*, 87 F.3d 1467, 1475 (1st Cir. 1996). A court "looks behind" expert testimony and opinions to determine whether the testimony and opinions have an adequate factual or scientific foundation. *Forman v. Pillsbury*, 753 F.Supp. 14, 18 (D. D.C. 1990).

      Rothschiller testified that he had never reviewed, nor had he been provided with, the policies and procedure of the California Department of Justice, which he admitted would be the applicable policies for the State Defendants; instead, he based his opinions on third-parties' policies and procedures, such as the County of Kings, the County of Ventura, and Lexipol. Rothschiller's testimony further demonstrates a complete lack of familiarity with the facts and events involved in this case, as he admitted he had never heard the term "Operation Red Reaper" before his deposition, he did not know what Operation Red Reaper was about or why Plaintiff was a focus of Operation Red Reaper, he had not been provided with copies of no less than three

1    separate reports into the underlying incident prepared by different public agencies (yet opined that

2    no such reports had been completed), and he had no knowledge regarding whether a S.W.A.T.

3    team or K9 officer was available at the time of the incident (despite opining that the Defendants

4    were negligent and utilized excessive force for not utilizing such resources). Critically,

5    Rothschiller testified that he had made no effort to independently research the facts and events of

6    the case, relied entirely upon the limited and pre-selected documents provided to him by

7    Plaintiff's counsel to form his opinions, and made no effort to follow up to see if there were any

8    additional documents available.

9    Rothschiller's opinions and testimony fail to meet the standards required for expert

10    testimony. He lacks knowledge of the facts of the case, yet offers opinions based upon not only

11    unsupported but *undisputedly contradicted* factual matters, as well as offering opinions regarding

12    matters in which he admits he has no knowledge or facts. He further offers opinions that are

13    based upon facts and issues that are flatly contradicted and improper for purposes of the Fourth

14    Amendment excessive force liability analysis – including forming opinions based upon matters

15    known only through hindsight, reaching ultimate legal and factual conclusions, and reaching

16    opinions which lack any factual basis and are wholly speculative.

17    G.  Admissibility and Usage of Testimony of Unavailable Witnesses

18    The State Defendants intend to utilize the videotaped deposition testimony of Gabriel

19    Andrada, an eyewitness to the incident, taken in connection with this case on May 16, 2022. In

20    his deposition, Mr. Andrada testified that he had recently moved to San Antonio, Texas, and no

21    longer resided in California. (Andrada Deposition, 11:7-23, 13:9-13.) Prior to moving to Texas,

22    Mr. Andrada had lived in Lemoore, California. (Andrada Deposition, 14:24-15:1.)

23    Pursuant to Federal Rules of Evidence 804(a), Mr. Andrada is unavailable as a witness,

24    because as a resident of another state he is not subject to this Court's subpoena power. Fed. R.

25    Civ. P. 45(a)(4)(B). As Mr. Andrada is legally unavailable as a witness for purpose of trial

26    testimony, Defendants are entitled to use his deposition testimony for any purpose. *Hangarter v.*

27    *Provident Life and Accident Insurance Company*, 373 F.3d 998, 1019 (9th Cir. 2004). Plaintiff

28

18

had ample opportunity to examine, and did in fact examine, Mr. Andrada during his deposition, and therefore the requirements of Rule 804(b))(1) has been satisfied; therefore the prior deposition testimony qualified as a recognized exception to the hearsay rule. Fed. R. Evid. 804(b)(1)(A), (B); *Hangarter*, 373 F.3d at 1019; *Hynix Semiconductor, Inc. v. Rambus, Inc.*, 250 F.R.D. 452, 458 (N.D. Cal. March 10, 2008).

H. Qualified Immunity and Special Interrogatories

Defendants are entitled to the use, and request the use of, of special interrogatories to the jury as part of their verdict to determine whether they are entitled to qualified immunity. These special interrogatories relate to the specific facts involved in this incident, including the jury's determination of the facts relating to Plaintiff's actions during the felony stop.

Pursuant to *Morales v. Fry*, 873 F.3d 817, 824 (9th Cir. 2017), "whether a right is clearly established is a legal issue for the judge to decide, although special interrogatories to the jury may can be used to establish disputed material facts." An officer conducting a search [or seizure] is entitled to qualified immunity where clearly established law does not show that the search [or seizure] violated the Fourth Amendment." *Pearson v. Callahan,* 555 U.S. 223, 243–44 (2009); *see also Isayeva v. Sacramento Sheriff's Dept.*, 872 F.3d 938, 946 (9th Cir. 2017) (citing *Pearson*, 55 U.S. at 236). "The threshold determination of whether the law governing the conduct at issue is clearly established is a question of law for the court." *Act Up!/Portland v. Bagley,* 988 F.2d 868, 873 (9th Cir. 1993) [citation omitted]. "If the court finds that a genuine issue of underlying fact does exist, it should postpone the qualified immunity determination until the facts have been developed at trial." *Id.* at 873–74; *see also Conner v. Heiman*, 672 F.3d 1126, 1131 (9th Cir. 2012) ("Only where 'historical facts material to the qualified immunity determination are in dispute' should the district court submit the issue to a jury."). As the Ninth Circuit has explained,

/ / /

/ / /

/ / /

" 'whether a constitutional right was violated ... is a question of fact' for the jury, while 'whether the right was clearly established ... is a question of law' for the judge." *Morales v. Fry*, 873 F.3d, at 823 (citing *Tortu v. Las Vegas Metropolitan Police Department*, 556 F.3d 1075, 1085 (9th Cir. 2009)). The Ninth Circuit further held: Nearly all our sister circuits agree with the position we adopt here. The First, Second, Third, Fourth, Sixth, Seventh, Eighth, Eleventh, and D.C. Circuits take the view that whether a right is clearly established is a legal issue for the judge to decide, although *special interrogatories to the jury can be used to establish disputed material facts*." *Morales v. Fry*, 873 F.3d, at 824 (citing cases) [emphasis added].

A possible "general verdict" of a Fourth Amendment violation does not resolve whether each of these Defendants are entitled to qualified immunity as to Plaintiff's excessive force claims against them. As discussed above, there are multiple factors to the reasonableness inquiry. The Supreme Court has described this inquiry as a "slosh . . . through the factbound morass of 'reasonableness.'" *Scott v. Harris*, 550 U.S. 372, 383 (2007). The State Defendants' qualified immunity defense turns on the question of whether they were aware that Plaintiff had been involved in an armed home invasion robbery immediately before the incident where shots were fired and an accomplice was struck by gunfire requiring emergency medical treatment; (2) whether Plaintiff was aware that the State Defendants were law enforcement officers at the time of the incident; (3) whether Plaintiff exited the vehicle and assumed an isosceles shooting stance directed towards one or more of the law enforcement officers present at the scene; and (4) whether the Plaintiff then simulated experiencing the recoil associated with firing a firearm while in an isosceles shooting stance. For purposes of Fourth Amendment analysis, it is recognized that an immediate threat "might be indicated by a furtive movement, harrowing gesture, or serious verbal threat." *Calonge v. City of San Jose*, 104 F.4th 39, 46 (9th Cir. 2024). The Ninth Circuit has established liability for deadly force turns on whether an arrestee appeared to be reaching for a weapon when shot. *Cruz v. City of Anaheim*, 765 F.3d 1076, 1079 (9th Cir. 2014) In *Cruz*, the Ninth Circuit identified the relevant analysis by explaining: 'To decide this case a jury would have to answer just one simple question: Did the police see Cruz reach for his waistband? If they did, they were entitled to shoot; if they didn't, they weren't.' " *Cruz*, 765 F.3d at 1079.

The Defendants were not legally required to wait until Plaintiff actually fired a weapon at

20

them to use lethal force in self-defense. In *George*, the Ninth Circuit specifically explained that:

> This is not to say that the Fourth Amendment always requires officers to delay their fire until a suspect turns his weapon on them. If the person is armed—or reasonably suspected of being armed—a furtive movement, harrowing gesture, or serious verbal threat might create an immediate threat.

*George*, 736 F.3d at 838

The principle recognized and elucidated by the *George* Court, that a law enforcement officer does not have to wait until force is used against them and that an immediate threat can be created where the suspect is armed or suspected of being armed and exhibits a furtive movement, harrowing gesture or serious verbal threat, has been repeatedly affirmed by the Ninth Circuit and California District Courts. See *Estate of Strickland*, 69 F.4th at 620; *Peck v. Montoya*, 51 F.4th 877, 888 (9th Cir. 2022); *Tucker v. City of Elk Grove*, No. 2:20-cv-01620-DAD-KJN, 2023 WL 4827470, at *11, n.10 (E.D. Cal. July 27, 2023). The Ninth Circuit has accordingly recognized that the rule announced in *George* has become "clearly established" law on this point. *N.E.M. v. City of Salinas*, 761 F.App'x 698, 700, (9th Cir. 2019).

Because a public official who is put to trial is entitled to have the true facts underlying his qualified immunity defense decided, a timely request for jury interrogatories directed toward such factual issues should be granted. Denial of such a request would be error, because it would deprive the defendant who is forced to trial of his right to have the factual issues underlying his defense decided by the jury. *Cottrell v. Caldwell*, 85 F.3d 1480, 1487–88 (11th Cir. 1996); *see also Lampkins v. Thompson*, 337 F.3d 1009, 1014 (8th Cir. 2003) (holding district court properly allowed special interrogatories relating to facts underpinning qualified immunity defense); *Stephenson v. Doe*, 332 F.3d 68, 81 (2d Cir. 2003) ("We believe that use of special interrogatories in this case resolves the difficulty of requiring the jury to decide 'what the facts were that the officer faced or perceived' and requiring the court to make the ultimate legal determination of whether qualified immunity attaches on those facts."). Further, at least one Ninth Circuit judge is in accord: "In cases where the ultimate issue of objective reasonableness turns on a discrete issue of evidentiary fact . . . the issue could be resolved by the jury using special verdicts." *Act*

1  *Up!/Portland v. Bagley*, 988 F.2d 868 at 876 (dissent from the failure to hear en banc).

2  Qualified immunity can be raised by a post-verdict motion. *Ortiz v. Jordan*, 562 U.S. 180, 191

3  (2011) (holding qualified immunity must be raised by a Fed. R. Civ. P. 50 motion where disputed

4  facts precluded summary judgment). "[P]ost-verdict, a court must apply the qualified immunity

5  framework to the facts that the jury found . . ." *A.D. v. Cal. Highway Patrol*, 712 F.3d 446, 459

6  (9th Cir. 2013). Thus, a special interrogatory to the jury, framed in terms of "the who-what-when-

7  where-why type of historical fact issues," that determines the issue of whether such a right has

8  been violated is proper. *See Morales v. Fry*, 873 F.3d, at 824. Then, the Court can determine

9  whether a clearly established constitutional right exists when ruling on Defendant's anticipated

10  motions pursuant to Fed. R. Civ. P. 50

11  Dated: October 27, 2025                                Respectfully submitted,

12                                                         ROB BONTA
                                                           Attorney General of California
13

14

15                                                         NORMAN D. MORRISON
                                                           Supervising Deputy Attorney General
16                                                         *Attorneys for Defendants Neil Compston,*
                                                           *John Silveira and Edward Sinclair*
17

18  FR2021301267
    95662883

19

20

21

22

23

24

25

26

27

28

Defendants Compston, Silveira and Sinclair's Trial Brief (1:20-CV-01793-KJM-SKO)