**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
dalekgalipo@yahoo.com
Cooper Alison-Mayne (SBN 343169)
cmayne@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Phone: (818) 347-3333

LAW OFFICE OF DARRELL J. YORK
Darrell J. York (SBN 145601)
27240 Turnberry Lane, Suite 200
Valencia, CA 91355
Telephone: (661) 362-0828
Fax:    (877) 221-3306
Email: djylaw@gmail.com

*Attorneys for Plaintiff, Freddie Quair*

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FREDDIE QUAIR, <br><br> Plaintiff, <br><br> vs. <br><br> COUNTY OF KINGS; TAYLOR LOPES; NEIL COMPSTON; JOHN SILVERIA; EDWARD SINCLAIR; and DOES 1 THROUGH 10, inclusive, <br><br> Defendants | CASE No.: **1:20−CV−01793−KJM−SKO** <br><br> [*Honorable Kimberly J. Mueller.*] <br><br> **PLAINTIFF'S MOTION IN LIMINE NO. 1 TO EXCLUDE INFORMATION UNKNOWN TO DEFENDANT OFFICERS AT THE TIME OF THE INCIDENT** <br><br> Jury Trial: 11/10/25 <br> Time: 9:00am <br> Courtroom: Three |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD AND TO THIS HONORABLE COURT, PLEASE TAKE NOTICE** that Plaintiff FREDDIE QUAIR will and does hereby move to exclude any evidence, testimony, argument, or reference at trial to information that was unknown to Defendants TAYLOR LOPES; NEIL COMPSTON; JOHN SILVERIA; EDWARD SINCLAIR at the time of the incident, including the following evidence:

1. Details of the June 18, 2019 home invasion Freddie Quair was allegedly involved in beyond what Defendant Officers were specifically aware of at the time of the shooting, including but not limited to:
   a. Witness statements from victims or other persons present during the home invasion;
   b. Forensic analysis or investigative conclusions regarding the home invasion (*e.g.*, Gunshot residue test results conducted after the incident (State Exh. 226; County Exh. 20).)
   c. Any evidence regarding whether Plaintiff fired a weapon during the home invasion;
   d. Any evidence regarding the extent or nature of Plaintiff's involvement in the home invasion beyond what was communicated to Defendant Officers before they used force.
   e. Documents that may fall within this category include: Corcoran Police Department Report (State Exh. 206; County Exh. 3); Gunshot residue test results conducted after the incident (State Exh. 226; County Exh. 20); Wiretap recordings (State Exh. 207, 223; County Exh. 10); Surveillance records, audio and video recordings (State Exh. 215; County Exh. 9);
   f. Detailed accounts of what occurred during the home invasion;
2. Details of alleged crimes investigated during Operation Red Reaper beyond what Defendant Officers were specifically aware of at the time of the shooting, including but not limited to:
   a. Evidence of alleged crimes not specifically communicated to Defendant Officers prior to June 18, 2019;
   b. Investigative findings or conclusions about the scope of criminal activity;

1        c. Details about alleged Norteño gang or Nuestra Familia prison gang activities not specifically known to Defendant Officers at the time of the shooting.

      a. Documents that may fall within this category include Operation Red Reaper records (State Exh. 225; County Exh. 19); Wiretap recordings (State Exh. 207, 223; County Exh. 10); Surveillance records, audio and video recordings (State Exh. 215; County Exh. 9);

      d. Comprehensive details of alleged criminal activity by Plaintiff or others under investigation;

3. Post-incident investigative reports containing information not known to Defendant Officers at the time of the shooting, including but not limited to:

      a. Hanford Police Department Report (State Exh. 218; County Exh. 1);

      b. Kings County Sheriff's Office Report (State Exh. 219; County Exh. 2);

      c. State of California Department of Justice Bureau of Investigations Report (State Exh. 221; County Exh. 4);

4. Records of Plaintiff's and Jose Quintero's post-incident criminal prosecution, including but not limited to:

      a. Kings County Superior Court criminal records for Plaintiff (State Exh. 205, 227; County Exh. 22);

      b. Kings County Superior Court criminal records for Jose Quintero (State Exh. 227; County Exh. 22);

      c. Charging documents, plea forms, and abstracts of judgment.

1    This motion is made on the grounds that the evidence listed above is
2 irrelevant under Federal Rules of Evidence 401 and 402, unduly prejudicial under
3 Federal Rule of Evidence 403, constitutes improper character evidence under
4 Federal Rule of Evidence 404, and constitutes inadmissible hearsay under Federal
5 Rules of Evidence 801, 802, and 805.
6    This motion is based upon this Notice of Motion and Motion, the
7 Memorandum of Points and Authorities filed herewith, the pleadings and papers on
8 file in this action, and upon such other and further evidence and argument as may be
9 presented to the Court at the hearing on this motion.

11 Dated: October 27, 2025

By: /s/ *Cooper Alison-Mayne*
Dale K. Galipo
Cooper Alison-Mayne
Attorneys for Plaintiff

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This civil rights and state tort action arises from the use of deadly force by Kings County Sheriff Department Deputy Taylor Lopes, and California Department of Justice special agents Neil Compston, John Silveria, and Edward Sinclair ("Defendant Officers"), against Freddie Quair. ("Plaintiff") on June 18, 2019. The primary issue in this case is whether the Defendant Officers' use of deadly force against Plaintiff was excessive and unreasonable under the circumstances known to them at the time of the use of force. Thus, information of which the Defendant Officers were unaware at the time of the shooting is generally irrelevant and should be excluded by way of this motion.

By way of this motion *in limine*, Plaintiffs move to exclude any evidence, testimony, argument, or reference at trial to the following information that was not known to any defendant officer at the time of the incident:

1. Details of the June 18, 2019 home invasion Freddie Quair was allegedly involved in beyond what Defendant Officers were specifically aware of at the time of the shooting, including but not limited to:
    a. Witness statements from victims or other persons present during the home invasion;
    b. Forensic analysis or investigative conclusions regarding the home invasion (*e.g.*, Gunshot residue test results conducted after the incident (State Exh. 226; County Exh. 20).)
    c. Any evidence regarding whether Plaintiff fired a weapon during the home invasion;
    d. Any evidence regarding the extent or nature of Plaintiff's involvement in the home invasion beyond what was communicated to Defendant Officers before they used force.

  e. Documents that may fall within this category include: Corcoran Police Department Report (State Exh. 206; County Exh. 3); Gunshot residue test results conducted after the incident (State Exh. 226; County Exh. 20); Wiretap recordings (State Exh. 207, 223; County Exh. 10); Surveillance records, audio and video recordings (State Exh. 215; County Exh. 9);

  f. Detailed accounts of what occurred during the home invasion;

2. Details of alleged crimes investigated during Operation Red Reaper beyond what Defendant Officers were specifically aware of at the time of the shooting, including but not limited to:

  a. Evidence of alleged crimes not specifically communicated to Defendant Officers prior to June 18, 2019;

  b. Investigative findings or conclusions about the scope of criminal activity;

  c. Details about alleged Norteño gang or Nuestra Familia prison gang activities not specifically known to Defendant Officers at the time of the shooting.

  b. Documents that may fall within this category include Operation Red Reaper records (State Exh. 225; County Exh. 19); Wiretap recordings (State Exh. 207, 223; County Exh. 10); Surveillance records, audio and video recordings (State Exh. 215; County Exh. 9);

  d. Comprehensive details of alleged criminal activity by Plaintiff or others under investigation;

3. Post-incident investigative reports containing information not known to Defendant Officers at the time of the shooting, including but not limited to:

  a. Hanford Police Department Report (State Exh. 218; County Exh. 1);

   b. Kings County Sheriff's Office Report (State Exh. 219; County Exh. 2);

   c. State of California Department of Justice Bureau of Investigations Report (State Exh. 221; County Exh. 4);

4. Records of Plaintiff's and Jose Quintero's post-incident criminal prosecution, including but not limited to:

   a. Kings County Superior Court criminal records for Plaintiff (State Exh. 205, 227; County Exh. 22);

   b. Kings County Superior Court criminal records for Jose Quintero (State Exh. 227; County Exh. 22);

   c. Charging documents, plea forms, and abstracts of judgment.

This motion is made on the grounds that the evidence and witness testimony listed above is irrelevant under Federal Rules of Evidence 401 and 402, unduly prejudicial under Federal Rule of Evidence 403, constitutes improper character evidence under Federal Rule of Evidence 404, and constitutes inadmissible hearsay under Federal Rules of Evidence 801, 802, and 805.

## II. LEGAL STANDARDS

### A. Relevance Under Federal Rules of Evidence 401 and 402

Evidence is relevant only if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. Irrelevant evidence is not admissible. Fed. R. Evid. 402.

In excessive force cases, the relevant facts are those known to the officers at the time force was used. Fourth Amendment claims for excessive force depend on "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." *Graham v. Connor*, 490 U.S. 386, 397 (1989)

Accordingly, facts of which officers were unaware "are irrelevant to the reasonableness analysis," *Tabares v. City of Huntington Beach*, 988 F.3d 1119,

1123 n.4 (9th Cir. 2021), and may not be considered. *Glenn v. Wash. Cnty.*, 673 F.3d 864, 873 n.8 (9th Cir. 2011) ("We cannot consider evidence of which the officers were unaware—the prohibition against evaluating officers' actions 'with the 20/20 vision of hindsight' cuts both ways.")

### B. Exclusion Under Federal Rule of Evidence 403

Even relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

"Unfair prejudice" means "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000); *see Larez v. City of Los Angeles*, 946 F.2d 630, 641 n.5 (9th Cir. 1991) (noting that evidence is likely to inflame the jury if it tends to evoke a juror's anger or punitive impulses).

### C. Exclusion Under Federal Rule of Evidence 404

Federal Rule of Evidence 404(a)(1) prohibits the use of "[e]vidence of a person's character or character trait . . . to prove that on a particular occasion the person acted in accordance with the character or trait." Ninth Circuit case law is clear that character evidence is not normally admissible in a civil rights case. *See Gates v. Rivera*, 993 F.2d 697, 700 (9th Cir. 1993). Character must be "in issue," *i.e.*, an essential element of a charge, claim, or defense for character evidence to be admitted. *See* Adv. Comm. Notes, Fed. R. Evid. 405(b); *United States v. Mendoza-Prado*, 314 F.3d 1099, 1103 (9th Cir. 2002).

### D. Exclusion as Hearsay Under Federal Rules of Evidence 801, 802, and 805

Hearsay is an out-of-court statement offered to prove the truth of the matter asserted and is inadmissible unless an exception applies. Fed. R. Evid. 801(c), 802.

Generally, witnesses may testify only to matters within their personal knowledge. Fed. R. Evid. 602.

### III. ARGUMENT

***A. The Core Problem: Defendants Seek to Transform This Case Into Something It Is Not***

The central issue in this case is straightforward: Did Defendant Officers use excessive force when they shot Plaintiff on June 18, 2019? To answer that question, the jury must determine whether the officers' actions were objectively reasonable based on what they knew at the moment they decided to use deadly force.

Defendants intend to introduce hundreds, if not thousands, of pages of documents and extensive testimony about matters that have nothing to do with what the officers knew when they pulled their triggers. This evidence includes:

- Comprehensive details about what happened during the June 18, 2019 home invasion—witness statement, forensic analysis, investigation summaries.
- Operation Red Reaper records relating to an extensive investigation involving various agencies and several targets.
- Records of Plaintiff's criminal prosecution and conviction in relation to criminal conduct that occurred prior to the shooting.
- Evidence about gang activity and alleged crimes by Plaintiff and other.
- Records about his conduct while he has been incarcerated.

The obvious purpose of this evidence is to paint Plaintiff as a dangerous criminal and gang member so the jury will not care what the officers did to him. Defendants seek to transform this case from a straightforward inquiry—did the officers reasonably believe they faced a threat of death or serious injury when Quair got out of the car—into a sprawling trial about Plaintiff's alleged gang affiliations, criminal history, and character. This strategy complicates what should be a relatively simple case and distracts the jury from the only question that matters:

what did the officers perceive in the moment they used force, and was their response objectively reasonable under those circumstances?

### B. What the Officers Knew Can Be Established Through Their Testimony

The proper way to establish what the officers knew is simple: ask them. The officers can testify about the information they possessed when they decided to use force, as long as that information is relevant to a reasonable officer's decision to use force. If they need documents to refresh their recollection, the Federal Rules of Evidence allow that. See Fed. R. Evid. 612.

But there is no need—and no justification—for admission of hundreds of pages of investigative materials that the officers did not have and could not have consulted when they made their decision to shoot Quair. These documents were compiled after the fact. They contain information gathered through extensive post-incident investigation. They reflect what investigators learned over weeks, months, and years—not what the officers knew in the moment.

To the extent the officers possessed specific, relevant information before the shooting—for example, that Plaintiff was suspected of gang involvement and drug trafficking, or that he was believed to have been involved in a home invasion earlier that morning—the officers should testify to that directly through examination. But introducing the underlying investigative files serves no legitimate purpose. Any minimal probative value these documents and witnesses might have is vastly outweighed by the substantial risks, including: wasting the court's time on collateral matters, confusing the central issues, unfairly prejudicing Plaintiff, and inviting the jury to render a verdict based on their emotional reaction to Plaintiff's character rather than on reasoned analysis of the evidence.

### C. Details About the June 18, 2019 Home Invasion Are Irrelevant and Prejudicial

Defendants seek to introduce extensive evidence about the home invasion that occurred earlier on June 18, 2019, including detailed witness accounts, forensic analysis, conclusions about who shot whom, and evidence about Plaintiff's specific role and actions.

This evidence should be excluded for three reasons.

First, it is largely irrelevant. This Court has already found in its summary judgment order that while the officers knew Plaintiff was suspected of involvement in a home invasion where shots were fired and someone was shot, "none of the officers claimed they had specific knowledge Quair had fired a weapon during the home invasion." ECF No. 66 at 9. According to non-defendant CHP Officer Scomona, "the precise information relayed to the officers that morning about the home invasion was a 'little bit sketchy.'" Id.

What matters is not what actually happened during the home invasion, but what the officers believed had happened based on the limited information they received. The officers can testify to the information they received because that is part of the totality of circumstances surrounding the decision to shoot, but detailed evidence about the home invasion itself—what the victims saw, what forensic analysis revealed, whether Plaintiff fired a weapon—is irrelevant because the officers did not have any of that information at the time of the incident.

Second, even if marginally relevant, such evidence is overwhelmingly prejudicial under Rule 403. Jurors will hear detailed testimony about a violent home invasion and will naturally feel anger toward Quair, who was allegedly involved in the incident. The danger is that the jury will improperly conclude that Plaintiff's alleged conduct during the home invasion justified the use of deadly force, rather than confining their analysis to whether the officers' actions were objectively reasonable based on the circumstances known to them at the time.

Third, allowing Defendants to present this evidence would waste time and confuse the issues. The jury's job is not to decide what happened during the home invasion or to assess Plaintiff's culpability for that crime—those issues were adjudicated in Plaintiff's criminal prosecution. The jury's job in this trial is to evaluate the reasonableness of the officers' use of force. A trial-within-a-trial about the home invasion distracts from the central question and consumes valuable time on collateral matters.

The same reasoning applies to witness testimony about the home invasion, including from Plaintiff himself. What Plaintiff did or did not do during the home invasion is not the issue. What matters is what the officers knew or reasonably believed at the time of the incident.

### D. Comprehensive Operation Red Reaper Evidence Is Irrelevant and Prejudicial

Operation Red Reaper was a massive, multi-year investigation involving 300 law enforcement officers from various state agencies. As this Court found, members of Operation Red Reaper had been following Plaintiff for months and had surveilled him and his home for hundreds of hours. ECF No. 66 at 7. The investigation involved wiretaps, surveillance, and extensive investigative work targeting alleged Norteño gang and Nuestra Familia prison gang members accused of various serious crimes.

Plaintiff does not dispute that the officers possessed certain information about him from Operation Red Reaper before the shooting. The officers can testify to what they knew—for example, that Plaintiff was a suspected gang member, that he was believed to be involved in drug trafficking offenses, and other information they were specifically told before June 18, 2019.

But the officers did not know every detail uncovered during this extensive multi-year investigation. Defendants should not be permitted to introduce

voluminous Operation Red Reaper files—wiretap recordings, surveillance videos, comprehensive investigative reports—that go far beyond what Defendant Officers actually knew.

Such evidence is irrelevant because it does not establish what the officers knew. It may confuse the issues and unfairly prejudice Quair by shifting the jury's focus from evaluating the officers' decision to use lethal force to assessing scope of alleged gang activity. And it wastes time because it turns the trial into a presentation about Operation Red Reaper rather than a focused inquiry into whether the use of force was reasonable.

Moreover, this evidence raises serious character evidence concerns under Rule 404. One of the main purposes for introducing extensive details about alleged gang activity and crimes is to suggest that Plaintiff is the type of person who engages in violent criminal conduct and therefore likely acted in a manner that justified deadly force. This is precisely the propensity inference that Rule 404 prohibits.

### E. Post-Incident Investigative Reports Should Be Excluded

Defendants have identified several post-incident investigative reports, including:

- Hanford Police Department Report (State Exh. 218; County Exh. 1);
- Kings County Sheriff's Office Report—257 pages (State Exh. 219; County Exh. 2);
- State of California Department of Justice Bureau of Investigations Report (State Exh. 221; County Exh. 4).

These reports were compiled after the shooting. They contain witness interviews, investigative findings, forensic analysis, and conclusions drawn by investigators over the course of their work. By definition, the officers could not have

known the contents of these reports when they used force because the reports did not yet exist.

But introducing hundreds of pages of post-incident investigative reports serves no legitimate purpose. These documents constitute inadmissible hearsay under Rule 802, and pose substantial dangers under Rule 403.

The minimal probative value of these reports—to the extent they corroborate what officers may separately testify to—is vastly outweighed by the risk of unfair prejudice, confusion, and waste of time. The jury will be forced to wade through hundreds of pages of material, much of which has no bearing on what the officers knew, and will inevitably be influenced by information that should play no role in their decision.

### F. Evidence of Plaintiff's Post-Incident Criminal Prosecution and Incarceration Should Be Excluded

Plaintiffs anticipate that Defendants will seek to introduce evidence of Plaintiff's and Quintero's post-incident prosecution, guilty plea, and incarceration. (*See* County Exh. 22; State Exh. 227). Introducing evidence of the post-incident convictions of Plaintiff and Quintero is a distraction from the main controversy in this case: whether Defendant Officers acted reasonably. These records were obviously produced after the shooting, and therefore they could not be part of the totality of circumstances faced by the officers when they chose to shoot Quair.

Further, Plaintiff anticipates that Defendants will seek to introduce records of Plaintiff's incarceration following the incident, including County Exhibit 21, which is described as, "Kings County Jail records regarding Plaintiff including classification records, custody grievances; disciplinary actions, medical grievances, incident reports and Spillman notes."

These records should be excluded because they are entirely irrelevant to whether the Defendant Officers' use of force was reasonable on June 18, 2019. The records pertain to events that occurred after the shooting—in some cases, months or

years after the shooting. Nothing about Plaintiff's behavior or circumstances during his incarceration could possibly have informed the Defendant Officers' split-second decision to use deadly force.

The only conceivable purpose for introducing these records would be to paint Plaintiff in a negative light and to prejudice the jury against him. This is the very definition of unfair prejudice under Rule 403. The records have no legitimate probative value on the question of whether the use of force was reasonable, yet they pose a substantial risk of inflaming the jury and causing the jury to decide the case on an improper emotional basis rather than on the relevant facts and law.

Additionally, these records constitute improper character evidence under Rule 404(a)(1). Evidence of disciplinary actions, grievances, and incidents during incarceration are being offered to suggest that Plaintiff has a propensity for misconduct—an inference that is prohibited by Rule 404 and has no place in the jury's evaluation of this excessive force case.

Finally, the incarceration records are inadmissible hearsay under Rules 801 and 802. The records contain statements and assertions made by third parties that would be offered for their truth, and no hearsay exception applies to permit their admission.

### IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court exclude the above-referenced categories of evidence and keep the trial focused on the factual issues that are central to the claims brought in this case.

Dated: October 27, 2025                    LAW OFFICES OF DALE K. GALIPO

                                By:    */s/ Cooper Alison-Mayne*
                                       Dale K. Galipo
                                       Cooper Alison-Mayne
                                       Attorneys for Plaintiffs