ROB BONTA, State Bar No. 202668
Attorney General of California
NORMAN D. MORRISON, State Bar No. 212090
Supervising Deputy Attorney General
 2550 Mariposa Mall, Room 5090
 Fresno, CA 93721-2271
 Telephone: (559) 705-2304
 Fax: (559) 445-5106
 E-mail: Norman.Morrison@doj.ca.gov
*Attorneys for Defendants Neil Compston,
John Silveira and Edward Sinclair*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CIVIL DIVISION

| | |
|---|---|
| FREDDIE QUAIR,<br><br>                        Plaintiff,<br><br>v.<br><br>COUNTY OF KINGS; TAYLOR LOPES; NEIL COMPSTON; JOHN SILVERIA; EDWARD SINCLAIR; and DOES 1 THROUGH 10, inclusive,<br><br>                        Defendants. | Case No. 1:20-CV-01793-KJM-SKO<br><br>**DEFENDANTS' MOTION IN LIMINE TO EXCLUDE GOLDEN RULE AND REPTILE THEORY ARGUMENTS AT TRIAL; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**[STATE MIL NO. 7]**[1]<br><br>Trial Date:   November 10, 2025<br>Action Filed: December 21, 2020 |

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD HEREIN:

PLEASE TAKE NOTICE THAT Defendants NEIL COMPSTON, JOHN SILVEIRA and EDWARD SINCLAIR (Defendants) hereby move the Court for an order in limine precluding Plaintiff and/or his counsel of record from utilizing or attempting to utilize any "Golden Rule" or "Reptile Theory" argument during trial, including during opening or closing argument, or during questioning of any witness.

---

[1] For purposes of judicial convenience and reference, the State Defendants' Motions in Limine are identified pursuant to the numbering and designation set forth in the Court's Final Pretrial Order (ECF 83), at 4-5

1

1  This motion is based upon this notice of motion, the attached memorandum of points and
2  authorities, the attached declaration of Supervising Deputy Attorney General Norman D.
3  Morrison IV, all pleadings and records on file in this action, and on such further authority,
4  evidence, or argument as may be presented at or before the time of any hearing on this motion.

5  Dated:  October 27, 2025                               Respectfully submitted,

6                                                        ROB BONTA
                                                         Attorney General of California
7

8                                                        [signature]

9                                                        NORMAN D. MORRISON
                                                         Supervising Deputy Attorney General
10                                                       *Attorneys for Defendants Neil Compston,
                                                         John Silveira and Edward Sinclair*

2

## INTRODUCTION

This lawsuit arises out of a shooting that occurred during the early morning hours on June 18, 2019, on a road next to State Route 43 near Hanford, California. Prior to this incident, Plaintiff Fredie Quair, Jr. had been under surveillance for multiple months as part of a joint Federal, State and local task force known as "Operation Red Reaper" that was investigating the Nuestra Familia criminal organization and the Norteño street gangs in the Kings and Tulare County region. As one of the targets of Operation Red Reaper, Plaintiff was the subject of a combination of video, audio, and electronic surveillance over a period of months performed by the Defendants. This included wiretaps of phone numbers used by Plaintiff and his criminal associates, including Jose Quintero. The months long surveillance captured evidence of Plaintiff engaging in the trafficking of illegal firearms with other criminals, the sales of narcotics, and the discussion of various criminal activities relating to the Norteños and Nuestra Familia.

During the early morning hours of June 18, 2019, Plaintiff and two accomplices, Jose Quintero and David Hernandez, engaged in an armed home invasion robbery of a residence located in Corcoran, California. During the home invasion robbery, Plaintiff's accomplice, David Hernandez, was shot in the stomach. Plaintiff fled the scene on foot, and Hernandez was transported to the hospital by Quintero; the firearm used during the armed home invasion robbery was also in the vehicle used by Quintero.

Plaintiff fled the scene on foot after the shooting, and eventually borrowed a cellular phone from a third-party to call Quintero. During this phone call, which was monitored by the Defendants as part of the court authorized wiretap, they heard Plaintiff and Quintero discussing the armed home invasion robbery, the shooting, the firearm used during the armed home invasion robbery, and Plaintiff's instructions to Quintero to come pick him up from the side of the highway. Plaintiff gave Quintero specific information about his address.

Based upon the phone call, and their knowledge of the armed home invasion robbery that Plaintiff had just committed, and due to the existence of an arrest warrant issued for the Plaintiff by a court, the Defendants began surveillance of the Plaintiff using other vehicles as well as a

3

Defendants' Motion in Limine to Exclude Golden Rule and Reptile Theory Arguments At Trial; Memorandum of Points and Authorities [STATE MIL #7] (1:20-CV-01793-KJM-SKO)

plane. Plaintiff was subsequently stopped by law enforcement officers in a field alongside the highway. In light of the facts known to them, including Plaintiff's involvement in an armed home invasion robbery where someone had just been shot, as well as Plaintiff's prior history involving firearms, the Defendants performed a "felony traffic stop."

After Plaintiff and his accomplice stopped their vehicle, they refused to follow instructions and directions made by Kings County Sheriff's Sergeant Taylor Lopes. Instead, Plaintiff flung open the front passenger side door of his vehicle and immediately assumed an isosceles shooting stance, holding both hands together and extended in front of him consistent with someone holding and intending to use a handgun, pointing towards the Defendants. Plaintiff then suddenly moved his hands upward in a motion consistent with experiencing the physical recoil of a firearm being shot. Knowing Plaintiff had a history of being armed with illegal firearms, having just been involved in an armed home invasion robbery where another individual was shot, seeing Plaintiff assume what was recognized as a shooting stance and displaying a physical reaction consistent with firing a handgun while simultaneously hearing gunfire, Defendants reasonably and logically believed the Plaintiff was shooting at them and discharged their firearms at the Plaintiff and the vehicle he had just exited in self-defense. After being shot, Plaintiff continued to resist arrest by refusing to comply with orders, before he was ultimately taken into custody and treated by emergency medical personnel.

Defendants anticipate that at trial Plaintiff's counsel will attempt to utilize improper "Golden Rule" arguments, or invoke the "Reptile Theory" during opening and/or closing arguments, or in connection with the questioning of witnesses. Defendants accordingly bring this ex parte motion to exclude and bar any such actions and arguments.

///

///

///

4

Defendants' Motion in Limine to Exclude Golden Rule and Reptile Theory Arguments At Trial; Memorandum of Points and Authorities [STATE MIL #7] (1:20-CV-01793-KJM-SKO)

**ARGUMENT**

I. **THE COURT HAS THE POWER TO GRANT THIS MOTION IN LIMINE BASED UPON ITS INHERENT POWER TO MANAGE THE COURSE OF TRIALS.**

A motion in limine is "a procedural mechanism to limit in advance testimony or evidence in a particular area." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009). Motions in limine are recognized as a proper pretrial request, both in practice and by case law. *See, Ohler v. United States,* 529 U.S. 753, 758 (2000), *United States v. Cook,* 608 F.2d 1175, 1186 (9th Cir. 1979). Authority for these motions is also derived from the Court's inherent power to manage the course of trials. *Luce v. United States,* 469 U.S. 38, 41, n.4 (1984). Pursuant to the arguments set forth below, defendants request that this Court grant their motion and exclude the arguments at issue.

II. **COURTS HAVE ROUTINELY EXCLUDED "GOLDEN RULE" ARGUMENTS AS THEY SEEK TO CONVERT THE JURY FROM ITS IMPARTIAL, NEUTRAL ROLE.**

The Ninth Circuit has defined a "Golden Rule" argument as:

> …is essentially a suggestion to the jury by an attorney that the jurors should do unto others, normally the attorney's client, as they would have others do unto them. The typical situation in which such an argument has been employed is the personal injury case in which the plaintiff's counsel suggests to the jurors that they grant the plaintiff the same amount of damages they would want or expect if they were in the plaintiff's shoes. The courts have generally found the 'Golden Rule' argument improper because a jury which has put itself in the shoes of one of the parties is no longer an impartial jury.
>
> *Gonzalez-Chavez v. City of Bakersfield*, No. 1:12-cv-02053, 2015 WL 42972, at *9 (E.D. Cal. Feb. 2, 2015)(emphasis original)(quoting *Minato v. Scenic Airlines, Inc*. 908 F.2d 977, at *5 (9th Cir. 1990).

Courts in the Ninth Circuit have repeatedly held that "Golden Rule" arguments are improper in civil litigation. *Roman v. MSL Capital, LLC*, No. EDCV 17-2066, 2019 WL 1449499, at *5 (C.D. Cal. March 29, 2019); *Raugust v. Abbey and Sanders*, No. 20-09-H-DWM, 2022 WL 1468296, at *6 (D. Montana May 10, 2022); *J.W. v. City of Oxnard*, No. CV 07-06191, 2008 WL 4810298, at *8 (C.D. Cal. October 27, 2008); *Fei Lui v. BMW of North America, LLC*,

5

No. 2:17-cv-07244, 2018 WL 11348341, at *6 (C.D. Cal. December 20, 2018).

In *Reynolds v. Gerstel*, No. 1:09-cv-00680, 2013 WL 4815788, at *5 (E.D. Cal. Sept. 9, 2013) the court granted a motion to prevent the plaintiff from invoking a "Golden Rule" argument at trial. The Court granted the motion, stating that a "Golden Rule" argument is improper, citing the opinions of several other courts which noted that "Golden Rule" arguments are "universally condemned because it encourages the jury to depart from neutrality and to decide the case on the basis of person [sic] interest rather than on the evidence." Id. (quoting *Spray-Rite Serv. Corp. v. Monsanto Co.*, 684 F.2d 1226, 1246 (7th Cir. 1982)). In *Retamosa v. Target Corporation*, No. CV 19-5797, 2021 WL 4499236, at *1 (C.D. Cal. May 4, 2021), the Central District of California similarly granted a motion in limine precluding plaintiffs from engaging in "any questioning, testimony, argument, and evidence that jurors should base their verdict on damages in an amount the jurors' would charge if they endured similar injuries or that a verdict for the Plaintiff will somehow make the community a safer and better place to live and work." As the *Retamosa* Court explained:

> Golden rule and reptile theory "arguments are irrelevant to actual damages alleged in this case and have a substantial likelihood of unfairly prejudicing the jury because these arguments may encourage the jury to render a verdict based on personal interest and bias rather than on the evidence."
>
> *Retamosa*, 2021 WL 4499236, at *1 (quoting *Sialoi v. City of San Diego*, No. 11-CV- 2280, 2016 WL 6092590, at *1 (S.D. Cal. Oct. 18, 2016)).

"Golden Rule" arguments are also subject to exclusion as being unduly prejudicial and not probative under Fed. R. Evid. 403. In the context of Fed. R. Evid. 403, "unfair prejudice" means "an undue tendency to suggest decision on an improper basis, often an emotional one." *Luna v. County of Los Angeles*, No.: CV 07-04715, 2008 WL 11410093, at *1 (C.D. Cal. September 25, 2008); U.*S. v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000). Defendants anticipate that Plaintiff will seek to improperly appeal to jurors' emotions to render a verdict, and such actions are improper and should be barred by granting this motion in limine.

/ / /

/ / /

6

Defendants' Motion in Limine to Exclude Golden Rule and Reptile Theory Arguments At Trial; Memorandum of Points and Authorities [STATE MIL #7] (1:20-CV-01793-KJM-SKO)

### III. "REPTILE THEORY" ARGUMENTS ARE IMPROPER BECAUSE THEY SEEK TO INDUCE A JURY INTO RULING ON EMOTION AND FEELINGS, RATHER THAN AS NEUTRAL FACTFINDERS.

The Reptile Theory is simply a new variant of an improper Golden Rule argument, because it seeks to appeal to the jurors' self-interest about the best interests of the community rather than the jurors' impartial judgments predicated on the evidence. Thus, the Reptile Theory asks the jury to assess for the community "the safest available choice." As the authors of the Reptile Manual explain: "That's all the Reptile demands from anyone. And she really demands it, once you show her that the violation can hurt her...."

In 2009, jury consultant David Ball and plaintiff's attorney Don C. Keenan published a book, Reptile: The 2009 Manual of the Plaintiff's Revolution. The Reptile Manual is based on a concept by neuroscientist Paul MacLean people are driven by the "triune" or "reptilian" portion of their brains. *Beach v. Costco Wholesale Corporation*, 5:18-cv-0092, 2017 WL 10775082, ECF 17-9 (attaching Taylor Denslow Brewer, *Confronting the Reptile in Virginia*, 30 J. CIV. LITIG. 187, 187–88 (2018)("*Brewer*"). This portion of the brain is referred to as "reptilian" because its function is identical to the brain of reptiles, in that it houses basic life functions, such as breathing, balance, hunger, and the fundamental life force of survival. (Id. at 188). Relying on MacLean's theory about the reptile brain, the Reptile Manual's authors advocate appealing to the jurors' "reptile brain," specifically, their basic survival instinct. The idea is, once triggered; the jurors' "reptile brains" will take over their higher-order thinking and compel them to reach a result best protecting the safety of their community. The authors explain plaintiffs' counsel should couch the defendant's conduct in terms of the perceived threat to the community's safety. Therefore, every case should be approached using an "umbrella rule" focusing on community safety: "A driver [or physician, company, policeman, lawyer, accounting firm, etc.] is not allowed to needlessly endanger the public." (*Id*. at 190). (Emphasis omitted; Brackets original).

The Reptile Manual argues plaintiffs' counsel should use this umbrella rule to trump any standard of care otherwise governing a defendant's conduct. (*Brewer*, *supra*, at 190-193). The professional "must select the safest way. If she selects the second-safest, she's not prudent

7

Defendants' Motion in Limine to Exclude Golden Rule and Reptile Theory Arguments At Trial; Memorandum of Points and Authorities [STATE MIL #7] (1:20-CV-01793-KJM-SKO)

because she's allowing unnecessary danger." (*Id*.). Regardless of any legal standard allowing reasonable choices among acceptable alternatives, the professional must adopt the "safest available choice." (*Id*.).

The Reptile Manual instructs plaintiff's counsel to utilize 'safety questions' designed to invoke and reinforce this umbrella rule. It advocates that attorneys ask questions to designed and intended to focus on the reptile portion of their brain by advancing positions that 'safety is always top priority', 'danger is never appropriate', 'protection is always top priority' 'reducing risk is always top priority', 'sooner is always better' and 'more is always better.' Plaintiff's counsel are also instructed to "go beyond the level of harm in this case. The defendant only broke your client's arm, but the same violation could have killed someone. That's the measure by which jurors must determine if the defendant acted carefully enough." (*Brewer*, *supra* at 190-199). They are also instructed to start preconditioning the jury during voir dire, advising "[t]he first step in a Reptilian approach is to get jurors personally involved with the kinds of dangers your case represents." (*Id*.). Plaintiff's counsel is then instructed to continue to use this theme of personal involvement in opening statements, and during the trial proceedings. The Reptile Manual also instructs plaintiff's counsel to impose their own standards in place of the applicable legal standard, by arguing that a defendant "implicitly agrees – in advance – to be responsible for any harm she does if she violates any safety rules…Otherwise the community has to foot the bill. Violating the agreement and getting away with it leaves people fee to violate more safety rules. The Reptile forbids that." The Reptile Manual also contends:

> …no matter what other drivers do, when a driver violates the safety rule requiring her to keep her mind on her driving well enough to always pay attention to where she's going, she has agreed in advance to accept responsibility for any harm she does. That includes the pain and suffering. So the umbrella rule – "no needless danger" – is society's (thus the Reptile's) most important safety rule. It's really two rules: 1. No matter what anyone else does, you must be careful enough not to cause or allow foreseeable danger. 2. When you violate #1, you have agreed in advance to pay for care, lost income, suffering, pain, disability, etc. "When someone gets away with breaking the agreement, they and others have less reason to be careful in the future. So the community is endangered. And the community has to spend dollars needed for its own care to take care of this person instead.

By focusing on community safety, the Reptile Theory seeks to influence jury verdicts by

8

Defendants' Motion in Limine to Exclude Golden Rule and Reptile Theory Arguments At Trial; Memorandum of Points and Authorities [STATE MIL #7] (1:20-CV-01793-KJM-SKO)

appealing to the self-interest of jurors. The theory contends 'Justice is ... an excuse—a *feel-good rationale*—for people to protect themselves and their families.' The Reptile Theory avoids the merits of the plaintiff's claim by appealing to the jurors' personal interest in their own safety and that of their community, with the plaintiff's claims being merely a placeholder for deep-seated, even subconscious, fears jurors harbor about themselves and their families: "Show the Reptile that a good verdict for you facilitates her survival."

    The authors of the manual urge the key is to "[b]roaden" the case and "go beyond your specific kind of defendant." Rather than focus on whether the defendant's conduct actually caused injury to the plaintiff, the Reptile Theory asks whether the defendant's conduct "represents a *community* danger." To move the focus away from the actual plaintiff, the Reptile Theory asks not how the defendant harmed the plaintiff, but instead how much harm the defendant could have caused some other plaintiff: "The valid measure is the *maximum* harm the act *could* have caused." As the authors of the manual emphasize: "There are no small cases. Only small lawyers." The actual facts of the case are secondary: "How much harm could it cause *in other kinds of situations*."

/ / /

/ / /

/ / /

9

Defendants' Motion in Limine to Exclude Golden Rule and Reptile Theory Arguments At Trial; Memorandum of Points and Authorities [STATE MIL #7] (1:20-CV-01793-KJM-SKO)

## CONCLUSION

Accordingly, Defendant requests that the Court grant the motion in limine barring Plaintiff and/or his counsel from making Golden Rule or Reptile Theory arguments at trial. Such arguments are more prejudicial than probative under Fed. R. Evid. 403, particularly in an officer involved shooting case.

Dated:  October 27, 2025

Respectfully submitted,

ROB BONTA
Attorney General of California

NORMAN D. MORRISON
Supervising Deputy Attorney General
*Attorneys for Defendants Neil Compston, John Silveira and Edward Sinclair (BI)*

FR2021301267
95662883

10

Defendants' Motion in Limine to Exclude Golden Rule and Reptile Theory Arguments At Trial; Memorandum of Points and Authorities [STATE MIL #7] (1:20-CV-01793-KJM-SKO)