1
2
3
4
5
6

ROB BONTA, State Bar No. 202668
Attorney General of California
NORMAN D. MORRISON, State Bar No. 212090
Supervising Deputy Attorney General
  2550 Mariposa Mall, Room 5090
  Fresno, CA 93721-2271
  Telephone: (559) 705-2304
  Fax: (559) 445-5106
  E-mail: Norman.Morrison@doj.ca.gov
*Attorneys for Defendants Neil Compston,*
*John Silveira and Edward Sinclair*

7
8
9
10
11

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CIVIL DIVISION

12
13
14
15
16
17
18
19
20

| | |
|---|---|
| **FREDDIE QUAIR,** | Case No. 1:20-CV-01793-KJM-SKO |
| Plaintiff, | **DEFENDANTS' MOTION IN LIMINE TO EXCLUDE OPINIONS, TESTIMONY AND EVIDENCE THAT P.O.S.T.** |
| v. | **LEARNING DOMAINS ARE OFFICIAL POLICIES AND PROCEDURES OF THE** |
| **COUNTY OF KINGS; TAYLOR LOPES; NEIL COMPSTON; JOHN SILVERIA; EDWARD SINCLAIR; and DOES 1 THROUGH 10, inclusive,** | **STATE OF CALIFORNIA; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF NORMAN D. MORRISON** |
| Defendants. | **[STATE MIL NO. 15]**[1] |
| | Trial Date:      November 10, 2025<br>Action Filed:   December 21, 2020 |

21      TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD HEREIN:

22      PLEASE TAKE NOTICE THAT Defendants NEIL COMPSTON, JOHN SILVEIRA and

23      EDWARD SINCLAIR (Defendants) hereby move the Court for an order in limine precluding

24      Plaintiff and/or his counsel of record from introducing or eliciting at trial any testimony, evidence

25      or opinions from Plaintiff's expert, Curtis Rothschiller, or any other witnesses that "Learning

26

27      _____

[1] For purposes of judicial convenience and reference, the State Defendants' Motions in Limine are identified pursuant to the numbering and designation set forth in the Court's Final Pretrial Order (ECF 83), at 4-5

28

Domains" developed and published by the California Commission on Peace Officer Standards and Training constitute official policies and procedures, or constitute a legal mandate or requirement, for sworn law enforcement officers, or that such Learning Domains constitute an official standard, policy, procedure, or requirement that sworn law enforcement officers employed by the Department of Justice are required to follow.

This motion is based upon this notice of motion, the attached memorandum of points and authorities, the attached declaration of Supervising Deputy Attorney General Norman D. Morrison IV, Plaintiff's expert designation and report served pursuant to Fed. R. Civ. P. 26, the deposition of Curtis Rothschiller, all pleadings and records on file in this action, and on such further authority, evidence, or argument as may be presented at or before the time of any hearing on this motion.

**Statement of Compliance:**

This Motion is made in response to this Court's July 24, 2025, ruling (ECF 83), as well as the discussions on the record about the issue during the final pretrial conference held in this matter.

Dated: October 27, 2025                        Respectfully submitted,

                                               ROB BONTA
                                               Attorney General of California


                                               NORMAN D. MORRISON
                                               Supervising Deputy Attorney General
                                               *Attorneys for Defendants Neil Compston,*
                                               *John Silveira and Edward Sinclair (BI)*

2

## INTRODUCTION

This lawsuit arises out of a shooting that occurred during the early morning hours on June 18, 2019, on a road next to State Route 43 near Hanford, California. Prior to this incident, Plaintiff Fredie Quair, Jr. had been under surveillance for multiple months as part of a joint Federal, State and local task force known as "Operation Red Reaper" that was investigating the Nuestra Familia criminal organization and the Norteño street gangs in the Kings and Tulare County region. As one of the targets of Operation Red Reaper, Plaintiff was the subject of a combination of video, audio, and electronic surveillance over a period of months performed by the Defendants. This included wiretaps of phone numbers used by Plaintiff and his criminal associates, including Jose Quintero. The months long surveillance captured evidence of Plaintiff engaging in the trafficking of illegal firearms with other criminals, the sales of narcotics, and the discussion of various criminal activities relating to the Norteños and Nuestra Familia.

During the early morning hours of June 18, 2019, Plaintiff and two accomplices, Jose Quintero and David Hernandez, engaged in an armed home invasion robbery of a residence located in Corcoran, California. During the home invasion robbery, Plaintiff's accomplice, David Hernandez, was shot in the stomach. Plaintiff fled the scene on foot, and Hernandez was transported to the hospital by Quintero; the firearm used during the armed home invasion robbery was also in the vehicle used by Quintero.

Plaintiff fled the scene on foot after the shooting, and eventually borrowed a cellular phone from a third-party to call Quintero. During this phone call, which was monitored by the Defendants as part of the court authorized wiretap, they heard Plaintiff and Quintero discussing the armed home invasion robbery, the shooting, the firearm used during the armed home invasion robbery, and Plaintiff's instructions to Quintero to come pick him up from the side of the highway. Plaintiff gave Quintero specific information about his address.

Based upon the phone call, and their knowledge of the armed home invasion robbery that Plaintiff had just committed, and due to the existence of an arrest warrant issued for the Plaintiff by a court, the Defendants began surveillance of the Plaintiff using other vehicles as well as a

3

plane. Plaintiff was subsequently stopped by law enforcement officers in a field alongside the highway. In light of the facts known to them, including Plaintiff's involvement in an armed home invasion robbery where someone had just been shot, as well as Plaintiff's prior history involving firearms, the Defendants performed a "felony traffic stop."

After Plaintiff and his accomplice stopped their vehicle, they refused to follow instructions and directions made by Kings County Sheriff's Sergeant Taylor Lopes. Instead, Plaintiff flung open the front passenger side door of his vehicle and immediately assumed an isosceles shooting stance, holding both hands together and extended in front of him consistent with someone holding and intending to use a handgun, pointing towards the Defendants. Plaintiff then suddenly moved his hands upward in a motion consistent with experiencing the physical recoil of a firearm being shot. Knowing Plaintiff had a history of being armed with illegal firearms, having just been involved in an armed home invasion robbery where another individual was shot, seeing Plaintiff assume what was recognized as a shooting stance and displaying a physical reaction consistent with firing a handgun while simultaneously hearing gunfire, Defendants reasonably and logically believed the Plaintiff was shooting at them and discharged their firearms at the Plaintiff and the vehicle he had just exited in self-defense. After being shot, Plaintiff continued to resist arrest by refusing to comply with orders, before he was ultimately taken into custody and treated by emergency medical personnel.

The State Defendants anticipate, based upon the opinions and testimony of Plaintiff's use of force expert, Curtis Rothschiller, that at trial Plaintiff will attempt to argue that "Learning Domains," developed and published by the California Commission on Peace Officer Standards and Training (P.O.S.T.) for use in training civilians to become peace officers as part of a "police academy" course prior to their becoming sworn law enforcement officers, constitute official policies and procedures, or constitute a legal mandate or requirement, for sworn law enforcement officers, or that such Learning Domains constitute an official standard, policy, procedure, or requirement that sworn law enforcement officers employed by the Department of Justice are required to follow. State Defendants accordingly submit this motion in limine for an order

4

prohibiting Plaintiff's from attempting to argue that P.O.S.T. Learning Domains constitute official policies or procedures that sworn law enforcement officers are required to follow, or introduce testimony or evidence in support of such an argument.

## LEGAL STANDARD

"A motion in limine is a procedural mechanism to limit in advance testimony or evidence in a particular area." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009). "In the case of a jury trial, a court's ruling 'at the outset' gives counsel advance notice of the scope of certain evidence so that admissibility is settled before attempted use of the evidence before the jury." Id. at 1111-12. Although the federal rules do not explicitly authorize motions in limine, the Supreme Court has held that trial judges are authorized to rule on motions in limine under their authority to manage trials. *Luce v. United States*, 469 U.S. 38, 41 n. 4 (1984).

I.    **THE COURT SHOULD BAR ANY REFERENCES TO THE P.O.S.T. LEARNING STANDARDS AS CONSTITUTING LAW ENFORCEMENT POLICIES AND PROCEDURES, OR SETTING MINIMUM STANDARDS FOR LAW ENFORCEMENT OFFICERS TO FOLLOW.**

The State Defendants anticipate that at trial Plaintiff will attempt to argue that the learning domains used in connection with the education and training of civilians studying to become law enforcement officers constitute enforceable or setting minimum standards for sworn law enforcement officers to comply with after they have graduated from a police academy and been hired and sworn in as law enforcement officers. Defendants similarly anticipate that Plaintiff will argue at trial that the failure of the County of Kings and the California Department of Justice (who is not a party to this lawsuit) also failed to comply with enforceable and mandatory procedures imposed by the Commission on Peace Officer Standards and Training (P.O.S.T.). Defendants also expect that Plaintiff will argue that Defendants' actions were somehow improper as they did not comply with P.O.S.T. training guidelines.

/ / /

/ / /

5

Any such arguments lack any support under California law, and would constitute a gross misrepresentation of the purposes, as well as the laws applicable to policies and procedures developed by law enforcement agencies.

Defendants' anticipation that Plaintiff will argue, and represent to the jury, that the P.O.S.T. standards constitute enforceable minimum standards for law enforcement officers to follow, and are otherwise enforceable policies, procedures and standards that sworn law enforcement officers have to follow is based the opinions and deposition testimony of Plaintiff's use of force expert, Curtis Rothschiller, who offered opinions that the individual Defendants, as well as the County of Kings and the Department of Justice allegedly failed to comply with P.O.S.T. regulations and training programs. (*See* Rothschiller Report, ¶¶ 1-12, 15-17, 21, 26, 28-32, 49, 52, 53(b)(1), 58, 69, 70, 76, 83, 98, 100, 108, 118, 123, 131.) Additionally, during his deposition Rothschiller identified P.O.S.T. learning standards and materials as being the foundation for his opinions. Significantly, Rothschiller conceded during his deposition that P.O.S.T. standards do not constitute the policies and procedures for a law enforcement agency that its employees are required to follow. (Deposition of Curtis Rothschiller (Rothschiller Tr.), at 125:2-126:17, 129:11-130:14, 177:19-180:2.)

Accordingly, allowing Plaintiff to make arguments that P.O.S.T. learning standards, regulations, and training either constitutes a policy and procedure or a minimal standard that officers are required by law to follow is not only inappropriate, but misleading and will result in jury confusion and misapplication of the law. While Plaintiff may reference P.O.S.T. learning standards, and the materials taught therein, as educational materials taught to civilians attending a police academy, he should be barred from attempting to imply that these materials constitute some form of legal standard, requirement, or element that law enforcement officers must meet or follow.

/ / /

/ / /

/ / /

6

**A.    P.O.S.T. Learning Standards Are Used For the Purpose of Training Civilians Learning to Become Sworn Law Enforcement Officers in a Police Academy.**

In his deposition and written Rule 26 Report, Plaintiff's expert Curtis Rothschiller admits that many of his opinions are based upon "learning domains" developed and published by P.O.S.T. There is <u>no</u> statutory or regulatory authority, enabling legislation, or any other law that recognizes, or declares, a P.O.S.T. learning domain to constitute an enforceable policy or standard.

Pursuant to Title 11, section 1005(a)(1) of the California Code of Regulations, every peace officer (with certain specified exceptions) are required to complete the "Regular Basic Course" (commonly known as the "police academy") before being assigned duties which include the exercise of peace officer powers. The State of California has instructed P.O.S.T. to adopt rules "establishing minimum standards for training" of various classes of law enforcement officers. Cal. Pen. C. 13510(a)(2).[2] The State of California has enacted specific training requirements for certain areas, including the use of force, through legislation. California Penal Code section 13519.10(a)(1) provides that P.O.S.T. shall implement a course or courses of instruction for the regular and periodic training of law enforcement officers in the use of force, and shall also develop uniform, minimum guidelines for adoption and promulgation by California law enforcement agencies for the use of force. Penal Code section 13519.10(b) continues by identifying required elements of the regular basic course for law enforcement officers.

The "Regular Basic Course" is broken up into various discrete educational segments. For each of these educational segments, known as "learning domains," one or more specific "learning objectives" is identified. Pursuant to section 1001(34) of title 11, California Code of Regulations, the term "learning domain" is identified as "an instructional unit that covers related subject matter. Training specifications for each learning domain include learning needs, learning objectives, and hourly requirements. Training specifications for a learning domain may include

---

[2] Defendants note that Penal Code section 13510(a)(2), as well as many other statutes relating to the training requirements for law enforcement officers, do not include within its scope sworn law enforcement officers employed by the State of California as Special Agents.

learning activities and testing requirements." Section 1001(37) of the Code of Regulations defines

a "learning objective" as a statement that describes an expected training outcome relating to a

learning need. As part of the educational process, P.O.S.T. has developed student workbooks to

be used as part of each learning domain in the Basic Course.

Significantly, the Penal Code makes it clear that P.O.S.T. training materials and learning

standards are not independent standards that sworn law enforcement officers are required to

follow, and that sworn officers are instead required to follow their employing agencies specific

policies and procedures. As set forth in Penal Code section 13519.10(e):

> It is the intent of the Legislature that each law enforcement agency adopt,
> promulgate, and require regular and periodic training **consistent with an agency's**
> **specific use of force policy** that, at a minimum, complies with the guidelines
> developed under subdivisions (a) and (b). (emphasis added.)

Nowhere in the statutes creating and enabling P.O.S.T., or in the accompanying

regulations, is there any language or authority providing that P.O.S.T.'s training and educational

materials and publications constitute any type of enforceable guideline, policy or procedure that a

sworn law enforcement officer is required to follow.

**B.    P.O.S.T. Learning Domains Cannot Constitute Policies and Procedures,
as they Are Basic Educational Materials for Civilians Studying to
Become Law Enforcement Officers.**

Plaintiff is unable to identify any specifically designated or identifiable policies and

procedures applicable to law enforcement officers and their agencies created or enacted by

P.O.S.T. Instead, Plaintiff relies upon "Learning Domains" developed by P.O.S.T. to support his

claim of a violation of policies and procedures.

Contrary to Plaintiff's expert's arguments, P.O.S.T. Learning Domains do not constitute

policies and procedures, nor can they be interpreted as such. Instead, as noted above a "Learning

Domain" is defined as an <u>instructional unit</u> that covers related subject matters, and includes

learning needs, objectives and hourly requirements. 11 Cal.Code Regs. § 1001(34)(emphasis

added). A "Learning Objective" for purposes of P.O.S.T. training is defined as "statement that

describes an expected <u>training</u> outcome related to a <u>learning need</u>." 11 Cal.Code Regs. §

8

Defendants' Motion in Limine to Exclude Opinions, Testimony and Evidence that P.O.S.T. Learning Domains are
Official Policies and Procedures; Memorandum of Points and Authorities; Declaration of Norman D. Morrison
[STATE MIL #15] (1:20-CV-01793-KJM-SKO)

1101(37)(emphasis added). A "Learning Need" is similarly defined as "a general statement

justifying the training for a specific learning domain." 11 Cal.Code Regs. § 1101(36)(emphasis

added). For purposes of P.O.S.T. training the term "Learning Activity" is defined by section

1101(33) of Title 11 of the California Code of Regulations as:

> …a facilitated, performance-based component of instruction. Learning activities
> are student-focused and require the learner to be actively involved in structured
> work designed to enhance the acquisition of knowledge, skills, or competencies.
> The use of learning activities is consistent with principles of adult learning.
> Learning activities are integrated into the delivery of instruction as a means of
> reinforcing taught concepts, introducing relevant topics, or to enhance student
> retention necessary to achieve competence. Students participating in a learning
> activity may be coached or provided feedback. Unlike tests, learning activities are
> not graded.

The California Code of Regulations, as well as the California Penal Code, accordingly

make it clear that P.O.S.T. Learning Domains – such as those Rothschiller relies upon here – are

*training* materials, and do not create policies and procedures.

Defendants further note that there is no specific statutory authority designating P.O.S.T. to

create policies and procedures applicable to other law enforcement agencies, such as the

Department of Justice. Nor is there any language in the enabling statutes for P.O.S.T. indicating

that P.O.S.T. is enabled, or authorized, to develop policies and procedures in the absence of some

specific statutory language. *See* Cal. Pen. C. §§ 13501 *et seq.* Where the legislature has

authorized P.O.S.T. to develop what could be deemed to be a policies or requirement broadly

applicable to law enforcement agencies, it has included specific statutory language directing

P.O.S.T. to perform such an activity. *See* Cal.Pen. C. §§ 13515 (directing that specific law

enforcement officers complete elder and dependent abuse training courses); 13515.28 (imposing

specific crisis interventional behavioral health training for field training officers of law

enforcement agencies); 13515.40 (directing P.O.S.T. to work collaboratively with other entities to

develop guidelines regarding for addressing individuals with Alzheimer's, autism and dementia);

13516 (directing P.O.S.T. to develop guidelines establishing standard procedures with <u>may</u> be

followed by law enforcement agencies in the investigation of sex based crimes); 13517 (directing

P.O.S.T. to develop guidelines which <u>may</u> be followed by law enforcement agencies in the

9

Defendants' Motion in Limine to Exclude Opinions, Testimony and Evidence that P.O.S.T. Learning Domains are
Official Policies and Procedures; Memorandum of Points and Authorities; Declaration of Norman D. Morrison
[STATE MIL #15] (1:20-CV-01793-KJM-SKO)

detection, investigation and response of cases of child abuse/neglect); 13517.7 (ordering P.O.S.T. to prepare guidelines establishing guidelines and training for use by law enforcement agencies to use addressing child safety concerns when a caretaker parent or guardian is arrested). Similarly, where the State has required P.O.S.T. to develop specific training programs and requirements for law enforcement officers to follow, it has done so by statute. *See e.g.* Cal.Pen. C. §§ 13510, 13510.5, 13510.6, 13514.1, 13514.5, 13515.25, 13515.26.

To the extent Plaintiff intends to introduce testimony regarding use of the P.O.S.T. Learning Domains as *training materials*, and not as policies or procedures, such a use would appear to be permissible provided the testimony is limited to the scope of the actual Learning Domain itself, and the witness demonstrates familiarity with the materials and subject matter actually taught as part of the P.O.S.T. classes. Similarly, Plaintiff would be entitled to introduce testimony regarding specific categories of training required by P.O.S.T. as part of the certification and licensing process for law enforcement officers. *See e.g.* Cal.Pen. C. § 13518 (requiring specific law enforcement officers to meet specific prescribed training standards for the administration of first aid and CPR), 13518.5 (requiring law enforcement officers engaged in specific fields to complete training course meeting specific requirements), 13519.05 (requiring course of training for law enforcement officers in handling stalking complaints).

**C.    Rothschiller Lacks Any Familiarity with the California Department of Justice's Policies and Procedures, and Has Admitted He Has Not Reviewed Them and Therefore Plaintiffs Cannot Argue The State Defendants Violated any Policies and Procedures.**

In his Rule 26 report and during his deposition, Plaintiff's use of force expert Rothschiller admits that he did not review the California Department of Justice's Policies and Procedures, that he was not provided with copies of the Department of Justice's Policies and Procedures as part of his retention and work performed on behalf of the Plaintiff, and that he did not make any attempt to independently obtain the Department of Justice's Policies and Procedures. Instead, he reviewed the Policies and Procedures for the County of Kings, the County of Ventura (which has no relevance of applicability here), and what is apparently a generic policy and procedure developed

10

and marketed by Lexipol, a private company that prepares policies and procedures and other documents for a variety of law enforcement agencies throughout the United States. Significantly, during his deposition Rothschiller admitted that the State Defendants would not be subject to the County of Kings' policies and procedures, and that the P.O.S.T. materials would not constitute a policy and procedure vis-à-vis the State Defendants.

Rothschiller's failure to review the Department of Justice's policies and procedures, yet offer opinions that the State Defendants failed to follow policies and procedures renders his opinions speculative and without any factual basis.[3] Further, Rothschiller offers no explanation for his failure to obtain and review the State Defendants' policies and procedures, especially as California law has required all law enforcement agencies to publish their policies online since January 1, 2020. Cal. Penal Code § 13650. Because Rothschiller has admitted he lacks any knowledge of the Department of Justice's Policies and Procedures, which he admits are the controlling documents, he cannot attempt to avoid his lack of preparation and knowledge by instead relying upon documents he himself concedes are not applicable.

Because Rothschiller has admitted he lacks any familiarity or knowledge of the State Defendants' policies and procedures, he must be barred from trying to offer testimony as to the State Defendants regarding P.O.S.T. training and educational standards and whether such materials constitute policies and procedures, or minimum standards that the State Defendants were required to follow. Any such opinions would by wholly speculative, lacking any foundation, and lacking the personal knowledge or education required for a witness to offer expert opinions and testimony at trial.

**D.    Rothschiller Testified that Post Learning Domains Do Not Constitute Policies and Procedures, and That Law Enforcement Officers Are Required To Follow their Departmental Policies and Procedures, Not POST Learning Domains.**

During his October 22, 2022, deposition, Rothschiller was asked whether the PO.S.T. Learning Domains he referenced and relied upon included language stating that sworn law

---

[3] The State Defendants have filed a separate motion in limine addressing these opinions and testimony.

enforcement officers are required to comply with P.O.S.T. Learning Domains. Rothschiller admitted, and testified, that the P.O.S.T. Learning Domains do not contain language stating that sworn law enforcement officers are required to comply with P.O.S.T. Learning Domains. (Rothschiller Tr., at 125:5-126:17.) During his deposition Rothschiller was directly asked:

> Q.    So you would agree that it's agency policy that's - - that's required to be followed, not a learning domain?
>
> A.    Oh, I agree.
>
> (Rothschiller Tr., 126 at 2-5.)

Rothschiller was also asked about the specific P.O.S.T. Learning Domains he had identified, including those relating to firearms and the use of force, and asked whether these policies specifically stated that law enforcement officers must comply with agency policy and state and federal law, and that the applicable P.O.S.T. Learning Domain specifically stated that the baseline for the use of deadly force, including the conditions under which force may be used, are strictly controlled by *agency policy*. (Rothschiller Tr., 125:13-126:13.) Rothschiller stated he agreed with these statements. (*Id.*)

Rothschiller was also asked whether there was any reference or statement in the P.O.S.T. Learning Domains, including the Learning Domain 20 (Use of Force), that sworn law enforcement officers were required to comply with P.O.S.T. Learning Domains; Rothschiller responded by answering "No." (Rothschiller Tr., 125:18-20.)

While being questioned about P.O.S.T. Learning Domains relating to the use of force, Rothschiller was asked whether these subjects are "issues that are controlled by agency policy, not POST learning domains." (Rothschiller Tr., 126:14-17.) Rothschiller responded succinctly, and unmistakeably: "Yes." (*Id.*)

After stating that P.O.S.T. Learning Domains created specific requirements on law enforcement officers regarding their use of force, Rothschiller was unable to identify where the language and requirements he referenced came from. (Rothschiller Tr., 129:11-130:14; 177:19-180:2; 178:6-18). Accordingly, Rothschiller was instructed that a blank would be left in his

12

1   deposition transcript for him to fill in where the language was located. (*Id.*) Rothschiller failed

2   and/or refused to provide this information, despite having testified to it. (*Id.*; Declaration of

3   Supervising Deputy Attorney General Norman D. Morrison IV, ¶ 4-5.)

4          Rothschiller's own unequivocal, unambiguous testimony clearly establishes that he agrees

5   that P.O.S.T. Learning Domains do not constitute "policies and procedures" that sworn law

6   enforcement agents, such as the State Defendants, are required to follow. As Rothschiller is

7   Plaintiff's only designated use of force/police practices expert, this admission is binding on

8   Plaintiff here, and Plaintiff cannot argue that Learning Domains constitute some form of policy or

9   procedure when their own expert has conceded they do not. Additionally, because Rothschiller

10  has admitted he lacks any familiarity or knowledge of the State Defendants' policies and

11  procedures, he must be barred from trying to offer testimony as to the State Defendants regarding

12  P.O.S.T. training and educational standards and whether such materials constitute policies and

13  procedures, or minimum standards that the State Defendants were required to follow. Any such

14  opinions would by wholly speculative, lacking in foundation, and lacking the personal

15  knowledge, credentials or education required for a witness to offer expert opinions and testimony

16  at trial.

17  / / /

18  / / /

19  / / /

20

21

22

23

24

25

26

27

28

13

Defendants' Motion in Limine to Exclude Opinions, Testimony and Evidence that P.O.S.T. Learning Domains are
Official Policies and Procedures; Memorandum of Points and Authorities; Declaration of Norman D. Morrison
[STATE MIL #15] (1:20-CV-01793-KJM-SKO)

1

**CONCLUSION**

2      For all of the foregoing reasons, this Court should enter an order barring Plaintiff's

3   counsel from arguing, or eliciting testimony or opinions, from its witnesses that a P.O.S.T.

4   Learning Domain constitutes a "policy or procedure" applicable to a sworn law enforcement

5   agency, particularly as to the State Defendants.

6   Dated: October 27, 2025                    Respectfully submitted,

7                                              ROB BONTA
                                               Attorney General of California
8

9

10                                             NORMAN D. MORRISON
                                               Supervising Deputy Attorney General
11                                             *Attorneys for Defendants Neil Compston,*
                                               *John Silveira and Edward Sinclair (BI)*
12

13   FR2021301267
     95662883

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendants' Motion in Limine to Exclude Opinions, Testimony and Evidence that P.O.S.T. Learning Domains are
Official Policies and Procedures; Memorandum of Points and Authorities; Declaration of Norman D. Morrison
[STATE MIL #15] (1:20-CV-01793-KJM-SKO)

## DECLARATION OF SUPERVISING DEPUTY ATTORNEY GENERAL
## NORMAN D. MORRISON IV IN SUPPORT OF EX PARTE MOTION

I, Norman D. Morrison IV, do hereby declare as follow:

1.    I am employed by the State of California Department of Justice, Office of the Attorney General, as a Supervising Deputy Attorney General. I am counsel of record for Defendants Neil Compston, John Silveira and Edward Sinclair in this case. I am aware of the facts identified herein, and if called to testify I could and would testify accurate to them. This Declaration is made in support of the Defendants' Motion in Limine to exclude portions of the opinions and testimony of Plaintiff's designated expert, Curtis Rothschiller.

2.    This lawsuit arises out of a shooting that occurred during the early morning hours on June 18, 2019, on a road next to State Route 43 near Hanford, California. Prior to this incident, Plaintiff Freddie Quair, Jr. had been under surveillance for multiple months as part of a joint Federal, State and local task force known as "Operation Red Reaper" that was investigating the Nuestra Familia criminal organization and the Norteño street gangs in the Kings and Tulare County region. As one of the targets of Operation Red Reaper, Plaintiff was the subject of a combination of video, audio, and electronic surveillance over a period of months performed by the Defendants. This included wiretaps of phone numbers used by Plaintiff and his criminal associates, including Jose Quintero. The months-long surveillance captured evidence of Plaintiff engaging in the trafficking of illegal firearms with other criminals, the sales of narcotics, and the discussion of various criminal activities relating to the Norteños and Nuestra Familia.

3.    On October 10, 2022, the deposition of Curtis Rothschiller was taken. Attached hereto as Exhibit "A" is a true and correct copy of relevant portions of Mr. Rothschiller's deposition testimony.

4.    During Rothschiller's deposition, he was unable to recall where specific language appeared in P.O.S.T. Learning Domains that he contended imposed requirements on sworn law enforcement officers. Based upon his inability to recall, and to ensure that Defendants had

1

Defendants' Motion in Limine to Exclude Opinions, Testimony and Evidence that P.O.S.T. Learning Domains are
Official Policies and Procedures; Memorandum of Points and Authorities; Declaration of Norman D. Morrison
[STATE MIL #15] (1:20-CV-01793-KJM-SKO)

obtained a full and complete understanding of Rothschiller's opinions and the grounds and facts for his opinions, I instructed him that a blank would be left in the transcript and that when he was reviewing the transcript he was to insert the identifying information he was unable to recall or did not know in the blank, and then return it to the Court Reporter.

5.    No response was received from Rothschiller regarding the missing information for which a blank had been left in the transcript by the deadline for him to provide corrections and revisions.

I hereby declare under penalty of perjury that the foregoing is true and correct. Executed this 27th day of October, 2025, in Fresno, California.

_____

Norman D. Morrison IV

2
Defendants' Motion in Limine to Exclude Opinions, Testimony and Evidence that P.O.S.T. Learning Domains are
Official Policies and Procedures; Memorandum of Points and Authorities; Declaration of Norman D. Morrison
[STATE MIL #15] (1:20-CV-01793-KJM-SKO)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

# Exhibit

# A

26
27
28

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FREDDIE QUAIR,                         No. 1:20-CV-01793-JLT-SKO

               Plaintiff,

vs.

COUNTY OF KINGS; TAYLOR LOPES;
NEIL COMPSTON; JOHN SILVERIA;
et al.,

               Defendants.

_____

REMOTE DEPOSITION VIA ZOOM VIDEOCONFERENCE OF
CURT ROTHSCHILLER


Monday, October 10, 2022, at 9:00 A.M.


Reported by:

Shelly A. Davis, CSR #8947, RPR

Curt Rothschiller                                          October 10, 2022

```
 1              UNITED STATES DISTRICT COURT

 2          FOR THE EASTERN DISTRICT OF CALIFORNIA

 3   FREDDIE QUAIR,              No. 1:20-CV-01793-JLT-SKO

 4                   Plaintiff,

 5   vs.

 6   COUNTY OF KINGS; TAYLOR LOPES;
     NEIL COMPSTON; JOHN SILVERIA;
 7   et al.,

 8                   Defendants.
     _____
 9

10

11          BE IT REMEMBERED, that pursuant to Notice, and

12   on the 10th day of October, 2022, commencing at the hour

13   of 9:00 a.m., remotely via Zoom Videoconferencing,

14   pursuant to CCP 2025.310, before me, SHELLY A. DAVIS,

15   Certified Shorthand Reporter No. 8947, RPR, the

16   following proceedings took place:

17

18

19

20

21

22

23

24

25
```

```
 1    APPEARANCES OF COUNSEL (all appearing via Zoom):

 2

 3        For the Plaintiff:

 4            Law Office of Darrell J. York
             BY:  DARRELL J. YORK, ESQ.
 5           27240 Turberry Lane, Suite 200
             Valencia, CA  91355
 6           661.362.0828
             djylaw@gmail.com
 7
             Law Offices of Dale K. Galipo
 8           BY:  EUGENIA BAGDASSARIAN, ESQ.
             21800 Burbank Boulevard, Suite 310
 9           Woodland Hills, CA  91367
             818.347.3333
10           eugeniabagdassarian@galipolaw.com

11

12        For the Defendants COUNTY OF KINGS AND TAYLOR LOPES:

13            Weakley & Arendt
             BY:  MATTHEW P. BUNTING, ESQ.
14           5200 North Palm Avenue, Suite 211
             Fresno, CA  93704
15           559.221.5256
             matthew@walaw-fresno.com
16

17
          For the Defendants NEIL COMPSTON, JOHN SILVERIA,
18        EDWARD SINCLAIR:

19            Department of Justice
             Attorney General of California
20           BY:  NORMAN D. MORRISON, ESQ.
                 Deputy Attorney General
21           2550 Mariposa Mall, Room 5090
             Fresno, CA  93721
22           559.705.2304
             norman.morrison@doj.ca.gov
23

24

25
```

Curt Rothschiller                                    October 10, 2022

```
 1                          INDEX

 2                                              PAGE

 3    EXAMINATION BY MR. BUNTING                   5

 4    EXAMINATION BY MR. MORRISON                 82

 5    EXAMINATION BY MR. BUNTING                 145

 6    EXAMINATION BY MR. MORRISON                161

 7    EXAMINATION BY MR. BUNTING                 172

 8    EXAMINATION BY MR. MORRISON                178

 9

10

11

12                      EXHIBIT INDEX

13    NUMBER      DESCRIPTION                IDENTIFIED

14    Exhibit 1  Notice of Deposition            181

15    Exhibit 2  POST Learning Domain 35         181
                 Firearm/Chemical Agents
16
      Exhibit 3  POST Learning Domain 20         181
17               Use of Force

18    Exhibit 4  Kings County Sheriff's Office    181
                 Incident Report for 19K019976
19
      Exhibit 5  Office of the District Attorney  181
20               Report dated June 17, 2020

21    Exhibit 6  DOJ Investigation Report         181

22

23

24

25
```

1        MONDAY, OCTOBER 10, 2022; 9:00 A.M. – 1:52 P.M.

2

3                        CURT ROTHSCHILLER,

4            having been first duly remotely sworn,

5                     testified as follows:

6        THE WITNESS:  I do.

7

8                        EXAMINATION

9   BY MR. BUNTING:

10       Q.   Can you please state your name and spell it,

11   sir.

12       A.   Curt, C-u-r-t.  Rothschiller,

13   R-o-t-h-s-c-h-i-l-l-e-r.

14       Q.   And you're a hired expert, so I can dispense

15   with the admonitions, sir?

16       A.   Yes.

17       Q.   Do you know when you were retained, sir?

18       A.   No.

19       Q.   Okay.

20       A.   I don't.  Maybe three or four months ago.

21       Q.   Okay.  The first letter I see from you to

22   plaintiff's counsel is July 22nd, 2022.  Does that sound

23   roughly correct?

24       A.   No.  I -- I really don't remember when we

25   first started talking.

1   regarding officers' obligations to request medical care

2   for detainees and arrestees?

3         A.   The court cases themselves, no, but there's --

4   go ahead.

5         Q.   Okay.  Earlier we were talking about the

6   learning domains.  I'm going to come back to the

7   learning domains.  You talked about Learning Domain 20,

8   correct?

9         A.   Yes.

10        Q.   What does Learning Domain 20 say about agency

11  policy?

12        A.   Which part of agency policy?

13        Q.   Well, let me rephrase it, then, sir.  Isn't it

14  true that Learning Domain 20, Chapter 4, page 4-9,

15  states that "officers must conform to agency policy and

16  federal and state law"?

17        A.   Yes.

18        Q.   There's no reference in there to officers

19  complying with POST learning domains, is there?

20        A.   No.

21        Q.   In fact, doesn't the same section of Learning

22  Domain 20 also state, "All of the law and courts have

23  established a baseline for the use of the deadly force,

24  the conditions under which deadly force may be used are

25  strictly controlled by agency policy"?

Curt Rothschiller                                      October 10, 2022

1         A.    I believe so.

2         Q.    So you would agree that it's agency policy

3    that's -- that's required to be followed, not a learning

4    domain?

5         A.    Oh, I agree.

6         Q.    And that the same section of Learning Domain

7    20, Chapter 4, page 4-9, provides, "Some issues

8    regarding the use of deadly force addressed by agency

9    policies include, but are not limited to:  Defense of

10   self and others against serious bodily harm or death;

11   use of warning shots; and shooting at or from a moving

12   vehicle."

13        A.    Yes.

14        Q.    So, again, those are all issues that are

15   controlled by agency policy, not POST learning domains,

16   correct?

17        A.    Correct.

18        Q.    In fact, have you ever had any of your

19   opinions -- has any party ever moved to exclude your

20   opinions at trial or otherwise based upon improper

21   foundation?

22        A.    Not that I'm aware.

23        Q.    I'm going to come back to Learning Domain 35,

24   Chapter 5, this is on package 5-10.  Earlier I asked you

25   about the ability to shoot while in the prone position.

1    Q.    Any reason you didn't ask them?

2    A.    No.

3    Q.    Did you ask if plaintiffs could get you still

4    images of what Mr. Quair did when he exited the vehicle?

5    A.    I did get some still images.  I don't recall

6    if they were from the video.

7    Q.    Okay.  Did you review those?

8    A.    I did.

9    Q.    And what did they depict?

10   A.    The scene.

11   Q.    Okay.  Turning back, at this point I'm

12   referring to your declaration, on paragraph 26 you state

13   that "officers are responsible to justify every shot

14   fired.  Every shot must be objectively reasonable, and

15   subjective fear on the part of the officer cannot be

16   used to justify the use of deadly force."

17          Where does the first part of that statement

18   come from, sir?

19   A.    I'm sorry, which -- which paragraph?  26?

20   Q.    Paragraph 26, the first part up to the first

21   semicolon.

22   A.    It comes from policies and from the POST

23   use-of-force domain.

24   Q.    Where does it come from in the POST

25   use-of-force domain?

1    A.   I don't know specifically where.

2    Q.   I'm going to leave another blank in the

3  deposition transcript, sir, and when you review this,

4  I'd like you to fill that in with the specific section

5  that it comes from.

6         (Requested information: _____)

7    THE WITNESS:   Okay.   It also might be in the

8  firearms, so leave two blanks.

9  BY MR. MORRISON:

10    Q.   Sure.   One blank.   It's just -- they just

11  leave you blank line underneath it, and you can write

12  in.   It's one LD or two LDs.   You've got one line to

13  fill it in on.   They don't leave you, like, LD20 or

14  whatever with just a blank, they just leave you a line.

15         Are there weapons that are small and easily

16  concealable in hand?

17    A.   Yes.

18    Q.   For example, would Ruger LCP be such a weapon?

19    A.   I'm not a gun guy.   I have no idea what that

20  is.

21    Q.   Okay.   You would agree that there are weapons

22  that are easily concealable in the hand?

23    MS. BAGDASSARIAN:   Objection.   Vague and ambiguous

24  as to "easily concealable."

25

1     MR. MORRISON:  Let's exhibit the -- attach the

2    exhibit -- or Exhibit 1 will be the notice of

3    deposition.

4          Exhibit 2, I'm going to attach the POST

5    Learning Domain 35, which is the Firearm, slash,

6    Chemical Agents.

7          Exhibit 3 will be POST Learning Domain 20,

8    which is the -- the use of force.

9          And Exhibit 4 will be the County of Kings

10   report that I discussed earlier.

11         Exhibit 5 will be the DA report.

12         And Exhibit 6 will be the DOJ document that I

13   talked about earlier involving a discussion about the

14   interview with Mr. Quintero.

15         I will get those documents to the court

16   reporter if she can e-mail me her e-mail.

17                     EXAMINATION

18   BY MR. MORRISON:

19     Q.   And then the only other question I did have

20   is, Mr. Rothschiller, you earlier testified, and I don't

21   know if we already addressed this, if we did already, I

22   apologize, but you testified earlier that law

23   enforcement officers are required to reassess between

24   firing, and they're taught that during POST.  Again, I'm

25   going to leave a blank, if a blank hasn't been left, I'd

1  like you to identify where in POST that appears.

2          (Requested information: _____)

3      THE WITNESS:  Okay.

4                    EXAMINATION

5  BY MR. MORRISON:

6      Q.   And then you also talked about they're trained

7  that they have to see what they believe to be a firearm

8  in a suspect's hand before shooting.  What are you

9  basing that opinion off of?

10     A.   Or a weapon.

11     Q.   Or a weapon.

12          Where are you basing that off of?

13     A.   That's out of POST training, and most

14  agencies' policies.

15     Q.   Okay.  Well, I'm going to leave a blank for

16  you to identify that also out of the POST policy -- or

17  the POST learning domain.

18          (Requested information: _____)

19     MR. MORRISON:  And that's all I have.

20     MR. YORK:  Real quick.  I guess, Curt, you can tell

21  them what your fee is for this so they can get you a

22  check.

23     MR. BUNTING:  Yeah.  It's five hours times 400.  Is

24  that correct, sir?

25     THE WITNESS:  A little under five hours, I guess.

1          MR. BUNTING:  You're going to be generous and round

2     for me.  Okay.

3          MR. YORK:  Round it up.  Round it up.

4          THE WITNESS:  I'm not an attorney.  I don't charge,

5     like, every second.  Sorry.

6          MR. BUNTING:  It would hurt less if it wasn't

7     short.

8          THE WITNESS:  Yes, that's fine.

9          MR. BUNTING:  So what would be agreed upon, the

10    fee, sir?  Just under 2,000?

11         THE WITNESS:  Yeah, that's fine.

12         MR. BUNTING:  1900?  I would feel much better if

13    you give me a figure, we agree on it here.

14         THE WITNESS:  1950.

15         MR. BUNTING:  1950.  Okay.

16         MR. YORK:  And send the additional $50 to me,

17    please, for my pain and suffering that I had to endure

18    during Norman's tremendous examination.

19         MR. MORRISON:  Pain and suffering is your own

20    cause.  I had no contributing factor to that.  Riding a

21    bicycle into a pothole while only wearing a helmet and

22    not a RedMan suit is assumption of the risk.

23         MR. YORK:  I know.  I know.

24         MR. MORRISON:  Of course, wearing a RedMan suit

25    riding a bicycle will probably get you stopped.

1      MR. YORK:  Yes.

2      MR. BUNTING:  Mr. Rothschiller, would you like me

3  to run the check through to Mr. York's or

4  Ms. Bagdassarian's office.  Do you want it directly to

5  you?  What would you prefer, sir?

6      THE WITNESS:  I guess to me.

7      MR. BUNTING:  Okay.  And then let me make sure I've

8  got an address for you.

9      MS. BAGDASSARIAN:  I believe it's on your report,

10  right, Curt?

11      MR. BUNTING:  The top of the -- 521 Verdugo Way

12  187, Camarillo?

13      THE WITNESS:  Yes.

14      MR. BUNTING:  Okay.  Thank you, sir.

15                      EXAMINATION

16  BY MR. MORRISON:

17      Q.   And just to make sure, we've gone over all of

18  your opinion that you have, correct?

19      A.   Uh-huh.  On this case, yes.

20      Q.   Perfect.  Thank you.

21      MS. BAGDASSARIAN:  Just one question.  How are we

22  dealing with the transcript?  I don't remember what we

23  did last time after the depo.

24      MR. BUNTING:  Well, I mean, we're totally fine with

25  him getting it e-mailed directly or e-mailed to either