Rob Bonta, State Bar No. 202668
Attorney General of California
Norman D. Morrison, State Bar No. 212090
Supervising Deputy Attorney General
 2550 Mariposa Mall, Room 5090
 Fresno, CA 93721-2271
 Telephone: (559) 705-2304
 Fax: (559) 445-5106
 E-mail: Norman.Morrison@doj.ca.gov
*Attorneys for Defendants Neil Compston,*
*John Silveira and Edward Sinclair*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CIVIL DIVISION

| | |
|---|---|
| FREDDIE QUAIR,<br><br>                              Plaintiff,<br><br>     v.<br><br>COUNTY OF KINGS; TAYLOR LOPES;<br>NEIL COMPSTON; JOHN SILVERIA;<br>EDWARD SINCLAIR; and DOES 1<br>THROUGH 10, inclusive,<br><br>                              Defendants. | Case No. 1:20-CV-01793-KJM-SKO<br><br>**DEFENDANTS' MOTION IN LIMINE TO BIFURCATE TRIAL INTO SEPARATE PHASES FOR EXCESSIVE FORCE AND MONELL, AND/OR TRIFURCATE AS TO PUNITIVE DAMAGES CLAIMS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**[STATE MIL NO. 16]**<br><br>Trial Date:     November 10, 2025<br>Action Filed:   December 21, 2020 |

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD HEREIN:

PLEASE TAKE NOTICE THAT Defendants NEIL COMPSTON, JOHN SILVEIRA and

EDWARD SINCLAIR (Defendants) hereby move the Court for an order in bifurcating the case

into two phases: (1) a first phase, for a determination of whether the various individual

Defendants used unreasonable force in violation of Plaintiff's Fourth Amendment rights; and (2)

a subsequent phase relating to Plaintiff's *Monell*-based causes of action against the County of

Kings. Bifurcation will result in the elimination of undue prejudice to the individual Defendants,

including the State Defendants, relating to evidence that is irrelevant, highly prejudicial, and

1

Defendants' Motion in Limine to Bifurcate Trial Into Separate Phases for Excessive Force and Monell, and/or
Trifurcate as to Punitive Damages Claims; Memorandum of Points and Authorities [STATE MIL #16] (1:20-CV-
01793-KJM-SKO)

improper for consideration in situations involving claims of excessive force in violation of the Fourth Amendment; streamline the proceedings and avoid juror confusion, delay, and the requirement of additional court resources; and protect the rights of the various Defendants in this case. Additionally, should Plaintiff elect to pursue his claim of punitive damages, Defendants would request that this Court trifurcate the case such that the claim for punitive damages is tried as a separate and distinct phase, if necessary

This motion is based upon this notice of motion, the attached memorandum of points and authorities, all pleadings and records on file in this action, and on such further authority, evidence, or argument as may be presented at or before the time of any hearing on this motion.

**Statement of Compliance:**

This Motion is made in response to this Court's July 24, 2025, ruling (ECF 83), as well as discussions held between counsel during a meet and confer session held on October 24, 2025, regarding the motions in limine the parties intended to file in this case. Based upon Plaintiff's representations, and his positions regarding evidentiary and pleading issues, it became apparent that a motion for bifurcation would be required.

Dated:  October 27, 2025

Respectfully submitted,

ROB BONTA
Attorney General of California

NORMAN D. MORRISON
Supervising Deputy Attorney General
*Attorneys for Defendants Neil Compston,
John Silveira and Edward Sinclair (BI)*

2

## INTRODUCTION

This lawsuit arises out of a shooting that occurred during the early morning hours on June 18, 2019, on a road next to State Route 43 near Hanford, California. Prior to this incident, Plaintiff Fredie Quair, Jr. had been under surveillance for multiple months as part of a joint Federal, State and local task force known as "Operation Red Reaper" that was investigating the Nuestra Familia criminal organization and the Norteño street gangs in the Kings and Tulare County region. As one of the targets of Operation Red Reaper, Plaintiff was the subject of a combination of video, audio, and electronic surveillance over a period of months performed by the Defendants. This included wiretaps of phone numbers used by Plaintiff and his criminal associates, including Jose Quintero. The months long surveillance captured evidence of Plaintiff engaging in the trafficking of illegal firearms with other criminals, the sales of narcotics, and the discussion of various criminal activities relating to the Norteños and Nuestra Familia.

During the early morning hours of June 18, 2019, Plaintiff and two accomplices, Jose Quintero and David Hernandez, engaged in an armed home invasion robbery of a residence located in Corcoran, California. During the home invasion robbery, Plaintiff's accomplice, David Hernandez, was shot in the stomach. Plaintiff fled the scene on foot, and Hernandez was transported to the hospital by Quintero; the firearm used during the armed home invasion robbery was also in the vehicle used by Quintero.

Plaintiff fled the scene on foot after the shooting, and eventually borrowed a cellular phone from a third-party to call Quintero. During this phone call, which was monitored by the Defendants as part of the court authorized wiretap, they heard Plaintiff and Quintero discussing the armed home invasion robbery, the shooting, the firearm used during the armed home invasion robbery, and Plaintiff's instructions to Quintero to come pick him up from the side of the highway. Plaintiff gave Quintero specific information about his address. (*Id.*)

Based upon the phone call, and their knowledge of the armed home invasion robbery that Plaintiff had just committed, and due to the existence of an arrest warrant issued for the Plaintiff by a court, the Defendants began surveillance of the Plaintiff using other vehicles as well as a

3

plane. Plaintiff was subsequently stopped by law enforcement officers in a field alongside the highway. In light of the facts known to them, including Plaintiff's involvement in an armed home invasion robbery where someone had just been shot, as well as Plaintiff's prior history involving firearms, the Defendants performed a "felony traffic stop."

After Plaintiff and his accomplice stopped their vehicle, they refused to follow instructions and directions made by Kings County Sheriff's Sergeant Taylor Lopes. Instead, Plaintiff flung open the front passenger side door of his vehicle and immediately assumed an isosceles shooting stance, holding both hands together and extended in front of him consistent with someone holding and intending to use a handgun, pointing towards the Defendants. Plaintiff then suddenly moved his hands upward in a motion consistent with experiencing the physical recoil of a firearm being shot. Knowing Plaintiff had a history of being armed with illegal firearms, having just been involved in an armed home invasion robbery where another individual was shot, seeing Plaintiff assume what was recognized as a shooting stance and displaying a physical reaction consistent with firing a handgun while simultaneously hearing gunfire, Defendants reasonably and logically believed the Plaintiff was shooting at them and discharged their firearms at the Plaintiff and the vehicle he had just exited in self-defense. After being shot, Plaintiff continued to resist arrest by refusing to comply with orders, before he was ultimately taken into custody and treated by emergency medical personnel.

**LEGAL STANDARD**

"A motion in limine is a procedural mechanism to limit in advance testimony or evidence in a particular area." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009). "In the case of a jury trial, a court's ruling 'at the outset' gives counsel advance notice of the scope of certain evidence so that admissibility is settled before attempted use of the evidence before the jury." Id. at 1111-12. Although the federal rules do not explicitly authorize motions in limine, the Supreme Court has held that trial judges are authorized to rule on motions in limine under their authority to manage trials. *Luce v. United States*, 469 U.S. 38, 41 n. 4 (1984).

4

**ARGUMENT**

I.      **Defendants Request the Court Bifurcate the Proceedings into At Least Two Phases: One Focused on the Fourth Amendment Claims against the Individual Defendants; and a Subsequent, Second Phase as to the *Monell* Claims Against the County of Kings**.

Plaintiff's Complaint consists of two general legal claims against entirely different categories of defendants. First, the complaint alleges a cause of action against individual officers belong to two different, separate law enforcement agencies for allegedly using excessive force against the Plaintiff during a traffic stop following an armed home invasion robbery Plaintiff perpetrated wherein an individual was shot, refused to follow instructions during the traffic stop, and where Plaintiff intentionally took up a shooting stance directed towards the officers and physically simulated the act of firing a handgun at them. The second category of claims is brought not against the individual defendants arising out of the underlying incident, but instead is brought against the County of Kings, the employer of <u>one</u> of the four named defendants, for *Monell*-based claims relating to policies and procedures and officer training.

Defendants anticipate, and have been informally advised, that Plaintiff intends to oppose any motion to bifurcate this case. Any such opposition would lack merit.

Not only is there no carryover between the two categories, but the elements of each cause of action as well as the evidence that will be presented is entirely separate and distinct. As to the excessive force claim, the only relevant evidence the trier of fact is to consider is the totality of the circumstances surrounding the officers' use of force, and the Supreme Court and the Ninth Circuit have provided the well-established elements and factors to be used in this analysis. This analysis is additionally premised upon what a reasonable officer would have done in the situation, and disregards any evil or bad intent that Plaintiff may seek to attribute to the Defendants.

Conversely, the *Monell* claims are brought against the County of Kings alone, and surround the County's policies, procedures and training. These claims have no direct link to the facts of the current incident. Instead, Plaintiff seeks to introduce evidence of prior, unrelated uses of force involving <u>one</u> of the Defendants which the County had settled, and Plaintiff has indicated

5

Case 1:20-cv-01793-KJM-SKO    Document 117    Filed 10/27/25    Page 6 of 16

that he intends to have attorneys involved in these prior cases testify regarding them. Not only is the majority (if not all) of the evidence relating to the *Monell* claim irrelevant to the Fourth Amendment claim irrelevant, but it is also subject to exclusion under numerous provisions of the Federal Rules of Evidence as to the Fourth Amendment claims.

Because the *Monell* claims, and the accompanying evidence Plaintiff seeks to introduce, has no relationship or connection to the State Defendants, they will be prejudiced by the introduction of such evidence. Among other factors, it is apparent that the Plaintiff seeks to use Sergeant Lopes' prior alleged uses of unreasonable force to argue that the use of force in this instance was similarly unreasonable. Such an action would create an implicit, if not explicit, taint and bias against the State Defendants, and would create juror confusion. Failure to bifurcate would also require the use of numerous limiting instructions and special jury verdict instructions, to protect the State Defendants' rights and ensure that the jury does not misapply or improperly consider and apply the evidence relating to the County of Kings and Sergeant Lopes in its evaluation of whether the State Defendants' use of force was unreasonable. All of these issues are easily avoided by bifurcation.

As discussed herein, bifurcation of this litigation into two phases, the first involving the Fourth Amendment claims and the second involving the *Monell* claims against the County, will result in not only judicial efficiency, but will also reduce any prejudice that would result to the State Defendants regarding evidence relating to another party's alleged prior uses of force, will reduce the possibility of juror confusion, and will streamline the proceedings by trying the predicatory Fourth Amendment issue first, before trying the *Monell* issues.

There would thus appear to be little, if any, downside to bifurcation. Not only should the trial still be able to be conducted in the original period of time, but there is a potential for the trial time to be significantly reduced because if there is no finding of excessive force, there is no basis for a *Monell* claim.

Plaintiff's realistic reason for opposing any bifurcation is apparent. Plaintiff cannot argue that bifurcation would increase the length of the trial, as bifurcation would serve only to separate

6

Defendants' Motion in Limine to Bifurcate Trial Into Separate Phases for Excessive Force and Monell, and/or Trifurcate as to Punitive Damages Claims; Memorandum of Points and Authorities [STATE MIL #16] (1:20-CV-01793-KJM-SKO)

the claims that would otherwise be tried at the same amount of time and would potentially reduce the length of the trial by days if the jury finds that there was no unreasonable use of force in the Fourth Amendment phase. Plaintiff likewise cannot argue that the bifurcation would result in prejudice to the Plaintiff, as the *Monell* claims and the evidence relating to them is irrelevant for purposes of the Fourth Amendment analysis required as to the individual officers.

The only realistic reason for Plaintiff to oppose bifurcation is because he seeks to introduce through their *Monell* claims would otherwise be excluded as to the Fourth Amendment use of force claim as irrelevant, highly prejudicial, and violative of the Federal Rules of Evidence. This includes evidence of prior incidents of alleged excessive force against one of the four defendants (improper character acts evidence, and outside the scope of the analysis of a Fourth Amendment excessive force claim); evidence of prior settlements involving other unrelated claims (also outside the scope of the analysis of a Fourth Amendment claim; additionally improper settlement evidence under Fed. R. Evid. 408); testimony regarding these prior incidents (same relevancy and evidentiary issues for Fourth Amendment purposes); and evidence of alleged policy violations in other situations (also not relevant to the Fourth Amendment analysis). Such evidence will result in prejudice to the State Defendants as the jury may improperly conflate the evidence and attribute the actions of the Kings County defendants, as well as Kings County prior actions relating to other cases, to them.

## II. THE COURT HAS AUTHORITY TO BIFURCATE OR TRIFURCATE A CASE FOR CONVENIENCE, TO AVOID PREJUDICE, OR TO EXPEDITE AND ECONOMIZE THE TRIAL

Rule 42(b) of the Federal Rules of Civil Procedure provides, in relevant part: "For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." *See also Arthur Young & Co. v. United States Dist. Court*, 549 F.2d 686, 697 (9th Cir.), cert. denied, 434 U.S. 829, 98 S.Ct. 109, 54 L.Ed.2d 88 (1977).

District courts have "broad discretion in deciding whether to sever issues for trial and the

7

exercise of that discretion will be set aside only if clearly abused." *Easton v. City of Boulder*, Colo., 776 F.2d 1441, 1447 (10th Cir. 1985); *see also, Exxon v. Sofec, Inc.*, 54 F.3d 570, 575 (9th Cir. 1985); *see also, Davis v. Freels*, 583 F.2d 337, 343 (7th Cir. 1978) [excessive force case]. The factors to consider are: (1) prejudice to the parties; (2) possible confusion of jurors; and (3) resulting convenience and economy. *In re Beverly Hills Fire Litig*., 695 F.2d 207, 216 (6th Cir. 1982). "Bifurcation is particularly appropriate when resolution of a single claim or issue could be dispositive of the entire case." *Drennan v. Maryland Casualty Co*., 366 F.Supp. 2d 1002, 1007 (D.Nev. 2005) (citing *O'Malley v. United States Fidelity and Guarantee Co*., 776 F.2d 494, 501 (5th Cir. 1985); *Strategic Partners, Inc. v. FIGS, Inc*., 2022 WL 17348175, at *1 (C.D. Cal. 2022); *KB Home v. Illinois Union Ins. Co*., 2023 WL 3433556, at *7 (C.D. Cal. 2023) ("One favored purpose of bifurcation is … avoiding a difficult question by first dealing with an easier, dispositive issue." (alteration in original)).

In *Quintanilla v. City of Downey*, 84 F.3d 353, 356 (9th Cir. 1996), the Ninth Circuit held that bifurcation of a trial of individual officers from that of a governmental entity was proper in a section 1983 use of force case to avoid prejudice. In *Quintanilla*, the Ninth Circuit noted that the plaintiff's strategy was to convince the jury to award him damages on the strength of the evidence concerning police dog attacks on others. *Id.* at 356. Accordingly, the case had been bifurcated to separate the trial of the individual officers from the plaintiff's claims against the defendant city and the police chief in the interests of convenience, judicial economy, and to avoid potential prejudice and confusion. *Id.* The *Quintanilla* Court noted that the bifurcation "…enabled the court to separate the questions regarding the constitutionality of the three officers' actiosn from the questions regarding the Chief and city's liability under *Monell*. " *Id.*

Similarly, in *Larez v. City of Los Angeles*, 946 F.2d 630 (9th Cir. 1991), the Ninth Circuit affirmed the bifurcation of a use of force into two phases: the first phase against the individual officers on claims of excessive force, and the second phase against the chief of police and the City of Los Angeles for *Monell*-based claims, including claims relating to the City's policies and procedures. *Id.* at 635, 640. Likewise, in *Sanchez v. City of Riverside*, 596 F.Supp. 193 (C.D. Cal.

8

1984), the District Court granted a similar motion to bifurcate to that requested here where the trial would be separated into two phases, with the first phase being limited to the claims of excessive force against the individual officer, and a second phase against the defendant City on the *Monell* claims. *Id.* at 194. In *Sanchez*, the bifurcation motion was made on the grounds that establishing (and defending) the City's liability under *Monell* "would be a time-consuming exercise which would, in all probability, be rendered moot by the resolution of plaintiffs' claims against the individual police officer." *Id.*

In *Wilkins v. City of Oakland*, 2006 WL 305972, at *1 (N.D. Cal. February 8, 2006), the district court granted a motion to bifurcate an excessive force case "un such manner that plaintiffs' claims against the two individual officers would be tried first and, if appropriate, plaintiffs' *Monell* claim against [the municipality] would be tried thereafter." The *Wilkins* Court concluded that bifurcation was appropriate because:

> …the evidence relevant to the claims against the individual officers does not overlap in any meaningful way with the evidence relevant to the municipal liability claim. Contrary to plaintiffs' argument, evidence of a municipality's failure to provide training to or to sufficiently supervise an officer is not relevant with respect to the issue of whether such officer acted in an objectively reasonable manner in his/her use of force.

*Wilkins*, 2006 WL 305972, at *1.

In *Boyd v. City and County of San Francisco*, 2006 WL 680556, at *2 (N.D. Cal. March 14, 2006), the district court likewise found that the plaintiff's claims against the individual officers should be tried separately from their *Monell* claims against the municipality and the police chief. As the *Boyd* Court explained, "bifurcation will avoid prejudice to the individual officers, as the evidence relevant to the claims against the individual officers does not overlap in any meaningful way with the evidence relevant to the claims against the City and Chief Fong." *Id.*

Other federal courts have similarly concluded that bifurcation of trials is appropriate when there are separate claims against individual officers and a municipal entity. In *Wilson v. Morgan*, 477 F.3d 326, 340 (6th Cir. 2007), the district court had determined that bifurcation of the trial

9

into a first phase resolving the excessive force claims against the individual officers was

appropriate. The *Wilson* Court affirmed this decision, explaining:

> The magistrate judge's decision to bifurcate the trial was eminently reasonable in the interests of judicial economy and avoiding possible juror confusion. It was not an abuse of discretion to bifurcate individual liability from municipal liability, and it would be illogical to try the municipality first since its liability under § 1983 could not be determined without a determination of the lawfulness of the individuals' actions.

> *Wilson*, 477 F.3d at 340.

The lack of any substantial overlap of the claims, and the likelihood of juror confusion

and prejudice, is especially high in this case where the majority of the named defendants are not

employed by the County of Kings, nor are they subject to the County of Kings' policies and

procedures and alleged historical violations that Plaintiff seeks to introduce and rely upon.

Instead, the State Defendants were employed by the State of California, were required to follow

the State's policies and procedures, and answered to their supervisors who were employed by the

State. There is absolutely no overlap between the *Monell* claims and these Defendants.

### III.    Bifurcation Would Address and Minimize the Likelihood of Prejudice

As noted, there is no overlap between the *Monell* claims and evidence Plaintiff seeks to

introduce and rely upon at trial and the State Defendants. The State Defendants were employed

by the State of California's Department of Justice, not the County of Kings, a separate municipal

entity. The State Defendants were not subject to, or governed by, the County of Kings' policies,

including the County of Kings' use of force policies and procedures. The State Defendants had no

involvement in any of the alleged prior use of force incidents involving Sergeant Lopes, nor is

there any evidence they were even aware of these incidents. The State Defendants likewise were

not a part of any settlement reached by the County of Kings and third parties. Not only is there no

overlap between the evidence and facts, but there is no wisp of any connection or relationship

between the evidence and claims the Plaintiff seeks to allege in the *Monell* actions. Indeed, as a

matter of law, neither the State (nor its employees) can be liable for a *Monell* based claim.

While there is no overlap, connection, or liability, there is however a very high degree of prejudice and jury confusion that will result to the State Defendants, as evidence relating to a co-defendant's alleged prior use of force incidents are discussed in great detail, and Plaintiff has already indicated that he intends to argue that Sergeant Lopes' history of alleged excessive force and shootings was a substantial factor in causing this incident. It will accordingly be difficult, if not impossible, for a jury to segregate and distinguish such inflammatory and prejudicial information during the decision-making process, and no degree of limiting instructions to the jury can cure this prejudice.

Courts within the Ninth Circuit have also therefore recognized that bifurcation is appropriate to address concern about prejudice that could arise out of the presentation of evidence relating to municipal customs, practices, and policies. *Quintanilla*, 84 F.3d at 356. In *Rascon v. Brookins*, 2015 WL 13878488 (D. Ariz. February 11, 2015), the defendants filed a motion to bifurcate the trial into two phases, and argued that bifurcation would protect the defendant officers from prejudice and promote judicial economy. *Id.* at *6. In analyzing the motion, the *Rascon* Court began by noting that the individual officers' liability will turn on the force they used in relation to the plaintiff's alleged crimes, the threat he posed and whether and to what extent he resisted arrest; accordingly, the *Rascon* Court noted "there is no overlap between the evidence concerning the allegation of excessive force against the individual Defendants and evidence related to the *Monell* claims against the [City]." *Id.* The *Rascon* Court continued its analysis by noting that:

> On the other hand, there is a considerable risk that the evidence relevant to the *Monell* claims would prejudice the Officers if the trial is not bifurcated. For example, in support of their *Monell* claims, Plaintiffs would likely put forth evidence relating to: (1) other incidents of alleged excessive force; (2) the City's training programs and its purported deficiencies; and (3) Brookings' failed psychological exam and social media postings. Accordingly, the danger of prejudice to the Officers outweighs the probative value to Plaintiffs in making their case against the Officers.

*Rascon*, 2015 WL 13878488, at *6.

The conclusion that bifurcation is appropriate to address concerns of prejudice to the individual officers is neither unique nor confined to the Ninth Circuit, as courts in other circuits

have reached similar conclusions. *See, e.g., Mineo v. City of New York,* No. 09–CV–2261–RRM–MDG, 2013 WL 1334322, at *1 (E.D.N.Y. March 29, 2013) (finding that "bifurcation will avoid prejudice to the individual officer. For example, potential evidence of other incidents that may be admissible solely against the City to prove *Monell* liability could dangerously infect the jury's consideration of the individual claim against [the] defendant."); *Readus v. Dercola,* No. 09–C–4063, 2012 WL 1533167, at *4 (N.D.Ill. May 1, 2012) (explaining that "presenting evidence to the jury regarding a citywide policy, practice or custom involving multiple improper police actions poses a danger of undue prejudice to the defendant officers by creating the perception that the police department routinely acts improperly, even if the officers acted properly in this case"); *Lopez v. City of Chicago,* No. 01–C–1823, 2002 WL 335346, at *2 (N.D.Ill. March 1, 2002) ("Without bifurcation, the jury would likely hear evidence against the City of various acts of alleged police misconduct committed by numerous non-party officers to establish a policy or practice. Such evidence can be prejudicial to the individual defendants.").

## IV. Bifurcation Would Streamline the Proceedings and Enhance Judicial Efficiency.

Bifurcation of the proceedings into a first phase to determine whether the individual Defendants violated Plaintiff's constitutional rights by using unreasonable force during the incident on June 18, 2019, would significantly enhance judicial efficiency and potentially avoid the unnecessary (and avoidable) expenditure of court resources and time. As a matter of law, Plaintiff cannot recover on a *Monell* claim unless he can first establish that the actions of the individual officers were violated. *City of Los Angeles v. Heller,* 475 U.S. 796, 799 (1986)(" "If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point.") In *Heller*, the Supreme Court further explained that "[N]either *Monell* [ ] nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm." *Heller*, 475 U.S. at 799.

12

1    The Ninth Circuit has similarly held that where an individual officer is exonerated on

2    charges of excessive force, the exoneration precludes municipal liability for the alleged

3    unconstitutional use of such force. *Fairley v.Luman*, 281 F.3d 913, 916 (9th Cir. 2002); *Scott v.*

4    *Henrich*, 39 F.3d 912, 916 (9th Cir. 1994). In *Rascon*, the district court likewise concluded that

5    judicial economy was furthered by bifurcation, because:

6          …in a bifurcated trial, if the Officers prevail, both the Court and the taxpayers
           would be spared the time and expense of needlessly litigating the *Monell* claims.
7          On the other hand, if Plaintiffs prevail, the case moves forward and Plaintiffs
           suffer no prejudice."
8
           *Rascon*, 2015 WL 13878488, at *6.
9

10    Accordingly, bifurcation would facially serve to enhance judicial economy in this case.

11    Through bifurcation, the first phase would focus exclusively on the alleged excessive force claim,

12    and only that evidence and witness testimony relevant to the claims of excessive force would be

13    permitted. The jury would thus only be required to examine and determine one issue: did the

14    individual Defendants use unreasonable or excessive force? In the event the force used by the

15    Defendants in the underlying incident is found to be reasonable in the first phase, then the trial

16    ends, saving days of court time that would have otherwise been associated with the unrelated

17    *Monell* issues. Conversely, if Sergeant Lopes is found to have used excessive force, then the case

18    continue as to the *Monell* claims against the County of Kings. In such a case, the trial of the

19    *Monell* claims would occur during the same period of time as it would have in the absence of

20    bifurcation, thus resulting in no net loss of time, no additional expenditure of time, and no

21    increase in the judicial resources. Rather, even if the case were to proceed to a second phase,

22    there would still be a net savings of time, resources, and economy as the second, *Monell* claim

23    would not require (or allow) the involvement of the individual State Defendants, and therefor the

24    second phase would be streamlined and narrowed to a proceeding between Plaintiff and the

25    County of Kings.

26    / / /

27    / / /

28

Defendants' Motion in Limine to Bifurcate Trial Into Separate Phases for Excessive Force and Monell, and/or
Trifurcate as to Punitive Damages Claims; Memorandum of Points and Authorities [STATE MIL #16] (1:20-CV-
01793-KJM-SKO)

**V.    The Ninth Circuit Has Recognized the Failure to Bifurcate Cases Involving Claims of Excessive Force Can Constitute an Abuse of Discretion Where the Failure to Bifurcate Allows the Introduction of Prejudicial Evidence With Little to No Relevance to the Liability Issue.**

A district court's failure to bifurcate cases involving section 1983 claims has been recognized to constitute an abuse of discretion, and warrant a new trial where the failure to bifurcate allowed the presentation of unduly prejudicial evidence that had little to no real relevance to the claim at issue. *Estate of Diaz v. City of Anaheim*, 840 F.3d 592, (9th Cir. 2016). In *Diaz*, the district court refused to bifurcate a trial into separate liability and compensatory damages phases, and as a result the defendants were allowed to introduce and present prejudicial evidence regarding the decedent during the trial. *Id.* The Ninth Circuit held that the district court had abused its discretion in refusing to bifurcate the trial, as the evidence that was subsequently introduced had "little, and in large part no, relevance to the liability issue," and, in fact, much of the evidence presented at trial due to the refusal to bifurcate had no relevance to liability and therefore bifurcation should have been granted. *Diaz*, 840 F.3d at 603.

Significantly, the *Diaz* Court also rejected arguments that the use of limiting instructions were sufficient to prevent prejudice against the defendants. "[A] limiting instruction may not sufficiently mitigate the prejudicial impact of evidence in all cases." *Diaz*, 840 F.3d at 603 (*see also Miller v. City of Los Angeles*, 661 F.3d 1024, 1030 (9th Cir. 2011); *Bayramoglu v. Estelle*, 806 F.2d 880, 888 (9th Cir. 1986).) The *Diaz* Court further recognized the appropriateness of bifurcating trials in excessive force claims against law enforcement instead of limiting instructions, explaining:

The Advisory Committee Note to Federal Rule of Evidence 403 also recognizes the potential inadequacies of a limiting instruction, counseling that "[i]n reaching a decision whether to exclude on grounds of unfair prejudice, consideration should be given to the probable effectiveness or lack of effectiveness of a limiting instruction."

> And if a limiting instruction was considered sufficient to cure all prejudice, there would be no need ever to bifurcate to avoid prejudice in other cases; yet in the civil rights context, courts often bifurcate the trials of individual officers from municipalities to avoid such prejudice. *See, e.g., Quintanilla*, 84 F.3d at 356 ("The district court ... in the interest not only of convenience and judicial economy but also the avoidance of potential prejudice and confusion, bifurcated the trial of the

individual police officers from the Chief and city."); *Green v. Baca*, 226 F.R.D. 624, 633 (C.D. Cal. 2005) ("Bifurcation is appropriate ... to protect the individual officer defendants from the prejudice that might result if a jury heard evidence regarding the municipal defendant's allegedly unconstitutional policies.")

*Diaz*, 840 F.2d at 603-604.

**VI.    Should Plaintiff Pursue a Claim for Punitive Damages, the Case Should Be Trifurcated So that Punitive Damages Are Sought In a Separate Phase**.

While bifurcation of the case into two phases makes sense in this case, as it is unclear whether the Plaintiff intends to seek punitive damages, or can even establish the required foundation for punitive damages and therefore the jury may never reach the issue of punitive damages. Further, evidence of a defendant's wealth is ordinarily irrelevant to any issue of liability or compensatory damages. Even in punitive damage cases, evidence of a defendant's net worth is inadmissible until plaintiff has first proven a prima facie case of liability for punitive damages. *See Henderson v. Peterson*, No. C 07–2838 SBA, 2011 WL 2838169, at *15-16 (N.D. CA July 15, 2011) (granting defendants' motion to bifurcate punitive damages phase in 42 U.S.C. §1983 action: "Should the jury return a verdict and a compensatory damage award in favor of Plaintiff, the proceedings will resume and the parties may present evidence and/or testimony germane to punitive damages (i.e., evidence of Defendants' net worth.)"); *See also Todd v. AT&T Corp.*, No. 16:cv-03357-HSG, 2017 WL 1398271, at *1-2 (N.D. CA Apr. 19, 2017); *Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977); *Zuegel v. Mountain View Police Department*, No. 17-cv-03249-BLF, 2020 WL 620579, at *6 (N.D. CA Oct. 22, 2020); *Rupe v. Forman*, 532 F.Supp.344, 350-51 (D.C. OH 1981); Rutter Group Prac. Guide Fed. Civ. Trials & Evid. Ch. 4-F §4:361.

As the issue of Plaintiff's ability to recover punitive damages cannot occur until after liability has already been determined, the Court should order that any punitive damages phase will be conducted separately, prior to the *Monell* causes of action.

/ / /

/ / /

/ / /

15

**CONCLUSION**

Accordingly, Defendant requests that the Court grant the motion in limine bifurcating the trial into two phases: A first phase focused only upon the Fourth Amendment use of force involving the individual law enforcement officers; and, if a finding of excessive force is made in the first phase, a subsequent second phase focusing on the *Monell* based claims against the County of Kings (which will not require the involvement or claims relating to the individual law enforcement officers.) Finally, should Plaintiff intend to seek punitive damages, the case should be trifurcated into a punitive damages phase.

Dated: October 27, 2025                                     Respectfully submitted,

ROB BONTA
Attorney General of California


NORMAN D. MORRISON
Supervising Deputy Attorney General
*Attorneys for Defendants Neil Compston,*
*John Silveira and Edward Sinclair*

FR2021301267
95662883

16