James J. Arendt, Esq.  Bar No. 142937
Matthew P. Bunting, Esq.  Bar No. 306034

WEAKLEY & ARENDT
A Professional Corporation
5200 N. Palm Avenue, Suite 211
Fresno, California 93704
Telephone:  (559) 221-5256
Facsimile:  (559) 221-5262
James@walaw-fresno.com
Matthew@walaw-fresno.com

Attorneys for Defendants County of Kings and Taylor Lopes

# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

FREDDIE QUAIR,

　　　　　Plaintiff,

vs.

COUNTY OF KINGS; TAYLOR LOPES;
NEIL COMPSTON; JOHN SILVERIA;
EDWARD SINCLAIR; and DOES 1
THROUGH 10, inclusive,

　　　　　Defendants.

CASE NO.  1:20-CV-01793-KJM-SKO

**COUNTY DEFENDANTS' MOTIONS IN LIMINE**

The parties, County of Kings and Taylor Lopes ("County Defendants") respectfully submit the following Motions in Limine:

　　1.  Motion in Limine to Exclude Any Testimony Regarding Subjects in which Witnesses Previously Invoked the Fifth Amendment:

　　2.  Motion in Limine to Exclude Testimony of Plaintiff's Expert Rothschiller;

　　3.  Motion in Limine to Exclude Defendant Taylor Lopes' Personnel File;

　　4.  Motion in Limine to Exclude Evidence related to Taylor Lopes' Prior Officer Involved Shooting Incidents;

　　5.  Motion in Limine Regarding Argument Invoking Reptile Theory/Golden Rule;

6.  Motion in Limine to Exclude Evidence and Argument that a Lesser Amount of Force Would Have Controlled Plaintiff Quair;

7.  Motion in Limine to Exclude Evidence of Indemnification of Taylor Lopes/Vicarious Liability;

8.  Motion in Limine to Exclude Evidence of Insurance;

9.  Motion in Limine to Exclude Prior Settlements/Verdicts against County Defendants regarding Officer-Involved Shootings;

10.  Motion in Limine to Exclude Pictures of Plaintiff Quair's Injuries; and

11.  Motion in Limine to Exclude Evidence Not Produced in Discovery.

## I.  MEMORANDUM OF POINTS AND AUTHORITIES

"A party may use a motion in limine to exclude inadmissible or prejudicial evidence before it is actually introduced at trial. '[A] motion in limine is an important tool available to the trial judge to ensure the expeditious and evenhanded management of the trial proceedings.' A motion in limine allows the parties to resolve evidentiary disputes before trial and avoids potentially prejudicial evidence being presented in front of the jury." *Saenz v. Reeves*, No. 1:09-CV-00057-BAM PC, 2013 WL 2481733, at *1 (E.D. Cal. June 10, 2013) (citations omitted).

1.  **MOTION TO EXCLUDE ANY TESTIMONY REGARDING SUBJECTS IN WHICH WITNESSES PREVIOUSLY INVOKED THE FIFTH AMENDMENT**

The Court previously addressed this motion on September 12, 2025 (Doc. 88).  County Defendants request that the Court issue an instruction allowing the jury to draw negative inferences from Plaintiff invoking the Fifth Amendment in the present case.

2.  **MOTION TO EXCLUDE TESTIMONY OF PLAINTIFF'S EXPERT ROTHSCHILLER**

Under Rule 702 of the Federal Rules of Evidence, "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an

opinion or otherwise," provided "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a).

The gatekeeping obligation of the court to admit only expert testimony that is both reliable and relevant is critical, especially considering the aura of authority experts often exude, which can lead juries to give more weight to their testimony. *Krause v. Cnty. of Mohave*, 459 F. Supp. 3d 1258, 1263 (D. Ariz. 2020). Expert opinions based on unsubstantiated generalizations or opinions not derived by the scientific method must be excluded. The proponent of expert testimony bears the burden of showing that the proposed testimony is admissible under Rule 702. When a party fails to carry this burden, their expert's opinions are not admissible. *Krause*, 459 F. Supp. 3d at 1264.

Rule 702(a) of the Federal Rules of Evidence limits expert testimony to those opinions where "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Expert opinions as to ultimate facts, ultimate legal issues, and the credibility of witnesses do not aid the trier of fact, and therefore should be excluded.

Rule 704 of the Federal Rules of Evidence provides that an expert opinion may "embrace[] an ultimate issue," but "an expert cannot give an opinion as to her *legal conclusion*, i.e., an opinion on an ultimate issue of law." *Hangarter v. Provident Life and Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004), quoting *Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1066 (9th Cir. 2002) (emphasis in original). "In other words, an expert may offer his opinion as to facts, that if found, would support a conclusion that the legal standard was satisfied, but he may not testify as to whether the legal standard has been satisfied." *Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1212–13 (D.C. Cir. 1997).

1    Opinions making such credibility judgments and based upon speculation are not

2    permissible as an expert may not base his or her opinion on speculation or conjecture and their

3    opinions may be excluded if it is not shown to be reliable.  *Daubert v. Merrel Dow*

4    *Pharmaceuticals, Inc*., 509 U.S. 579, 589-590 (1993); *Goodwin v. MTD Products, Inc*., 232

5    F.3d 600, 607-608 (7th Cir. 2000)(expert opinion regarding whether an individual was credible,

6    was speculative and impermissible); *Jaurequi v. Carter Mfg. Co., Inc*., 173 F.3d 1076, 1081-

7    1084 (8th Cir. 1999)(speculative expert opinions were unreliable and therefore, properly

8    excluded); *Cabrera v. Cordis Corp*., 134 F.3d 1418, 1422-1423 (9th Cir. 1998)(experts were

9    properly excluded as unreliable, when their opinions represented unsupported and untested

10    conclusions).  As stated by the U.S. Supreme Court in *Daubert*, "the word 'knowledge'

11    connotes more than subjective belief or unsupported speculation."  *Daubert*, 509 U.S. at 590.

12

13    Further, while an expert may not represent that the factual basis of his opinion is the

14    only set of credible facts, or provide an opinion that one witness is more credible than another,

15    it is the exclusive province of the jury to decide disputed facts based on the credibility of the

16    evidence. See *Shahid v. City of Detroit*, 889 F.2d 1543, 1547 (6th Cir. 1989). "It would

17    prejudicially confuse the jury to hear an expert witness base his opinion of the ultimate issue, on

18    facts that are for the jury to determine." Id.  Additionally, expert testimony that vouches for or

19    attacks the credibility of another witness – whether lay or expert witness – encroaches upon the

20    jury's exclusive function to make credibility determinations, and therefore does not help the

21    trier of fact. *United States v. Charley*, 189 F.3d 1251, 1267 (10th Cir. 1999). See also *United*

22    *States v. Barnard*, 490 F.2d 907, 912 (9th Cir. 1973); *United States v. Sanchez-Lima*, 161 F.3d

23    545, 548 (9th Cir. 1998)("opinion evidence regarding a witness' credibility is inadmissible.").

24

25

26

27

28

Thus, in this case, for instance, while Plaintiff's expert may be able to opine as to standard police practices and training, they may not testify as to whether the specific conduct of Sergeant Lopes was, in fact, unreasonable in violation of the law.

In Paragraph 30 of his report, Rothschiller states that: "[i]ndividuals in stressful contact with law enforcement often fail to recognize their behavior as threatening and often act out without thinking.  KCSD personnel should have recognized the possibility of irrational behavior by Mr. Quair and Mr. Quintero due to their circumstances and reverted to P.O.S.T. training of adding "time and space" when contacting them.  More "time and space" creates a larger window for the crisis cycle to run its course.  This would also have allowed KCSD personnel to implement a plan (had one been formulated) to avoid the unreasonable excessive force."

It is impermissible to opine that law enforcement should have used different tactics because Plaintiff may have freaked out.  "While California state law does factor pre-shooting conduct into whether an officer acts 'reasonably when using deadly force,' [cite] '[t]he Fourth Amendment is narrower and places less emphasis on pre[-]shooting conduct." *Hart v. City of Redwood City*, 99 F.4th 543, 554 (9th Cir. 2024). "[O]ne cannot 'establish a Fourth Amendment violation based merely on bad tactics that result in a deadly confrontation that could have been avoided.'" *Id*.   According County Defendants request that Rothschiller not be allowed to opine regarding "bad tactics".

Rothschiller's opinion regarding bad tactics found multiple other places.  Paragraph 51 of Rothschiller's report which states: "[b]ecause of the lack of leadership and command, Sergeant Lopes and other investigators violated established industry standard and acceptable tactics that put Mr. Quair and Mr. Quintero on notice of an impending law enforcement action."

Paragraph 55 states that: "Sergeant Lopes rushed past the surveillance units (Silveira statement/8), drawing attention to himself and the undercover surveillance units following the

---

red Nissan.  His actions led to unnecessarily warning the subjects in the Nissan of an impending

traffic stop, which directly led to the unreasonable use of excessive lethal force against Mr.

Quair. (L 20)".

Paragraphs 77 through 82 of Rothschiller's report deal with failure to provide medical

care.  County Defendants request that Rothschiller be precluded from offering any opinions on

failure to provide medical care because this issue was disposed of via the Court's order

regarding the motions for summary judgment.  (Doc. 66).

Paragraph 99 of Rothschiller's report states "….  [i]n Berbereia v. County of Kings, et

al., case number 1:16-cv-00363; the Kings County and Sergeant Lopes settled with the family

of Albert Hanson, Jr., a 75-year-old man who was fatally shot by sheriff deputies including

Sergeant Lopes.  Kings County sheriff's deputies used an excessive and unreasonable amount of

force when they fired more than 45 rounds through the rear of Mr. Hanson's vehicle at a time

when Mr. Hanson did not post a threat to the deputies' or any other person's safety.  Sergeant

Lopes at the time of Berbereia, had previously been involved in two (2) prior shooting

incidents, both without adverse consequences."

Rothschiller's opinion above is without merit because it takes factual allegations and

hearsay from a complaint and treats them as a proven fact.  No trial was ever held in the

*Berbereia* case.  County Defendants request that Rothschiller be prevented from rendering this

opinion.

Paragraph 99 of Rothschiller's report continues "…[i]n Estate of Stephen E. Crawley, et

al. v. Kings County, et al., case number 1:13-cv-02042; Kings County settled with the family of

Stephen Crawley, after sheriff's deputies used excessive and unreasonable force to break

through the door of Mr. Crawley's residence and fired an unknown number of rounds, fatally

striking Mr. Crawley three times."

Again, Rothschiller's opinion above is without merit because it takes factual allegations and hearsay from a complaint and treats them as a proven fact. No trial was ever held in the *Crawley* case. County Defendants request that Rothschiller be prevented from rendering this opinion.

3.    **MOTION TO EXCLUDE DEFENDANT TAYLOR LOPES' PERSONNEL FILE**

Sergeant Lopes moves this Court in limine to preclude Plaintiff from presenting evidence included in his personnel records. This includes, but is not limited to, information of a personal nature as well as information concerning any disciplinary actions or complaints levied against Sergeant Lopes. California Penal Code section 832.7 provides for the confidentiality of peace officer personnel records. This includes personnel records defined under Penal Code section 832.8, and records maintained pursuant to Penal Code section 832.5.

Penal Code section 832.8 defines personnel records as:

> [A]ny file maintained under that individual's name by his or her employing agency and containing records relating to any of the following:
> (1) Personal data, including marital status, family members, educational and employment history, home addresses, or similar information.
> (2) Medical history.
> (3) Election of employee benefits.
> (4) Employee advancement, appraisal, or discipline.
> (5) Complaints, or investigations of complaints, concerning an event or transaction in which he or she participated, or which he or she perceived, and pertaining to the manner in which he or she performed his or her duties.
> (6) Any other information the disclosure of which would constitute an unwarranted invasion of personal privacy.

Cal. Penal Code § 832.8(a).

Although federal courts are not bound by state statutes or privileges, federal common law recognizes an "official information" privilege that embraces records or information compiled for law enforcement purposes not otherwise available to the public pursuant to 5 U.S.C. § 552. *Jackson v. County of Sacramento*, 175 F.R.D. 653, 655 (E.D. Cal. 1997). As a

matter of comity, the federal court should attempt to ascertain what interests inspire relevant state doctrine and should take into account the views of state authorities and the importance of those interests. *Kelly v. City of San Jose*, 114 F.R.D. 653, 656 (N.D. Cal. 1987). Federal courts should give some weight to privacy rights that are protected by state constitutions or state statutes. *Id.*

Furthermore, only relevant evidence is admissible. Fed. R. Evid. Rule 402. Evidence is not relevant unless it tends to prove or disprove a fact of consequence. Fed. R. Evid. Rule 401. Moreover, such "character evidence" is not admissible to prove conduct of a defendant (Fed. R. Evid. Rule 404); and admission of any such evidence would be unduly prejudicial and subject to exclusion. Fed. R. Evid. Rule 403. Defendants submit that such questioning amounts to questions about prior "bad acts" and creates substantial danger that it may unfairly inflame the passions or emotions of the jury. Fed. R. Evid. Rules 401, 402, 403 & 404(b).

4.    **MOTION TO EXCLUDE EVIDENCE RELATED TO TAYLOR LOPES' PRIOR OFFICER INVOLVED SHOOTING INCIDENTS**

Sergeant Lopes anticipates that Plaintiff, his counsel, and through them any witness or expert witness will present evidence, testimony, or argument concerning prior allegations of excessive force/ officer involved shootings against Sergeant Lopes including potential settlements. Rule 404, subdivision (a) of the Federal Rules of Evidence prohibits the introduction of evidence of the character of the civil defendant to prove an act in conformity with that character trait. Fed. R. Evid. 404(a)(1); *United States v. Lynch*, 437 F.3d 902, 913-915 (9th Cir. 2006). Likewise, evidence of other crimes, wrongs or acts is inadmissible "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1); *United States v. Curtin*, 489 F.3d 935, 944, (9th Cir. 2007).

Exceptions to this rule excluding character evidence exist, although none are applicable in the instant case.  For example, Rule 405(b) of the Federal Rules of Evidence allows character evidence when character itself is at issue, which is not the case here.  Rule 608 of the Federal Rules of Evidence allows character evidence for purposes of impeachment, however, Deputy Lopes' past actions do not relate to his character for truthfulness, so this exception would not apply.

Another exception is Rule 404(b)(2) of the Federal Rules of Evidence, which allows crimes, wrongs or other acts to prove something other than character such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.  However, Plaintiffs bear a heavy burden in demonstrating character evidence is being used other than to prove an act in conformity therewith.  In order to survive this motion in limine, Plaintiff would be required to clearly articulate the specific purpose for which such evidence is offered and that such evidence is relevant to one or more issues in the case.  *Curtin*, 489 F.3d at 957-958; *United States v. Arambula-Ruiz*, 987 F.2d 599, 602-603, (9th Cir. 1993).  Plaintiff would be required to "articulate precisely the evidential hypothesis by which a fact of consequence may be inferred from the other acts evidence." *United States v. Mehrmanesh*, 689 F.2d 822, 830 (9th Cir. 1982).  Courts are required to ensure that the purpose for which the evidence is offered is more than just a sham for using it as proof of character. *See, e.g., United States v. Merriweather*, 78 F.3d 1070, 1074-1079 (6th Cir. 1996) (emphasizing the need for a cautious analysis of evidence of uncharged misconduct).

Even if Plaintiff were to clear these hurdles and articulate an admissible reason beyond showing that Sergeant Lopes acted in conformity with the alleged character trait, the court would need to analyze the evidence of prior "bad acts" pursuant to Rule 403 of the Federal Rules of Evidence and determine that its probative value outweighs its prejudicial effect.

---

*Arambula-Ruiz*, 987 F.2d at 602.  In *Huddleston v. United States*, 485 U.S. 681, 688 (1988), the Court stated that the decision to admit evidence under Rule 404(b) depends on "whether the danger of unfair prejudice [substantially] outweighs the probative value of the evidence in view of the availability of other means of proof and other factors appropriate for making decisions of this kind under Rule 403." Thus, the Court has recognized that exclusion is mandated if the probative value of the bad act, in proving the permissible, not-for-character purpose, is substantially outweighed by the risk that the jury would misuse the evidence as proof of bad character.

Only relevant evidence is admissible. Fed. R. Evid. Rule 402.  Evidence is not relevant unless it tends to prove or disprove a fact of consequence.  Fed. R. Evid. Rule 401.  The fact that Sergeant Lopes has had allegations of excessive force/ been involved in prior officer involved shootings does not tend to prove or disprove the reasonableness of Sergeant Lopes' actions in attempting to detain and arrest, and/or his use of lethal force against Plaintiff.  In addition to this evidence having no relevance to the matters involved in this case, it would also cause confusion to the jury and unduly consume court time, as Sergeant Lopes would have to explain how the allegations are distinct from this case, as well as the results of those allegations. Fed. R. Evid. 403.  In essence, it would create four "mini-trials" as the Parties question numerous witnesses unrelated to the present case to establish whether the prior officer involved shootings were justified or not under the law.

As a result, Sergeant Lopes respectfully requests the Court instruct Plaintiff and his attorneys (and through them, each of their witnesses and experts) not to mention, or in any other manner convey to the jury anything concerning the unfounded allegations of officer involved shootings and any settlements related to them.

5.  **MOTION TO EXCLUDE ARGUMENT INVOKING REPTILE THEORY/ GOLDEN RULE**

Defendants anticipate Plaintiff's counsel will, both in voir dire and throughout the course of the trial, attempt to argue to the prospective jurors and jury they have the power to improve the safety of their community by rendering a verdict that will reduce or eliminate a dangerous conduct, such as that alleged against County and/or Sergeant Lopes. This is commonly referred to as the "Reptile Theory" which is a variation of the older "Golden Rule". The Reptile Theory seeks to play upon the primordial part of the human brain that keeps an individual safe from danger and invoke an emotional response.

The Ninth Circuit has defined a "Golden Rule" argument as:

> …is essentially a suggestion to the jury by an attorney that the jurors should do unto others, normally the attorney's client, as they would have others do unto them. The typical situation in which such an argument has been employed is the personal injury case in which the plaintiff's counsel suggests to the jurors that they grant the plaintiff the same amount of damages they would want or expect if they were in the plaintiff's shoes. The courts have generally found the 'Golden Rule' argument improper because a jury which has put itself in the shoes of one of the parties is no longer an impartial jury.

*Gonzalez-Chavez v. City of Bakersfield*, No. 1:12-cv-02053, 2015 WL 42972, at *9 (E.D. Cal. Feb. 2, 2015)(emphasis original)(*quoting Minato v. Scenic Airlines, Inc*. 908 F.2d 977, at *5 (9th Cir. 1990).

Courts in the Ninth Circuit have repeatedly held that "Golden Rule" arguments are improper in civil litigation. *Roman v. MSL Capital, LLC*, No. EDCV 17-2066, 2019 WL 1449499, at *5 (C.D. Cal. March 29, 2019); *Raugust v. Abbey and Sanders*, No. 20-09-H-DWM, 2022 WL 1468296, at *6 (D. Montana May 10, 2022); *J.W. v. City of Oxnard*, No. CV 07-06191, 2008 WL 4810298, at *8 (C.D. Cal. October 27, 2008); *Fei Lui v. BMW of North America, LLC*, No. 2:17-cv-07244, 2018 WL 11348341, at *6 (C.D. Cal. December 20, 2018).

In *Reynolds v. Gerstel*, No. 1:09-cv-00680, 2013 WL 4815788, at *5 (E.D. Cal. Sept. 9, 2013) the court granted a motion to prevent the plaintiff from invoking a "Golden Rule"

argument at trial. The Court granted the motion, stating that a "Golden Rule" argument is improper, citing the opinions of several other courts which noted that "Golden Rule" arguments are "universally condemned because it encourages the jury to depart from neutrality and to decide the case on the basis of person [sic] interest rather than on the evidence." Id. (quoting *Spray-Rite Serv. Corp. v. Monsanto Co*., 684 F.2d 1226, 1246 (7th Cir. 1982)). In *Retamosa v. Target Corporation*, No. CV 19-5797, 2021 WL 4499236, at *1 (C.D. Cal. May 4, 2021), the Central District of California similarly granted a motion in limine precluding plaintiffs from engaging in "any questioning, testimony, argument, and evidence that jurors should base their verdict on damages in an amount the jurors' would charge if they endured similar injuries or that a verdict for the Plaintiff will somehow make the community a safer and better place to live and work." As the *Retamosa* Court explained:

> Golden rule and reptile theory "arguments are irrelevant to actual damages alleged in this case and have a substantial likelihood of unfairly prejudicing the jury because these arguments may encourage the jury to render a verdict based on personal interest and bias rather than on the evidence."

*Retamosa*, 2021 WL 4499236, at *1 (quoting *Sialoi v. City of San Diego*, No. 11-CV- 2280, 2016 WL 6092590, at *1 (S.D. Cal. Oct. 18, 2016)).

"Golden Rule" arguments are also subject to exclusion as being unduly prejudicial and not probative under Fed. R. Evid. 403. In the context of Fed. R. Evid. 403, "unfair prejudice" means "an undue tendency to suggest decision on an improper basis, often an emotional one." *Luna v. County of Los Angeles*, No.: CV 07-04715, 2008 WL 11410093, at *1 (C.D. Cal. September 25, 2008); U.*S. v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000). Defendants anticipate that Plaintiff will seek to improperly appeal to jurors' emotions to render a verdict, and such actions are improper and should be barred by granting this motion in limine.

The Reptile Theory is simply a new variant of an improper Golden Rule argument, because it seeks to appeal to the jurors' self-interest about the best interests of the community rather than the jurors' impartial judgments predicated on the evidence. Thus, the Reptile Theory

asks the jury to assess for the community "the safest available choice." As the authors of the Reptile Manual explain: "That's all the Reptile demands from anyone. And she really demands it, once you show her that the violation can hurt her...."

In 2009, jury consultant David Ball and plaintiff's attorney Don C. Keenan published a book, Reptile: The 2009 Manual of the Plaintiff's Revolution. The Reptile Manual is based on a concept by neuroscientist Paul MacLean people are driven by the "triune" or "reptilian" portion of their brains. *Beach v. Costco Wholesale Corporation*, 5:18-cv-0092, 2017 WL 10775082, ECF 17-9 (attaching Taylor Denslow Brewer, *Confronting the Reptile in Virginia¸* 30 J. CIV. LITIG. 187, 187–88 (2018)("*Brewer*"). This portion of the brain is referred to as "reptilian" because its function is identical to the brain of reptiles, in that it houses basic life functions, such as breathing, balance, hunger, and the fundamental life force of survival. (Id. at 188). Relying on MacLean's theory about the reptile brain, the Reptile Manual's authors advocate appealing to the jurors' "reptile brain," specifically, their basic survival instinct. The idea is, once triggered; the jurors' "reptile brains" will take over their higher-order thinking and compel them to reach a result best protecting the safety of their community. The authors explain plaintiffs' counsel should couch the defendant's conduct in terms of the perceived threat to the community's safety. Therefore, every case should be approached using an "umbrella rule" focusing on community safety: "A driver [or physician, company, policeman, lawyer, accounting firm, etc.] is not allowed to needlessly endanger the public." (*Id*. at 190). (Emphasis omitted; Brackets original).

The Reptile Manual argues plaintiffs' counsel should use this umbrella rule to trump any standard of care otherwise governing a defendant's conduct. (*Brewer*, *supra*, at 190-193). The professional "must select the safest way. If she selects the second-safest, she's not prudent because she's allowing unnecessary danger." (*Id*.). Regardless of any legal standard allowing

reasonable choices among acceptable alternatives, the professional must adopt the "safest available choice." (*Id*.).

The Reptile Manual instructs plaintiff's counsel to utilize 'safety questions' designed to invoke and reinforce this umbrella rule. It advocates that attorneys ask questions to designed and intended to focus on the reptile portion of their brain by advancing positions that 'safety is always top priority', 'danger is never appropriate', 'protection is always top priority' 'reducing risk is always top priority', 'sooner is always better' and 'more is always better.' Plaintiff's counsel are also instructed to "go beyond the level of harm in this case. The defendant only broke your client's arm, but the same violation could have killed someone. That's the measure by which jurors must determine if the defendant acted carefully enough." (*Brewer*, *supra* at 190-199). They are also instructed to start preconditioning the jury during voir dire, advising "[t]he first step in a Reptilian approach is to get jurors personally involved with the kinds of dangers your case represents." (*Id*.). Plaintiff's counsel is then instructed to continue to use this theme of personal involvement in opening statements, and during the trial proceedings. The Reptile Manual also instructs plaintiff's counsel to impose their own standards in place of the applicable legal standard, by arguing that a defendant "implicitly agrees – in advance – to be responsible for any harm she does if she violates any safety rules…Otherwise the community has to foot the bill. Violating the agreement and getting away with it leaves people free to violate more safety rules. The Reptile forbids that." The Reptile Manual also contends:

> …no matter what other drivers do, when a driver violates the safety rule requiring her to keep her mind on her driving well enough to always pay attention to where she's going, she has agreed in advance to accept responsibility for any harm she does. That includes the pain and suffering. So the umbrella rule – "no needless danger" – is society's (thus the Reptile's) most important safety rule. It's really two rules: 1. No matter what anyone else does, you must be careful enough not to cause or allow foreseeable danger. 2. When you violate #1, you have agreed in advance to pay for care, lost income, suffering, pain, disability, etc. "When someone gets away with breaking the agreement, they and others have less reason to be careful in the future. So the community is

endangered. And the community has to spend dollars needed for its own care to take care of this person instead.

By focusing on community safety, the Reptile Theory seeks to influence jury verdicts by appealing to the self-interest of jurors. The theory contends 'Justice is ... an excuse—a *feel-good rationale*—for people to protect themselves and their families.' The Reptile Theory avoids the merits of the plaintiff's claim by appealing to the jurors' personal interest in their own safety and that of their community, with the plaintiff's claims being merely a placeholder for deep-seated, even subconscious, fears jurors harbor about themselves and their families: "Show the Reptile that a good verdict for you facilitates her survival."

The authors of the manual urge the key is to "[b]roaden" the case and "go beyond your specific kind of defendant." Rather than focus on whether the defendant's conduct actually caused injury to the plaintiff, the Reptile Theory asks whether the defendant's conduct "represents a *community* danger." To move the focus away from the actual plaintiff, the Reptile Theory asks not how the defendant harmed the plaintiff, but instead how much harm the defendant could have caused some other plaintiff: "The valid measure is the *maximum* harm the act *could* have caused." As the authors of the manual emphasize: "There are no small cases. Only small lawyers." The actual facts of the case are secondary: "How much harm could it cause *in other kinds of situations*."

6.  **MOTION TO EXCLUDE EVIDENCE AND ARGUMENT THAT A LESSER AMOUNT OF FORCE WOULD HAVE CONTROLLED PLAINTIFF QUAIR**

Plaintiff must establish that Sergeant Lopes used excessive force. The question is whether the actions that Sergeant Lopes took were lawful, not whether he could have acted in some manner the Plaintiff deems more reasonable. *Gramenos v. Jewel Companies, Inc*., 797 F.2d 432, 442 (7th Cir. 1986) ("the Constitution does not require the police to follow the best

recommended practices."); *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir.1994) (police need not "avail themselves of the least intrusive means of responding to an exigent situation.")  Further, peace officers have no obligation to negotiate with an assaultive suspect.  *Reynolds v. County of San Diego*, 84 F.3d 1162, 1170 (9th Cir. 1996) (officer's failure to call for backup, to talk to the suspect in calm tones and to refrain from approaching suspect irrelevant to reasonableness of force).

While the availability of alternative force options may be a factor in determining the reasonableness of the force used under the totality of the circumstances, "police officers need not employ the least intrusive degree of force possible during an arrest, they must at least consider less intrusive methods, and the presence of feasible alternatives is a relevant consideration in an excessive force analysis. *Bryan v. MacPherson*, 630 F.3d 805, 831 n. 15 (9th Cir.2010)." *Kanda v. Longo*, 2012 WL 1893565 at *1 (9th Cir. 2012). The mere availability of alternatives, however, does not render the forceful action taken unreasonable. *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir.1994); *see also Napouk v. Las Vegas Metro. Police Dep't*, 123 F.4th 906, 919 (9th Cir. 2024) ("Officers "need not avail themselves of the least intrusive means of responding to an exigent situation," [citation omitted] and we decline to create a rule by which officers have a duty to indefinitely retreat when faced with an immediate threat."); *Wilkinson v. Torres*, 610 F.3d 546, 551 (9th Cir. 2010). Afterall, a police officer is not obligated to start with a lesser forceful response and, only when that fails, graduate to a more forceful response. Rather, the officer is obligated to use the degree of force that is reasonable to the totality of the circumstances. *Graham v. Connor,* 490 U.S. 386, 396 (1989).

Evidence or arguments as to other actions that Sergeant Lopes could have taken or that he would have ended with a different result are speculative and irrelevant to the determination of whether the actions of Sergeant Lopes was reasonable and should be precluded.  Plaintiff's

expert should be precluded from testifying that Sergeant Lopes' use of lethal force under the circumstances confronting him was excessive or unreasonable or that a lesser amount of force could have controlled Plaintiff Quair and should instead be limited to responding to hypothetical situations posed to him of what reasonably well-trained officers are taught regarding when they may use force.

7.    **MOTION TO EXCLUDE EVIDENCE OF INDEMNIFICATION OF SERGEANT LOPES BY HIS EMPLMOYER AND VICARIOUS LIABILITY OF COUNTY OF KINGS**

Sergeant Lopes seeks an order precluding Plaintiff, his counsel and through them any witnesses from soliciting testimony, or presenting evidence, regarding Sergeant Lopes' indemnification for damages by Defendant County of Kings.  Introduction of any such evidence would be prejudicial to Sergeant Lopes' right to a fair trial.

The Ninth Circuit has held that informing the jury in a 42 U.S.C. § 1983 civil rights claim that a police officer may be indemnified for damages by the employing public entity is reversible error requiring a new trial on the measure of damages.  *Larez v. Holcomb*, 16 F.3d 1513, 1518-1521 (9th Cir. 1994).  Here, as in *Larez*, any mention or reference to the County of Kings paying any damages awarded against Defendant Sergeant Lopes would be unduly prejudicial, and amount to denial of a fair trial on the issue of damages.  Moreover, courts have granted motions in limine excluding evidence of indemnification by government entities. *See, e.g.*, *Flowers v. Johnson,* No. 115CV01778JLTPC, 2018 WL 3636994, at *3 (E.D. Cal., July 30, 2018), *Ioane v. Spjute*, 2016 WL 4524752 *9 (E.D. Cal. 2016); *Quinn v. Fresno County Sheriff*, 2013 WL 12309356 *1 (E.D. Cal. 2013).  Accordingly, Plaintiff's counsel, and their witnesses, should be instructed not to comment on or suggest that any damages awarded against Defendant Sergeant Lopes may be paid by the County of Kings.

For similar reasons, Defendant Sergeant Lopes also seeks an order precluding Plaintiff, his counsel and through them any witnesses from soliciting testimony, or presenting evidence, regarding the County of Kings being vicariously liable for the acts of its employee, defendant Sergeant Lopes, with regard to Plaintiff's civil rights claims.   This is because it is well-established that "a municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell v. Department of Social Servs*., 436 U.S. 691 (1978).  Introduction of such evidence would significantly prejudice Sergeant Lopes as it would advise the jury that a "deep pocket" is available to compensate the Plaintiff for his civil rights claims which could improperly influence the jury's decision and amount to denial of a fair trial on the issue of damages. Fed. R. Evid. 403.  Accordingly, Plaintiff's counsel, and their witnesses, should additionally be instructed not to comment on or suggest that the County of Kings is vicariously liable for the actions of defendant Sergeant Lopes with regard to their civil rights claims.

8. **MOTION TO EXCLUDE EVIDENCE OF INSURANCE/ WEALTH OR POVERTY OF COUNTY OF KINGS**

It is anticipated that Plaintiff may attempt to present or elicit evidence concerning the existence or potential existence of insurance coverage for, or the wealth of, the County of Kings or otherwise refer to, comment upon, or present argument about said facts and circumstances. Plaintiff may also elicit testimony of, or make argument regarding, the insurance coverage and insurance protection provided to the County, or its indemnity obligation to the individual defendants. Since the introduction of this information, or any comment thereon, is or may be highly prejudicial to County Defendants' case, such that its admission may constitute error, County Defendants request this Court to preclude such testimony.

Such testimony regarding the County's wealth or insurance is not relevant to any claim

and thus should be precluded pursuant to Federal Rule of Evidence 402. In *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 239 (1940), the Supreme Court observed that "appeals to class prejudice are highly improper and cannot be condoned and trial courts should ever be alert to prevent them." In that case, the Court counseled the jury that "any reference to the wealth of any of the defendants is entirely immaterial."

Evidence that a person was, at the time a harm was suffered by another, insured wholly or partially against loss arising from liability for that harm, is inadmissible to prove negligence or other wrongdoing. The County's insurance coverage or wealth has no bearing on the issue of liability or damages suffered. In addition, evidence alluding to liability insurance coverage or wealth can be substantially prejudicial. Jurors, knowing that insurance coverage exists, may make impermissible inferences and be swayed by the commonly held belief that "insurance companies have a lot of money" and "that any award of damages will not be coming out of defendant's pockets." Such inflammatory evidence will substantially prejudice Defendants and each of them and will only confuse the issues and/or mislead the jury to the detriment of the parties herein. Accordingly, Plaintiffs' counsel, and their witnesses, should be instructed not to comment on or suggest that any damages awarded against any individual defendant may be paid by the County of Kings or by the County of Kings' insurers.

9.    **MOTION TO EXCLUDE PRIOR SETTLEMENTS/ VERDICTS AGAINST COUNTY DEFENDANTS REGARDING OFFICER-INVOLVED SHOOTINGS**

County Defendants anticipate that Plaintiff, Plaintiff's witnesses, and/or their experts may testify regarding prior actions of the Defendant Sergeant Lopes and/or prior lawsuits against such him and the County of Kings. County Defendants anticipate, based on questioning of Sergeant Lopes at deposition, that he may be questioned at trial about his use of force on

1    occasions prior to the within incident.  Defendant submits that such questioning amounts to

2    questions about prior "bad acts."

3

4        Federal Rules of Evidence Rule 404, subdivision (a) prohibits the introduction of

5    evidence of the character of the civil defendant to prove an act in conformity with that character

6    trait.  (Fed. R. Evid. 404(a)(1); *United States v. Lynch,* 437 F.3d 902, 913-915 (9th Cir. 2006).)

7    Likewise, evidence of other crimes, wrongs or acts is inadmissible "to prove a person's

8    character in order to show that on a particular occasion the person acted in accordance with the

9    character."  (Fed. R. Evid. 404(b)(1); *United States v. Curtin,* 489 F.3d 935, 944, (9th Cir.

10   2007).)

11       Therefore, evidence of Sergeant Lopes' prior actions to this incident in his capacity as a

12   law enforcement officer should not be admissible in the instant case, as the purpose of soliciting

13   such testimony would only be to try to convince the jury that Lopes had a character trait for the

14   use of force and acted in conformity with that character trait in relation to Plaintiff Quair.

15       Exceptions to the rule excluding character evidence exist, although none are applicable

16   in the instant case.  For example, Fed. R. Evid. Rule 405(b) allows character evidence when

17   character itself is at issue, which is not the case here.  Fed. R. Evid. Rule 608 allows character

18   evidence for purposes of impeachment, however the Sergeant's past actions does not relate to

19   his character for truthfulness, so this exception would not apply.

20       Another exception is Fed. R. Evid. Rule 404(b)(2) which allows crimes, wrongs or other

21   acts to prove something other than character such as motive, opportunity, intent, preparation,

22   plan, knowledge, identity, absence of mistake, or lack of accident.  However, Plaintiff bears a

23   heavy burden in demonstrating character evidence is being used *other* than to prove an act in

24   conformity therewith.  In order to survive this motion in limine Plaintiff would be required to

25   clearly articulate the specific purpose for which such evidence is offered and that such evidence

26   is relevant to one or more issues in the case.  (*Curtin,* 489 F.3d at 957-958; *United States v.*

27

28

1    *Arambula-Ruiz,* 987 F.2d 599, 602-603, (9th Cir. 1993).)  Plaintiff would be required to

2    "articulate precisely the evidential hypothesis by which a fact of consequence may be inferred

3    from the other acts evidence." (*United States v. Mehrmanesh*, 689 F.2d 822, 830 (9th Cir.

4    1982).)  Courts are required to ensure that the purpose for which the evidence is offered is more

5    than just a sham for using it as proof of character. (See, e.g., *United States v. Merriweather*, 78

6    F.3d 1070, 1074-1079 (6th Cir. 1996) (emphasizing the need for a cautious analysis of evidence

7

8    of uncharged misconduct).)

9        Even if the Plaintiff were to clear these hurdles and articulate an admissible reason

10   *beyond* showing that Sergeant Lopes acted in conformity with the alleged character trait, the

11   Court would need to analyze the evidence of prior "bad acts" pursuant to Fed. R. Evid. Rule 403

12   and determine that its probative value outweighs its prejudicial effect. (*Arambula-Ruiz*, 987

13   F.2d at 602.)  In *Huddleston v. United States*, 485 U.S. 681, 688 (1988), the Court stated that the

14   decision to admit evidence under Fed. R. Evid. Rule 404(b) depends on "whether the danger of

15   unfair prejudice [substantially] outweighs the probative value of the evidence in view of the

16   availability of other means of proof and other factors appropriate for making decisions of this

17   kind under Fed. R. Evid. Rule 403."  Thus, the Court has recognized that exclusion is mandated

18   if the probative value of the bad act, in proving the permissible, not-for-character purpose, is

19

20   substantially outweighed by the risk that the jury would misuse the evidence as proof of bad

21   character.

22

23
10.  **MOTION TO EXCLUDE PICTURES OF PLAINTIFF QUAIR'S INJURIES**

24
        County Defendants anticipate that Plaintiff will attempt to introduce photographs of the

25
26   himself that are graphic and inflammatory in nature.  The photographs of the injury may be

27   gruesome and emotionally disturbing.  The photos offer no information to the jury about how

28   the shooting occurred or the reasonableness of the force used by Sergeant Lopes.

COUNTY DEFENDANTS' MOTIONS IN LIMINE

The Court has the discretion to exclude gruesome photos whose only purpose is to inflame the jury. *Rivers v. United States,* 270 F.2d 435, 437-438 (9th Cir. 1959). Because the photos, if admitted, would be for the sole purpose of inflaming the jury and, as a result, Defendants would suffer unfair prejudice. (FRE 403; *Rivers* at 437-438; *Douglass v. Hustler Magazine*, 769 F.2d 1128, 1142 (7th Cir. 1985) [When the purpose of photos is "to assail the senses and distract the mind," presentation of the photos to the jury is error.]) Defendant requests the Court exclude these photos.

11.     **MOTION TO EXCLUDE EVIDENCE NOT PRODUCED IN DISCOVERY**

County Defendants anticipate that Plaintiff will seek to introduce evidence at trial that Defendants sought to obtain through written discovery and depositions in connection with this case. Such records include, but are not limited to, evidence relating to Plaintiff's alleged special damages (including claimed medical expenses and damages, loss of income damages, and related categories), as well as evidence relating to his medical treatment and care, his involvement in the armed home invasion robbery preceding the incident forming the basis of his complaint, and other related matters. County Defendants request that the Court exclude any such evidence to the extent it was sought during discovery in this case, but not produced by Plaintiff. This includes situations where Plaintiff refused to produce evidence sought through discovery demands and asserted objections or claims of privilege in connection with the refusal to provide and produce the evidence. Plaintiff's counsel additionally refused to produce additional medical records relating to Plaintiff's medical care and treatment.

Where a party has refused to produce evidence during discovery, the party opposing production at trial can move to exclude the withheld evidence through a motion in limine. See *Viasphere International, Inc. v. Vardanyan*, No. 5:12-cv-01536, 2014 WL 12709000, at *1 (N.D. Cal. February 24, 2014); *OTR Wheel Engineering, Inc. v. West Worldwide Service, Inc.*,

No. CV- 14-085, 201 WL 3626368, at *3 (E.D. Wash. April 1, 2016) (granting motion in limine and precluding admission of documents not disclosed in discovery.) Federal Rules of Civil Procedure, rule 37(c)(1) states that, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). "The burden of establishing that a failure to disclose was substantially justified or harmless rests on the nondisclosing party." *Mitchell v. Ford Motor Co.*, 318 F. App'x 821, 824 (11th Cir. 2009) (quoting *Leathers v. Pfizer,Inc.*, 233 F.R.D. 687, 697 (N.D. Ga. 2006)); *Duran v. City of Porterville*, No. 1:13-cv-370, 2015 WL 5598933, at *1 (E.D. Cal. Sept. 22, 2015).

DATED:  October 27, 2025          WEAKLEY & ARENDT
                                  A Professional Corporation


                                  By:    /s/   *James J. Arendt*
                                         James J. Arendt
                                         Matthew P. Bunting
                                         Attorneys for Defendants

---

COUNTY DEFENDANTS' MOTIONS IN LIMINE