**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
dalekgalipo@yahoo.com
Cooper Alison-Mayne (SBN 343169)
cmayne@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Phone: (818) 347-3333

LAW OFFICE OF DARRELL J. YORK
Darrell J. York (SBN 145601)
27240 Turnberry Lane, Suite 200
Valencia, CA 91355
Telephone: (661) 362-0828
Fax:     (877) 221-3306
Email:  djylaw@gmail.com

*Attorneys for Plaintiff, Freddie Quair*

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FREDDIE QUAIR,<br><br>                    Plaintiff,<br><br>    vs.<br><br>COUNTY OF KINGS; TAYLOR LOPES; NEIL COMPSTON; JOHN SILVERIA; EDWARD SINCLAIR; and DOES 1 THROUGH 10, inclusive,<br><br>                    Defendants | CASE No.: **1:20−CV−01793−KJM−SKO**<br><br>[*Honorable Kimberly J. Mueller.*]<br><br>**PLAINTIFFS' OBJECTIONS TO DEFENDANTS' PROPOSED VERDICT FORM**<br><br>Jury Trial: 11/10/25<br>Time: 9:00am<br>Courtroom: Three |

# PLAINTIFF'S OBJECTIONS TO DEFENDANTS' PROPOSED VERDICT FORM

## I.  INTRODUCTION

Defendants proposed special verdict form (ECF No. 107) is overly complicated and appears to be designed to confuse the jury while improperly emphasizing facts favorable to the defense. Plaintiff respectfully requests that the Court reject Defendants' proposed form and adopt Plaintiff's straightforward verdict form (ECF No. 101), which properly frames the legal issues in a clear way that is fair to both sides.

## II.  Question 30 Improperly Includes Comparative Fault and Percentage Liability

Question 30 asks the jury to assign percentage of responsibility to each person, including plaintiff Freddie Quair. This question is fundamentally flawed for two reasons. First, "[c]oncepts of comparative fault . . . [is] not applicable in actions filed under 42 U.S.C. § 1983.". *Miller v. Schmitz*, No. 1:12-CV-0137 LJO, 2013 WL 5754945, at *5 (E.D. Cal. Oct. 23, 2013); *Jones v. Cnty. of San Bernardino*, No. EDCV 15-00080-DTB, 2016 WL 4425711, at *16 (C.D. Cal. Aug. 17, 2016) ("comparative fault is inapplicable on Section 1983 claim"); *Gerrie v. Cnty. of San Bernardino*, No. EDCV191435JGBSPX, 2020 WL 6586314, at *4 (C.D. Cal. Sept. 30, 2020) (same); *Vargas v. Cnty. of Yolo*, No. 215CV02537TLNCKD, 2016 WL 3916329, at *8 (E.D. Cal. July 20, 2016) (same). Second, when multiple officers use excessive force, liability is joint and several, not apportioned by percentages; each officer who violates the plaintiff's Fourth Amendment rights is fully liable for the damages caused. *Hazle v. Crofoot*, 727 F.3d 983, 999 (9th Cir. 2013).

### III.    Questions 1-4 Contain Prejudicial and Argumentative Language

Questions 1-4 repeatedly characterize the incident as occurring "during a felony traffic stop." This language is both superfluous and unfairly prejudicial. The inclusion of such argumentative phrasing opens the door to similar advocacy by either party. Plaintiff could just as easily propose: "Did the defendants use excessive force against Freddie Quair, an unarmed individual with his hands visible?" Such one-sided characterizations have no place in a verdict form, which should neutrally present the legal questions for the jury's determination. The proper formulation is to ask whether defendants used excessive force against Freddie Quair, without incorporating either party's characterization of disputed circumstances. Moreover, the phrase "felony traffic stop" presupposes the lawfulness of the officers' actions and procedures—the very issue the jury must decide. A verdict form may not assume facts favorable to one party or prejudge contested issues. The prejudicial language should be stricken.

### IV.    Questions 5-11: Special Interrogatories on Subsidiary Facts Are Inappropriate and Will Mislead the Jury

Questions 5 through 11 constitute special interrogatories asking the jury to make findings on specific subsidiary facts rather than resolving the ultimate legal question of whether the officers' use of lethal force was objectively reasonable. Such interrogatories are inappropriate in this case because they will mislead and confuse the jury by emphasizing certain disputed facts while ignoring others equally relevant to the Graham analysis, and because they are unnecessary for the Court to enter judgment.

Questions 5 through 8 exemplify the problem. These questions ask whether plaintiff assumed an "isosceles shooting stance," whether he was facing officers, pointing his arms, and moving his hands "simulating the firing of a handgun." These interrogatories single out one particular set of disputed facts among the many

circumstances that comprise the totality of the circumstances analysis required under Graham v. Connor, 490 U.S. 386 (1989). The jury instruction already directs jurors to consider all relevant circumstances in determining whether the use of force was objectively reasonable. Highlighting these specific facts in the verdict form improperly emphasizes the defense's version of events. Moreover, the questions adopt defense terminology ("isosceles shooting stance") and defense characterizations ("simulating the firing of a handgun").

Questions 9, 10, and 11 suffer from similar defects. Question 10 asks whether defendants had knowledge that plaintiff was "potentially armed"—a legally meaningless standard. Anyone is "potentially armed" at any time, which is why none of the cases discussing the reasonableness of using lethal force frame the analysis in terms of whether the suspect is "potentially armed." An officer cannot shoot someone because he is not certain that the person is unarmed. *Garner*, 471 U.S. at 20 (when a suspect "appear[s] to be unarmed, though [the officer] could not be certain that was the case," under the Fourth Amendment that means the officer has "no articulable basis to think [the suspect] was armed.").

Question 11 asks whether officers believed plaintiff "intended to fire a firearm at them," but plaintiff's actual intentions are irrelevant. The Fourth Amendment inquiry focuses on whether a reasonable officer would have perceived him to be an imminent threat of severe bodily injury or death, not on the suspects intentions.

The fundamental problem with Defendants' approach is that excessive force cases involve numerous disputed facts relevant to the Graham analysis, and it would be impossible to craft a set of special interrogatories that fairly encompasses all such facts for both parties. Defendants have selected subsidiary facts that they believe favor their theory while ignoring countless others. For example, Plaintiff could argue for special interrogatories asking: whether officers continued to shoot when Quair was on the ground; whether they identified themselves as officers; whether they warned they would use lethal force; whether they gave conflicting orders;

whether it was determined that there was no gun in the vehicle; whether officers were responding to their own gunfire (contagious fire); whether officers had time to take cover rather than immediately shooting; and whether less lethal alternatives were available. The list could go on indefinitely. Any attempt to resolve the case through such granular factual findings will inevitably favor one party's theory over the other's and "mislead or confuse the jury" about which facts are legally significant. This approach is rife with difficulties and potential appellate issues, as the Ninth Circuit has noted that "a court may abuse its discretion by submitting special interrogatories that are likely to mislead or confuse the jury" Frank Briscoe Co. v. Clark Cnty., 857 F.2d 606, 614–15 (9th Cir. 1988).

The proper course is to allow the jury to resolve the ultimate legal question—whether the use of force was objectively reasonable under the totality of the circumstances—without directing their attention to particular subsidiary facts. These special interrogatories are unnecessary for the Court to enter judgment and will only confuse the jury about the proper legal standard.

### V.    PLAINTIFF'S VERDICT FORM IS SUPERIOR

Defendants' 30-question verdict form, with its conditional branching, duplicative questions, and emphasis on defense-favorable subsidiary facts, is biased and unnecessarily complex. Plaintiff's streamlined verdict form asks the essential questions needed for the Court to enter judgment without arguing either side's case or complicating the verdict form with unnecessary questions.

Plaintiff's proposed verdict form correctly focuses on the ultimate legal questions: whether excessive force was used and whether it caused harm. It uses proper legal terminology without argumentative characterizations and does not include legally erroneous concepts like comparative fault or irrelevant questions about whether Mr. Quair was "potentially armed." Plaintiff's form follows a logical sequence from liability to causation to damages to punitive damages. It does not

improperly emphasize particular disputed facts and is simple and clear, reducing the likelihood of jury confusion.

## VI. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court reject Defendants' proposed verdict form (ECF No. 107) in its entirety and adopt Plaintiff's proposed verdict form (ECF No. 101).

Dated: November 3, 2025

**LAW OFFICES OF DALE GALIPO**
By: /s/ *Cooper Alison-Mayne*
Dale K. Galipo
Cooper Alison-Mayne
Attorneys for Plaintiff