**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
dalekgalipo@yahoo.com
Cooper Alison-Mayne (SBN 343169)
cmayne@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Phone: (818) 347-3333

LAW OFFICE OF DARRELL J. YORK
Darrell J. York (SBN 145601)
27240 Turnberry Lane, Suite 200
Valencia, CA 91355
Telephone: (661) 362-0828
Fax:      (877) 221-3306
Email:  djylaw@gmail.com

*Attorneys for Plaintiff, Freddie Quair*

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FREDDIE QUAIR,<br><br>           Plaintiff,<br><br>     vs.<br><br>COUNTY OF KINGS; TAYLOR LOPES; NEIL COMPSTON; JOHN SILVERIA; EDWARD SINCLAIR; and DOES 1 THROUGH 10, inclusive,<br><br>           Defendants | CASE No.: **1:20−CV−01793−KJM−SKO**<br><br>[*Honorable Kimberly J. Mueller.*]<br><br>**PLAINTIFF'S OPPOSITION TO STATE DEFENDANTS' MOTION IN LIMINE NO. 3 TO EXCLUDE AND PREVENT TESTIMONY BY PLAINTIFF'S NON-RETAINED WITNESSES DUE TO PLAINTIFF'S FAILURE TO COMPLY WITH FED. R. CIV. P. 26**<br><br>Jury Trial: 11/10/25<br>Time: 9:00am<br>Courtroom: Three |

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

State Defendants seek to exclude all non-retained medical witnesses identified in Plaintiff's Rule 26 disclosure, claiming the disclosure was deficient under Federal Rule of Civil Procedure 26(a)(2)(C). Plaintiff intends to call only one of these witnesses at trial: Dr. Naeem Siddiqi, Mr. Quair's primary care physician following the June 18, 2019, incident. Dr. Siddiqi will testify primarily as a treating physician regarding the facts of Mr. Quair's injuries, treatment, and recovery—not as an expert offering causation opinions requiring rebuttal testimony. Any technical deficiency in Plaintiff's disclosure was harmless under Rule 37(c)(1), particularly because Defendants had several years to raise any concerns with Plaintiff's counsel and could have easily obtained clarification through a simple phone call, informal inquiry, or request for supplemental information—none of which they pursued.

At a minimum, even if the Court finds some limitation on expert testimony appropriate, Dr. Siddiqi should be permitted to testify as a fact witness regarding his treatment of Mr. Quair.

## ARGUMENT

### I. Any Alleged Deficiency in Plaintiff's Disclosure Was Harmless Because Dr. Siddiqi Will Testify Primarily as a Treating Physician Regarding Facts, Not Contested Expert Opinions

According to Federal Rule of Civil Procedure 37(c)(1), a party may still call a witness if deficient disclosures were "harmless." Fed. R. Civ. P. 37(c)(1). The burden to prove harmlessness is on the party seeking to avoid Rule 37's sanction. *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1107 (9th Cir. 2001). Here, Plaintiff easily meets this burden because Dr. Siddiqi's anticipated testimony concerns straightforward matters within his personal knowledge as Mr. Quair's treating physician, not contested expert opinions requiring extensive rebuttal preparation.

Dr. Siddiqi will testify regarding: (1) the nature and extent of Mr. Quair's injuries; (2) the treatment he provided to Mr. Quair; (3) Mr. Quair's medical condition during his recovery; and (4) his observations of Mr. Quair's pain and suffering. This is quintessential fact testimony from a treating physician. There is no complex causation issue at stake requiring Defendants to retain their own medical expert to rebut Dr. Siddiqi's opinions. The causal connection between the shooting and Mr. Quair's injuries is not in dispute and requires no expert opinion. Dr. Siddiqi treated the injuries that resulted from the shooting, and his testimony will describe those injuries and that treatment.

The alleged deficiency in Plaintiff's disclosure is harmless because Defendants face no prejudice from Dr. Siddiqi's anticipated factual testimony. They do not need to prepare competing causation theories, they do not need to retain rebuttal experts to contest the medical mechanism of Mr. Quair's injuries, and they do not need to develop sophisticated cross-examination on contested medical science. They simply need to cross-examine a treating physician about the straightforward facts of his patient's injuries and treatment—something defense counsel in civil rights cases do routinely without extensive advance preparation. The disclosure identifying Dr. Siddiqi as Mr. Quair's primary care physician, combined with his extensive treatment records provided to Defendants during discovery, provided more than adequate notice for Defendants to prepare such cross-examination.

**II. Defendants Suffered No Prejudice Because They Had Dr. Siddiqi's Name, Address, And Extensive Medical Records, Yet Chose Not to Pursue Any Discovery**

The harmlessness of any alleged disclosure deficiency is further demonstrated by the undisputed fact that Defendants had all the information necessary to pursue discovery regarding Dr. Siddiqi but deliberately chose not to do so. Plaintiff

-3-   Case No. 1:20−CV−01793−KJM−SKO

provided Defendants with Dr. Siddiqi's name, his designation as Mr. Quair's primary care physician, and his practice address more than three years ago. Moreover, Dr. Siddiqi's name appears hundreds of times throughout the voluminous medical records Plaintiff produced to Defendants. Defendants thus had both the identification of Dr. Siddiqi as a witness and the documentary foundation for his anticipated testimony sitting in their files for years.

Critically, Plaintiff did not bury Dr. Siddiqi's name among dozens or hundreds of potential medical witnesses. Despite the medical records identifying hundreds of medical providers who had some contact with Mr. Quair, Plaintiff deliberately limited his non-retained expert disclosure to only seven individuals. This careful winnowing was a clear signal to Defendants that these seven individuals—including Dr. Siddiqi—possessed particularly relevant information about the case.

Despite having: (1) Dr. Siddiqi's name and contact information; (2) his designation as Mr. Quair's primary care physician; (3) hundreds of references to him in the medical records; and (4) the clear signal that he was among only seven carefully selected medical providers, Defendants chose to take no action whatsoever to investigate his anticipated testimony. They did not depose him, and as far as Plaintiff is aware, they did not contact him for an informal interview, they did not send him written questions, they did not move to compel a more detailed disclosure, and they did not request supplemental information at any point during the three-plus years since receiving Plaintiff's disclosure. Having made a deliberate strategic decision not to pursue readily available information, Defendants now claim prejudice from that very decision. The prejudice they allege is self-inflicted and should not serve as a basis for excluding Dr. Siddiqi's testimony.

### III. THE Five Factors Courts Consider When Determining Whether to Impose Exclusion All Weigh in Favor of Allowing Dr. Siddiqi to Testify

When determining whether to impose Rule 37(c)(1)'s exclusionary sanction, courts consider five factors: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions. *Wendt v. Host International, Inc.*, 125 F.3d 806, 814 (9th Cir. 1997); *see also Lanard Toys, Ltd. v. Novelty, Inc.*, 375 F. App'x 705, 713 (9th Cir. 2010) (explaining that these five factors should be considered when deciding whether the untimely disclosure was harmless). Each of these factors weighs against exclusion of Dr. Siddiqi's testimony.

<u>Factor Three: Risk of Prejudice to Defendants.</u> As discussed extensively above, there is minimal risk of prejudice to Defendants. They have had Dr. Siddiqi's name, his designation as Mr. Quair's primary care physician, and his extensive medical records for more than three years. They were on clear notice that he was one of only seven carefully selected medical providers with particularly relevant testimony. They could have deposed him at any time, contacted him for an interview, or sought supplemental information but chose not to do so. The "prejudice" they now claim is the direct result of their own strategic decision not to pursue available discovery. Moreover, because Dr. Siddiqi will testify primarily to factual matters rather than contested expert causation opinions, Defendants face no prejudice from the absence of detailed expert disclosures. They need not retain rebuttal experts or develop complex counter-theories. They simply need to cross-examine a treating physician about his patient's injuries and treatment—something they are fully capable of doing with the information they already possess. This factor weighs against exclusion.

1   Factor Four: Public Policy Favoring Disposition on the Merits. This factor
2   weighs most heavily against exclusion. There is a strong public policy favoring
3   resolution of cases on their merits rather than through procedural default. Excluding
4   testimony from Mr. Quair's primary care physician—who treated him following the
5   shooting that is the very subject of this lawsuit—would deprive the jury of critical
6   evidence regarding Mr. Quair's injuries and damages. Such exclusion would not
7   serve justice or promote decision-making on the merits; it would simply punish
8   Plaintiff for an alleged technical disclosure deficiency while rewarding Defendants
9   for their deliberate decision not to pursue discovery they could easily have obtained.
10  This case has already survived summary judgment and is set for trial. The jury
11  should hear all relevant evidence and decide the case on its merits. This factor
12  strongly favors allowing Dr. Siddiqi to testify.
13   Factor Five: Availability of Less Drastic Sanctions. Even if the Court were to
14  find some deficiency in Plaintiff's disclosure, numerous less drastic sanctions are
15  available. The Court could: (1) allow Dr. Siddiqi to testify but permit Defendants
16  additional time to depose him before trial; (2) limit his testimony to purely factual
17  matters and preclude expert opinions; (3) continue the trial briefly to allow
18  Defendants to complete any discovery they claim they need; (4) allow Defendants to
19  call rebuttal witnesses; or (5) impose cost-shifting sanctions to compensate
20  Defendants for any expenses incurred in responding to allegedly insufficient
21  disclosure. Any of these alternatives would be less drastic than total exclusion and
22  would adequately protect Defendants from any claimed prejudice while preserving
23  the jury's ability to hear relevant evidence. The availability of these alternatives
24  strongly weighs against the extreme sanction of exclusion.
25   Factors One and Two: Public Interest in Expeditious Resolution and Court's
26  Need to Manage Its Docket. These factors are neutral and do not support exclusion.
27  Allowing Dr. Siddiqi to testify will have no material effect on the expeditious
28  resolution of this litigation or the Court's docket management. The Court has already

invested substantial time and resources in this case, including ruling on summary judgment motions and conducting a final pretrial conference, and Dr. Siddiqi's testimony will not delay or complicate the proceedings. At most, these factors are neutral, but they certainly do not weigh in favor of the drastic sanction of exclusion.

In sum, the *Wendt* factors weigh against exclusion, and the Court should deny the Motion because any deficiencies in the disclosure of Dr. Siddiqi was harmless.

### IV. The Cases Cited by Defendants Are Distinguishable Because Defendants Never Raised Any Concerns About The Disclosure Or Gave Plaintiff an Opportunity To Cure Alleged Deficiencies

The cases upon which State Defendants rely are readily distinguishable because in each of those cases, the plaintiff was given an opportunity to cure disclosure deficiencies and either failed to do so or willfully refused. Here, by contrast, Defendants never once raised any concern about Plaintiff's disclosure or requested supplemental information, thereby depriving Plaintiff of any opportunity to address their concerns.

In Krause v. Hawaiian Airlines, Inc., No. 2:18-CV-00928 JAM AC, 2019 WL 2598770, at *6 (E.D. Cal. June 25, 2019), this Court excluded expert testimony only after finding that "Plaintiff was given the opportunity to cure these deficiencies and has come up well short of the mark." Similarly, in *Stewart v. United States*, No. 2:22-CV-01276-FWS-MAR, 2025 WL 2093111, at *3 (C.D. Cal. July 10, 2025)—one of State Defendants' primary authorities—the court excluded testimony only after the plaintiff was given a chance to address defense concerns and willfully chose not to do so. The Stewart court specifically noted that "Plaintiff has not provided any amended or supplemental expert witness disclosures regarding the Medical Providers," despite presumably being on notice that defendants found the disclosures deficient. Here, Defendants never raised the issue with Plaintiff at all, much less gave Plaintiff an opportunity to supplement the disclosure.

Defendants had plenty of information to determine the nature of Dr. Siddiqi's anticipated testimony based on the disclosures and the documents turned over to them, and any technical deficiency could have been cured with a simple phone call to Plaintiff's counsel. Thus, there is absolutely no unfair prejudice to Defendants, and their motion should be denied.

### V. At A Minimum, Dr. Siddiqi Must Be Permitted to Testify as A Fact Witness Regarding His Treatment of Mr. Quair

Even if the Court were to find that some limitation on Dr. Siddiqi's testimony is appropriate—a conclusion Plaintiff disputes—Dr. Siddiqi should be permitted to testify as fact witnesses regarding his treatment of Dr. Quair regardless of any expert disclosure deficiencies. Even the cases cited by Defendants excluding non-retained expert testimony still allowed those witnesses to testify as fact witnesses. *Christensen v. Goodman Distribution*, Inc., No. 2:18-CV-2776-MCE-KJN, 2021 WL 71799, at *7 (E.D. Cal. Jan. 8, 2021) ("As discussed below, these providers will still be able to testify as fact witnesses regarding their treatment of plaintiff."). In *Christensen*, this Court found the plaintiff's expert disclosures deficient but explicitly preserved the treating physicians' ability to testify about the facts of their treatment. The same principle applies here.

Dr. Siddiqi has personal knowledge of Mr. Quair's injuries and his treatment of those injuries. He can testify regarding: (1) when he first saw Mr. Quair; (2) what injuries he observed; (3) what treatment he provided; (4) how Mr. Quair's condition progressed over time; (5) what pain or limitations Mr. Quair experienced; and (6) any other facts within his personal observation and knowledge as a treating physician. All of this testimony is admissible as percipient witness testimony and lay witness opinion testimony under Rule 701, which permits opinion testimony that is "rationally based on the witness's perception" and "helpful to clearly understanding the witness's testimony or to determining a fact in issue." Fed. R.

Evid. 701(a)-(b). A treating physician's testimony about his patient's injuries and treatment easily satisfies this standard.

Excluding even Dr. Siddiqi's fact testimony would be an unduly harsh sanction that serves no legitimate purpose. Defendants have always known that Dr. Siddiqi treated Mr. Quair—his name appears throughout the medical records. And he was explicitly disclosed as one of only seven medical witnesses, clearly indicating that Plaintiff believed he had particularly relevant information. There is no surprise, no prejudice, and no basis for preventing him from describing what he personally saw and did in treating his patient. At an absolute minimum, the Court should permit Dr. Siddiqi to testify as a fact witness regarding his treatment of Mr. Quair.

**CONCLUSION**

Any technical deficiency in Plaintiff's disclosure of Dr. Siddiqi was harmless under Rule 37(c)(1). Dr. Siddiqi will testify primarily as a treating physician regarding facts within his personal knowledge, not contested expert opinions requiring rebuttal testimony. Defendants had his name, designation, and extensive medical records for more than three years yet chose not to pursue any discovery or raise any concerns with Plaintiff's counsel. The five Wendt factors weigh against exclusion. At a minimum, Dr. Siddiqi must be permitted to testify as a fact witness regarding his treatment of Mr. Quair. Plaintiff respectfully requests that the Court deny State Defendants' Motion in Limine No. 3 (ECF No. 110).

Dated: November 3, 2025

**LAW OFFICES OF DALE GALIPO**
By: /s/ *Cooper Alison-Mayne*
Dale K. Galipo
Cooper Alison-Mayne
Attorneys for Plaintiff