ROB BONTA, State Bar No. 202668
Attorney General of California
NORMAN D. MORRISON, State Bar No. 212090
Supervising Deputy Attorney General
 2550 Mariposa Mall, Room 5090
 Fresno, CA 93721-2271
 Telephone: (559) 705-2304
 Fax: (559) 445-5106
 E-mail: Norman.Morrison@doj.ca.gov
*Attorneys for Defendants Neil Compston,
John Silveira and Edward Sinclair*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CIVIL DIVISION

| | |
|---|---|
| **FREDDIE QUAIR,**<br><br>                                    Plaintiff,<br><br>v.<br><br>**COUNTY OF KINGS; TAYLOR LOPES; NEIL COMPSTON; JOHN SILVERIA; EDWARD SINCLAIR; and DOES 1 THROUGH 10, inclusive,**<br><br>                                    Defendants. | Case no. 1:20-CV-01793-KJM-SKO<br><br>**STATE DEFENDANTS' OBJECTIONS TO PLAINTIFF'S PROPOSED JURY INSTRUCTIONS**<br><br>Trial Date:     November 10, 2025<br>Action Filed:  December 21, 2020 |

Defendants NEIL COMPSTON, JOHN SILVEIRA and EDWARD SINCLAIR (State Defendants) hereby file their opposition to Plaintiff's proposed Jury Instructions Nos. 2-6.

///

///

///

///

///

///

1

## ARGUMENT

**I.  THE NINTH CIRCUIT HAS RECENTLY INSTRUCTED WHERE THERE ARE MULTIPLE DEFENDANTS, EACH DEFENDANT MUST BE IDENTIFIED IN A SEPARATE INSTRUCTION TO AVOID JURY CONFUSION AND MISLEADING THE JURY.**

The State Defendants object to Plaintiff's Proposed Jury Instructions Nos. 2-6 as being unclear and vague, and therefore misleading to the jury, because they address the Defendants collectively, rather than individually.

This exact issue was recently addressed by the Ninth Circuit in *Chinaryan v. City of Los Angeles*, 113 F.4th 888, 904-905 (9th Cir. 2024), where the Ninth Circuit admonished against the use of the term "defendants" collectively in jury instructions in Fourth Amendment excessive force cases. For this reason, the comments to the relevant Ninth Circuit Model Jury Instructions specifically state and caution:

> In a multi-plaintiff or multi-defendant case, the trial judge should consider naming each individual specifically in lieu of using the generic term "officers" or "defendants." In *Chinaryan*, the Ninth Circuit explained that the jury instructions were "confusing" where the instructions stated that "to establish an unreasonable seizure in this case, the plaintiffs must prove by a preponderance of the evidence that the officer**s**"—plural—"used excessive force." *Chinaryan v. City of Los Angeles*, 113 F.4th 888, 905 (9th Cir. 2024) (emphasis in original). The "officers" jury instruction language was confusing because it "required the jury to evaluate the excessiveness of the force used by the officers collectively rather than consider whether any single officer used excessive force." *Id.* In light of *Chinaryan*, the trial judge may consider using a special verdict to identify the specific findings as to each plaintiff and defendant.

In *Chinaryan*, the Ninth Circuit concluded that, based upon the collective use of the term "defendants" in the jury instructions, the jury "did not decide whether any single officer violated plaintiff's Fourth Amendment rights." *Chinaryan*, 113 F.4th at 905. The court continued by noting that while the jury might have found some officer liable and others not, it apparently had concluded that overall the use of force was not excessive enough to impose liability. *Id.* However, the Court explained that:

> The jury instructions were confusing in this respect. The court instructed that "to establish an unreasonable seizure in this case, the plaintiffs must prove by a preponderance of the evidence that the officer**s**"—plural—"used excessive force." This required the jury to evaluate the excessiveness of the force used by the

2

State Defendants' Objections to Plaintiff's Proposed Jury Instructions (1:20-CV-01793-KJM-SKO)

> officers collectively rather than consider whether any single officer used excessive force.
>
> The verdict form was similarly confusing. It asked whether "police office*rs*"—again, plural—"deprive[d] ... Plaintiffs of their Fourth Amendment rights." While the verdict form also stated that the multiple officers could have been "acting individually or together," that merely explains that the officers need not have acted in concert for the cumulative effect of their conduct to be unconstitutional.
>
> *Chinaryan*, 113 F.4th at 905.

Thus, under *Chinaryan,* when a use of force claim is brought either by multiple plaintiffs or against multiple defendants (or both), trial courts should phrase the jury instructions and verdicts to ensure that the defendants (or plaintiffs) are separately identified and therefore the jury is directed towards making the appropriate individualized decisions, rather than making decisions and findings on a plural basis.

Accordingly, while the State Defendants do not object to the use of these specific instructions, to comply with the recent instructions and guidance made by the Ninth Circuit in *Chinaryan*, the instructions and verdict form must be specific as to each Defendant, and not refer to them collectively. Especially where, as here, Plaintiff is seeking to introduce evidence of unrelated prior incidents involving alleged excessive force and settlements of such claims against one Defendant (Sergeant Lopes, not affiliated with the State defendants), and is making *Monell* claims against another Defendant (County of Kings, again, not affiliated with the State defendants). Using the term "defendants" collectively in such a scenario would result in the jury potentially conflating all of the parties together, rather than evaluating each Defendants' actions separately and making appropriate findings and conclusions.

**II. PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 3 IS IMPROPER AND SEEKS TO IMPOSE COLLECTIVE LIABILITY UPON DEFENDANTS DESPITE SUCH ACTIONS BEING IMPROPER UNDER THE FOURTH AMENDMENT.**

Defendants additionally object to Plaintiff's Proposed Jury Instruction No. 3 ("Integral Participation"). Plaintiff's attempt to use jury instructions that are phrased in the plural is especially confusing in light of Plaintiff's proposed Jury Instruction No. 3, which is not a model jury instruction but is instead derived from a comment and would suggest that the jury base a

finding of liability against the officers based upon their collective, rather than individual, actions. Accordingly, Defendants object to proposed Instruction No. 3 as improper.

Further, Plaintiff's proposed Jury Instruction No. 3 ignores the fact that the inquiry into causation "must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988); *Hines v. Youseff*, 914 F.3d 1218, 1228 (9th Cir. 2019). Nor can Plaintiff argue that the "integral participant" doctrine applies here, as that a defendant an only be deemed an "integral participant" where (1) the defendant knew about and acquiesced in the constitutionally defective conduct as part of a common plan with those whose conduct constituted the violation, or (2) the defendant set in motion a series of acts by others which the defendant knew or reasonably should have known would cause others to inflict the constitutional injury. *Peck v. Montoya*, 51 F.4th 877, 889 (9th Cir. 2022); *Spencer v. Pew,* 117 F.4th 1130, 1144, 1145 (9th Cir. 2024).

There is no evidence of any "common plan" to violate the Plaintiff's civil rights, nor did the defendant set in motion a series of acts by others which they would know or reasonably should have known would cause others to result in the constitutional violation. Here, the evidence establishes that the Defendants performed a felony traffic stop to take the Plaintiff into custody, for both the felony *Ramey* arrest warrant which had been issued for him, as well as upon probable cause for his involvement in the violent armed home invasion robbery that had just occurred. There is no evidence of any intent to shoot the Plaintiff or violate his civil rights; instead the evidence establishes that the use of force occurred after the Plaintiff refused to follow instructions, took up a recognized shooting stance, and then simulated firing upon the Defendants and other officers present. Thus, it is the *Plaintiff*, not the Defendants, who set the series of acts into motion.

///

///

**III.   PLAINTIFF'S USE OF MODEL JURY INSTRUCTION 9.25 IS INCOMPLETE, AND ADDITIONAL FACTORS SHOULD BE INCLUDED IN ANY FINAL INSTRUCTION.**

Both Plaintiff and the Defendants request Model Jury Instruction 9.25 (Fourth Amendment – Unreasonable Seizure of Person – Excessive Force) be used. However, the parties differ as to the factors that they request the Court include as a part of the instruction.

Defendants request that the Court include the following additional factors as part of any jury instruction:

(1) Whether Plaintiff was actively resisting arrest or attempting to evade arrest by flight;

(2) The relationship between the need for the use of force and the amount of force used;

(3) The extent of the Plaintiff's injuries;

(4) Any effort made by the officers to temper or limit the amount of force used;

(5) The severity of the security problem at issue; and

(6) The number of lives at risk (including motorists, pedestrians, and police officers) <u>and the parties' relative culpability</u>, i.e. which party created the dangerous situation and which party is more innocent.

Each of these factors is specifically included as an element by the Model Jury instructions, and is directly relevant and applicable here. As to the first of these, the evidence will establish at trial that Plaintiff had fled from the armed home invasion robbery where shots were fired, and attempted to continue his escape by having Quintero pick him up and transport him. The evidence will additionally establish at trial that when Plaintiff and Quintero were stopped, Plaintiff told Quintero that he intended to flee from the officers, before he then got out of the vehicle, assumed a shooting stance towards the officers and simulated firing a handgun – which also constitutes an attempt to evade arrest.

The severity of the security problem is also highlighted in this case. The evidence will establish that Plaintiff was wanted for numerous felonies, including those which were the subject of his arrest warrant issued as a part of Operation Red Reaper which included trafficking in illegal firearms. Additionally, the Defendants were aware of the fact that Plaintiff had just participated in an especially violent crime, an early morning armed home invasion robbery, where shots were

fired and one person had been struck by gunfire and required hospitalization, and Plaintiff had fled on foot and had now been picked up by one of his accomplices in the armed home invasion robbery. Thus, at the time of the incident, the Defendants were aware that Plaintiff had been involved in numerous violent activities, was attempting to flee, and posed a risk to the public as a result of his actions.

The number of lives put at risk is equally significant, as Plaintiff's acts were deliberately designed to simulate and convince the law enforcement officers that he was armed with a firearm, and intended to use it against the numerous law enforcement officers present at the scene. Thus, not only did Plaintiff's actions place the law enforcement officers lives at risk, but the law enforcement officers believed that Plaintiff's actions placed others at risk – including motorists who were passing by on the adjacent roadway – one of whom testified he believe that Plaintiff was shooting at him and that he was going to be hit by gunfire.

### IV. DEFENDANTS OBJECT TO PLAINTIFF'S INCLUSION OF USE OF EMOTIONAL DISTURBANCE INSTRUCTIONS IN MODEL JURY INSTRUCTION 9.25.

In his proposed instructions, Plaintiff asks this court to include as part of Model Jury Instruction 9.25 the factor "[w]hether it should have been apparent to Defendants that the person they used force against was emotionally disturbed." This factor has no basis or support in this lawsuit, as Plaintiff's Complaint makes no allegation of any "emotional disturbance" or similar mental issues, and Plaintiff himself is seeking to exclude evidence relating to his mental state relating to any alleged "suicide by cop."

None of Plaintiff's discovery responses include any reference to Plaintiff suffering from any emotional disturbance that would be sufficient to justify or support this factor. Had Plaintiff indicated his mental state was at issue, or that he was suffering from an emotional disturbance at the time of the incident, additional discovery into this factor would have been conducted, and additional experts would have been retained to address it. Plaintiff should not be allowed to now raise this as an issue at trial when he has previously not identified it as a factor during discovery.

## V. PLAINTIFF'S ATTEMPT TO USE A *SUMMERS V. TICE* INSTRUCTION FOR A FOURTH AMENDMENT USE OF FORCE CLAIM IS IMPROPER AND APPLIES THE WRONG STANDARDS (PROPOSED JURY INSTRUCTION NO. 6).

In his sixth proposed jury instruction, Plaintiff asks this court to adopt and utilize a jury instruction derived from a state court *negligence* case in a Fourth Amendment excessive force case. In doing so, Plaintiff seeks to relieve himself of the burden of having to establish each and every element of his case and instead have the jurors presume that each of the Defendants actually violated Plaintiff's civil rights by using unreasonable force for purposes of deliberation, thereby improperly shifting the burden of proof onto the Defendants.

Plaintiff's jury instruction is based upon that given by state courts in negligence causes of action pursuant to *Summers v. Tice*, 33 Cal. 2d 80 (1948). In *Summers v. Tice*, the defendants both shot uphill towards a bird, in the direction of the plaintiff, and were therefore found to be negligent; however, the plaintiff was not able to establish whose pellets struck him. The *Summers* Court relied upon negligence based principles in finding that the defendants were jointly liable, and that the "negligence of both was the cause of injury or to that legal effect." *Id.* at 84. As discussed by the *Summers* Court, its conclusion and finding was expressly based upon traditional principles applicable to members of hunting parties. As the court explained, "[i]t has been held that were a group of persons are on a hunting party, or otherwise engaged in the use of firearms, and two of them are negligent in firing in the direction of a third person who is injured thereby, both of those so firing are liable for the injury suffered by the third person, although the negligence of only one of them could have caused the injury." *Id.* The *Summers* Court continued its analysis by making it clear that it is founded upon principles of *negligence*.

Unlike the situation in *Summers*, where the court's decision was founded upon traditional negligence principles, here Plaintiff does not allege any negligence-based causes of action, nor can he as he failed to comply with the California Government Claims Act and Plaintiff's Complaint does not allege any negligence-based theories or causes of action. Further, claims of excessive force under the Fourth Amendment are not founded upon principles of negligence. Instead, Plaintiff is required to show that *each* Defendant's use of force was unreasonable during the incident, under the objective "reasonable officer" standard. The inquiries, standards, burdens,

and legal presumptions used between the two doctrines are distinct. *See Alves v. County of Riverside*, 135 F.4th 1161, 1164 (9th Cir. 2025).

In *Alves*, the Ninth Circuit recognized that the Fourth Amendment's standards are "not the same as the standard…under tort law" and that negligence law is broader than the Fourth Amendment's standards. *Alves*, 135 F.4th at 1173. Unlike a negligence action, which focuses on whether a defendant owed a duty and breached that duty, thereby causing damages to the plaintiff, the question of whether an individual has been subjected to excessive force requires a balancing of "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Luchtel v. Hagemann*, 623 F.3d 975, 980 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989). Thus, the question in a Fourth Amendment use of force case is not whether a defendant's actions were negligent, or whether a defendant breached a duty owed to the plaintiff, but instead whether the defendant's actions were objectively reasonable in light of the facts and circumstances confronting them. *Bryan v. MacPherson*, 630 F.3d 805, 823 (9th Cir. 2010); *Graham*, 490 U.S. at 397.

The Federal Courts have rejected similar attempts to utilize *Summers*-based instructions and arguments in Fourth Amendment use of force cases. In *Pineda v. Hamilton County, Ohio*, 977 F.3d 483, 487 (6th Cir. 2020), the plaintiff asked to adopt the *Summers*-rule in connection with his Fourth Amendment use of force claim because he, similar to Plaintiff here, could not establish which of the law enforcement defendants involved in the use of force incident was ultimately responsible for his injuries.

Accordingly, the State Defendants object to Plaintiff's request to utilize a state-law based negligence instruction in a Fourth Amendment use of force case, where there are no state-law negligence causes of action asserted and the sole issue is whether the officer's use of force was *unreasonable*, not negligent.

Dated: November 7, 2025

Respectfully submitted,

ROB BONTA
Attorney General of California

*[signature]*

NORMAN D. MORRISON
Supervising Deputy Attorney General
*Attorneys for Defendants Neil Compston,
John Silveira and Edward Sinclair*

FR2021301267

# CERTIFICATE OF SERVICE

Case Name:  **Quair v. County of Kings, et al.**    No.  **1:20-CV-01793-KJM-SKO**

I hereby certify that on November 3, 2025, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**STATE DEFENDANTS' OBJECTIONS TO PLAINTIFF'S PROPOSED JURY INSTRUCTIONS**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on November 3, 2025, at Los Angeles, California.

|  J. Sissov  |  */s/ J. Sissov* |
|:---:|:---:|
| Declarant | Signature |

FR2021301267