ROB BONTA, State Bar No. 202668
Attorney General of California
NORMAN D. MORRISON, State Bar No. 212090
Supervising Deputy Attorney General
 2550 Mariposa Mall, Room 5090
 Fresno, CA 93721-2271
 Telephone: (559) 705-2304
 Fax: (559) 445-5106
 E-mail: Norman.Morrison@doj.ca.gov
*Attorneys for Defendants Neil Compston,*
*John Silveira and Edward Sinclair*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CIVIL DIVISION

| | |
|---|---|
| **FREDDIE QUAIR,** | Case no. 1:20-CV-01793-KJM-SKO |
| Plaintiff, | **DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE NO. 1 TO EXCLUDE EVIDENCE AND DOCUMENTS** |
| v. | |
| **COUNTY OF KINGS; TAYLOR LOPES; NEIL COMPSTON; JOHN SILVERIA; EDWARD SINCLAIR; and DOES 1 THROUGH 10, inclusive,** | |
| Defendants. | Trial Date:    November 10, 2025<br>Action Filed:  December 21, 2020 |

Defendants NEIL COMPSTON, JOHN SILVEIRA and EDWARD SINCLAIR (State Defendants) hereby file their opposition to Plaintiff's Motion in Limine No. 1 to exclude any evidence, testimony, arguments or references relating to the documents and evidence regarding Plaintiff and/or Quintero during Operation Red Reaper, evidence of Plaintiff and Quintero's criminal history and convictions, evidence relating to the prior criminal prosecutions, convictions and pleas of both Plaintiff and Jose Quintero; as well as other evidence on various grounds including Federal Rules of Evidence 403.

As discussed herein, Plaintiff's arguments lack serious merit. The evidence Plaintiff seeks to exclude by way of this motion includes evidence relating to information regarding Plaintiff and Quintero that was known to, considered by, and relied upon by the law enforcement officers performing the felony traffic stop on June 18, 2019, but also relates directly to Plaintiff's own claims against the Defendants in this case – including many of Plaintiff's expert's opinions and conclusions. Further, Plaintiff's arguments that portions of the evidence should be excluded, including the post-incident investigations, lacks merit because Plaintiff himself not only identifies portions of these reports as exhibits he intends to introduce at trial, but his own expert has relied upon these materials in reaching his opinion regarding the use of force in this case, and therefore Defendants are entitled to question him regarding his knowledge of these materials. While Plaintiff argues portions of the records constitute hearsay, those records are subject to one or more hearsay exceptions (or do not constitute hearsay at all). Further, evidence of Plaintiff and Quintero's prior criminal cases and convictions, as well as their incarceration, is relevant and Defendants are entitled to introduce such evidence to impeach the Plaintiff and Quintero at trial.

For all of these reasons, the Court should deny Plaintiff's motion.

## INTRODUCTION

This lawsuit arises out of a shooting that occurred during the early morning hours on June 18, 2019, on a road next to State Route 43 near Hanford, California. Prior to this incident, Plaintiff Fredie Quair, Jr. had been under surveillance for multiple months as part of a joint Federal, State and local task force known as "Operation Red Reaper" that was investigating the Nuestra Familia criminal organization and the Norteño street gangs in the Kings and Tulare County region. As one of the targets of Operation Red Reaper, Plaintiff was the subject of a combination of video, audio, and electronic surveillance over a period of months performed by the Defendants. This included wiretaps of phone numbers used by Plaintiff and his criminal associates, including Jose Quintero. The months long surveillance captured evidence of Plaintiff engaging in the trafficking of illegal firearms with other criminals, the sales of narcotics, and the discussion of various criminal activities relating to the Norteños and Nuestra Familia.

During the early morning hours of June 18, 2019, Plaintiff and two accomplices, Jose Quintero and David Hernandez, engaged in an armed home invasion robbery of a residence located in Corcoran, California. During the home invasion robbery, Plaintiff's accomplice, David Hernandez, was shot in the stomach. Plaintiff fled the scene on foot, and Hernandez was transported to the hospital by Quintero; the firearm used during the armed home invasion robbery was also in the vehicle used by Quintero.

Plaintiff fled the scene on foot after the shooting, and eventually borrowed a cellular phone from a third-party to call Quintero. During this phone call, which was monitored by the Defendants as part of the court authorized wiretap, they heard Plaintiff and Quintero discussing the armed home invasion robbery, the shooting, the firearm used during the armed home invasion robbery, and Plaintiff's instructions to Quintero to come pick him up from the side of the highway. Plaintiff gave Quintero specific information about his address.

Based upon the phone call, and their knowledge of the armed home invasion robbery that Plaintiff had just committed, and due to the existence of an arrest warrant issued for the Plaintiff by a court, the Defendants began surveillance of the Plaintiff using other vehicles as well as a plane. Plaintiff was subsequently stopped by law enforcement officers in a field alongside the highway. In light of the facts known to them, including Plaintiff's involvement in an armed home invasion robbery where someone had just been shot, as well as Plaintiff's prior history involving firearms, the Defendants performed a "felony traffic stop."

After Plaintiff and his accomplice stopped their vehicle, they refused to follow instructions and directions made by Kings County Sheriff's Sergeant Taylor Lopes. Instead, Plaintiff flung open the front passenger side door of his vehicle and immediately assumed an isosceles shooting stance, holding both hands together and extended in front of him consistent with someone holding and intending to use a handgun, pointing towards the Defendants. Plaintiff then suddenly moved his hands upward in a motion consistent with experiencing the physical recoil of a firearm being shot. Knowing Plaintiff had a history of being armed with illegal firearms, having just been involved in an armed home invasion robbery where another individual

was shot, seeing Plaintiff assume what was recognized as a shooting stance and displaying a

physical reaction consistent with firing a handgun while simultaneously hearing gunfire,

Defendants reasonably and logically believed the Plaintiff was shooting at them and discharged

their firearms at the Plaintiff and the vehicle he had just exited in self-defense. After being shot,

Plaintiff continued to resist arrest by refusing to comply with orders, before he was ultimately

taken into custody and treated by emergency medical personnel.

**I.     THE EVIDENCE DEFENDANTS SEEK TO INTRODUCE IS RELEVANT TO THE CLAIMS AGAINST THEM, AS IT SUPPORTS AND DEMONSTRATES THE KNOWLEDGE THEY HAD AT THE TIME OF THE INCIDENT AND IT RELATES TO PLAINTIFF'S CREDIBILITY.**

To the extent that Plaintiff is arguing that the key issue in this case surrounds the use of

force on June 18, 2019, he is correct. However, Plaintiff ignores the remainder of the legal

analysis and requirements that are intertwined with a Fourth Amendment use of excessive force

claim. Plaintiff's argument that the written records should be excluded for convenience and to

save time and that the witnesses can just "testify about their knowledge" also lacks merit.

Evidence may be relevant even if it is redundant or cumulative, or if it relates to undisputed facts.

*Old Chief v. United States*, 519 U.S. 172, 179 (1997). The evidence that Plaintiff seeks to exclude

thus relates specifically to the factors and issues for the jury to consider on a Fourth Amendment

use of force case. These factors and issues include (1) the nature of the crime and other

circumstances known to the officers at the time force was used; (2) whether the Plaintiff was

actively resisting arrest or attempting to evade arrest by flight; (3) the severity of the security

problem at issue; and (4) whether there was probable cause for a reasonable officer to believe that

the suspect had committed a crime involving the infliction or threatened infliction of serious

physical harm. *Graham v. Connor*, 490 U.S. 386, 396 (1989); *Nehad v. Browder*, 929 F.3d 1125,

1137 (9th Cir. 2019); *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015).

Plaintiff's motion seeks to exclude evidence relating to information and knowledge that

the law enforcement officers involved in the traffic stop and use of force on June 18, 2019, had

knowledge of. As discussed herein, the information contained in the Operation Red Reaper

evidence is information that the Defendants had knowledge of. In fact, one of the law enforcement officers involved in the felony traffic stop on June 18, 2019, was responsible for preparing a detailed, approximately 18-page arrest warrant affidavit and application for the Plaintiff's arrest more than a week before the incident, wherein he discussed his knowledge of the evidence and facts Plaintiff seeks to exclude. Another Defendant, Kings County Sheriff's Sergeant Taylor Lopes, is expected to similarly testify at trial that he had knowledge of all of the facts contained in the Operation Red Reaper documents.

Similarly, the evidence relating to the armed home invasion robbery, which includes not only that information obtained through the investigation that was ongoing at the time of the incident here and that was obtained through the surveillance of Plaintiff and Quintero as part of Operation Red Reaper, is properly admitted and relevant.

In *Boyd v. City and County of San Francisco*, 576 F.3d 938, 943-945 (9th Cir. 2009), the Ninth Circuit concluded the trial court properly admitted evidence of events and incidents that had occurred prior to the use of force itself. The Court noted that in cases where what the defendant law enforcement officer perceived or knew just prior to the use of force is in dispute, evidence that may support one version of facts over another is relevant and admissible. *Id.* at 944. It is anticipated that Plaintiff intends to claim that he was surrendering and had his hands up to surrender and therefore there was no need or justification for the use of force. Under *Boyd*, the evidence obtained through Operation Red Reaper, including the subsequent interviews, as well as the armed home invasion robbery is relevant to establishing that Plaintiff had a motive, opportunity, reason and intention to resist arrest and attempt to flee. The evidence further establishes that Plaintiff had a history of being armed and trafficking in firearms, a central issue here in light of the fact that during the armed home invasion robbery he committed Plaintiff used a firearm.

The evidence obtained through Operation Red Reaper further establishes that both Plaintiff and Quintero planned the armed home invasion robbery in advance, and that Plaintiff had obtained a firearm to use in connection with the crime. Under *Boyd*, such evidence is

admissible as it tends to establish that the Defendants' knowledge regarding Plaintiff's involvement in the violent felony that resulted in a life-threatening injury that had just occurred, Plaintiff's fleeing the scene, as well as their belief that the Plaintiff was still armed at the time of the incident.

Contrary to Plaintiff's arguments, Defendants do not intend to use the evidence of Plaintiff's activities to "paint Plaintiff as a dangerous criminal and gang member so the jury will not care what the officers did to him." (Pl. Mtn., 9:21-23.) The evidence Defendants seek to introduce relates directly to Plaintiff's intentional, purposeful and knowing involving in criminal activities that led directly to the use of force incident on June 18, 2019. The evidence Defendants intend to introduce, and which Plaintiff seeks to exclude, also relates to the Defendants' knowledge of Plaintiff's involvement in criminal activities which led to the issuance of the arrest warrant they were attempting to take him into custody for, as well as their knowledge of his involvement in a violent activity that demonstrated that Plaintiff was not concerned with the potential ramifications and harm that could result to others by his intentionally using a firearm during the commission of a violent felony. Contrary to Plaintiff's arguments, the evidence at issue goes directly to the totality of the circumstances issue in analyzing whether the Defendants' use of force was reasonable or excessive on June 18, 2019.

Plaintiff seeks to improperly sanitize his own actions and prevent the jury from hearing evidence regarding what the Defendants were actually aware of, considered, and relied upon in their actions during the use of force. Plaintiff's strategy in this regard completely ignores the evidentiary and legal requirements and precedence associated with use of force cases, where one of the key issues is what the defendant officers were aware of at the time of the incident.

Finally, Plaintiff's arguments and concerns that the introduction of this evidence, which relates to the information the Defendants knew and relied upon at the time of the incident, would somehow complicate the case or cause undue consumption of time ring especially thin and hollow, in light of Plaintiff's inclusion of *Monell* claims against the County of Kings, which will result in the introduction of potentially thousands of pages of evidence and numerous witness's

testimony relating to policies and procedures, as well as settlements in other cases, that are wholly

irrelevant and unrelated to the Fourth Amendment claims against any of the individual

Defendants in this case. As Plaintiff argues, such a "strategy complicates what should be a

relatively simple case and distracts the jury from the only question that matters." (Pl. Mtn. at

9:27-28.)

## II.    EVIDENCE FROM OPERATION RED REAPER IS ADMISSIBLE, AS THE DEFENDANTS WERE AWARE OF THE EVIDENCE AND THE INFORMATION CONTAINED THEREIN.

By way of his motion in limine, Plaintiff seeks to exclude evidence from Operation Red

Reaper relating to his involvement in various criminal activities, including the trafficking of

illegal firearms and Plaintiff's unlawful possession of firearms, as well as other crimes. Plaintiff's

motion disregards the fact that not only was this information obtained pursuant to a valid, court-

ordered search warrant, but also that an arrest warrant had been issued for Plaintiff regarding

these same criminal activities. The facts, and the testimony of the witnesses, will establish that the

law enforcement officers present at the scene will be able to testify to this information.

For example, one of the law enforcement officers involved in the underlying incident was

responsible for preparing the arrest warrant that was subsequently issued by the Kings County

Superior Court for Plaintiff on June 10, 2019 – more than a week prior to the incident. In his

sworn affidavit accompanying the search warrant application, Special Agent Dobbins describes in

detail the basis for the probable cause arrest of the Plaintiff. This includes specifically stating his

knowledge that Plaintiff was a member of the Norteño criminal street gang, Plaintiff's illegal

activities including selling drugs, trafficking weapons, and engaging in criminal conspiracies with

Jose Quintero, including conspiracies to illegally possess and sell firearms. The arrest warrant

affidavit further summarizes and details the observations of surveillance of Plaintiff's criminal

actions during Operation Red Reaper.

The arrest warrant was one of the two bases for the Defendants attempting to take Plaintiff

into custody on June 18, 2019. As such, the arrest warrant – as well as the information contained

therein – is both relevant and admissible here as it was clearly known to the officers involved in

1  the underlying incident (illustrated by virtue of the fact that one of the officers involved in the

2  traffic stop actually prepared and signed the arrest warrant affidavit).

3

4  **III.  THE EVIDENCE PLAINTIFF SEEKS TO EXCLUDE DOES NOT CONSTITUTE INADMISSIBLE HEARSAY.**

5     Plaintiff argues that the evidence identified by the Defendants relating to statements made

6  by Plaintiff and his criminal accomplice Quintero because it constitutes inadmissible hearsay.

7  Plaintiff's arguments lack merit, and ignore the established exceptions to – and exemptions from

8  – the hearsay rule.

9     First, any statements by Plaintiff – including any electronic evidence obtained through the

10  court ordered wiretaps (such as audio recordings) is admissible under the party-opponent

11  exception to the hearsay. As the Ninth Circuit has explained, statements made by a party in

12  connection with criminal actions are admissible as non-hearsay. *United States v. Perez*, 658 F.2d

13  654, 659 (9th Cir. 1981).  As such, Plaintiff cannot complain of his own statements being offered

14  against him. This includes not only the telephone call between Quintero and Plaintiff immediately

15  preceding this incident where Plaintiff instructed Quintero to pick him up and they discussed the

16  armed home invasion robbery they had just committed, but any other electronic recordings made

17  as part of Operation Red Reaper.

18     Additionally, any statements made by Quintero – such as those made in connection with

19  the investigation into the underlying incident – are admissible as exemptions to the hearsay rule,

20  as they are statements made by an agent, employee or co-conspirator. Fed. R. Evid. 801(d)(2)(D)-

21  (E). Here, the evidence establishes that Quintero was an accomplice of Plaintiff's in connection

22  with his criminal activities, including the armed home invasion robbery that both had just

23  committed, and Quintero's actions in connection with his phone call with Plaintiff and subsequent

24  actions, including discussion of activities taken in connection with the armed home invasion

25  robbery, all support his involvement as a co-conspirator and therefore demonstrate the exception

26  to the hearsay rule exists. Additionally, Quintero's recorded statement following the incident is

27  admissible as a hearsay exception under Rule 803(5), as a record made while the matter was still

28

8

fresh, in addition to other exceptions to the hearsay rule under Rule 803.

The records of the Department of Justice and the other law enforcement agencies in conducting the post-incident investigations, as well as Operation Red Reaper, similarly fall under the business records exception of Federal Rules of Evidence Rules 803(6-8). *United States v. Pena-Gutierrez*, 222 F.3d 180, 1086-1087 (9th Cir. 2000), *United States v. Pazsint*, 703 F.2d 420, 424 (9th Cir. 1983). Finally, evidence relating to Plaintiff and Quintero's criminal convictions, including the official court records and other documents, do not constitute hearsay as they are subject to the public records exception of Rule 803(8) and/or the records of regularly conducted activity, Rule 803(6). As to Plaintiff, his plea agreement and conviction would similarly constitute party-opponent admissions.

## IV.    EVIDENCE RELATING TO THE INVESTIGATIONS INTO THE INCIDENT IS RELEVANT, ADMISSIBLE, AND HAS BEEN PLACED DIRECTLY AT ISSUE IN THIS CASE BY PLAINTIFF.

Plaintiff's arguments that the documents and materials, including the post-incident investigation reports, should be excluded at trial as hearsay are also curious, in light of the fact that Plaintiff himself has identified these same documents and evidence as exhibits in his Final Trial Exhibit List, thereby demonstrating that he intends to introduce and rely upon the very same documents he contends are inadmissible and should be excluded when offered by Defendants.

More critically, Plaintiff's expert has testified his opinions relate directly to the alleged non-existence of these reports. As discussed in more detail in Defendants' Motions in Limine, Plaintiff's only retained expert, Curtis Rothschiller, has directly placed the existence *and contents* of the various investigations into the incident directly at issue in this case. In his report served pursuant to Federal Rules of Civil Procedure 26, Rothschiller specifically identifies that there were no investigations conducted into the underlying incident after it occurred by any agency, and therefore he concluded this was a breach of policies and legal requirements. Rothschiller further bases his opinions on contents of these same post-incident investigations, including the very documents that Plaintiff now argues should be excluded as hearsay.

Because Rothschiller's report and his testimony reveals his conclusions the Defendants

9

are liable because there was no post-incident investigation into the incidents by Defendants or any other public entity, as well as his reliance upon the contents of these post-incident investigatory reports (despite his lack of knowledge that the information he was relying upon came from the very reports he concludes don't exist) in reaching his opinions and conclusions regarding the State Defendants (as well as the County of Kings), the Defendants are entitled to question him during cross-examination about the reports, including his lack of knowledge of them. Plaintiff's motion should be seen for what it truly is – an attempt to immunize his expert witness from examination that would cause the jury to disbelieve his expert's opinions and testimony and therefore find against him.

**V.    EVIDENCE RELATING TO PLAINTIFF'S SUBSEQUENT CRIMINAL CONVICTIONS IS BOTH ADMISSIBLE AND RELEVANT AS IMPEACHMENT EVIDENCE.**

Plaintiff additionally seeks to exclude any evidence relating to any post-incident criminal prosecution and incarceration of the Plaintiff and Quintero, including their "post-incident prosecution, guilty plea, and incarceration." (Pl. Mtn., at 14:14-15.) Plaintiff argues that evidence of "post-incident convictions of Plaintiff and Quintero [are] a distraction from the main controversy in this case: whether Defendant Officers acted reasonably." (*Id*. at 14:15-18.)

Plaintiff's arguments not only lack any merit, but completely ignore the fact that the Defendants are entitled under the Federal Rules of Evidence to introduce evidence of Plaintiff's subsequent criminal actions and resulting conviction. Pursuant to Rule 607, any party, *including the party that called the witness*, may attack the witness's credibility. *United States v. Morgan*, 555 F.2d 238, 241 (9th Cir. 1977). As Plaintiff is aware, one of the recognized method of impeachment is through the use of criminal convictions, as Defendants intend to do here. Pursuant to Federal Rules of Evidence 609, where a party seeks to impeach a witness in a civil case with evidence of a crime that was punishable by death or imprisonment for more than one year, the evidence *must be admitted*, pursuant to Rule 403.

Accordingly, any prior felony convictions, and resulting imprisonment, involving Plaintiff and Quintero are admissible for purposes of impeaching their testimony. This specifically

includes evidence relating to their plea agreements and convictions for felonies arising out of

Operation Red Reaper (for which an arrest warrant had been issued for the Plaintiff prior to the

underlying incident), as well as for their involvement in the underlying armed home invasion

robbery, as well as any other felonies either may have been involved and convicted of.

The involvement of both Plaintiff and Quintero in the underlying armed home invasion

robbery is also significant and relevant. Pursuant to California Penal Code section 836, the

Defendants had the legal right and obligation to arrest the Plaintiff (and Quintero) for their

involvement in a felony offense, the armed home invasion robbery. Accordingly, the officers are

entitled to discuss the basis for their arrest.

It is also anticipated that Plaintiff will attempt to testify regarding the armed home

invasion robbery, or attempt to deny or minimize his involvement in this violent crime. Plaintiff

refused to provide any testimony relating to any events that occurred prior to the felony traffic

stop itself, and instead invoked his Fifth Amendment privileges by refusing to testify regarding

his involvement in the armed home invasion robbery or other facts. However, as part of his plea

deal with the Kings County District Attorney's Office, Plaintiff specifically admitted and agreed

that the facts set forth in the police report prepared for the underlying home invasion robbery

were accurate and supported the charges against him. Accordingly, the facts contained in the

police report are incorporated into Plaintiff's plea agreement and are admissible here.

Finally, Plaintiff's Complaint seeks damages for lost earnings and lost earning capacity.

(See Final Pretrial Order, 3:16-17.) Because Plaintiff is seeking lost earnings and lost earning

capacity, evidence relating to his prior convictions and incarceration is both relevant and

admissible to the issues of his claimed damages, as it would impact Plaintiff's future earning

capacity, potential career fields and income ranges, and similar information.

## VI. THE EVIDENCE SHOULD NOT BE EXCLUDED UNDER FEDERAL RULES OF EVIDENCE 403 OR 404.

Plaintiff additionally argues that evidence should be excluded under Federal Rules of

Evidence 403. Once again, Plaintiff's arguments lack merit. The Federal Rules of Evidence favor

the admissibility of relevant evidence at trial. Fed. R. Evid. 401, 402; *United States v. Universal Rehabilitation Services (PA), Inc.*, 205 F.3d 657, 664-665 (3rd Cir. 2000) [Fed. R. Evid. 403 creates presumption of admissibility]; *Aycock v. R.J. Reynolds Tobacco Co.*, 769 F.3d 1063, 1069 (11th Cir. 2014).

Federal Rules of Evidence 403 allows a court to exclude relevant evidence "if its probative value is *substantially outweighed* by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." (emphasis added.) While a trial court has discretion in ruling on the admissibility of evidence under Rule 403, that discretion is not unlimited. Relevant evidence may be excluded under Rule 403 only when its probative value is *substantially outweighed* by the risk of unfair prejudice. *Sidibe v. Sutter Health*, 103 F.4th 675, 691 (9th Cir. 2024); *Aycock v. R.J. Reynold Tobacco Co.*, 769 F.3d 1063, 1070-1072 (11th Cir. 2014). In order to exclude evidence under Federal Rules of Evidence 403, the court must find engage in a balancing process and determine that the probative value must be *substantially* outweighed by one or more of the risks enumerated under Rule 403. *United States v. Lloyd*, 807 F.3d 1127, 1151-1152 (9th Cir. 2015). Courts engaged in this balancing test are instructed to use a "sliding scale approach" – where the probative value increases, so does the risk of prejudice. *United States v. Chambers*, 41 F.3d 438, 456 (6th Cir. 2006). In order to engage in this balancing process, the court must personally examine and evaluate *all* of the evidence that is subject to a Rule 403 challenge – not just excerpts or portions of the materials. *United States v. McElmurry*, 775 F.3d 1061, 1070 (9th Cir. 2015).

As discussed above, the evidence Plaintiff seeks to exclude is not only relevant, but it is directly related to the subject matter of this litigation and Plaintiff's claims against the Defendants. Evidence of the post-incident reports goes directly to Plaintiff's expert's opinions, as well as the basis and foundation for his opinions. Evidence relating to the Operation Red Reaper records goes directly to the Defendants' knowledge of the Plaintiff's criminal history, propensity for engaging in potentially violent activities, history of being armed and possessing firearms, and

related activities. Evidence from Operation Red Reaper further goes directly to the Defendants' knowledge of the Plaintiff's involvement in the armed home invasion robbery where shots were fired and life threatening injuries resulted but also as to the involvement of Quintero in the same incident, Plaintiff's communications with Quintero regarding where he was to be picked up, and even as to Plaintiff's statements to Quintero in the vehicle prior to the use of force, as well as admissions by a co-conspirator as well as Plaintiff's own admissions regarding his criminal activities. Evidence from the armed home invasion robbery further goes to establish the existence of the event and Plaintiff's involvement in the violent crime.

Finally, evidence as to the involvement of both Quintero and Plaintiff in the armed home invasion robbery, as well as the criminal activities identified and the subject of Operation Red Reaper, goes towards establishing not only the Defendants' state of mind and knowledge at the time of the incident, but additionally is admissible to serve to impeach both Plaintiff and Quintero at trial with evidence of their felony convictions, as specifically authorized and required under the Federal Rules of Evidence.

## CONCLUSION

For all of the reasons identified herein, the Court should deny Plaintiff's motion. The evidence Plaintiff seeks to exclude is not only relevant, but relates specifically to the knowledge of the law enforcement officers during the incident on June 18, 2019, regarding Plaintiff's criminal history, propensity to be armed with handguns and travel with handguns in vehicles, engage in violent activities, and his involvement in a violent criminal street gang. It also relates directly to the law enforcement officers' knowledge of Plaintiff's integral involvement in a violent armed home invasion robbery immediately before this incident where shots were fired during the commission of the crime. All of these are factors that were not only known to the officers involved in the traffic stop, but were used by the officers in connection with their traffic stop. They are directly relevant to the ultimate inquiry left to the factfinder as to whether the use of force was reasonable given the totality of the circumstances.

1

Dated: November 3, 2025                    Respectfully submitted,

2

ROB BONTA
Attorney General of California

3

4

5

NORMAN D. MORRISON
Supervising Deputy Attorney General
*Attorneys for Defendants Neil Compston,*
*John Silveira and Edward Sinclair*

6

7

FR2021301267

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendants' Opposition to Plaintiff's Motion in Limine No. 1 to
Exclude Evidence  (1:20-CV-01793-KJM-SKO)

# CERTIFICATE OF SERVICE

Case Name:   **Quair v. County of Kings, et al.**       No.    **1:20-CV-01793-KJM-SKO**

I hereby certify that on <u>November 3, 2025</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE NO. 1 TO EXCLUDE EVIDENCE AND DOCUMENTS**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>November 3, 2025</u>, at Los Angeles, California.

|  |  |
|---|---|
| J. Sissov | */s/ J. Sissov* |
| Declarant | Signature |

FR2021301267