1  James J. Arendt, Esq.  Bar No. 142937
2  Matthew P. Bunting, Esq.  Bar No. 306034

3  WEAKLEY & ARENDT
   A Professional Corporation
4  5200 N. Palm Avenue, Suite 211
   Fresno, California 93704
5  Telephone:  (559) 221-5256
   Facsimile:  (559) 221-5262
6  James@walaw-fresno.com
   Matthew@walaw-fresno.com

7  Attorneys for Defendants County of Kings and Taylor Lopes

**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FREDDIE QUAIR,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>COUNTY OF KINGS; TAYLOR LOPES; NEIL COMPSTON; JOHN SILVERIA; EDWARD SINCLAIR; and DOES 1 THROUGH 10, inclusive,<br><br>　　　　Defendants. | CASE NO.  1:20-CV-01793-KJM-SKO<br><br>**COUNTY DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE NO. 1 (DOC. 111)** |

The parties, County of Kings and Taylor Lopes ("County Defendants") respectfully submit the following opposition to Plaintiff's Motion In Limine No. 1 to Exclude Information Unknown to Defendant Officers at the Time of the Incident.

First and foremost, County Defendants do not dispute that generally, they should be limited to what information the officers knew at the time of the use of force, barring circumstances such as impeachment.  However, Plaintiff appears to be overreaching and describing a litany of exhibits and information which the officers did in fact know at the time of the shooting.  The critical fact is that Operation Red Reaper consisted of a multi-agency investigation of the Nuestra Familia criminal prison gang and the Norteno criminal street gang that lasted for almost two years.  Electronic surveillance lasted for months before the use of

force incident. This is not a typical use of force case in which a traffic stop goes south, force is used, and then law enforcement tries to get in Plaintiff's prior bad acts in which they had no prior knowledge to justify the force used.

Sergeant Lopes was in charge of the wiretap room. He personally reviewed countless intercepts of phone calls, texts, facebook messages, and other pieces of electronic surveillance. From his position as a sergeant over the wiretap room, he was informed by others regarding what intercepts the wiretap room received regarding Quair. He reviewed and signed off on numerous reports regarding these intercepts.

Through the intercepts he was aware of drug smuggling, Quair owing "tax money" to the gang, selling firearms, and making a "comedy" video. In the "comedy video" Quair appears to sweet talk a woman by stating "Damn, my baby is so beautiful when she's sleeping." In the video, there is a woman laying on a bed either sleeping or pretending to sleep. Quair then states, "yes, you are so beautiful, as he strokes a glock with an extended magazine". Quair then picks up the handgun, states that that "you're a beautiful girl" and that he "misses you" (referring to the gun) and then breaks out into a cackle/ laugh at the end of the video. While in some circles, this video might be considered comedic, it informed Lopes as to the type of individual he was dealing with. Quair clearly had access to firearms, a twisted sense of humor, and willingness to put individuals in harms way of firearms.

County Defendants plan to walk the jury through direct testimony of Lopes through the wire intercepts detailing Quair's activities including his increased desperation in needing to pay "taxes" to the gang, the illegal activities that Quair was involved in, the commission of the armed, homed invasion only hours before the use of force incident, and why Quair may rather commit suicide by cop rather than be taken alive given at his length list of illegal conduct. Lopes learned through the wire room that Plaintiff and his uncle/ co-conspirator Quintero talked

on a phone and stated that Hernandez (another co-conspirator) had been shot and was dropped off at the hospital by Quintero clearly indicating that firearms were involved in the home invasion robbery.

Ultimately, this case is based upon three basic points: 1. Quair access to handguns, 2. Quair was out committing a home invasion burglary in which someone was shot, 3. Quair came flying out of the Quair, wheeled around, advanced a short distance, and levelled his hands in a shooting stance. While ultimately there was no gun on Quair at the time of the shooting, Lopes was clearly in a position given the short time period to reasonably believe that Quair possessed a firearm, and perhaps that same firearm he saw in the video that Quair posted.

To be clear, most of Plaintiff's request is conclusionary in that it states that requests limitations regarding categories that Plaintiff asserts might be out of the officers' knowledge, but it never provides evidence as to what officers did or did not know in concrete terms.

The only category Plaintiff seems to hone in on is the three reports (Hanford Police Department Report, Kings County Sheriff's Office Report, and State of California Department of Justice Bureau of Investigations Report) however, these reports are mostly proffered to dispute Plaintiff's expert opinion that no reports were conducted after the use of force incident. These reports also provide useful evidence to corroborate the information that law enforcement officers had before the information as credible rather than speculative.

For the above stated reasons, County Defendants request that the Court deny Plaintiff's motion in limine.

DATED: November 3, 2025        WEAKLEY & ARENDT
                               A Professional Corporation

                        By:    /s/  *James J. Arendt*
                               James J. Arendt
                               Matthew P. Bunting
                               Attorneys for County Defendants

COUNTY DEFENDANTS' OPP TO PLAINTIFF'S MIL 1

3